1  Marc S. Williams (Bar No. 198913)
   Email: mwilliams@cohen-williams.com
2  Reuven L. Cohen (Bar. No 231915)
   Email: rcohen@cohen-williams.com
3  Kathleen M. Erskine (Bar No. 223218)
   Email: kerskine@cohen-williams.com
4  Joseph E. Saei (Bar No. 321341)
   Email: ysaei@cohen-williams.com
5  COHEN WILLIAMS LLP
   724 South Spring Street, 9th Floor
6  Los Angeles, CA 90014
   Telephone: (213) 232-5160
7  Facsimile: (213) 232-5167

8  Attorneys for Defendants Nathan Young, David
   Young, Get Real Recovery LLC, Healing Path
9  Detox LLC, Ocean Valley Behavioral Health,
   LLC, Rodeo Recovery LLC, Sunset Rehab
10 LLC, Natural Rest House, Inc., 55 Silver LLC,
   and 9 Silver LLC

11

12                 **UNITED STATES DISTRICT COURT**

13      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

15 AETNA LIFE INSURANCE COMPANY,        Case No. 2:23-cv-09654-MCS-MCS
16 AETNA HEALTH OF CALIFORNIA,
   INC.,                                **YOUNG DEFENDANTS'**
17                                       **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT OF**
18              Plaintiffs,              **MOTION TO DISMISS FIRST**
                                         **AMENDED COMPLAINT**
19       v.

20 NATHAN SAMUEL YOUNG a/k/a            Judge:  Hon. Marc C. Scarsi
   PABLO LOPEZ; DAVID YOUNG a/k/a       Date:   April 29, 2024
21 SANCHO LOPEZ; JOSE RICARDO           Time:   9:00 a.m.
   TOSCANO MALDONADO; ALI               Place:  First Street Court House,
22 BEHESHTI; MARC ADLER; ANI                    Courtroom 7C
   MIRZAVAN; ZEALIE LLC; HELPING
23 HANDS REHABILITATION CLINIC          Complaint Filed: November 14, 2023
   INC; JOSER FOREVER LLC, GET          Trial Date: Not Scheduled
24 REAL RECOVERY LLC; REVIVE
25 PREMIER TREATMENT CENTER,
   INC.; HEALING PATH DETOX LLC;
26 OCEAN VALLEY BEHAVIORAL
27 HEALTH, LLC; RODEO RECOVERY
28

1  LLC; SUNSET REHAB LLC;
2  NATURAL REST HOUSE, INC; 55
   SILVER LLC, 9 SILVER LLC; JOHN
3  DOES 1 THROUGH 50, AND ABC
4  CORPS. 1-50,

5           Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN WILLIAMS LLP

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

**<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ...................................................................................8

II.   SUMMARY OF THE FIRST AMENDED COMPLAINT ......................................9

    A.    The Young Defendants...................................................................9

    B.    Aetna's Claims ..............................................................................9

III.  THE COURT SHOULD DISMISS AETNA'S FIRST CLAIM FOR RELIEF FOR FRAUD ...................................................................................10

    A.    Legal Standards for Fraud Claims................................................10

    B.    Aetna Fails to Allege Fraud Based on Misrepresentations in Claim Forms...................................................................................12

        1.   The FAC Fails to Identify Basic Information.......................................12

        2.   The FAC Fails to Allege Materiality and Reasonable Reliance.........12

        3.   The FAC Does Not Identify Which Misrepresentations Fraudulently Induced Payment of Which Claims..............................13

        4.   The FAC Fails to Meet the Heightened Standards for Pleading a Pervasive Fraudulent Scheme ...................................13

            a.   Body Brokers ........................................................14

            b.   Kickbacks ..............................................................16

            c.   Cost-Shares ...........................................................18

            d.   Actions to Prolong Treatment................................19

            e.   Violations of Laws and Regulations.......................19

    C.    Aetna Fails to Allege Fraud Based on Misrepresentations in Medical Records ....................................................................19

    D.    Aetna Fails to Allege "Enrollment Fraud"...................................20

IV.   THE COURT SHOULD DISMISS AETNA'S FIFTH CLAIM FOR RELIEF FOR VIOLATION OF RICO ....................................................20

3

COHEN **WILLIAMS** LLP

A.  Aetna Fails to Allege "Racketeering Activity" ................................ 21

B.  Aetna Fails to Allege an "Enterprise" ........................................... 21

V.  THE COURT SHOULD DISMISS AETNA'S SIXTH CLAIM FOR RELIEF FOR CONSPIRACY TO VIOLATION RICO ........................ 24

VI. THE COURT SHOULD DISMISS AETNA'S THIRD, FOURTH, AND SEVENTH THROUGH ELEVENTH, CLAIMS FOR RELIEF – WHICH ALL SOUND IN FRAUD ........................................................................ 24

A.  Rule 9(b) Applies to Claims Sounding in Fraud ........................... 24

B.  The Court Should Dismiss Aetna's Third Claim for Relief .......... 24

C.  The Court Should Dismiss Aetna's Fourth Claim for Relief ........ 25

D.  The Court Should Dismiss Aetna's Seventh Claim for Relief ...... 25

E.  The Court Should Dismiss Aetna's Eighth Claim for Relief ........ 26

F.  The Court Should Dismiss Aetna's Ninth Claim for Relief .......... 26

G.  The Court Should Dismiss Aetna's Tenth and Eleventh Claims for Relief ................................................................................................ 26

VII. CONCLUSION ...................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alternate Health USA Inc. v. Edalat*,
    2021 WL 2935304 (C.D. Cal. May 19, 2021)........................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................*passim*

*Boisvert v. Lohan*,
    2012 WL 12920196 (N.D. Cal. Dec. 12, 2012) ...................................................25

*Boulton v. Am. Transfer Servs., Inc.*,
    2015 WL 2097807 (S.D. Cal. May 5, 2015) .........................................................26

*Boyle v. U.S.*,
    556 U.S. 938 (2009)..........................................................................................22, 23

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .............................................................................11

*Doan v. Singh*,
    617 Fed.Appx. 684 (9th Cir. 2015) ......................................................................22

*Ebeid ex rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010)).................................................................11, 12, 20

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................................................21

*Glenn Holly Entm't, Inc. v. Tektronix, Inc.*,
    100 F.Supp.2d 1086 (C.D. Cal. 1999) ..................................................................25

*Gomez v. Guthy-Renker, LLC*,
    2015 WL 4270042 (C.D. Cal. July 13, 2015) ......................................................23

*Great Am. Ins. Co. v. Mowforth*,
    2020 WL 12216543 (N.D. Cal. Dec. 1, 2020) .....................................................26

*Humana, Inc. v. Biogen, Inc.*,
    666 F.Supp.3d 135 (D. Mass. 2023)......................................................................12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    826 F.Supp.2d 1180 (C.D. Cal. 2011) ..................................................................23

*Khazai v. Grover*,
    2023 WL 2628610 (C.D. Cal. Feb. 2, 2023) ........................................................21

*Lomeli v. Jackson Hewitt, Inc.*,
    2018 WL 1010268 (C.D. Cal. Feb. 20, 2018) ......................................................23

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Maksoud v. Guelton*,
  2017 WL 2505887 (S.D. Cal. June 9, 2017) ......................................26

*Neerman v. Cates*,
  2022 WL 18278377 (C.D. Cal. Dec. 28, 2022) ...................................24

*Neilson v. Union Bank of Cal.*,
  290 F.Supp.2d 1101 (C.D. Cal. 2003) ................................................24

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................11

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) .............................................................24

*Savoy v. Collectors Universe, Inc.*,
  2020 WL 4938464 (C.D. Cal. July 21, 2020) ....................................22

*Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*,
  806 F.2d 1393 (9th Cir.1986) ............................................................21

*Shaw v. Nissan North Am., Inc.*,
  220 F.Supp.3d 1046 (C.D. Cal. 2016) ...............................................23

*Shaw v. Sears*,
  2009 WL 10697953 (C.D. Cal. Nov. 16, 2009) .................................23

*Stitt v. Citibank, N.A.*,
  748 F.App'x 99 (9th Cir. 2018) .........................................................23

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .............................................................11

*Talece Inc. v. Zheng Zhang*,
  2020 WL 6205241 (N.D. Cal. Oct. 22, 2020) ...................................24

*Tate v. PG & E Corp.*,
  94 F.App'x 529 (9th Cir. 2004) .........................................................21

*Tatung Co., Ltd. v. Shu Tze Hsu*,
  217 F.Supp.3d 1138 (C.D. Cal. 2016) ...............................................20

*United States ex rel. Gough v. Eastwestproto, Inc.*,
  2018 WL 6929332 (C.D. Cal. Oct. 24, 2018) ...............................16, 17

*United States v. Mahoney*,
  *No. 8:21-cr-00183-JLS (CD. Cal. Oct. 6, 2021)* .........................14, 15

*United States v. Moore*,
  *No. 8:21-cr-00079-JLS (C.D. Cal. Mar. 29, 2021)* ......................14, 15

*United States v. Turkette*,
  452 U.S. 576 (1981)..........................................................................22

COHEN **WILLIAMS** LLP

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................24, 25

*Webster v. Omnitrition Int'l, Inc.*,
    79 F.3d 776 (9th Cir. 1996) ........................................................................10

*Zakikhan v. Hyundai Motor Co.*,
    2021 WL 4805454 (C.D. Cal. June 28, 2021) ...........................................11

**Statutes**

18 U.S.C. § 1320 ..............................................................................................25

18 U.S.C. § 1347 ..............................................................................................25

18 U.S.C. § 1961(4) ..........................................................................................22

18 U.S.C. § 1962 ........................................................................................*passim*

18 U.S.C. § 220 ..........................................................................................15, 25

29 U.S.C. § 1132 ..............................................................................................27

Cal. Bus. & Prof. Code § 17200 ......................................................................25

Cal. Ins. Code § 750 ........................................................................................25

Health & Safety Code § 11570 ........................................................................25

Health & Safety Code § 445 ............................................................................25

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................*passim*

COHEN **WILLIAMS** LLP

## I.    INTRODUCTION

Lawsuits that seek to forward a fiction must fail.  Here, Aetna conceded that its original Complaint lacked merit when it voluntarily filed the FAC after conferring with the Young Defendants under L.R. 7-3 regarding their contemplated motion to dismiss.  (ECF 40-1 ¶¶6-12.)  The FAC is no better, and this action should now be dismissed without leave to amend.  If Aetna had more facts, it would have alleged them in the FAC.  But Aetna did no such thing.  Rather, Aetna has only attempted to spin a contrived theory.  That theory – that the Young Defendants have been operating a fraudulent scheme, as opposed to legitimate addiction and substance use disorder treatment facilities – is based on inflammatory speculation and a desire to avoid paying the Young Defendants millions of dollars in pending, unpaid insurance claims.

The Young Defendants own and operate eight of the nine treatment facilities targeted in this case by Aetna.  The FAC challenges a long list of 12,131 insurance claims that Aetna paid to the Young Defendants.  Aetna asserts that the Young Defendants duped it into paying those claims by falsely representing in claim forms that the facilities' services were provided in compliance with applicable laws and medically necessary.  But the FAC does not attach or even quote any claim form, referring instead only to "standard billing forms (*i.e.*, CMS 1500 or HCFA forms)."  (ECF 39 ¶55.)  Upon scrutiny, it is clear that the boilerplate representations on the CMS 1500 form – downloadable from the CMS.gov website – are expressly limited to claims for payment from government funds.  The FAC does not allege that any of the 12,131 claims were paid with government funds.

Aetna's assertions that the Young Defendants violated applicable laws and billed for medically unnecessary services are premised on a purported massive "fraudulent scheme" in which the Young Defendants employed "body brokers" to find patients, offered patients "kickbacks," and intentionally undercut treatment, causing patients to relapse, so the Young Defendants could keep billing Aetna.  Yet Aetna relies entirely on conclusory, inapplicable, or insufficient allegations that come nowhere near supporting any facet of the alleged scheme, let alone on the sweeping scale by which Aetna seeks to unwind 12,131

COHEN WILLIAMS LLP

claims *en masse*. The FAC falls far short of meeting the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the plausibility test under *Twombly* and *Iqbal*.

Aetna's core accusations are based on allegations from three court cases that are totally unrelated to any of the 12,131 claims. Two of the cases are criminal cases against third parties alleging "body brokering" at two of the Young Defendants' eight treatment facilities. But Aetna admits that all the alleged conduct in those cases occurred ***before*** the Young Defendants acquired the two facilities and ***before*** any of the Young Defendants rendered services challenged by Aetna in this case. Similarly unavailing is the third case, a civil lawsuit brought by the City of Beverly Hills involving only one of the facilities. That case was settled and dismissed before the facility performed any services that Aetna contests in this case. Nor did the case allege any component of the "fraudulent insurance scheme" in this case. It was a nuisance case.

All of Aetna's ten claims for relief against the Young Defendants are based on the same inadequately alleged fraudulent scheme. Aetna knew the scheme could not withstand scrutiny as pled in the original Complaint. It went back to the drawing board, but has returned with nothing better. If there was more, Aetna was duty-bound to include all that it had to substantiate its audacious theory. There ***is*** nothing more. The pendency of Aetna's outrageous claims against the Young Defendants is causing immense damage to their business and should be dismissed without leave to amend.

## II.    SUMMARY OF FIRST AMENDED COMPLAINT

### A.    The Young Defendants

According to the FAC, the Young Defendants include eight entities, each owning one treatment facility. (ECF 39 ¶¶15, 20-28.) Also included are four individuals: Nathan Young, David Young, Jose Maldonado, and Marc Adler. (*Id.* ¶¶15-19.) And two other entities – 55 Silver LLC and 9 Silver LLC – were allegedly used to make "payments necessary to carry out the fraudulent operations of the Young entities." (*Id.* ¶¶29-31.)

### B.    Aetna's Claims

The FAC includes eleven claims for relief. Ten are asserted against all the Young

Defendants.  One – the second claim – is not asserted against any of them.  The crux of the claims against the Young Defendants is that they fraudulently induced Aetna to pay insurance claims by falsely representing that treatment services were provided in compliance with applicable laws and were medically necessary.  (ECF 39 ¶¶136-137.)  The FAC attempts to describe a pervasive fraudulent scheme in which the Young Defendants:

- "employed an army of 'body brokers' to find patients with prized health benefit plans and get them to enroll in their programs" (ECF 39 ¶73);

- "sought to, and did in fact, induce Aetna members to enroll in and attend their various treatment programs by offering kickbacks" (*id.* ¶82); and

- "profited from patients' enrollment in health benefit plans by billing Aetna for so called 'treatment' while, at the same time, taking steps to undercut that treatment and keep patients in their programs" (*id.* ¶8).

Aetna alleges it paid more than $38 million in fraudulent insurance claims submitted by the eight facilities owned by the Young Defendants.  (ECF 39 ¶¶124-126, 128-132.) The FAC challenges a total of 12,131 claims.  (*Id.*; ECF 39-1 to 39-3, 39-5 to 39:14.)

## III.    THE COURT SHOULD DISMISS AETNA'S FIRST CLAIM FOR RELIEF FOR FRAUD

Aetna's first claim for relief, for fraud, is based on alleged "misrepresentations to Aetna in claim forms, requests for reimbursement, enrollment forms, and medical records." (ECF 39 ¶136.)   The FAC fails to state a claim for fraud against any of the Young Defendants based on alleged misrepresentations in any of these categories.[1]

### A.    Legal Standards for Fraud Claims

The elements of fraud are: "(1) misrepresentations of material fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance and (5) resulting damage." *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 788 (9th Cir. 1996).  A "claim for fraud

---

[1] Although FAC ¶136 refers to misrepresentations in "requests for reimbursement," the FAC does not otherwise refer to any such requests.

COHEN WILLIAMS LLP

requires the alleged misrepresentations or omissions to be material." *Alternate Health USA Inc. v. Edalat*, 2021 WL 2935304, at *7 (C.D. Cal. May 19, 2021).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). To conform with Rule 9(b), "a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (cleaned up). Cases within this Circuit are legion in dismissing fraud-based claims due to group pleading. *See, e.g., Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454 at *7-8 (C.D. Cal. June 28, 2021).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (cleaned up).

**B.      Aetna Fails to Allege Fraud Based on Misrepresentations in Claim Forms**

The alleged misrepresentations "in claim forms" apparently consist of three boilerplate statements in standard forms that Aetna alleges were untrue when the Young Defendants submitted claims to Aetna – specifically, that a given treatment facility "(i) provided the services in compliance with applicable laws, regulations, and procedures, (ii) the services billed were medically necessary and reimbursable, and (iii) that the information on the claim forms was true, accurate, and that material facts were not concealed."  (ECF 39 ¶¶136-138.)  The FAC fails to a state a claim under this theory for four independent reasons – failure to: (1) identify basic information; (2) allege materiality and reasonable reliance; (3) identify which misrepresentations induced payment of which claims; and (4) meet the heightened standards for pleading a pervasive fraudulent scheme.

**1.  The FAC Fails to Identify Basic Information**

The FAC does not attach or quote the insurance claim forms or explain what exactly the Young Defendants represented or where, when, or how they represented it.  Nor does the FAC identify who made these unidentified representations.  Aetna's failure to identify "the who, what, when, where, and how of the misconduct charged" is a plain violation of Rule 9(b).  *Ebeid ex rel. U.S.*, 616 F.3d at 998 (cleaned up); *Humana, Inc. v. Biogen, Inc.*, 666 F.Supp.3d 135, 158-59 (D. Mass. 2023) (granting motion to dismiss where alleged misrepresentations were "certifications" made to insurance company that defendants "were in compliance with federal law," and although certifications were "at the very heart of the [fraud] claim," the complaint did not "state when they were made and how they were made," and did not "provide the actual language of the misrepresentations at issue").[2]

**2.  The FAC Fails to Allege Materiality and Reasonable Reliance**

Aetna does not adequately allege the materiality of the representations in the claim

---

[2] Aetna refers to "standard billing forms (*i.e.*, CMS 1500 or HCFA forms)."  (ECF 39 ¶55.) A sample CMS 1500 from CMS.gov is judicially noticeable.  (RJN Exh. 17.)  The only statements on that form like those in FAC ¶137 are limited to claims paid from government funds.  (*Id.* at 3.)  Aetna does not allege payments from government funds in this case.

COHEN WILLIAMS LLP

forms or Aetna's reasonable reliance on them. Aetna merely labels the representations as "material" without any explanation of why that is so. (*See* FAC ¶¶136, 143-144.) The lack of explanation is especially problematic given Aetna's failure to include the actual claim forms. Nor does Aetna adequately explain how it relied on these representations. The FAC alleges only that Aetna relied on the statements "because Defendants were legally obligated to submit accurate information for valid claims and to disclose material information." (FAC ¶144.) This unintelligible allegation does not explain how any such "legal obligation" of the Young Defendants equates with Aetna's purported reasonable reliance on the three boilerplate statements in paragraph 137 in paying insurance claims.

### 3. The FAC Does Not Identify Which Misrepresentations Fraudulently Induced Payment of Which Claims

Aetna provides no way to determine which of the various "misrepresentations" fraudulently induced payment of any single one of the 12,131 insurance claims. In other words, for any given insurance claim, the FAC does not state: (i) which "applicable laws, regulations, and procedures" were not followed, if any, and how; (ii) what services billed were not "medically necessary and reimbursable," if any, and (iii) what other information on the claim form was not "true" or "accurate," if any, and what "material facts" were concealed, if any. (ECF 39 ¶137.) Nor is it plausible that each of the eight treating facilities falsely made all the same "misrepresentations" that induced payment of each of the challenged claims. For these reasons alone, Aetna's fraud claim – to the extent it is based on misrepresentations in claim forms – fails to meet the specificity requirements of Rule 9(b) or the plausibility standards of *Twombly/Iqbal* and must be dismissed.

### 4. The FAC Fails to Meet the Heightened Standards for Pleading a Pervasive Fraudulent Scheme

The FAC also falls far short of the heightened standards for pleading that the Young Defendants engaged in a massive "fraudulent scheme" spanning eight facilities and 12,131 insurance claims. (ECF 39 ¶1; ECF 39 at 17:1.) According to Aetna, the Young Defendants perpetrated this scheme by (a) paying body brokers, (b) providing kickbacks

COHEN WILLIAMS LLP

to patients, (c) waiving cost-shares, (d) eviscerating services to prolong treatment and submit additional claims, and (e) violating "a host of laws and regulations." (ECF 39 ¶138.) The FAC does not meet the specificity requirements of Rule 9(b) or the plausibility standards of *Twombly/Iqbal* as to any aspect of this alleged scheme, let alone on the sweeping scale by which Aetna seeks to unwind all 12,131 claims.

### a. Body Brokers

Other than labeling "marketers" as "body brokers" and repeating the phrase "body brokers" multiple times, the FAC does nothing to support Aetna's theory that the Young Defendants "employed an army of 'body brokers' to find patients." (ECF 39 ¶73.) The FAC does not define "body broker." It does not cite any law that the Young Defendants violated in employing marketers. It does not recite the elements required to establish a violation of any law governing employment of marketers. And it does not allege a single instance in which any of the Young Defendants violated any such law.

Aetna relies on the criminal charges filed against third parties in two federal cases (*U.S. v. Moore* and *U.S. v. Mahoney*) that involve allegations of body brokering at Get Real Recovery and Healing Path Detox, two of the Young Defendants' facilities. (ECF 39 ¶¶42-43 [fn. 6], 110.) But the FAC admits that all of the conduct charged in those criminal cases occurred (i) *before* the Young Defendants acquired Get Real Recovery and Healing Path Detox (ECF 39 ¶¶23, 43, 111), and (ii) *before* any of the services covered by the insurance claims in this case were performed.[3]

If anything, the criminal charges in *Moore* and *Mahoney* undermine the allegations against the Young Defendants. The charges show that Get Real Recovery and Healing Path Detox have been subject to scrutiny by federal authorities; yet the FAC is silent on any criminal charges in the two-plus years since the Young Defendants acquired those facilities (because there are none). It is not plausible to infer that "body brokering"

---

[3] All conduct charged in *Moore* and *Mahoney* occurred in 2020. (RJN Exhs. 1, 2.) The earliest start of service date for the claims challenged by Aetna is May 9, 2021 for Healing Path Detox (ECF 39-5) and April 1, 2022 for Get Real Recovery (ECF 39-3).

COHEN WILLIAMS LLP

continued at those facilities, under new ownership, in the light of day right under the noses of law enforcement, while federal criminal charges have been pending against defendants associated with the previous owners.

Also, the Criminal Complaint in *Moore* and the Indictment in *Mahoney* include details about the alleged body brokering in those cases that are glaringly absent in the FAC. In *Moore* and *Mahoney*, the government charged the defendants in those cases with healthcare fraud for violating The Eliminating Kickbacks in Recovery Act ("EKRA"), 18 U.S.C. §220. (RJN Exhs. 1, 2.) Under EKRA, it is illegal to "knowingly and willfully" pay or offer "any remuneration . . . to induce a referral of an individual to a recovery home . . . [or] clinical treatment facility." 18 U.S.C. §220(a)(2)(A). EKRA specifies, however, that there is ***no violation*** for "a payment made by an employer to an employee or independent contractor (who has a bona fide employment or contractual relationship with such employer) for employment, if the employee's payment is not determined by or does not vary by . . . the number of individuals referred . . . [or] . . . the amount billed . . . ." 18 U.S.C. §220(b)(2)(A), (C).

The Criminal Complaint and Indictment include pages detailing how the payments to the alleged body brokers in *Moore* and *Mahoney* ran afoul of EKRA. By contrast, the FAC here includes a single conclusory statement about the payments to alleged body brokers: ". . . Treating Entity Defendants . . . pay them a set amount for each patient they enroll in their programs." (ECF 39 ¶74.) The FAC does not include a single example or any details about any such payment, including who made the payment, to whom, when, in what amount, or by what means. The FAC does not come close to meeting the heightened pleading requirements for healthcare fraud.

Attempting to gin up details, the FAC provides the initials of two supposed body brokers (K.A. and S.S.), but the facts alleged do not establish any violation of law by the Young Defendants. (ECF 39 ¶¶76, 78.) Most glaringly, the FAC does not allege that the Young Defendants paid any remuneration to either K.A. or S.S. Without a payment, there can be no violation. *See* 18 U.S.C. §220(a)(2)(A); *see, e.g., United States ex rel. Gough v.*

*Eastwestproto, Inc.*, 2018 WL 6929332, at *6 (C.D. Cal. Oct. 24, 2018) (dismissing defendant from False Claims Act action because complaint "lack[ed] any reliable indicia that [defendant] solicited or received remuneration in exchange for Medicare referrals").

Also, the FAC does not even allege that K.A. was a body broker for the Young Defendants. Rather, Aetna alleges that K.A. is a "partner" of Defendant Ani Mirzayan, the owner of Defendant Revive Premier Treatment Center, Inc. ("Revive"), which is not a Young Defendant. Aetna merely alleges, on information and belief, that K.A. "worked for some of Young's entities," but there is no allegation that any of the claims Aetna challenges in this case are for patients K.A. referred to the Young Defendants. (ECF 39 ¶76.) Instead, the FAC merely avers that K.A. used information from "Young's entities and Zealie . . . to target the patients with the best policies to enroll ***at Revive***." (*Id.* [emphasis added].)

As for S.S. – an alleged body broker for Defendant Helping Hands Rehabilitation Clinic Inc. ("Helping Hands") – the FAC describes (without attaching) a text message in which S.S. offers a "potential patient" drugs and money to enroll in treatment. Tellingly, there are no facts showing that Helping Hands approved or encouraged this conduct. (*Id.* ¶78.) There are no facts ***because*** the Young Defendants do not tolerate such conduct. Nor is there any allegation of the payment arrangement between Helping Hands and S.S., which is required to allege a violation. In short, the text from S.S. reflects an unsubstantiated single instance of alleged misconduct at one facility untethered to the Young Defendants. This lone text is insufficient to support a "body brokering" claim against the Young Defendants – let alone on a scale that plausibly supports unwinding 12,131 claims.

### b. Kickbacks

Aetna asserts that the Young Defendants offered "kickbacks" to patients in the form of living arrangements, transportation, food, employment, and drugs. (ECF 39 ¶¶6, 82-88.) Like the body brokering claim, the FAC fails to adequately allege that the Young Defendants provided illegal kickbacks to patients.

The allegations about housing, transportation, and food are highly general and conclusory. Aetna does not specify who provided any of these things, to whom, when, or

how specifically the alleged conduct violated the law. *See United States ex rel. Gough*, 2018 WL 6929332, at *10 (in dismissing False Claims Act claim because relators had "not sufficiently shown the details of a kickback scheme," court noted absence of "specific allegations as to whom these offers were made, how the recipient of the offer is connected to a defendant," "much less reliable indicia that [defendant] submitted claims for reimbursement for services provided to patients gained through the kickback scheme."). The FAC lacks any discussion of applicable law, the elements required to show a violation of law, or application of the elements to a single alleged kickback. The only example of a patient who allegedly received "housing" is B.M., but the insurance claim for B.M. was submitted by Revive, not the Young Defendants, and it was denied. (ECF 39 ¶84.)

As to the sparse allegation that the Young Defendants provided "kickbacks in the form of side employment to their patients" (ECF 39 ¶87), the FAC is entirely devoid of any analysis whatsoever supporting the assertion that any such employment amounted to an illegal kickback.

Finally, Aetna has done nothing to substantiate its inflammatory allegation that the Young Defendants offered kickbacks in the form of drugs. Aetna, once again, relies on the text message from "S.S.," but as discussed, there are no facts showing that Helping Hands approved, encouraged, or tolerated this one-off example. (ECF 39 ¶85.) The FAC also quotes snippets from the nuisance lawsuit filed by the City of Beverly Hills (the "City") against Rodeo Recovery, Nathan Young, and others. (*Id.* ¶86.) But Aetna's wholesale reliance on this suit is not a plausible basis for alleging a wide-ranging scheme in which the Young Defendants offered kickbacks in the form of drugs to induce patients to enroll at eight different treatment facilities, infecting 12,131 insurance claims.

The lawsuit, on its face, was limited to only one facility, Rodeo Recovery. (RJN Exh. 1.) The only Rodeo Recovery insurance claims that Aetna challenges here were for services that occurred years after the City filed its lawsuit and months after the case was

COHEN WILLIAMS LLP

settled and dismissed.[4]  The Beverly Hills case comes nowhere close to what Aetna makes it out to be.  The suit did ***not*** allege that drugs were offered to ***induce*** enrollment at Rodeo Recovery (*see* RJN Exh. 3), a minimum requirement of any kickback theory.  *See, e.g.,* 18 U.S.C. §220(a).  Judicially-noticeable records show that the City dismissed the suit following 18 months of settlement discussions with no activity in the case.  (RJN Exhs. 4-16.)  It is not plausible that the City would have engaged in such a long settlement process and then dismissed the case with prejudice if Rodeo Recovery was actually offering drugs to patients to induce enrollment.  (ECF 39 ¶86.)  As to the allegations in the City's lawsuit of "drug overdoses" and "daily drug use," Aetna fails to allege any facts showing that the Young Defendants were responsible for any such occurrences, which could happen at any drug addiction treatment facility, or that these occurrences are evidence of kickbacks.[5]

### c.  Cost-Shares

According to the FAC: "The members did not pay any cost-share (such as co-insurance) for this treatment."  (ECF 39 ¶89.)  That is the only allegation in the FAC about the Young Defendants' alleged fraudulent waiver of cost-shares/co-pays.  The FAC is completely devoid of any allegations of who waived any cost-shares, for whom, when, where, or how.  Aetna does not identify a single claim it paid where the co-pay was waived.  Aetna's broad assertion that waiving cost-shares is "considered fraudulent" is also unsupported.  (ECF 39 ¶89.)  EKRA specifies that there is ***no violation*** for "a waiver or

---

[4] Judicially-noticeable documents show the City filed the case on May 15, 2020 (ECF 39 ¶96), amended its complaint once on May 18, 2020 (RJN Exhs. 3, 16), and dismissed the case on May 12, 2022.  (RJN Exh. 14.)  The Rodeo Recovery insurance claims in this case were for services no earlier than September 14, 2022.  (*See* ECF 39-7 [claims for services from 9/14/2022 to 11/28/2022].)

[5] The Young Defendants request the Court take judicial notice of the City's dismissal of the suit with prejudice pursuant to a settlement agreement.  (*See* RJN.)  The agreement shows the settlement was virtually a walkaway deal.  The defendants did not admit any wrongdoing, agreeing only to (1) ensure the facility complies with the law and its license, and (2) pay to the City $10,000 "for its costs and attorney's fees incurred," a nominal amount compared to the $38 million Aetna seeks in this action.  (RJN Exh. 15.)

COHEN WILLIAMS LLP

1  discount . . . of any coinsurance or copayment by a health care benefit program if (A) the

2  waiver or discount is not routinely provided; and (B) the waiver or discount is provided in

3  good faith." 18 U.S.C. §220(b)(5). None of these factors are addressed in the FAC.[6]

### d. Actions to Prolong Treatment

5  Aetna alleges that the Young Defendants "took actions to eviscerate the effect of any

6  services . . . to prolong treatment and submit additional claims." (ECF 39 ¶138(d); *id.* ¶10

7  ["Defendants encouraged 'relapse' so a patient's programs and benefit payments could

8  start anew."]; *id.* ¶94 [same].) In support of these extraordinary accusations, the FAC relies

9  on the Beverly Hills case. (*Id.* ¶96.) As discussed, that was a nuisance case against one

10 facility; it is not a plausible basis for inferring a massive scheme across eight facilities

11 designed to intentionally harm patients in order to increase insurance claims. The City did

12 not allege that anyone encouraged "relapse" to maximize payments. (RJN Exh. 3.) Aetna's

13 remaining allegations of so-called "steps" taken to prolong treatment are conclusory, do

14 not meet the specificity requirements of Rule 9(b), and are an implausible basis for alleging

15 wholesale fraud over 12,131 claims. (ECF 39 ¶¶95, 97-100.)

### e. Violations of Laws and Regulations

17 The allegation that the Young Defendants "violated a host of laws and regulations"

18 is entirely conclusory. (ECF 39 ¶138(d).) Aetna's fraud claim does not refer to any laws

19 or regulations (not already discussed) that the Young Defendants violated. (*Id.* ¶¶1-146.)

### C. Aetna Fails to Allege Fraud Based on Misrepresentations in Medical Records

22 Aetna alleges that "many" of the Young Defendants' "services were not actually

---

[6] Aetna refers to an OIG Special Fraud Alert. (ECF 39 ¶62.) That 30-year-old Alert is inapplicable because it pertains to Medicare co-pays. (RJN Exh. 18.) The Alert, moreover, expressly states: "When providers, practitioners or suppliers forgive financial obligations *for reasons other than genuine financial hardship of the particular patient*, they *may* be unlawfully inducing that patient to purchase items or services from them." (*Id.* at 5 [emphasis added].) Aetna does not allege any facts suggesting that a co-pay waiver induced anyone in this case to enroll for treatment. Nor does Aetna address any hardships.

COHEN WILLIAMS LLP

performed as documented, were performed at far below acceptable standards of care, and/or were manipulated." (ECF 39 ¶142.) Aetna further alleges "doctored" and "scrubbed" medical records. (*Id.* ¶118.) Other than these and other conclusory assertions, the FAC does not identify any instance of the Young Defendants falsifying or doctoring records. The "when, where, and how of the misconduct charged" is completely absent. *Ebeid ex rel. United States*, 616 F.3d at 998 (cleaned up). And, once again, the dearth of concrete instances of misconduct reveals the implausibility of 12,131 fraudulent claims.

### D.  Aetna Fails to Allege "Enrollment Fraud"

As a stand-alone fraud theory, separate from the 12,131 claims, Aetna claims that 32 patients should not have been enrolled as "dependents" under an Aetna plan. (*See* ECF 39 ¶¶92, 134; 39-28 [Exhibit BB].) Even assuming these patients were wrongly enrolled, the assertion that "the Young Defendants engaged in enrollment fraud" is entirely conclusory and implausible. (*Id.* ¶90.) The FAC identifies a single "staff member" of Helping Hands who purportedly "enrolled" one patient in an Aetna plan and added himself as a dependent. (*Id.* ¶91.) The FAC does not identify any other instance in which one of the Young Defendants enrolled a patient in an Aetna plan, let alone fraudulently enrolled a patient as a dependent. Indeed, the FAC alleges that the Young Defendants were interested in the opposite – *i.e.*, finding patients with existing Aetna coverage. (*Id.* ¶75.) Aetna's stand-alone enrollment fraud claim must be dismissed.

## IV.  THE COURT SHOULD DISMISS AETNA'S FIFTH CLAIM FOR RELIEF FOR VIOLATION OF RICO

Aetna's fifth claim for relief is for violation of RICO, 18 U.S.C. §1962(c). To state a RICO claim, a plaintiff must plead that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d 1138, 1152 (C.D. Cal. 2016) (cleaned up). Aetna has failed to meet two of these elements: racketeering activity and an enterprise.

COHEN WILLIAMS LLP

**A.    Aetna Fails to Allege "Racketeering Activity"**

"Racketeering activity" includes mail fraud and wire fraud, the predicates on which Aetna relies in the FAC (ECF 39 ¶172).  *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir.1986).  "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  "Mail and wire fraud are subject to the heightened pleading standard of Rule 9(b) and must be pleaded with particularity.  In other words, a plaintiff alleging mail and wire fraud must plead the 'who, what, when, where, and how' that would suggest fraud." *Khazai v. Grover*, 2023 WL 2628610, at *5 (C.D. Cal. Feb. 2, 2023) (citations omitted).

The mail and wire fraud predicates of Aetna's RICO claim and Aetna's common law fraud claim are based on the same underlying scheme to defraud.  (*Compare* ECF 39 ¶¶172-177 [racketeering activity allegations] *with* ECF 39 ¶¶136-139 [common law fraud allegations].)  The alleged scheme consists of the purported submission of false insurance claims based on the allegations "set forth in paragraphs 73 through 134" of the FAC.  (*Id.* ¶¶138, 172.)  As discussed, the FAC fails to allege any such fraudulent scheme.  (*See*, *supra*, Part III.)  Without a fraud predicate, the RICO claim must be dismissed.  *See Tate v. PG & E Corp.*, 94 F.App'x 529, 531 (9th Cir. 2004) ("The district court properly dismissed the RICO claim on the pleadings because the predicate acts of mail fraud and wire fraud were not properly pled under the heightened pleading standards applicable to fraud claims.").

**B.    Aetna Fails to Allege an "Enterprise"**

The RICO statute, 18 U.S.C. §1962(c), requires that the defendants be employed by or associated with an "enterprise."  Two types of associations meet the definition of enterprise: "The first encompasses organizations such as corporations and partnerships, and other 'legal entities.'  The second covers 'any union or group of individuals associated

1   in fact although not a legal entity.'" *United States v. Turkette*, 452 U.S. 576, 581-82 (1981)

2   (citing 18 U.S.C. §1961(4)).  Aetna asserts that the Young Defendants participated in an

3   "associated-in-fact enterprise."  (ECF 39 ¶¶168-170.)  The assertion fails.

4        An "association-in-fact enterprise is a group of persons associated together for a

5   common purpose of engaging in a course of conduct."  *Boyle v. U.S.*, 556 U.S. 938, 946

6   (2009) (cleaned up).  "Such an enterprise is proved by evidence of an ongoing organization,

7   formal or informal, and by evidence that the various associates function as a continuing

8   unit."  *Id.* at 944-45 (cleaned up).  "An association-in-fact enterprise must have at least

9   three structural features: a purpose, relationships among those associated with the

10  enterprise, and longevity sufficient to permit these associates to pursue the enterprise's

11  purpose."  *Id.*

12       The FAC jumbles three confusing, alternative sets of purported association-in-fact

13  enterprises.  The first includes all defendants and identifies the "common purpose" as "the

14  carrying out of racketeering activity."  (ECF 39 ¶168; *see id.* ¶166 [identifying "common

15  purpose of engaging in a fraudulent scheme to deceive Aetna into paying for services that

16  they provided at a substandard level or never provided at all"].)  This formulation fails,

17  first, because it depends entirely on the "racketeering activity" element, which itself is

18  inadequately pled.  (*See*, *supra*, Part IV(A).)  Also, as the Supreme Court has made clear:

19  "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and

20  apart from the pattern of activity in which it engages."  *Turkette*, 452 U.S. at 583; *Doan v.*

21  *Singh*, 617 Fed.Appx. 684, 685 (9th Cir. 2015) (quoting same); *Savoy v. Collectors*

22  *Universe, Inc.*, 2020 WL 4938464, at *6 (C.D. Cal. July 21, 2020) (quoting same).

23       Aetna next asserts that this "enterprise has an ascertainable structure and purpose

24  beyond just the commission of racketeering activity," alleging:

25          "Zealie and Beheshti provided administrative services beyond the

26       wrongful acts set forth herein, including, upon information and belief, the

27       verification of benefits and other administrative tasks.  The individuals at the

28       treating entities ran the day-to-day operations of the facilities, and the treating

COHEN WILLIAMS LLP

1    entities scheduled patient group therapies and arranged for visits by external

2    professionals to provide services."

3    (ECF 39 ¶168.)  These allegations "merely allege that the Defendants are associated in a

4    manner directly related to their own primary business activities, which is insufficient to

5    state a claim under § 1962(c)."  *In re Toyota Motor Corp. Unintended Acceleration Mktg.,*

6    *Sales Pracs., & Prod. Liab. Litig.*, 826 F.Supp.2d 1180, 1202 (C.D. Cal. 2011); *Shaw v.*

7    *Nissan North Am., Inc.*, 220 F.Supp.3d. 1046, 1056 (C.D. Cal. 2016) (citing same); *Lomeli*

8    *v. Jackson Hewitt, Inc.*, 2018 WL 1010268, at *8 (C.D. Cal. Feb. 20, 2018).

9    The allegations regarding the purported second and third sets of association-in-fact

10   enterprises are described in FAC ¶¶169-170.  Those paragraphs merely provide a rote

11   statement of the elements for an association-in-fact enterprise.  And the law on this score

12   is clear: a "formulaic recitation of the element of a RICO enterprise is insufficient to

13   adequately plead an enterprise."  *Shaw v. Sears*, 2009 WL 10697953, at *5 (C.D. Cal. Nov.

14   16, 2009) (cleaned up).

15   At bottom, the FAC fails to plausibly allege that the defendants were "associated

16   together for a common purpose of engaging in a course of conduct."  *Boyle*, 556 U.S. at

17   946 (cleaned up).  The FAC describes nine treatment facilities operating at different

18   locations, the owners and managers of those facilities, and a billing company (Defendant

19   Zealie LLC) and its owner (Defendant Ali Beheshti).  Aetna fails to allege any plausible

20   enterprise between the Young Defendants and the ninth facility, Revive.  The FAC does

21   not allege a single communication or dealing between the Young Defendants and Revive

22   – only that some of the Young Defendants' patients were also treated at Revive.

23   As to Zealie, setting aside Aetna's unsupported fraud allegations, all that remains

24   are eight facilities engaging in routine business with a billing company.  The law in this

25   Circuit expressly holds that "RICO liability must be predicated on a relationship more

26   substantial than a routine contract between a service provider and its client."  *Gomez v.*

27   *Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015); *Stitt v. Citibank,*

28   *N.A.*, 748 F.App'x 99, 101 (9th Cir. 2018) ("The First Amended Complaint alleges only

COHEN WILLIAMS LLP

23

1   that Citi instructed its vendor, Safeguard, to perform property inspections upon request.

2   The mere existence of such a servicing contract between Citi and Safeguard does not

3   establish a common purpose under RICO."); *Neerman v. Cates*, 2022 WL 18278377, at *6

4   (C.D. Cal. Dec. 28, 2022).

5   **V.   THE COURT SHOULD DISMISS AETNA'S SIXTH CLAIM FOR RELIEF**

6   **FOR CONSPIRACY TO VIOLATION RICO**

7   The sixth claim for relief is for conspiracy to violate RICO, 18 U.S.C. §1962(d).  If

8   the Court dismisses the RICO claim, it must dismiss the RICO conspiracy claim.  *See*

9   *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 fn.8 (9th Cir. 1992).

10  **VI.  THE COURT SHOULD DISMISS AETNA'S THIRD, FOURTH, AND**

11  **SEVENTH THROUGH ELEVENTH, CLAIMS FOR RELIEF – WHICH**

12  **ALL SOUND IN FRAUD**

13  All of Aetna's remaining claims sound in fraud.  They are all based entirely on the

14  same "fraudulent scheme" underlying Aetna's common law fraud claim, and they likewise

15  fail to state a claim under Rule 9(b) and *Twombly/Iqbal*.

16  **A.   Rule 9(b) Applies to Claims Sounding in Fraud**

17  "In some cases, the plaintiff may allege a unified course of fraudulent conduct and

18  rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is

19  said to be grounded in fraud or to sound in fraud, and the pleading of that claim as a whole

20  must satisfy the particularity requirement of Rule 9(b)."  *Vess v. Ciba-Geigy Corp. USA*,

21  317 F.3d 1097, 1103-04 (9th Cir. 2003) (cleaned up); *see Talece Inc. v. Zheng Zhang*, 2020

22  WL 6205241, at *3 (N.D. Cal. Oct. 22, 2020) ("The applicability of Rule 9(b) hinges not

23  on the elements of the claim but rather on the nature of the allegations themselves . . . .").

24  **B.   The Court Should Dismiss Aetna's Third Claim for Relief**

25  Aetna's third claim for relief is for negligent misrepresentation.  (ECF 39 ¶¶152-

26  156.)  That claim is based on the same allegations as Aetna's fraud claim, and must be

27  dismissed for the same reasons.  *See, e.g., Neilson v. Union Bank of Cal.*, 290 F.Supp.2d

28  1101, 1141 (C.D. Cal. 2003) (elements of negligent misrepresentation are same as those

COHEN WILLIAMS LLP

1    for fraud, with exception that defendant need not actually know representation is false);

2    *Glenn Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999)

3    ("Claims for fraud and negligent misrepresentation must meet the heightened pleading

4    requirements of Rule 9(b).").

5    **C.    The Court Should Dismiss Aetna's Fourth Claim for Relief**

6    The fourth claim for relief is for intentional interference with economic/contractual

7    relationship.  Aetna alleges that the Young Defendants "intentionally acted to interfere

8    with" contracts between Aetna and its members "by providing financial and other

9    consideration to Aetna's members to induce them to treat with Defendants."  (ECF 39

10   ¶159.)  This claim relies entirely on facets of the "fraudulent conduct" at the heart of

11   Aetna's fraud claim – *i.e.*, that the Young Defendants provided kickbacks to patients and

12   waived cost-shares – and must be dismissed for the same reasons.  *Vess*, 317 F.3d at 1103-

13   04; *Boisvert v. Lohan*, 2012 WL 12920196, at *9 (N.D. Cal. Dec. 12, 2012), *aff'd*, 617

14   F.App'x 810 (9th Cir. 2015) (dismissing intentional interference with contractual relations

15   claim grounded in fraud for failure to satisfy particularity requirement of Rule 9(b)).

16   **D.    The Court Should Dismiss Aetna's Seventh Claim for Relief**

17   Aetna's seventh claim is for violation of the Unfair Competition Law, which requires

18   a plaintiff to plead and prove an "unlawful, unfair or fraudulent business act or practice."

19   Cal. Bus. & Prof. Code §17200.  Aetna relies on the "unlawful" and "fraudulent" prongs

20   of §17200.  The FAC fails to state a claim under either theory.

21   Aetna baldly asserts that the Young Defendants' "business acts and practices are

22   unlawful because they violate the following statutes: (i) The Anti-Kickback Statute, 18

23   U.S.C. § 1320 [sic]; (ii) The Eliminating Kickbacks in Recovery Act, 18 U.S.C. § 220; (iii)

24   the Health Care Fraud Statute, 18 U.S.C. § 1347; (iv) RICO, 18 U.S.C. § 1962(c); (v)

25   California's Insurance Anti-Kickback Law, Cal. Ins. Code §§ 750 *et seq.*, (vi) California's

26   Anti-Referral Law, Health & Safety Code § 445, and (vii) California's Uniform Controlled

27   Substances Act, Health & Safety Code § 11570."  (ECF 39 ¶185.)  Other than the RICO

28   claim, which fails, there is no discussion whatsoever about the Young Defendants' alleged

COHEN WILLIAMS LLP

1  violation of these statutes.  Such a conclusory allegation is insufficient to state a claim,

2  particularly for fraud statutes.

3  Aetna also refers to "unfair fraudulent business practices," but the description of

4  those practices only involves the alleged "fraudulent scheme(s) and conduct in the form of

5  enrollment fraud, body brokering, unlawful kickbacks, purposefully prolonging and

6  undercutting the effects of any treatment that was given, and the submission of claims

7  infected by such conduct."  (ECF 39 ¶186.)  As discussed in connection with Aetna's first

8  claim for relief, the FAC fails to state a claim based on any of these allegations.

9  **E.    The Court Should Dismiss Aetna's Eighth Claim for Relief**

10  Aetna's eighth claim is for money had and received.  (ECF 39 ¶¶189-194.)  This

11  claim is based on the same allegations on which Aetna bases its fraud claim, and must be

12  dismissed for the same reasons.  *See, e.g., Boulton v. Am. Transfer Servs., Inc.*, 2015 WL

13  2097807, at *3 (S.D. Cal. May 5, 2015) (because plaintiff failed to properly allege fraud

14  claim, same conclusion applied to claim for money had and received "based on the same

15  course of fraudulent conduct"); *Great Am. Ins. Co. v. Mowforth*, 2020 WL 12216543, at

16  *2-3 (N.D. Cal. Dec. 1, 2020) (same).

17  **F.    The Court Should Dismiss Aetna's Ninth Claim for Relief**

18  Aetna's ninth claim is for unjust enrichment/quantum meruit/restitution.  (ECF 39

19  ¶¶195-200.)  This claim is based on the same allegations on which Aetna bases its fraud

20  claim, and must be dismissed for the same reasons.  *See, e.g., Great Am. Ins. Co.*, 2020

21  WL 12216543, at *2-3 (dismissing unjust enrichment claim that relied "on the same

22  allegedly fraudulent course of conduct" for failure to meet "heightened pleading standard

23  of Rule 9(b)"); *Maksoud v. Guelton*, 2017 WL 2505887, at *6 (S.D. Cal. June 9, 2017)

24  (noting that "elements of a restitution claim are identical to those of an unjust enrichment

25  claim" and dismissing restitution claim "grounded in fraud" for failure "to plead the facts

26  with sufficient particularity").

27  **G.    The Court Should Dismiss Aetna's Tenth and Eleventh Claims for Relief**

28  The tenth and eleventh claims are for restitution and injunction under ERISA, 29

COHEN **WILLIAMS** LLP

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

U.S.C. §1132(a)(3). Aetna does not refer to any basis for either claim other than the Young Defendants having "caused Aetna to wrongfully pay on behalf of the ERISA plans" and having engaged in "the misconduct alleged herein." (ECF 39 ¶¶205, 212.) The only wrongful conduct and misconduct alleged in the FAC is the purported fraudulent scheme for which Aetna has failed to meet the requirements of Rule 9(b) and *Twombly/Iqbal*. Accordingly, the ERISA claims must be dismissed for the same reason.

## VII.    CONCLUSION

For the foregoing reasons, the Young Defendants respectfully submit that the Court should dismiss all claims against them without leave to amend.


Dated:  March 26, 2024                    **COHEN WILLIAMS LLP**



                                          By:   _____/s/ Marc S. Williams_____
                                                Marc S. Williams
                                                Reuven L. Cohen
                                                Kathleen M. Erskine
                                                Joseph E. Saei
                                                Attorneys for Defendants Nathan Young,
                                                David Young, Get Real Recovery LLC,
                                                Healing Path Detox LLC, Ocean Valley
                                                Behavioral Health, LLC, Rodeo Recovery
                                                LLC, Sunset Rehab LLC, Natural Rest House,
                                                Inc., 55 Silver LLC, and 9 Silver LLC

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Defendants Nathan Young, David Young, Get Real Recovery LLC, Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., 55 Silver LLC, and 9 Silver LLC, certifies that this brief contains 6,979 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 26, 2024              **COHEN WILLIAMS LLP**

By:    ___/s/ Marc S. Williams___
              Marc S. Williams
              Reuven L. Cohen
              Kathleen M. Erskine
              Joseph E. Saei
              Attorneys for Defendants Nathan Young,
              David Young, Get Real Recovery LLC,
              Healing Path Detox LLC, Ocean Valley
              Behavioral Health, LLC, Rodeo Recovery
              LLC, Sunset Rehab LLC, Natural Rest House,
              Inc., 55 Silver LLC, and 9 Silver LLC

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT