EXHIBIT "3"

Electronically FILED by Superior Court of California, County of Los Angeles on 05/18/2020 04:49 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal,Deputy Clerk

Case 2:23-cv-09654-MCS-JPR     Document 44-7     Filed 03/26/24     Page 2 of 33   Page
ID #:1386

1  William Litvak, Esq. (SBN 90533)
2  Caroline Castillo, Esq. (SBN 236987)
   DAPEER, ROSENBLIT & LITVAK, LLP
3  11500 W. Olympic Blvd., Suite 550
   Los Angeles, CA  90064
4  Telephone: (310) 477-5575
   Facsimile: (310) 477-7090
5
6  Attorneys/City Prosecutors for Plaintiff,
   CITY OF BEVERLY HILLS
7
                            **EXEMPT FROM FILING FEE – GOV. CODE  § 6103**
8                    **VERIFIED PURSUANT TO CAL. CODE CIV. PROC. § 446(a)**
9
                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10          **COUNTY OF LOS ANGELES – WEST DISTRICT COURTHOUSE**

11  CITY OF BEVERLY HILLS, a general law          )  Case No. 20SMCV00704
    city,                                         )
12                                                )
                                                  )
13                    Plaintiff,                  )  **FIRST AMENDED COMPLAINT FOR**
                                                  )  **INJUNCTIVE AND OTHER**
14  vs.                                           )  **EQUITABLE RELIEF:**
                                                  )
15  RODEO RECOVERY, LLC, a California             )  **1.  VIOLATION OF THE UNIFORM**
16  limited liability company; RODEO DRIVE        )      **CONTROLLED SUBSTANCES**
    RECOVERY, LLC, a California limited           )      **ACT - ABATEMENT (Cal. Health**
17  liability company; NATHAN SAMUEL              )      **and Safety Code § 11570 *et seq.*);**
    YOUNG, a/k/a PABLO GOMEZ, an                  )
18  individual; JOANNE GORBY, individually        )  **2.  PUBLIC NUISANCE;**
    and as trustee of the JOANNE GORBY            )
19  FAMILY TRUST; and DOES 1-50, inclusive,       )  **3.  MUNICIPAL CODE**
                                                  )      **VIOLATIONS;**
20                    Defendants.                 )
                                                  )
21                                                )  **4.  UNFAIR BUSINESS PRACTICES:**
                                                  )
22                                                )  **5.  DECLARATORY AND**
                                                  )      **INJUNCTIVE RELIEF**
23                                                )
                                                  )
24  ─────────────────────────────────────────────)
25
26
27
28

Plaintiff, the CITY OF BEVERLY HILLS ("City") alleges as follows:

**PRELIMINARY ALLEGATIONS**

1.      The City has filed this complaint for the purpose of abating a public nuisance on that certain real property located at 240 South Rodeo Drive, in the City of Beverly Hills, 90212, County of Los Angeles, California (hereafter the "Subject Property"). The Subject Property is further identified by Assessor's Parcel Number 4328-031-024 and more particularly described as:

> LOT 128 OF TRACT NO. 7710, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83, PAGE(S) 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
>
> EXCEPT THEREFROM ALL OIL, GAS, MINERALS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN THE DEED RECORDED MARCH 7, 1986 AS INSTRUMENT NO. 86-295716, OFFICIAL RECORDS.

2.      The City is and at all relevant times has been organized and existing under the laws of the State of California, located entirely within the County of Los Angeles, California. This action is brought pursuant to Code of Civil Procedure § 731, and as further set forth herein.

3.      The City is informed and believes and based thereon alleges that at all times relevant hereto, Defendant RODEO RECOVERY, LLC was and is a California limited liability company having or claiming to have an interest in the Subject Property, the nature of that interest being that of owner, lessor, lessee, tenant, licensee, permittee, sublessor, sublessee, agent, trust and/or trustee.

4.      The City is informed and believes and thereon alleges that at all times relevant hereto, Defendant RODEO DRIVE RECOVERY, LLC was and is a California limited liability company having or claiming to have an interest in the Subject Property, the nature of that interest being that of owner, lessor, lessee, tenant, licensee, permittee, sublessor, sublessee, agent, trust and/or trustee.

5.      Plaintiff is informed and believes and based thereon alleges that at all times relevant hereto, Defendant NATHAN SAMUEL YOUNG, a/k/a PABLO GOMEZ (hereinafter "Young") was an individual over the age of eighteen and a resident of the County of Los Angeles, California.  The City is further informed and believes and based thereon alleges that at all times relevant hereto, Young has, had or claims to have title, rights, or an interest in the Subject Property, the nature of that interest being that of owner, lessor, lessee, tenant, licensee, permittee, sublessor, sublessee, agent, trustor and/or trustee.  The City is further informed and believes and based thereon alleges that Young resides at the Subject Property.

6.      Plaintiff is informed and believes and based thereon alleges that at all times relevant hereto, Defendant JOANNE GORBY (hereinafter "Gorby"), individually and as trustee of the JOANNE GORBY FAMILY TRUST, was and is an individual over the age of eighteen and a resident of the County of Los Angeles, California.  The City is further informed and believes and based thereon alleges that at all times relevant hereto, Gorby individually and/or as trustee, has had or claims to have title, rights, or an interest in the Subject Property, the nature of that interest being that of owner, lessor, lessee, tenant, licensee, permittee, sublessor, sublessee, agent, trust and/or trustee.

7.      The City is informed and believes and based thereon alleges that Young obtained possession of the Subject Property with the permission and consent of Gorby in February 2020 and remains in possession to the present.

8.      The true names and capacities of Defendants sued herein as DOES 1-50, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to Code of Civil Procedure § 474. When the true names and capacities of said fictitiously named Defendants have been ascertained, Plaintiff will ask leave of the Court to amend this Complaint to insert in lieu of such fictitious names the true names and capacities of said Defendants.  The Plaintiff is informed and believes and based thereon alleges that DOES 1-50, and each of them, were in some manner responsible for the acts alleged herein and for the maintenance of the unlawful conditions at the Subject Property, and/or have or claim to have title, rights or an interest in the Subject Property.

1    9.    Plaintiff is informed and believes and based thereon alleges that at all times

2    mentioned herein, Defendants named in the caption of this complaint, which is incorporated

3    herein by reference, and each of them, were the agents, principals, partners, associates, joint

4    venturers, employees and/or conspirators of each of the remaining Defendants; that the

5    Defendants, and each of them, were at all times acting within the course, purpose and scope of

6    said agency, partnership, association, joint venture, employment and/or conspiracy, and that

7    Defendants, and each of them, were acting with the authorization, permission, and/or consent of

8    the remaining Defendants.

9    **FACTUAL BACKGROUND**

10   **Self-Described "Sober Living," Rehabilitation Or Recovery Facilities**

11   **Often Serve As A Haven For Illegal Drug Distribution, Drug Abuse,**

12   **Insurance Fraud And Other Criminal Conduct**

13   10.    Assisting people struggling with addiction is a laudable endeavor.  And in

14   Southern California, there is an overwhelming need for such services given the relative ease with

15   which opioids, particularly heroin and fentanyl, can be obtained.  Many people who seek to reside

16   at facilities providing addiction services unfortunately do not do so out of any sincere desire to be

17   free of addiction.  They are often compelled to do so by others, whether they be family members,

18   employers, judges or administrative agencies.  The pool of clients for these facilities is vast and

19   the availability of funds to pay for services from families and insurance companies has created a

20   lucrative opportunity for those that are willing to break the law.

21   11.    Recognizing there is limited and often poor regulation of these types of businesses

22   and the vast pools of insurance and private wealth available to pay for services, operators of these

23   facilities often rent properties from landlords who are happy to look the other way and collect

24   their rents, often at inflated levels.  As in this case, these facilities are usually located in

25   residential areas of well-known, highly sought-after cities, and operators such as Defendants

26   entice people from other states to reside at their facilities based on the promise of a high-end,

27   "easy living" experience.  This type of client procurement has a name: drug rehab tourism.

28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

12.     What these clients find when they arrive is far different than what is advertised or anticipated.  Conditions include dilapidated structures, illegal construction, and poor-quality furnishings.  In this case, some occupants were actually illegally housed in the garage at the Subject Property.  And, as more particularly described below, clients were also crowded into the facility (known as "stacking") to increase the revenue generated and were placed at risk through Defendants' maintenance of unlawful and unsafe conditions such as non-functional safety sprinklers, and missing or absent carbon monoxide and smoke detectors.

13.     Operators of these illicit facilities often exploit family members and insurance companies by charging for services not provided in the proper manner or the proper setting, or which are billed but never provided.  Monitoring for drugs is overtly claimed but in reality there is no enforcement of any limitation on drug use.  This is because the occupants would leave if they were truly prevented from using the drugs of their choice.  By allowing drug use or looking the other way, the operators feed the circuity of the clients' addiction(s), guaranteeing that they never get sober; or, if the clients do, that they relapse.  Often, when the insurance or other source of funds is exhausted, a fraudulent "clean" drug test result is presented.  The client subsequently takes another test a short time thereafter that reflects drug use and the cycle starts again.  In fact, it is not uncommon for illicit drugs to be provided to the client by the operators of the facilities or their employees themselves.  They also permit other clients to sell the illegal drugs to co-residents and those at other facilities, the results of which include death or injury by overdose, suicide, violence among or upon clients, and increased criminal activity around the facility.

14.     Other methods are used by these illicit operators to make even more money.  These include recruiting occupants to live at the premises "rent free."   But the operators profit well from these arrangements.  The conditions of occupancy require clients to assign any available insurance to pay for housing and other services at the facilities.  The operators also take the clients for services to third party providers who then bill for those services and pay a portion of the monies they receive to the operators.  For those clients that do not have insurance or another source of funds, operators apply for new coverage using false information and then bill these new carriers for their purported services.  Operators also traffic in "clean" urine to give the appearance

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

1    that their "clients" are not using drugs.   Other examples of the cooperation among and between

2    operators is found in "lead selling," "lead buying," and other forms of patient brokering.  Of

3    course, when the money runs out, the clients are left to fend for themselves and still burdened by

4    their addictions.

5        15.    State regulators have attempted to stem the proliferation of these illicit businesses

6    but simply do not have the resources to adequately police them.  And, due to the ease of

7    establishing a business, even if a program shutters it can spring up almost anywhere doing the

8    same things in the same manner and in the same networks.

9        16.    The clients, whether they legitimately want to be sober or those just going through

10   the appearance of doing so to satisfy legal or third-party requirements, are vulnerable to

11   manipulation and abuse.  They often have no resources under their own control and are

12   dependent upon others for room and board.

13   **The Illegal Drug Rehab Facility Operated At The Subject Property Is A Haven For Drug**

14   **Abuse And Other Criminal Conduct And Constitutes An Illegal Boarding House**

15       17.    Plaintiff is informed and believes and based thereon alleges that the Subject

16   Property consists of approximately 7,012 square feet that has been improved with a single-family

17   residence of approximately 3,547 square feet and a detached garage. The Subject Property is

18   located in the R-1.5X (residential) zone within the City.  The Subject Property has been the

19   source of continuing neighbor complaints and calls for emergency services to police and

20   paramedics and bears all of the hallmarks of the above-described illicit "sober living," "rehab" or

21   "detox" facilities.

22       18.    The City is informed and believes and based thereon alleges that since February

23   2020, conditions existing at the property have resulted in excessive City of Beverly Hills Police

24   Department ("BHPD") calls for service and responses to the Subject Property or in connection

25   with the Subject Property for illegal narcotics, armed robbery, vandalism, loud verbal altercation

26   and marijuana use in the alley adjacent to the Subject Property. Police Department responses

27   include, but are not limited to:

28

6

a.     On February 15, 2020, police arrested a resident of the Subject Property when the resident was found in possession of multiple vials of anabolic steroids (schedule 3 illegal drug under Health & Safety Code section 11056(f)) and numerous used and unused syringes in his car. The suspect also had outstanding warrants for possession of dangerous drugs. During the incident, police learned that the suspect was a heroin user, recently began living at the Subject Property, and used the steroids to help him counter the negative effects from the heroin.  Police further learned that the suspect had last used heroin a week prior.

b.     On March 21, 2020, police responded to a reported  armed robbery at the Subject Property. A man claiming to be a member of "Hell's Angels" persuaded another resident to bring Young to the back gate of the Subject Property and threatened him at knife point, demanding payment of $500. The man demanded payment in regards to a woman both men knew and the women's involvement with drugs, i.e. a drug debt. When Young was unable to pay the woman's debt, the resident gave the suspect a portion of the money. The suspect then left with the other resident but threatened to return if Young did not get the rest of the money.

c.     On March 25, 2020, police made contact with a resident of the Subject Property who had an outstanding warrant out of Indiana for a probation violation. The suspect admitted to being on probation for "DUI or hit and run." During a consensual search of his person, a stun gun was located in the suspect's front jacket pocket. During the incident, police learned that the suspect was a recovering heroin addict who had been living at the Subject Property for a few weeks. The suspect admitted that he chose to move to the Subject Property because he is allowed to consume alcohol and smoke marijuana there, which was not allowed at his prior sober living house.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

d.   On April 11, 2020, emergency personnel responded to the Subject Property in response to a call about a possible overdose or seizure. Paramedics attended to and transported a patient to the hospital.

e.   On May 11, 2020, police and emergency personnel responded to the Subject Property in response to a call about another overdose. Paramedics attended to and transported the patient to the hospital.

f.   On May 12, 2020, police arrested an individual for possession of heroin and drug paraphernalia. During the incident, police learned that the individual had recently left the Subject Property, where she was visiting friends (residents of the Subject Property). Police further found 20 pieces of foil containing heroin and two 4-inch long straws with the residue of the same heroin substance on the individual's person, which appeared to be used for the purpose of ingestion.

g.   On May 13, 2020, police received multiple complaints from neighbors that disturbances and loud verbal altercations were occurring in front of the Subject Property. On the same night, police and emergency personnel responded to another call from the Subject Property regarding an overdose.

h.   On May 14, 2020, Police responded to a call for service to assist a resident of the Subject Property in retrieving some property that he had left in the residence thereon. During the incident, police learned from two residents that the Subject Property is operating as a drug rehabilitation center.  These residents reported, however, that they witnessed daily drug use within the premises and referred to the Subject Property as a "flop house." One resident indicated that his expenses are paid completely through this insurance company and he described the house as a place to crash and smoke fentanyl.  The resident further advised that residents of the Subject Property are provided with drugs by Young (through dealers),

1   including black tar heroin and methamphetamine at significantly reduced

2   prices.  Police also learned that 10-15 people live in the Subject Property.

3   At any given time, there are multiple people sleeping in each room and

4   the garage and living rooms are both used as sleeping quarters with

5   mattresses on the floor.

6   19.    Based on these numerous police responses and instances of police involvement,

7   the City is informed and believes and based thereon alleges that Defendants have permitted

8   controlled substances to be used and/or distributed at and about the Subject Property such that it

9   constitutes a "drug house."

10   20.    The City is informed and believes and based thereon alleges that each "client" at

11   the Subject Property provides insurance to secure a "bed" and submits to urine drug tests about

12   three times a week.  The City is further informed and believes and based thereon alleges that a

13   doctor visits and attends to the clients at the Subject Property.

14   21.    Any facility that provides alcoholism or drug abuse recovery, treatment, or

15   detoxification services must obtain a license from the California Department of Alcohol and Drug

16   Programs. Facilities licensed by the State must comply with the requirements prescribed by state

17   law.  The City is informed and believes and based thereon alleges, however, that Defendants are

18   operating an Alcoholism and or Drug Abuse Recovery or Treatment Facility (hereinafter

19   "Treatment Facility") as defined Health & Safety Code section 11834.02 et seq., at the Subject

20   Property, including detoxification, recovery and treatment services, without the required state

21   licenses and in violation of the City's municipal code.[1]  In fact, Young has admitted that he has no

22   state or other license to operate.

23   22.    In addition to Defendants' unlawful operation of a treatment facility, the City has

24   observed numerous additional unlawful uses and conditions on many of the numerous occasions

25

26   [1] The City is informed and believes and based thereon alleges that in February 2020, Young
27   obtained a National Provider Identifier ("hereinafter "NPI") number. The NPI is an identification
     number for covered health care providers and is used in financial transactions in connection with
28   health care services and billing to insurers.  It does not constitute a license of any kind.

1    the City has been required to respond to a reported crime or health crisis at the Subject Property.

2    To wit, City personnel observed two beds and a mattress on the floor of the garage, being used by

3    occupants/residents for living and sleeping, and a dry eraser board with a list of 11 "clients" and

4    reference to each individual treatment program.

5          23.    The City is further informed and believes and based thereon alleges that

6    Defendants are permitting or allowing these 11 "clients," among others, to use and/or reside at the

7    Subject Property without any rental agreement, lease, or requirement that any of them remain for

8    any specific length of time.  In addition to the illegality of their "rehab" operation, the Subject

9    Property thus constitutes an illegal boarding house for revolving transient and/or short-term stays

10   to lodge individuals for profit, for as long as such individuals will pay and/or provide billable

11   insurance plans.  These continual and regular transient uses of the Subject Property further exceed

12   the permitted two such uses each calendar year and violate the City's laws regarding lodging for

13   periods of less than 30 consecutive days.

14         **The City Attempts To Obtain Defendants' Voluntary Abatement Of The**

15         **Aforementioned Unlawful Uses And Conditions**

16         24.    The City has repeatedly endeavored to obtain Defendants' voluntary compliance

17   with state and local law, all to no avail.  On March 4, 2020, the City issued a notice to Defendants

18   regarding the fact that they were engaged in business activities at the Subject Property without

19   first obtaining the required licenses and/or permits from requisite state authorities and City

20   departments. Defendants were further advised of the wrongful actions and/or conduct of their

21   residents and guests, and requested to take immediate action to cease their unlawful conduct, use

22   and maintenance of the Subject Property.  Unfortunately, Defendants failed and/or refused to

23   comply with the City's directives.

24         25.    On April 9, 2020, the City issued a follow-up notice to Defendants in reference to

25   the ongoing disturbances, armed robbery, vandalism, and loud verbal altercations at the Subject

26   Property. Defendants were further advised of the City's laws pertaining to transient uses of

27   residential property and ordered to refrain from such illegal uses.  Again, however, Defendants

28   failed and/or refused to comply with the City's directives.

26.     On May 14, 2020, a City Fire Inspector and other City personnel attempted to perform a fire safety inspection at the Subject Property.  When they requested permission to enter the residence at the Subject Property, an individual who identified himself as the "assistant manager" denied access.  The following day, however, City Fire inspector(s) and other City personnel were provided consent to inspect the Subject Property, where they observed the numerous violations of state and local law, including but not limited to: (1) the model of sprinkler head for the interior sprinklers had been recalled; (2) many of the sprinkler heads had been painted over and were not functioning; (3) the sprinkler system was not monitored by an alarm company; (4) there was an absence of functioning enunciator panels; (5) there were no carbon monoxide detectors; and, (5) there was faulty, exposed wiring at the Subject Property.

27.     The City is informed and believes and based thereon alleges that Defendants will continue to maintain the unlawful conditions on the Subject Property, as described herein, unless the Court enjoins them from doing so.  Absent the relief requested herein, the City and its residents will be irreparably injured and damaged in that Defendants' continued maintenance of unlawful conditions at the Subject Property constitutes a public nuisance and threatens the public health, safety, and general welfare.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE UNIFORM CONTROLLED SUBSTANCES ACT – ABATEMENT**

**(Health & Safety Code § 11570, et seq.)**

**(Against All Defendants)**

28.     The City hereby incorporates by reference paragraphs 1 through 27, inclusive of this Complaint as though fully set forth herein.

29.     Heroin, fentanyl and methamphetamine are controlled substances as defined by the Uniform Controlled Substances Act (California Health & Safety Code §§ 11007, 11054, 11570.)

30.     Since at least February 2020, Defendants have permitted controlled substances to be used and/or distributed at or near the Subject Property. Such conduct constitutes a nuisance as a matter of law pursuant to Cal. Health & Safety Code section 11570.

31.    California Health and Safety Code § 11571 authorizes the City to seek injunctive relief to enjoin activities and or conditions constituting a nuisance under the Uniform Controlled Substances Act.

32.    The City has no adequate remedy other than the equitable relief sought herein.

33.    Unless enjoined by order of this Court, Defendants' illegal use of the Subject Property, which constitutes a narcotics nuisance, will continue or recur in a manner that violates the Beverly Hills Municipal Code and the California Health and Safety Code.

34.    Pursuant to California Health & Safety Code section 11581, the City is further entitled and requests that the Court close the Subject Property for one year, direct that all fixtures and other moveable property be removed from the Subject Property and sold, and that the Court impose civil penalties of $25,000.00 against each Defendant to prevent Defendants from continuing to maintain a nuisance at the Subject Property.

35.    As a result of Defendants' illegal use and maintenance of the Subject Property as described herein, and in accordance with the above-cited authority, the City is entitled to a judgment temporarily, preliminarily and permanently enjoining the Defendants, and each of them, from the following:

    a.    Permitting or allowing to exist the unlawful, selling, serving, storing, using, keeping or giving away of any controlled substance, including but not limited to heroin, fentanyl or methamphetamine, at the Subject Property or at any other real property within the City under Defendants' possession or control;

    b.    Using, permitting or allowing the Subject Property to be used as a Treatment Facility without the licensure required by Health & Safety Code section 11834.02 et seq.;

    c.    Facilitating, permitting, and/or providing medical services at the Subject Property or at any other real property within the City under Defendants' possession or control without requisite state and/or local licensure;

d.  Requiring, accepting, collecting, and/or depositing any proceeds or funds obtained from any and all health insurance providers, for any and all services provided at the Subject Property;

e.  Permitting, maintaining or allowing to exist vandalism, loud verbal altercation, or disturbance at the Subject Property;

f.  Permitting or allowing to exist the use of drugs, including but not limited to marijuana, in the alley adjacent to the Subject Property;

g.  Facilitating, permitting, allowing and/or maintaining improper transient and prohibited short-term, single-family transient use(s) of the Subject Property, including but not limited to using the Subject Property as an unlawful boarding house;

h.  Using, permitting, or allowing the garage at the Subject Property to be used for living, sleeping, cooking, dining and/or other habitation purposes;

i.  Using, operating or maintaining the Subject Property, or any property in the City in their possession or control, for the operation of any business for which all requisite permit(s) and/or license(s) have not been procured;

j.  Operating, using, maintaining, or permitting the use of the Subject Property, or any other real property within the City under Defendants' possession or control, in a manner which violates the BHMC, the Uniform Controlled Substances Act, and/or any other law;

k.  Maintaining any municipal code and state law violations described at the Subject Property, or any other real property within the City under Defendants' possession or control;

l.  Maintaining a public nuisance at the Subject Property, or at any other real property within the City under Defendants' possession and control; and,

m.  Such further orders as are appropriate.

36.     As a result of the illegal use and conditions at the Subject Property, as described herein, the City is further entitled to a judgment temporarily, preliminarily and permanently ordering the Defendants, and each of them, to perform certain corrective and/or preventive actions, including, but not limited to the following:

a.      Cease and desist the use, occupancy and maintenance of and/or permitting the use, occupancy and maintenance of the Subject Property for the storage, sale, purchase, distribution, use and/or trade of any controlled substance, including but not limited to heroin, fentanyl or methamphetamine;

b.      Terminate the operation of the illegal drug rehabilitation facility on the Subject Property and any and all activities related to said operation, cause all occupants to vacate the Subject Property, and relocate said occupants to appropriate legal facilities;

c.      Cease and desist any and all improper transient and prohibited short-term, single-family transient use(s) at the Subject Property, including but not limited to using the Subject Property as a unlawful boarding house;

d.      Cease and desist any and all medical services at the Subject Property without requisite state and/or local licensure;

e.      Cease and desist collecting, and/or depositing any proceeds or funds obtained from any and all health insurance providers, for any and all services provided at the Subject Property;

f.      Terminate the use of the garage for living, sleeping, cooking, dining and/or other habitation purposes;

g.      Bring the Subject Property into full compliance with all laws of the City in accordance with the BHMC, as provided herein.

h.      Notify, in writing, any prospective purchaser, lessee, agent, or other successor in interest of the existence of the injunction and of its application to successors in interest, prior to entering into any agreement

14

to sell or lease the Subject Property, as provided in Health and Safety Code §11573(b);

i.    Permit appropriate officials of, or on behalf of, the City of Beverly Hills (including but not limited to Peace Officer, Building Inspectors and Code Enforcement Inspectors) to enter onto the Subject Property, or any property in the City in their possession or control, at any time between the hours of 8:00 a.m. and 6:00 p.m., without notice, for the purpose of conducting inspections of the premises to ensure compliance with the terms of said injunctions and that said inspections be permitted without a warrant;

j.    Provide a minimum of thirty (30) days' notice to the City, through counsel, and to this court of any new property in the City to which Defendants obtain possession and control during the pendency of this action;

k.    Continuously maintain the Subject Property in compliance with the BHMC and free from conditions and activities that constitute violations and a public nuisance under the BHMC, and California Health & Safety Code; and,

l.    Such further orders as are appropriate.

### SECOND CAUSE OF ACTION

### MAINTAINING A PUBLIC NUISANCE

### (Against All Defendants)

37.    The City hereby incorporates by reference paragraphs 1 through 36, inclusive of this Complaint as though fully set forth herein.

38.    California Government Code section 38771 through 38773.5 expressly authorize cities to declare what constitutes a nuisance.

39.    BHMC section 1-3-103 provides that "any condition caused or permitted to exist in violation of any provision of this code shall be deemed a public nuisance..." In turn, BHMC

1  section 1-3-104 provides that "[w]henever any act or omission is prohibited by any provision of

2  this code, such prohibition shall be deemed also to prohibit the causing, permitting, aiding,

3  abetting, suffering, or concealing of such act or omission…"

4      40.    BHMC section 10-3-205 declares "any use, occupancy, building, or structure

5  maintained contrary to the provisions of the . . . [BHMC zoning regulations] shall constitute a

6  public nuisance."

7      41.    BHMC section 10-3-203 provides that "[n]o person shall use or occupy any

8  premises or building, or any portion thereof, for any use other than is permitted by" the zoning

9  regulations "in the zone in which such premises or building is located."

10     42.    BHMC section 10-3-701 specifies the uses permitted in the R-1.5X zone.

11     43.    The City is informed and believes and based thereon alleges that Defendants use

12 and operations, and/or permitting the use and or operations of the Subject Property are a nuisance

13 and in violation of the BHMC. These violations include, but are not limited to:

14          a.    Using and/or permitting the use of the Subject Property as a Treatment

15              Facility without the licensure required by Health & Safety Code section

16              11834.02 et seq.;

17          b.    Using and/or permitting the use of the Subject Property as a "drug house"

18              in violation of the California Health & Safety Code;

19          c.    Improper transient and prohibited short-term stay use of the Subject

20              Property, in violation of BHMC §§ 10-3-203, 10-1-100, 10-3-100, 10-3-

21              701, 10-3-4301, and 10-3-4302B;

22          d.    Using and/or permitting the use of Subject Property as a boarding house

23              with transient occupancies in excess of those allowed by the BHMC;

24          e.    Improper occupancy of garage for living, sleeping, cooking and/or dining

25              purposes, in violation of BHMC §§ 10-3-203 and 1001.14 of the Uniform

26              Housing Code as adopted by the BHMC section 9-1-901;

27

28

f.      Improper use of the Subject Property for a business and/or prohibited Home Occupation purpose, in violation of BHMC §§ 10-3-203, 10-3-704, and 10-3-4301;

g.      Transacting, engaging in, carrying on or permitting the operation of any business without first registering and obtaining a current valid registration certificate, in violation of BHMC § 3-1-201;

h.      Maintaining and/or permitting the maintenance of the Subject Property with exposed wiring, in violation of 2019 California Fire Code ("CFC")[2] § 605.6;

i.      Maintaining and/or permitting the maintenance of the Subject Property with combustible materials near heat sources in violation of 2019 CFC § 315.3;

j.      Maintaining and/or permitting the maintenance of the Subject Property with recalled sprinkler heads and sprinkler system and sprinkler heads have been painted over and are inoperable in violation of 2019 CFC § 901.10;

k.      Maintaining and/or permitting the maintenance of the Subject Property with an unmonitored sprinkler system – the sprinkler system must be monitored, identified as "Fire Sprinkler Alarm on keypads, and have interior sounding alarms, and the monitoring company must call BHFD first, in violation of 2019 CFC § 903.4.2 as amended by the BHMC § 9-1-2;

l.      Maintaining and/or permitting the maintenance of the Subject Property with beds or living arrangements in excess of residential occupancy limitation in violation of 2019 CFC § 2020;

m.      Maintaining and/or permitting the maintenance of the Subject Property with no access to first responders- a Knox key switch for front gate for

---

[2] The City has adopted the California Fire Code, as amended, pursuant to BHMC § 9-2-1.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

1       emergency responders must be purchased and installed on the front gate

2       call box – in violation of BHMC § 506.1.1 and 2019 CFC § 503.6;

3       n.    Maintaining and/or permitting the maintenance of the Subject Property

4       with inoperable smoke detectors and/or missing/expired batteries; missing

5       carbon monoxide alarms; smoke alarms must be interconnected, in

6       violation of California Residential Code ("CRC") § R314.3.2, 2019 CFC

7       § 1103.8, 2019 CFC 907.2.11.3 and 2019 CFC § 907.2.11.5 as amended

8       by BHMC § 9-1-2;

9       o.    Failure of occupant/tenants of a private-one family residence to jointly

10       agree to occupy and be responsible for the premises under a single written

11       rental or lease agreement, in violation of BHMC §§ 10-3-203; 10-3-100,

12       and, 10-3-701; and,

13       p.    Other violations according to proof.

14       44.    The City is informed and believes and based thereon alleges that Defendants are

15 operating a Treatment Facility as defined Health & Safety Code section 11834.02 et seq., at the

16 Subject Property, including detoxification, recovery and treatment services, without the required

17 state licenses and in violation of the BHMC, and further, that Defendants use of the Subject

18 Property is to facilitate illegal narcotic usage as alleged herein.  Defendants use of the Subject

19 Property in this regard further renders it a public nuisance and narcotics nuisance.

20       45.    The conditions at the Subject Property further constitute a public nuisance pursuant

21 to state law.  Civil Code § 3479 defines a nuisance as "[a]nything which is injurious… or is

22 indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere

23 with the comfortable enjoyment of life or property …" Civil Code § 3480 provides that a public

24 nuisance is one that "affects at the same time an entire community or neighborhood or any

25 considerable number of persons, although the extent of the annoyance or damage inflicted upon

26 individuals may be unequal."

27       46.    Code of Civil Procedure § 731 and Civil Code § 3491 expressly authorize the City

28 to seek injunctive relief to enjoin conditions constituting public nuisances.  Defendants'

... 

1   maintenance and use of the Subject Property are nuisances and/or public nuisances as defined in

2   Civil Code §§ 3479 and 3480.

3       47.    Additionally, Beverly Hills Municipal Code §§ 1-3-103, 1-3-301 and 10-3-205

4   authorize the City to pursue a civil action to abate public nuisances in the City.

5       48.    The City is informed and believes and thereon alleges that Defendants, and each of

6   them, are maintaining the aforementioned public nuisance conditions, and that they will continue

7   to do so in violation of the above-cited laws unless enjoined by order of this court.

8       49.    The City has no adequate remedy other than the equitable relief sought herein.

9   Absent such relief, the City and its residents will be irreparably injured and damaged in that the

10  continued maintenance of the public nuisance conditions by Defendants threatens the public

11  health, safety, and general welfare.

12      50.    The City is entitled to an order of this court finding that the Defendants'

13  maintenance of the Subject Property with the conditions set forth hereinabove constitutes a public

14  nuisance pursuant to Civil Code §§ 3479 and 3480, and BHMC § 1-3-103 and 10-3-205.

15      51.    As a result of Defendants' illegal use and maintenance of the Subject Property as

16  described herein, and in accordance with the above-cited authority, the City is entitled to a

17  judgment temporarily, preliminarily and permanently enjoining the Defendants, and each of them,

18  from the following:

19          a.    Using and/or permitting the use of the Subject Property as a Treatment

20                Facility without the licensure required by Health & Safety Code section

21                11834.02 et seq.;

22          b.    Using and/or permitting the use of the Subject Property as a "drug house"

23                in violation of the California Health & Safety Code;

24          c.    Engaging, allowing, and/or permitting in any way any unlawful single-

25                family transient use of the Subject Property;

26          d.    Using and/or permitting the use of Subject Property as a boarding house

27                with transient occupancies in excess of those allowed by the BHMC;

28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

e.  Failing to jointly agree to occupy and be responsible for the premises under a single written rental or lease agreement, in violation of BHMC §§ 10-3-203; 10-3-100, and, 10-3-701.

f.  Engaging in, allowing and/or permitting in any way any improper occupancy of any garage for living, sleeping, cooking and/or dining purposes;

g.  Engaging in, allowing and/or permitting in any way any use of the Subject Property for a business or Home Occupation purpose without first obtaining all requisite City permits, approvals and inspections;

h.  Transacting, engaging in, carrying on or permitting the operation of any business without first registering and obtaining a current valid registration certificate;

i.  Maintaining and/or permitting the maintenance of the Subject Property with exposed wiring;

j.  Maintaining and/or permitting the maintenance of the Subject Property with combustible materials near heat sources;

k.  Maintaining and/or permitting the maintenance of the Subject Property with recalled sprinkler heads and sprinkler system and sprinkler heads that have been painted over and are inoperable;

l.  Maintaining and/or permitting the maintenance of the Subject Property with an unmonitored sprinkler system;

m.  Maintaining and/or permitting the maintenance of the Subject Property with beds or living arrangements in excess of applicable residential occupancy limitations;

n.  Maintaining and/or permitting the maintenance of the Subject Property with no access to first responders;

o.  Maintaining and/or permitting the maintenance of the Subject Property with inoperable smoke detectors and/or missing/expired batteries; missing carbon monoxide alarms; and,

p.  Such further orders as the Court deems necessary.

### THIRD CAUSE OF ACTION

### MUNICIPAL CODE VIOLATIONS

### (Against All Defendants)

52.  The City hereby incorporates by reference paragraphs 1 through 51, inclusive, of this Complaint as though fully set forth herein.

53.  The City is informed and believes and based thereon alleges that Defendants, and each of them, have maintained, continue to maintain, and are liable in some manner for maintaining the Subject Property with conditions that constitute violations of the BHMC, including, but not limited to, the conditions set forth in paragraphs 40, above.

54.  BHMC §§ 1-3-101 and 1-3-103 provide that it is unlawful for any person to violate any provisions of the Beverly Hills Municipal Code. BHMC § 10-3-205 provides that it is unlawful for any person to violate any zoning provisions of the BHMC. Pursuant to BHMC § 1-3-103, subparagraph 2, "[a]ny condition, caused or permitted to exist in violation of any provision of this code shall be deemed a public nuisance and may be summarily abated as such by the city." BHMC § 1-3-103 further provides that each and every day such a violation exists constitutes a new and separate offense. BHMC section 10-3-205 also states that "any use, occupancy, building, or structure maintained contrary to the provisions of the . . . [BHMC zoning regulations] shall constitute a public nuisance."

55.  Due to the existence of unlawful conditions at the Subject Property, the City is entitled to preliminary and permanent injunctions baring their continued maintenance. Specifically, the City is entitled to preliminary and permanent injunctions, enjoining Defendants, their agents, employees, servants, successors or assigns, or anyone acting on their behalf or in concert with them, from maintaining any of the violations identified hereinabove.

56.  Absent the relief requested herein, the City and its residents will be irreparably

injured and damaged in that the maintenance of the public nuisance by Defendants threatens the public health, safety, and general welfare. The welfare of the public requires that the City's Municipal Code, as well as the laws of the State of California, be fairly, thoroughly, and uniformly enforced throughout the City.

## FOURTH CAUSE OF ACTION

## UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICES

### [Business and Professions Code §17200 et seq.]

### (Against All Defendants)

57.     The City hereby incorporates by reference paragraphs 1 through 56, inclusive, of this Complaint as though fully set forth herein.

58.     Counsel for the City, acting to protect members of the general public, brings this cause of action pursuant to the provisions of California Business and Professions Code sections 17204 and 17206.

59.     The City is informed and believes and based thereon alleges that at all times relevant hereto, Defendants had a duty under the BHMC and state law to maintain the Subject Property free from unlawful uses and/or activities that constitute a public nuisance.

60.     The City is informed and believes and based thereon alleges that Defendants are violating local and state law, as set forth above, by operating and/or permitting the operation of a an unlicensed and illegal business at the Subject Property, constituting Unfair Business Practices, as defined in Business and Professional Code §17200 *et seq.*, which includes any unlawful, unfair or fraudulent business act or practice, and should be enjoined as such.

61.     The City has no adequate remedy other than the equitable relief sought herein. Unless enjoined by order of this Court, Defendants will continue to engage in unlawful business practices and acts of unfair competition.

//

//

//

//

**FIFTH CAUSE OF ACTION**

**DECLARATORY AND INJUNCTIVE RELIEF**

**(Against All Defendants)**

62.     The City hereby incorporates by reference paragraphs 1 through 61, inclusive, of this Complaint as though fully set forth herein.

63.     An actual controversy has arisen, and now exists, between the City, on the one hand, and Defendants, and each of them, on the other, concerning their respective rights and duties. The City alleges Defendants, and each of them, have maintained, and will continue to maintain, the Subject Property in a manner that does not comport with the provisions and requirements of the BHMC and/or California Health and Safety Code.

64.     The City desires a judicial determination of the rights and duties of the respective parties, including a determination that Defendants are maintaining, or permitting the maintenance of, prohibited substandard building conditions and public nuisance conditions at the Subject Property.  The City further requests a declaration, in accordance with such determination, that the Subject Property, including all accessory structures, installations, and land uses thereon, is required to be brought into full conformity with the provisions of BHMC and California Health and Safety Code. along with all required permits, approvals, and inspections.

65.     The City further requires a declaration that Defendants, and each of them, are and shall be bound by all orders of this Court related to the maintenance and use of the Subject Property, at all such times now or in the future that they have ownership, possession, or control of the Subject Property, including, but not limited to those orders enjoining the maintenance of the Subject Property with conditions that constitute violations of BHMC and the state laws.

66.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that the City may fully and without obstruction enforce its municipal code and the laws of this State. The City further requests injunctive relief with the Court's determination and declaration. The City and its residents will be irreparably injured if Defendants are permitted to continue to use and maintain the Subject Property in a manner as described hereinabove.

23

**WHEREFORE, PLANITFF PRAYS AS FOLLOWS:**

    1.    That this Court find and declare that the Defendants RODEO RECOVERY, LLC, RODEO DRIVE RECOVERY, LLC, JOANNE GORBY, individually and as trustee as trustee of the GORBY FAMILY TRUST, NATHAN YOUNG, and DOES 1 - 50's maintenance of the Subject Property, and the conditions existing thereon, violates the Uniform Controlled Substances Act [Health & Safety Code 11570 et seq.], the Beverly Hills Municipal Code, the Beverly Hills Housing Code, but not limited to, the following violations:

        a.    Using and/or permitting the use of the Subject Property as a Treatment Facility without the licensure required by Health & Safety Code section 11834.02 et seq.;

        b.    Using and/or permitting the use of the Subject Property as a "drug house" in violation of the California Health & Safety Code;

        c.    Improper transient and prohibited short-term stay use of the Subject Property, in violation of BHMC §§ 10-3-203, 10-1-100, 10-3-100, 10-3-701, 10-3-4301, and 10-3-4302B;

        d.    Using and/or permitting the use of Subject Property as a boarding house with transient occupancies in excess of those allowed by the BHMC;

        e.    Improper occupancy of garage for living, sleeping, cooking and/or dining purposes, in violation of BHMC §§ 10-3-203 and 1001.14 of the Uniform Housing Code as adopted by the BHMC section 9-1-901;

        f.    Improper use of the Subject Property for a business and/or prohibited Home Occupation purpose, in violation of BHMC §§ 10-3-203, 10-3-704, and 10-3-4301;

        g.    Transacting, engaging in, carrying on or permitting the operation of any business without first registering and obtaining a current valid registration certificate, in violation of BHMC § 3-1-201;

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

h.    Maintaining and/or permitting the maintenance of the Subject Property with exposed wiring, in violation of 2019 California Fire Code ("CFC")[3] § 605.6;

i.    Maintaining and/or permitting the maintenance of the Subject Property with combustible materials near heat sources in violation of 2019 CFC § 315.3;

j.    Maintaining and/or permitting the maintenance of the Subject Property with recalled sprinkler heads and sprinkler system and sprinkler heads have been painted over and are inoperable in violation of 2019 CFC § 901.10;

k.    Maintaining and/or permitting the maintenance of the Subject Property with an unmonitored sprinkler system – the sprinkler system must be monitored, identified as "Fire Sprinkler Alarm on keypads, and have interior sounding alarms, and the monitoring company must call BHFD first, in violation of 2019 CFC § 903.4.2 as amended by the BHMC § 9-1-2;

l.    Maintaining and/or permitting the maintenance of the Subject Property with beds or living arrangements in excess of residential occupancy limitation in violation of 2019 CFC § 2020;

m.    Maintaining and/or permitting the maintenance of the Subject Property with no access to first responders- a Knox key switch for front gate for emergency responders must be purchased and installed on the front gate call box – in violation of BHMC § 506.1.1 and 2019 CFC § 503.6;

n.    Maintaining and/or permitting the maintenance of the Subject Property with inoperable smoke detectors and/or missing/expired batteries; missing carbon monoxide alarms; smoke alarms must be interconnected, in violation of California Residential Code ("CRC") § R314.3.2, 2019 CFC

---

[3] The City has adopted the California Fire Code, as amended, pursuant to BHMC § 9-2-1.

§ 1103.8, 2019 CFC 907.2.11.3 and 2019 CFC § 907.2.11.5 as amended by BHMC § 9-1-2;

    o.    Failure of occupant/tenants of a private-one family residence to jointly agree to occupy and be responsible for the premises under a single written rental or lease agreement, in violation of BHMC §§ 10-3-203; 10-3-100, and, 10-3-701; and,

    p.    Other violations according to proof.

2.    That this Court find and declare that the Defendants' use and maintenance of the Subject Property is a public nuisance in violation of Cal. Health & Safety Code Sections 11570-11587;

4.    That this Court find and declare that Defendants' maintenance of the Subject Property with conditions which violate the Health and Safety Code and/or the Beverly Hills Municipal Code, renders the property substandard and substantially endangers public health and safety;

5.    That this Court find and declare that Defendants' maintenance of the Subject Property with the unlawful conditions described hereinabove constitutes a public nuisance and should be abated as such;

6.    That this Court find and declare that Defendants have failed to comply within a reasonable time with notices to abate and notices of violation duly issued by the City;

7.    That this Court find and declare that Plaintiff is further entitled to orders that the public nuisance existing at the Subject Property be preliminarily and permanently abated in accordance with California Civil Code Section 3480 *et seq.,* California Code of Civil Procedure Section 731, and Cal. Health & Safety Code Section 11570 – 11587;

8.    That the Court order that the Subject Property be closed for one year pursuant to Cal. Health & Safety Code Section 11581 and further direct that all fixtures and other moveable property be removed from the Subject Property, and direct their sale, and impose civil penalties of $25,000.00 against each Defendant to prevent Defendants from continuing to maintain a nuisance at the Subject Property;

9.    In the event the Court decides that any vacancy resulting from closure will be

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

1  harmful to the community, in lieu of closing the Subject Property, each Defendant be ordered to

2  pay damages in an amount equal to the fair market rental values of the Subject Property for one

3  year to the City for purposes of drug abuse treatment, prevention, and education programs

4  pursuant to Cal. Health & Safety Code section  (c)(1);

5      10.    In the event that the Court does not order the Subject Property closed, all

6  Defendants, their agents, officers, managers, representatives, employees, and anyone acting on

7  their behalf, and their heirs and assignees be preliminarily and permanently enjoined from

8  conducting, operating, using, occupying, or in any anyway permitting the use of any portion of

9  the Subject Property as a public nuisance pursuant to Civil Code Section 3480 and Cal. Health

10  and Safety Code section 11570 -11587;

11      11.    That this Court order that Defendants, and each of them, be enjoined and restrained

12  from occupying or operating the Subject Property while the conditions described in this

13  Complaint exist and until all of the violations at the Subject Property have been abated;

14      12.    That Defendants, and each of them, be ordered to cause all portions of the Subject

15  Property to conform to law, and maintain such structures and all parts thereof in accordance with

16  law;

17      13.    Further, that this Court temporarily, preliminarily and permanently enjoin

18  Defendants, and each of them, from the following:

19          a.    Permitting or allowing to exist the unlawful, selling, serving, storing,

20              using, keeping or giving away of any controlled substance, including but

21              not limited to heroin, fentanyl or methamphetamine, at the Subject

22              Property or at any other real property within the City under Defendants'

23              possession or control;

24          b.    Using, permitting or allowing the Subject Property to be used as a

25              Treatment Facility without the licensure required by Health & Safety

26              Code section 11834.02 et seq.;

27          c.    Using and/or permitting the use of the Subject Property as a "drug house"

28              in violation of the California Health & Safety Code;

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

d.      Facilitating, permitting, and/or providing medical services at the Subject Property or at any other real property within the City under Defendants' possession or control without requisite state and/or local licensure;

e.      Requiring, accepting, collecting, and/or depositing any proceeds or funds obtained from any and all health insurance providers, for any and all services provided at the Subject Property;

f.      Permitting, maintaining or allowing to exist vandalism, loud verbal altercation, or disturbance at the Subject Property;

g.      Permitting or allowing to exist the use of drugs, including but not limited to marijuana, in the alley adjacent to the Subject Property;

h.      Engaging, allowing, and/or permitting in any way any unlawful single-family transient use of the Subject Property;

i.      Using and/or permitting the use of Subject Property as a boarding house with transient occupancies in excess of those allowed by the BHMC;

j.      Failing to jointly agree to occupy and be responsible for the premises under a single written rental or lease agreement, in violation of BHMC §§ 10-3-203; 10-3-100, and, 10-3-701.

k.      Engaging in, allowing and/or permitting in any way any improper occupancy of any garage for living, sleeping, cooking and/or dining purposes;

l.      Engaging in, allowing and/or permitting in any way any use of the Subject Property for a business or Home Occupation purpose without first obtaining all requisite City permits, approvals and inspections;

m.      Transacting, engaging in, carrying on or permitting the operation of any business without first registering and obtaining a current valid registration certificate;

n.      Maintaining and/or permitting the maintenance of the Subject Property with exposed wiring;

o.    Maintaining and/or permitting the maintenance of the Subject Property with combustible materials near heat sources;

p.    Maintaining and/or permitting the maintenance of the Subject Property with recalled sprinkler heads and sprinkler system and sprinkler heads that have been painted over and are inoperable;

q.    Maintaining and/or permitting the maintenance of the Subject Property with an unmonitored sprinkler system;

r.    Maintaining and/or permitting the maintenance of the Subject Property with beds or living arrangements in excess of applicable residential occupancy limitations;

s.    Maintaining and/or permitting the maintenance of the Subject Property with no access to first responders; and,

t.    Maintaining and/or permitting the maintenance of the Subject Property with inoperable smoke detectors and/or missing/expired batteries; missing carbon monoxide alarms.

u.    Operating, using, maintaining, or permitting the use of the Subject Property, or any other real property within the City under Defendants' possession or control, in a manner which violates the BHMC, the Uniform Controlled Substances Act, and/or any other law;

v.    Maintaining any municipal code and state law violations described at the Subject Property, or any other real property within the City under Defendants' possession or control;

w.    Maintaining a public nuisance at the Subject Property, or at any other real property within the City under Defendants' possession and control; and,

x.    Such further orders as are appropriate.

14.    As a result of the illegal use and conditions at the Subject Property, as described herein, that this Court order judgment temporarily, preliminarily and permanently ordering the Defendants, and each of them, to perform certain corrective and/or preventive actions, including,

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

but not limited to the following:

    a.    Cease and desist the use, occupancy and maintenance of and/or permitting the use, occupancy and maintenance of the Subject Property for the storage, sale, purchase, distribution, use and/or trade of any controlled substance, including but not limited to heroin, fentanyl or methamphetamine;

    b.    Terminate the operation of the illegal drug rehabilitation facility on the Subject Property and any and all activities related to said operation and causing the occupants to vacate the Subject Property and relocate occupants to appropriate legal facilities;

    c.    Cease and desist any and all improper transient and prohibited short-term, single-family transient use(s) at the Subject Property, including but not limited to using the Subject Property as a unlawful boarding house;

    d.    Cease and desist any and all medical services at the Subject Property without requisite state and/or local licensure;

    e.    Cease and desist collecting, and/or depositing any proceeds or funds obtained from any and all health insurance providers, for any and all services provided at the Subject Property;

    f.    Terminate the use of garage for living, sleeping, cooking, dining and/or other habitation purposes;

    g.    Bring the Subject Property into full compliance with all laws of the City in accordance with the BHMC, as provided herein.

    h.    Notify, in writing, any prospective purchaser, lessee, agent, or other successor in interest of the existence of the injunction and of its application to successors in interest, prior to entering into any agreement to sell or lease the Subject Property, as provided in Health and Safety Code §11573(b);

i.     Permit appropriate officials of, or on behalf of, the City of Beverly Hills (including but not limited to Peace Officer, Building Inspectors and Code Enforcement Inspectors) to enter onto the Subject Property, or any property in the City in their possession or control, at any time between the hours of 8:00 a.m. and 6:00 p.m., without notice, for the purpose of conducting inspections of the premises to ensure compliance with the terms of said injunctions and that said inspections be permitted without a warrant;

j.     Provide a minimum of thirty (30) days' notice to the City, through counsel, and to this court of any new property in the City to which Defendants obtain possession and control during the pendency of this action;

k.     Continuously maintain the Subject Property in compliance with the BHMC and free from conditions and activities that constitute violations and a public nuisance under the BHMC, and California Health & Safety Code.

l.     Such further orders as are appropriate.

15.    That Defendants, and each of them, be enjoined from spending, transferring, encumbering, or removing from California any money received from the Subject Property or in payment for the unfair and unlawful acts alleged in the Complaint;

16.    That this Court impose civil penalties of $25,000 against each Defendant to prevent them from continuing to maintain a nuisance at the Subject Property, pursuant to Cal. Health & Safety Code section 11581;

17.    For costs of suit incurred herein; and,

//
//
//
//

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

18.    For such other and further relief as the Court deems just and proper.

Dated: May 18, 2020                    DAPEER, ROSENBLIT & LITVAK, LLP

                                       By:_____
                                          William Litvak
                                          Caroline Castillo
                                          Attorneys for Plaintiff
                                          CITY OF BEVERLY HILLS

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF