Aaron T. Goodman, State Bar No. 330791
aaron.goodman@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, California  90067
Telephone:  310.201.4728
Facsimile:   310.201.4721

Attorney for Defendants
ALI BEHESHTI and ZEALIE LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NATHAN SAMUEL YOUNG a/k/a PABLO LOPEZ; DAVID YOUNG a/k/a SANCHO LOPEZ; JOSE RICARDO TOSCANO MALDONADO; ALI BEHESHTI; MARC ADLER; ANI MIRZAVAN; ZEALIE LLC; HELPING HANDS REHABILITATION CLINIC, INC; JOSER FOREVER LLC; GET REAL RECOVERY LLC; REVIVE PREMIER TREATMENT CENTER, INC.; HEALING PATH DETOX LLC; OCEAN VALLEY BEHAVIORAL HEALTH, LLC; RODEO RECOVERY LLC; SUNSET REHAB LLC; NATURAL REST HOUSE, INC; AND JOHN DOES 1 THROUGH 50, AND ABC CORPS. 1-50,<br><br>Defendants. | **Case No. 2:23-cv-09654-MCS-JPR**<br><br>Date Action Filed: November 14, 2023<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:          June 10, 2024<br>Time:         9:00 a.m.<br>Ctrm:         7C<br>Judge:        Hon. Mark C. Scarsi |

1

# **TABLE OF CONTENTS**

2

**Page**

3  INTRODUCTION ............................................................................................. 1

4  STATEMENT OF FACTS ................................................................................ 3

5  ARGUMENT .................................................................................................... 4

6      I.    Legal Standard ........................................................................... 4

7      II.   Aetna Fails to State Non-RICO Claims Against the Zealie Defendants ... 6

8          A.    The FAC Relies on Factually Inconsistent / Irrelevant Allegations 6

9          B.    Each of Aetna's Non-RICO Claims Fail ......................................... 7

10              ii.    Aiding and Abetting Fraud ................................................ 9

11              iii.   Aetna's Tortious Interference Claims Fail Because No Tortious Acts or Intent Is Alleged .................................... 10

12

13              iv.   Aetna's Unjust Enrichment Claim Fails Because Unjust Enrichment Is Not a Valid Cause of Action ...................... 11

14              v.    Aetna's Money Had and Received Claim Fails Because Aetna Is Not Indebted to the Zealie Defendants ................ 12

15

16              vi.   Aetna Fails to Allege that the Zealie Defendants Anything Unlawful, Unfair, or Fraudulent ....................... 13

17      III.  Aetna's Claims for Violation of RICO and Conspiracy Fail .................. 13

18          A.    Aetna Does Not Allege the Existence of a RICO Enterprise ........ 15

19          B.    A Service Provider like Zealie Cannot Be a Proper Defendant to a RICO Claim, and Aetna Has Not Alleged That the Zealie Defendants Participated in Any RICO Conduct ............................ 17

20

21          C.    The FAC Fails to Plead a Pattern of Racketeering Activity .......... 21

22          D.    Because the RICO Claim Fails, the Conspiracy Claim Also Fails 24

23  CONCLUSION ............................................................................................... 25

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
824 F. Supp. 2d 1164 (C.D. Cal. 2011) .................................................. 9

*Allwaste, Inc. v. Hecht*,
65 F.3d 1523 (9th Cir. 1995) ........................................................... 21, 23

*Annunziato v. Guthrie*,
2021 WL 5015496 (C.D. Cal. Oct. 26, 2021) ..................................... 5, 8

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .............................................................. 11

*Baiul-Farina v. Lemire*,
804 Fed. App'x 533 (9th Cir. 2020) .................................................... 11

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) ................................................................ 17

*Blue Wing Airlines Fin. v. Unical Aviation, Inc. & Platinum Equity*,
2023 WL 3149276 (C.D. Cal. Mar. 8, 2023) ....................................... 12

*Boyle v. United States*,
556 U.S. 938 (2009)............................................................... 15, 16, 17

*BSA Framing, Inc. v. Applied Underwriters, Inc.*,
2018 WL 11462083 (C.D. Cal. Feb. 27, 2018) ................................... 15

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) .............................................................. 4

*Canas v. Ocwen Loan Servicing, LLC*,
2015 WL 5601838 (C.D. Cal. Sept. 21, 2015) ..................................... 8

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal. App. 4th 1138 (2005) ......................................................... 9, 10

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
765 F. Supp. 1467 (C.D. Cal. 1991) ................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) ................................................................. 16

*First Am. Cinema, LLC v. Chicken Soup for the Soul Entm't, Inc.*,
   2020 WL 11025582 (C.D. Cal. Mar. 12, 2020) .................................... 11

*Fraser v. Team Health Holdings, Inc.*,
   2022 WL 971579 (N.D. Cal. Mar. 31, 2022) ........................................ 18

*Gardner v. StarKist Co.*,
   418 F. Supp. 3d 443 (N.D. Cal. 2019) ............................................ 17, 18

*Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
   76 F.4th 1266 (9th Cir. 2023) ............................................................... 23

*Gomez v. Guthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015) ...................... 14, 16, 18, 20

*Gottex Fund Mgmt. Ltd. V. MKA Real Estate Opportunity Fund I, LLC*,
   2013 WL 12131260 .............................................................................. 11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ......................................................................... 21, 22

*Harwood v. Option Care Enters.*,
   2019 WL 1952692 (C.D. Cal. May 2, 2019) ........................................... 7

*Hill v. Opus Corp.*,
   841 F. Supp. 2d 1070 (C.D. Cal. 2011) ................................................ 24

*Humphreys v. Ocwen Loan Servicing, LLC*,
   2009 WL 10672594 (C.D. Cal. Feb. 23, 2009) ....................................... 9

*Ikuno v. Yip*,
   912 F.2d 306 (9th Cir. 1990) ................................................................ 22

*Impac Funding Corp. v. Endresen*,
   2015 WL 13916649 (C.D. Cal. Dec. 16, 2015) ....................................... 9

*Jensen v. E.F. Hutton & Co.*,
   1984 WL 2392 (C.D. Cal. Jan. 26, 1984) .............................................. 15

*JJ Mktg. Grp. Inc. v. K in LA Entm't*,
   2022 WL 17098185 (C.D. Cal. Aug. 1, 2022) ......................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ..................................................................... 25

*Kamal v. Cnty. of L.A.*,
    2019 WL 2502433 (C.D. Cal. May 2, 2019) ................................................ 5

*Kandel v. Brother Int'l Corp.*,
    2009 WL 9100406 (C.D. Cal. Feb. 13, 2009) ............................................ 12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ....................................................................... 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) .............................................................................. 11

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,
    805 F. Supp. 2d 932 (C.D. Cal. 2011) ......................................................... 7

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ..................................................................... 13

*Mend Health, Inc. v. Carbon Health Techs., Inc.*,
    588 F. Supp. 3d 1049 (C.D. Cal. 2022) ....................................................... 5

*Metaxas v. Lee*,
    503 F. Supp. 3d 923 (N.D. Cal. 2020) ....................................................... 23

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................................... 5

*Nestle USA, Inc. v. Crest Foods, Inc.*,
    2017 WL 3267665 ................................................................................ 10, 11

*In re Outlaw Lab., LP Litig.*,
    2020 WL 5552558 (S.D. Cal. Sep. 16, 2020) ............................................ 17

*Ove v. Gwinn*,
    264 F.3d 817 (9th Cir. 2001) ..................................................................... 13

*Palantir Techs. Inc. v. Abramowitz*,
    2021 WL 2400979 (N.D. Cal. June 11, 2021) ............................................ 22

*Panno v. Wells Fargo Bank, N.A.*,
    2016 WL 7495834 (C.D. Cal. Apr. 1, 2016) .................................................... 13

*Prime Healthcare Servs. v. Humana Ins. Co.*,
    2017 WL 8220437 (C.D. Cal. Apr. 7, 2017) ..................................................... 8

*Puana v. Kealoha*,
    2022 WL 17811439 (D. Haw. Dec. 19, 2022) .................................................. 22

*Rae v. Union Bank*,
    725 F.2d 478 (9th Cir. 1984) ........................................................................... 14

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ........................................................................... 24

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ............................................................................... 13, 17

*Sanchez v. One W. Bank*,
    2011 WL 13224623 (C.D. Cal. Jan. 28, 2011) .......................................... 14, 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ......................................................................... 15

*Shaw v. Nissan North America, Inc.*,
    220 F. Supp. 3d. 1046 (C.D. Cal. 2016) ........................................................... 21

*Skye Orthobiologics, LLC v. CTM Biomedical, LLC*,
    2021 WL 6104163 (C.D. Cal. Aug. 30, 2021) .................................................. 18

*Smith v. U.S. Bank, N.A.*,
    2011 WL 7628515 (D. Or. Oct. 26, 2011) ....................................................... 24

*Spiteri v. Russo*,
    2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ................................................... 14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................. 5

*Tharpe v. Hyundai Motor Am., Inc.*,
    2023 WL 3150112 (C.D. Cal. Mar. 16, 2023) .................................................... 7

*Tirgari v. Kazemipour*,
    2022 WL 17724151 (S.D. Cal. Dec. 15, 2022) ................................................. 23

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) ...................................................................... 23

*United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*,
   837 F.2d 356 (9th Cir. 1988) ...................................................................... 22

*Vess v. CIBA-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................... 5, 7, 8

*Virun, Inc. v. Cymbiotika LLC*,
   2023 WL 8351529 (C.D. Cal. Nov. 6, 2023) ........................................... 10

*W. Am. Ins. Co. v. Shaghal LTD*,
   2022 WL 17370532 (C.D. Cal. June 23, 2022) ......................................... 5

*Wagh v. Metris Direct Servs., Inc.*,
   348 F.3d 1102 (9th Cir. 2003) .................................................................. 14

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) .................................................................. 17

*Williams v. Lobel Fin. Corp.*,
   2023 WL 3483227 (C.D. Cal. May 15, 2023) .......................................... 25

*Wolov v. Duel*,
   2023 WL 2780369 (C.D. Cal. Feb. 28, 2023) ........................................... 6

*Zimmie v. Warner*,
   2022 WL 2155970 (C.D. Cal. Feb. 15, 2022) .......................................... 24


**Statutes / Other Authorities**

18 U.S.C. § 1961(5) ...................................................................................... 15

18 U.S.C. § 1962(c) ...................................................................... 4, 15, 17, 24

18 U.S.C. § 1962(d) ................................................................................ 4, 24

29 U.S.C. § 1132(a)(3) ................................................................................... 4

California's Unfair Competition Law ...................................................... 4, 13

Fed. R. Civ. P. (8)(a) ..................................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT

Fed. R. Civ. P. 9 ..................................................................................................... *passim*

Fed. R. Civ. P. 9(b) ......................................................................................... 5, 6, 8, 14

Fed. R. Civ. P. 12(b) .................................................................................................. 3

RICO ..................................................................................................................... *passim*

## **INTRODUCTION**

Plaintiffs Aetna Life Insurance Company and Aetna Health of California, Inc. (collectively, "Aetna") filed this case against more than a dozen parties alleging a widespread fraudulent scheme. But the Zealie Defendants are not part of that scheme. Whatever the merits of Aetna's claims of fraud, the Zealie Defendants are innocent parties that do not belong in the present lawsuit. Aetna alleges that several of the Defendants in this case—which the FAC terms the "Treatment Entity Defendants"—engaged in a conspiracy to commit healthcare fraud by inducing Aetna members to enroll in substance abuse treatment programs, using medically unnecessary treatments, preventing the patients' recovery, then fraudulently increasing the amounts billed to Aetna. The FAC goes on to claim—illogically—that Zealie somehow "brought th[is] fraudulent scheme to market" by providing the billing services for which they were hired. However Zealie is—as Aetna's FAC recognizes—simply a vendor that performed billing services for some, but not all, of the "Treatment Entity Defendants."

Zealie processed bills for claims submitted by those treatment centers. In other words, Zealie processed the claims it received from the Treatment Entity Defendants based on information provided by those entities, without any way of determining the truth or falsity of the information provided. Zealie was not in any way involved in the decisions of whether and how often to treat patients, nor was it privy to the determinations that certain treatments were (or were not) medically necessary. Accordingly, Zealie could not have participated in the scheme set out in Aetna's FAC. And as the founder of Zealie, Mr. Beheshti was even more removed from this conduct; he is an individual (not the business) who did not have any day-to-day interactions with the defendant treatment centers. As such, the allegations against the Zealie Defendants are insufficient to state a plausible claim for relief. The few specific allegations against the Zealie Defendants are facially false, irrelevant to the case, or, if true, do not give rise to any cause of action. As just one example, Aetna in its pleading repeatedly confuses two entirely separate entities, despite being well aware that they are entirely

separate. In so doing, Aetna seems to be hoping to capitalize on that confusion to impute involvement in the scheme to the Zealie Defendants (in particular, to imply that Mr. Beheshti was the subject of a federal indictment where there is no actual basis for doing so). Were Aetna's allegations made in a public forum, these statements would be slanderous and actionable for the severe damages they have caused.

In addition to having no basis in fact, Aetna's claims against the Zealie Defendants fail as a matter of law. Aetna brings a series of baseless allegations purporting to support claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and conspiracy. Aetna's substantive RICO claim fails as to the Zealie Defendants because Aetna has failed to properly plead several required elements. Aetna's FAC does not even allege the most basic element: the existence of a RICO enterprise. The FAC likewise fails to detail a pattern of racketeering activity. And because the substantive RICO claim is insufficient, the RICO conspiracy claim falls along with it. Even worse, these reckless RICO claims patently lack any good faith basis.

Aetna's other claims fail because Aetna fundamentally misunderstands and (seemingly intentionally) misrepresents Zealie's business model. Aetna characterizes Zealie's business as an essential part of the alleged fraudulent scheme, stating that the Zealie Defendants "[brought] the[] fraud to the insurance marketplace." In reality, Zealie is a third-party administrative claims and bill processing vendor. It has no interaction with patients, no input into the decisions as to what treatment to provide or not provide, and no input or insight into whether such treatment is medically necessary or appropriate. Zealie receives claims from healthcare providers, processes these claims based on information provided, and submits them to health insurance companies. To the extent that Zealie "consults" on its customers' invoices, it is to ensure that the treatments are being correctly submitted to insurers (*i.e.*, that they are charged under the proper billing code for a given treatment). In effect, Zealie does little more than code the billing information sent to it by its clients. If any claims were in fact improperly

submitted, as Aetna alleges, that would necessarily be because the information provided to Zealie was inaccurate in the first place. Garbage in, garbage out. Aetna's claims fail as to Zealie because Zealie did not act, and could not have acted based on Aetna's allegations as plead, in a fraudulent or illegal fashion.

Accordingly, Aetna fails to meet the requirements of Federal Rules of Civil Procedure 9(b) and 12(b) as to the Zealie Defendants, and the FAC should be dismissed as to them. Because Aetna's claims fail as a factual matter in addition to failing as a matter of law, Aetna's second attempt to plead these claims in the FAC should be dismissed with prejudice. Aetna's claims against the Zealie Defendants are based on a reckless disregard for the truth, were not pled in good faith, are an abuse of process, and have significantly damaged Zealie (in particular, by recklessly including Zealie in the scattershot group pleading of alleged RICO violations).

## STATEMENT OF FACTS

Aetna alleges that the Treating Entity Defendants induced Aetna members to enroll in treatment programs and then "weaponized addiction and pushed relapse to prevent recovery," thus extending the time patients spent in the programs and fraudulently increasing the amounts billed. FAC ¶¶ 1, 94–105. Aetna also alleges other fraudulent actions by these Defendants, including offering kickbacks to remain enrolled, offering drugs to patients, paying "body brokers" to find patients to enroll, not charging any cost-share for the treatments, and enrolling patients in health benefit plans. *Id.* ¶¶ 73–93. Aetna further alleges that the majority of the Treating Entity Defendants billed for services that were either not performed or performed "below acceptable standards of care." *Id.* ¶ 142. Finally, Aetna alleges that the Treating Entity Defendants concealed their purportedly fraudulent conduct from Aetna. *Id.* ¶ 102. The majority of the purported scheme focuses on the treatment (or mistreatment) of patients by the Treating Entity Defendants—conduct in which the Zealie Defendants were not involved. *See, e.g.*, *id.* ¶ 166.

1   Zealie and Mr. Beheshti, the only so-called "Billing Entity Defendants," are

2   alleged to "provide specialized administrative billing services to the . . . Treatment

3   Entity Defendants." *Id.* ¶ 40. Aetna alleges that Zealie "handles the submission of the

4   claim forms for these entities that directly result in payment," and further alleges that

5   Zealie's "employees also serve in various roles for these entities." *Id.* Beheshti is alleged

6   to be Zealie's founder and operator. *Id.* ¶ 41. However, these allegations against Zealie

7   do not give rise to any actionable claim, and, in fact, demonstrate that the Zealie

8   Defendants were not part of the alleged fraud scheme and are not properly named.

9   Zealie merely provided administrative billing services and submitted claims to Aetna

10  based on information provided by the Treating Entity Defendants. Despite a lack of any

11  specific acts by Zealie or Mr. Beheshti, Aetna alleges causes of action for (1) fraud;

12  (2) aiding and abetting fraud; (3) negligent misrepresentation; (4) intentional

13  interference with economic/contractual relationship; (5) civil RICO under 18 U.S.C.

14  § 1962(c); (6) conspiracy to violate RICO under § 1962(d); (7) violations of

15  California's Unfair Competition Law (the "UCL"), Business and Professional Code §

16  17200, et seq.; (8) money had and received; (9) unjust enrichment/quantum

17  meruit/restitution. *Id.* ¶¶ 135–200.[1] The Zealie Defendants move to dismiss each of the

18  causes of action against them with prejudice.

## ARGUMENT

### I.   Legal Standard

21  To survive dismissal, "the complaint 'must provide sufficient allegations of

22  underlying facts to give fair notice and to enable the opposing party to defend itself

23  effectively.'" *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th

24  Cir. 2016) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Furthermore,

25  the underlying factual allegations must 'plausibly suggest an entitlement to relief.'" *Id.*

26  (quoting *Starr*, 652 F.3d at 1216). "Nor is the court required to accept as true allegations

27

28  [1] Aetna additionally asserts counts for restitution and injunctive relief under 29 U.S.C. § 1132(a)(3). Given Aetna's failure to demonstrate an entitlement to relief on each of the substantive claims, these counts for remedies should also be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)). As to Aetna's fraud and negligent misrepresentation claims, "[i]t is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (citations omitted); *see also W. Am. Ins. Co. v. Shaghal LTD*, 2022 WL 17370532, at *4 (C.D. Cal. June 23, 2022) (requiring a negligent misrepresentation claim to be pleaded with particularity); *Mend Health, Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1054 (C.D. Cal. 2022) (citations omitted) ("When fraud and negligent misrepresentation are alleged, Rule 9(b) heightens the requirements of Rule (8)(a).").

Rule 9(b) imposes a heightened pleading standard on a party alleging fraud. Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity the circumstances constituting fraud or mistake"). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Annunziato v. Guthrie*, 2021 WL 5015496, at *5 (C.D. Cal. Oct. 26, 2021) (citing *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)) ("Broad allegations lacking particularized supporting detail are insufficient."). This heightened pleading standard likewise applies to a RICO claim that is predicated upon purported acts of fraud. "When 'RICO claims are based on fraud, these allegations must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.'" *JJ Mktg. Grp. Inc. v. K in LA Entm't*, 2022 WL 17098185, at *7 (C.D. Cal. Aug. 1, 2022) (quoting *Holloway v. Clackamas River Water*, 739 Fed. App'x 868, 869 (9th Cir. 2018)). Specifically, where "a RICO claim is based on a predicate offense of fraud, the 'circumstances constituting fraud shall be stated with particularity' pursuant to Rule 9(b)." *Kamal v. Cnty. of L.A.*, 2019 WL 2502433, at *9 (C.D. Cal. May 2, 2019)

(cleaned up) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Rule 9(b) requires that plaintiff "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Wolov v. Duel*, 2023 WL 2780369, at *4 (C.D. Cal. Feb. 28, 2023) (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

In short, to plead a proper RICO claim, a plaintiff is required to assert various elements with a heightened level of specificity. And "Rule 9(b) applies to RICO conspiracy claims as well," since "the RICO claims are undoubtedly grounded in fraud, the conspiracy allegations must satisfy the heightened pleading requirements of Rule 9(b)." *Id.* (citation and internal quotation marks omitted). As detailed below, Aetna's FAC fails to state a cognizable legal theory as to the Zealie Defendants and its factual allegations fail to plausibly suggest an entitlement to relief. Thus, the FAC should be dismissed in its entirety as to the Zealie Defendants, with prejudice.

## II. **Aetna Fails to State Non-RICO Claims Against the Zealie Defendants**

### A. **The FAC Relies on Factually Inconsistent / Irrelevant Allegations**

The FAC alleges that Mr. Beheshti was "the sole managing member" of Defendant Healing Path Detox LLC "at its founding." FAC ¶ 42. The same paragraph alleges false, unsupported and disparaging accusations that Mr. Beheshti "also helped start and/or was a part owner of Healing Path Recovery LLC, a related entity that did business as Healing Path Detox. Healing Path Recovery doing business as Healing Path Detox was identified as participating and submitting claims for patients obtained through illegal body brokering in a federal indictment." *Id.*; *see also id.* ¶ 109 ("As noted above, Defendant Beheshti was the co-owner and/or CEO of Defendant Healing Path and Get Real Recovery, both of which were the subject of an indictment[] filed in March of 2021."). These allegations are simply untrue and appear designed to smear Mr. Beheshti as a criminal with an allegation that is ***both false and entirely unrelated*** to this case. The Court should take judicial notice of the fact that Healing Path Recovery

LLC and Healing Path Detox LLC are separate corporate entities.[2] "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint. . . ." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citation omitted). However, here, because the Secretary of State website establishes these companies are different, the allegations in paragraphs 42 and 109 of the FAC that conflate these two separate entities in order to imply that Mr. Beheshti is associated with criminality should be entirely disregarded.[3]

## B.    Each of Aetna's Non-RICO Claims Fail

### i.    The FAC Fails to Allege the Required Rule 9 Particularity

"The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Tharpe v. Hyundai Motor Am., Inc.*, 2023 WL 3150112, at *6 (C.D. Cal. Mar. 16, 2023) (citing *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)). The allegations against the Zealie Defendants do not support a negligent misrepresentation claim because they fail to show requisite particularity. Crucially, Aetna does not sufficiently allege, with particularity, the specific misrepresentations the Zealie Defendants made

---

[2] Healing Path Recovery LLC has California LLC No. 201704710528, was founded January 14, 2014, it was suspended as of December 3, 2018, and it had its principal and mailing addresses at 1800 N. Vine Street, Los Angeles, CA 90028.

Healing Path Detox LLC has California LLC No. 201621410110, was founded July 29, 2016, it is an active California LLC, and it has its principal and mailing addresses at 7661 Amberleaf Circle, Unit 1, Huntington Beach, CA 92648.

[3] The Court may take judicial notice of a fact under where a fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* at 999 (quoting Fed. R. Evid. 201(b)). "[T]he business entity search results from the California Secretary of State website is a public record and a proper subject of judicial notice." *Harwood v. Option Care Enters.*, 2019 WL 1952692, at *3 (C.D. Cal. May 2, 2019) (citation omitted); *see also L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) ("[T]he accuracy of the results of records searches from the Secretary of State . . . cannot reasonably be questioned.").

and exactly how these misstatements came to be submitted to Aetna. *See, e.g.*, *Vess*, 317 F.3d at 1106 (requiring negligent misrepresentation plaintiffs to plead the "who, what, when, where, and how of the misconduct charged"). The FAC does not allege who at Zealie made the allegedly fraudulent misrepresentations to Aetna, the identity of the recipients of the misrepresentations, and—crucially— fails to state exactly what was misrepresented, how the misrepresentations came to be, and whether the personnel at Zealie who made the allegedly fraudulent claims to Aetna knew them to be false. All the FAC states is that some unidentified alleged misrepresentations were made by some unidentified person at Zealie at some unidentified time to some other unidentified person. *See Canas v. Ocwen Loan Servicing, LLC*, 2015 WL 5601838, at *6 (C.D. Cal. Sept. 21, 2015) ("Without a clear statement of the alleged false statement and factual allegations demonstrating why the statement is false, Canas does not state a claim for negligent misrepresentation."). The FAC thus does not state a negligent misrepresentation claim against the Zealie Defendants. *See, e.g.*, *Prime Healthcare Servs. v. Humana Ins. Co.*, 2017 WL 8220437, at *3–5 (C.D. Cal. Apr. 7, 2017) (negligent misrepresentation claim inadequately pled for failure to allege when and where misrepresentations were made, who made them, or to whom).

Aetna's fraud claim also fails to meet Rule 9(b)'s particularity requirement. "The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (Cal. 1997)) (emphasis removed). The FAC does not allege sufficient facts to establish these elements as to the Zealie Defendants because it does not identify any specific statements they made, let alone the requisite "who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106. Therefore, the fraud claim should be dismissed, as well. *See, e.g.*, *Annunziato v. Guthrie*, 2021 WL 5015496, at *5 (C.D. Cal. Oct. 26, 2021)

(dismissing fraudulent misrepresentation claim where the non-specific allegations lacked particularized supporting detail); *Humphreys v. Ocwen Loan Servicing, LLC*, 2009 WL 10672594, at *4 (C.D. Cal. Feb. 23, 2009) (dismissing fraud claim where plaintiff failed to indicate when and where alleged fraud took place, or who made the misrepresentations).

### ii.    Aiding and Abetting Fraud

Aetna's aiding and abetting fraud claim also fails to meet the Rule 9 standard. Aetna is required to plead that the Zealie Defendants "had actual knowledge of the fraud and substantially participated in it." *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011) (citation omitted). To meet the requirements of Rule 9, "substantial assistance" of the underlying fraud "must be pleaded with particularity." *Id.* Aetna fails to plead either actual knowledge or substantial assistance. Pleading "actual knowledge" under California law requires more than pleading knowledge of "suspicious activities" or that the underlying fraudsters "were engaged in wrongful or illegal conduct." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1151–52 (2005). As explained in *Casey*, even pleading in essence—as Aetna fails to do here—that defendant "knew **something** fishy was going on" is not enough. *Id.* at 1149 (emphasis in original).

Aetna also fails to plead the Zealie Defendants' "substantial assistance" in any fraud. "Substantial assistance requires a significant and active, as well as a knowing participation in the wrong." *Impac Funding Corp. v. Endresen*, 2015 WL 13916649, at *3 (C.D. Cal. Dec. 16, 2015) (quotation omitted). "A defendant therefore provides substantial assistance when it affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed." *Id.* (quotation omitted). "[A]verments of substantial assistance must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged. . . ." *Id.* (quotation omitted and cleaned up). Knowledge is the key to pleading "substantial assistance"; *i.e.*, that defendant knew that "ordinary business transactions" (here,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

submitting bills to Aetna) "were assisting the customer in committing a specific tort." *Casey*, 127 Cal. App. 4th at 1145.

Aetna has thus failed to specifically plead either "actual knowledge" or "substantial assistance." **Nowhere** does the FAC allege that Zealie knew that any bills it submitted on behalf of customers were fraudulent. Aetna's allegations are bereft of "actual knowledge"—Aetna has pleaded an inference of knowledge from the irrelevant, and in some cases factually incorrect, allegations about Mr. Beheshti (*see* FAC ¶¶ 109–10). These include vague allegations about potential knowledge of supposed "body brokering," some sort of "consultation" (*see id.* ¶¶ 110, 115–16), and that one Zealie employee allegedly worked as the billing agent for one of the Treatment Entity Defendants (which itself is unsurprising, considering that it is undisputed that Zealie submitted bills on behalf of some of the Treatment Entity Defendants which were its customers) (*see id.* ¶ 40).

### iii.     Aetna's Tortious Interference Claims Fail Because No Tortious Acts or Intent Is Alleged

Aetna's tortious interference and intentional interference with an economic or contractual relationship claims also fail. To plead a tortious interference with contractual relations claim, Aetna must show "'(1) a valid contract between plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Virun, Inc. v. Cymbiotika LLC*, 2023 WL 8351529, at *5 (C.D. Cal. Nov. 6, 2023) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998)). Aetna fails to properly allege the first and third elements. Aetna fails to identify the contracting parties and contracts, as required. *See Nestle USA, Inc. v. Crest Foods, Inc.*, 2017 WL 3267665, at *12 (quoting *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014)) ("To understand whether a [plaintiff's] performance was disrupted requires the district court to determine what contractual

rights it possessed."). Conclusory yet vague allegations about contracts, as Aetna makes in paragraph 158, are insufficient. *See id.* (dismissing tortious interference claim that failed to identify the existing contracts allegedly disrupted); *Gottex Fund Mgmt. Ltd. V. MKA Real Estate Opportunity Fund I, LLC*, 2013 WL 12131260, at *3 (citation omitted) (dismissing interference claim where plaintiff merely pleaded "conclusory allegations" that defendant "contracted with numerous vendors who supply services" but did not identify specific contracts or parties).

Aetna also does not sufficiently allege that the Zealie Defendants committed intentional acts designed to induce a breach or disruption. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1157 (2003) (quotation omitted) (plaintiff must allege defendant "knew that the interference is certain or substantially certain to occur as a result of [its] action"). All Aetna could possibly allege is that Zealie was a third-party claims processor who processed the allegedly problematic claims based on the information presented to it by the Treating Entity Defendants, the same way Zealie does for all of its clients. FAC ¶ 108 (Zealie submitted the claim forms containing "misrepresentations therein that are at-issue in this suit for the treating entities"). This is insufficient to support an interference claim because it does not show an intent to interfere with Aetna's unidentified contracts. *See First Am. Cinema, LLC v. Chicken Soup for the Soul Entm't, Inc.*, 2020 WL 11025582, at *6 (C.D. Cal. Mar. 12, 2020) (dismissing interference claim where plaintiff did not allege how the allegedly tortious "action was specifically done with knowledge that it would substantially interfere with the specific contract at issue").

### iv.    Aetna's Unjust Enrichment Claim Fails Because Unjust Enrichment Is Not a Valid Cause of Action

California does not recognize a cause of action for unjust enrichment. *See Baiul-Farina v. Lemire*, 804 Fed. App'x 533, 537 (9th Cir. 2020) (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004)) ("unjust enrichment is not a cause of action under California law"); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370

(2010)) ("in California, there is not a standalone cause of action for 'unjust enrichment'"); *Blue Wing Airlines Fin. v. Unical Aviation, Inc. & Platinum Equity*, 2023 WL 3149276, at *2 n.2 (C.D. Cal. Mar. 8, 2023) ("the Court follows the more widely accepted principle that there is no separate cause of action for unjust enrichment"). Even if California recognized a cause of action for unjust enrichment, the claim would fail because Zealie was paid in arms-length transactions—by its clients, not Aetna—for the claims processing services it provided. Aetna acknowledges that this is how Zealie's business model works. FAC ¶ 40. To the extent that Aetna is able to demonstrate someone unjustly or inequitably received a benefit from Aetna, it would be the Treating Entity Defendants who supposedly billed for services not provided or that were not medically necessary. *See, e.g.*, *id.* ¶¶ 94–101. These facts do not suggest the Zealie Defendants were unjustly enriched, since the Zealie Defendants did nothing other than submit claims for reimbursement based on details provided by others.

### v.   Aetna's Money Had and Received Claim Fails Because Aetna Is Not Indebted to the Zealie Defendants

Aetna fails to properly plead a money had and received claim as to the Zealie Defendants because they fail to allege that the Zealie Defendants are indebted to them. "A cause of action for money had and received is stated if it is alleged the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Kandel v. Brother Int'l Corp.*, 2009 WL 9100406, at *1 (C.D. Cal. Feb. 13, 2009) (quoting *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 460 (1997)). "In more detail, [p]laintiffs must allege '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.'" *Id.* (quoting *Zerin*, 53 Cal. App. 4th at 460). The sum of money alleged to be indebted must be something other than "a repackaging of [plaintiffs'] damages resulting from their other claims." *Id.* Aetna merely tacks its money had and received claim onto its other claims in the FAC; it makes no effort to distinguish it from its other claims or argue that the Zealie Defendants are indebted to them. *See id.* In short, Aetna

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

does not meet any of the elements—indebtedness in a certain sum, consideration, or nonpayment. *See* FAC ¶¶ 189–94.

### vi. Aetna Fails to Allege that the Zealie Defendants Did Anything Unlawful, Unfair, or Fraudulent

The UCL "prohibits 'unfair competition,' which it broadly defined as 'any unlawful, unfair or fraudulent business act or practice'. . . ." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200). The statute is in the disjunctive—it is violated where defendant's act or practice is unlawful, unfair, or fraudulent. *See id.* Aetna has not alleged that the Zealie Defendants have done any of the above. It does not allege any unfair acts besides merely using the word "unfair". *See* FAC ¶ 188. Its allegations regarding unfair business practices are entirely about the Treatment Entity Defendants, with the only allegation about the Zealie Defendants that their "submission of claims [was] infected" by fraudulent conduct. *Id.* ¶ 186. As detailed herein, Aetna has not properly alleged fraud claims against the Zealie Defendants, and it may not then launder its insufficient fraud claims through its UCL claim. Aetna's allegations of unlawful action fail where plaintiff's predicate claim fails, its UCL claim fails as well. *See, e.g.*, *Panno v. Wells Fargo Bank, N.A.*, 2016 WL 7495834, at *10 (C.D. Cal. Apr. 1, 2016) (citing *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 558 (9th Cir. 2010)).

### III.   Aetna's Claims for Violation of RICO and Conspiracy Fail

In order to plead a claim for violation of the RICO Act, a plaintiff is required to allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)) (internal quotations omitted). Each of these elements is technical in nature and necessary to the success of a RICO claim. The Supreme Court has made clear that Congress did not intend to extend RICO liability beyond those who participate in the operation or management of a criminal enterprise through a pattern of racketeering activity. *Reves v.*

*Ernst & Young*, 507 U.S. 170, 183–84 (1993). The failure to establish any element is fatal to a RICO claim. *See, e.g.*, *Rae v. Union Bank*, 725 F.2d 478, 480–81 (9th Cir. 1984) (affirming the district court's dismissal of the plaintiff's RICO claim where plaintiff failed to meet the enterprise requirement).

Civil RICO actions are often disposed of on a motion to dismiss. *See, e.g.*, *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (dismissing RICO claim based on the lack of a RICO enterprise); *Sanchez v. One W. Bank*, 2011 WL 13224623, at *5 (C.D. Cal. Jan. 28, 2011) (dismissing RICO claims that did not meet Rule 9(b)'s heightened pleading requirements and did not allege two predicate acts with sufficient continuity and relationship). The Ninth Circuit has advised that courts "should [] strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003) (internal quotation marks omitted), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). "Courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013). In short, a "[p]laintiff's burden is high when pleading RICO allegations." *Id.*

Though the FAC contends that paragraphs 73 through 134 set forth the factual allegations in support of Aetna's RICO claim, very few of those paragraphs implicate Zealie or Mr. Beheshti and even fewer actually mention them specifically. *See* FAC ¶¶ 106–21. And even those allegations refer to entirely unrelated conduct, which does not support Aetna's RICO allegations. *See, e.g.*, FAC ¶¶ 109–12 (referring to indictments entirely unrelated to the Zealie Defendants). Other than *pro forma* recitations of the claim's elements, the FAC lacks the factual support to substantiate the legal elements of Aetna's RICO claim. The allegations assert only that Zealie was an administrative service provider to various of the treating entity defendants and fails to demonstrate the Zealie Defendants' participation in any RICO enterprise. As to Mr.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT

Beheshti, the FAC does not contain any of the requisite allegations. In short, Aetna's FAC—it's second attempt to plead these claims—continues to suffer fatal factual and legal insufficiencies.

First, Aetna has failed to properly allege the existence of a RICO enterprise. Second and relatedly, service providers are not proper defendants in RICO matters. Third, Aetna has not alleged and cannot allege that the Zealie Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). Fourth, the FAC does not allege the existence of either open-ended or closed-ended continuity. Fifth and finally, assuming the allegations in the FAC are true, Aetna has, at best, alleged a claim for fraud (which, as described above, also fails). In any event, run-of-the-mill fraud is not the same as knowingly participating in a racketeer influenced and corrupt organization (RICO). *See, e.g.*, *BSA Framing, Inc. v. Applied Underwriters, Inc.*, 2018 WL 11462083, at *8 (C.D. Cal. Feb. 27, 2018) (It is "unsurprisingly, not the law" that "every corporation facing a run-of-the-mill fraud claim" also faces a RICO claim.). Each of these issues independently warrants dismissal of the RICO claim. Taken together, the severe inherent flaws in Aetna's FAC should result in dismissal with prejudice.

### A.   Aetna Does Not Allege the Existence of a RICO Enterprise

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity," 18 U.S.C. § 1961(5), that "exists apart from the pattern of racketeering in which it engages." *Jensen v. E.F. Hutton & Co.*, 1984 WL 2392, at *3 (C.D. Cal. Jan. 26, 1984). It is an entity that is separate and apart from the individuals alleged to have participated in the RICO scheme. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1395 (9th Cir. 1986). It must also be distinct from the pattern of activity in which the criminal enterprise engages. *Id.* An "association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quotation omitted). "Such an enterprise . . . is proved by evidence of an ongoing organization,

formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 945. It "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* "In order to avoid dismissal for failure to state a claim, a [RICO] plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of [such] an enterprise." *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1475 (C.D. Cal. 1991) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)).

Aetna's allegations are conclusory and do not allege an enterprise existed separately from the participating entities and individuals. The FAC asserts, without support, that defendants "compromised [(*sic*)] an association-in-fact enterprise [that] . . . operated together to achieve a common purpose, one of which was the carrying out of racketeering activity." FAC ¶ 168. It goes on to state that the "enterprise operated together to achieve a common purpose, one of which was the carrying out of racketeering activity." *Id.* These *ipse dixit* assertions say nothing about the nature or existence of the purported enterprise. Nor do they contain *facts* showing that the defendants made up a criminal enterprise. *See Gomez*, 2015 WL 4270042, at *10 (citation omitted) ("[E]ven when an enterprise exists, it must be sufficiently distinct from the defendant as to have its own affairs independent of the defendant's affairs."); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("[A]n association-in-fact enterprise must be meaningfully distinct from the entities that comprise it such that the entity sought to be held liable can be said to have controlled and conducted the enterprise rather than merely its own affairs.").

The FAC next attempt to allege a distinct enterprise also fails. Again, Aetna merely states, in conclusory fashion, that this enterprise "operated as an ongoing organization that functioned as a continuing unit that worked to achieve an outcome that could not be achieved alone, and was created and/or used as a tool to effectuate a pattern of racketeering activity, and the Enterprise had the common purpose of doing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

the same." *Id.* ¶ 169(b). In fact, the FAC lists out five purported "different associations in fact," *id.* ¶ 170(b), but includes absolutely no explanation as to the functioning of each of these enterprises or their specific purposes. These statements are insufficient to survive dismissal. *See Gardner v. StarKist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough."). Aetna is unable to demonstrate that an association-in-fact enterprise existed because of its failure to properly plead a common criminal purpose, and continuity. *See Boyle*, 556 U.S. at 946 (a plaintiff alleging an association-in-fact enterprise must assert that the defendants comprised "a group of persons associated together for a common purpose of engaging in a course of conduct").

### B. A Service Provider like Zealie Cannot Be a Proper Defendant to a RICO Claim, and Aetna Has Not Alleged That the Zealie Defendants Participated in Any RICO Conduct

A defendant cannot be held liable under section 1962 "unless [it] has participated in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 183. Proving the "conduct" element of RICO requires that Plaintiffs establish that the Zealie Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). A defendant must "have some part in directing [the enterprise's] affairs." *Reves*, 507 U.S. at 179. "[A] defendant does not 'direct' the enterprise's affairs by 'simply being involved' or 'performing services for the enterprise.'" *In re Outlaw Lab., LP Litig.*, 2020 WL 5552558, at *8 (S.D. Cal. Sep. 16, 2020) (quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)); *see also Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (affirming dismissal of RICO claims because the court deemed the conduct "was limited to providing [] services to the limited partnership and EPA"). Nor is it "enough that [a defendant] failed to stop illegal activity" of the enterprise. *Walter*, 538 F.3d at 1248. A defendant must have participated in the "operation or management" of the enterprise's affairs by, for example, "occup[ying] a position in the chain of command" or "knowingly implement[ing] [the enterprise's] decisions." *Id.* at 1248–49.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

It is well-settled that a service provider acting pursuant to a routine commercial agreement is not a proper defendant to a RICO claim. *See, e.g.*, *Gomez*, 2015 WL 4270042, at *11 ("there has been remarkable uniformity in [the] conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client"); *see also Fraser v. Team Health Holdings, Inc.*, 2022 WL 971579, at *11 (N.D. Cal. Mar. 31, 2022) ("Courts routinely reject attempts to characterize routine commercial relationships as RICO enterprises."); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) (stating that "characterizing routine commercial dealing as a RICO enterprise is not enough"). The rationale behind this case law applies with even greater force where, as here, the company at issue is not one with specialized knowledge (as compared to, for example, an attorney or an accountant). "'[R]outine commercial relationships' such as those between a business and service provider like a bank or credit card processer also generally do not suffice to create a RICO enterprise." *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, 2021 WL 6104163, at *3 (C.D. Cal. Aug. 30, 2021) (quoting *Gomez*, 2015 WL 4270042, at *9–11) (collecting cases). Characterizing routine commercial dealing as a RICO enterprise is not enough. *See Gomez*, 2015 WL 4270042, at *11 ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client.").

Zealie "provide[s] specialized administrative billing services to the . . . Treatment Entity Defendants." FAC ¶ 40. It "handles the submission of the claim forms for [those] entities." *Id.* Aetna contends that several of the treating entity defendants "could not [have] complete[d] their scheme without the help of billing entities" because those entities actually submitted the invoices to Aetna. *Id.* ¶¶ 106, 108. This is akin to, for example, someone using their cellphone provider's cell towers to transmit information in furtherance of a RICO scheme. That would not make the cellphone provider a proper RICO defendant—the company is merely providing a service that is then arguably being abused by the customer. Zealie, which was an administrative service provider that dealt

exclusively with the finalization and submission of claims, cannot be liable for the conduct of the Treating Entity Defendants in determining what may (or may not) have been medically necessary and/or rendering treatment to the facilities' patients. The focus of the alleged scheme is on the provision of allegedly illegitimate services to patients. *Id.* ¶ 166. As a third-party billing service provider, Zealie was not involved in any aspect of patient treatment. Aetna is familiar with the manner in which billing service providers, like Zealie, operate. Billing service providers make sure that the billing codes reflected on the bills properly correspond with the treatment information provided. There can be no alteration of patient medical records by Zealie—Zealie does not have the access to do so. Zealie simply helps treating entities ensure the billing codes reflected on the claims submitted correspond with the treatments the facilities say were provided. *See, e.g.*, *id.* ¶¶ 114–18.

At best, Aetna has acknowledged that the Zealie Defendants "know what should be in medical records to receive higher reimbursements for claims." *Id.* ¶ 118. But the value of their billing services is in their industry knowledge, not their treatment knowledge. Zealie assists healthcare providers in submitting bills that accurately reflect the treatments rendered based on information customers provide. Medical billing servicers, like Zealie, are not meeting with patients, interviewing them, or making determinations about their treatment. That is not within their purview. Zealie was not responsible for the content of the bills inasmuch as they contain medical, patient-specific information. That information was provided to Zealie by the treating entities. The web link relied upon by Aetna, *see* FAC at 32 n.11, makes clear the extent of Zealie's involvement. Specifically, it states: "Our billing team audits and confirms your billing by using your electronic health records system to make sure you're reaching the medical necessity requirements." Zealie goes on to clarify its role as an administrative billing service provider, even including an example: "We inform you if you're not meeting the requirements before claims are submitted. For example, your notes may not meet the criteria for a claim. We'll identify it and bring it to your attention." In other

words, even where Zealie identifies a facial deficiency with the claims to be submitted, it merely advises its client of this issue. It does not make edits to medical records or patient data relayed to insurers like Aetna.

Thus, based on Aetna's own allegations, Zealie was not *in any way* involved in the decision of whether and how often to treat patients, nor was it privy to the determinations that certain treatments were (or were not) medically necessary. Those duties, presumably, were attributable to the treating entities. *See, e.g.*, *id.* ¶¶ 94–105 (describing the alleged actions of the Treating Entity Defendants). Given its limited, administrative role, Zealie did not have access to any of the patients and could not have participated in the scheme alleged in the FAC. This routine service provider relationship is insufficient to assert Zealie's participation in the RICO enterprise. *See Gomez*, 2015 WL 4270042, at *11 (finding RICO claim that attempted to turn a commercial relationship into a RICO enterprise deficient as a matter of law). The FAC confirms that Zealie did what is traditionally expected of a third-party billing service provider; *i.e.*, it submitted claims for reimbursement to Aetna on behalf of its customers. FAC ¶ 40.

Aetna's assertion that Zealie is splitting funds with the Treating Entity Defendants, *id.* ¶ 117, is little more than an attempt by Aetna to mislead this Court. Aetna is well aware that medical billing service providers are paid a percentage of invoices submitted and reimbursed. That is precisely what occurred here, and Aetna has failed to demonstrate otherwise. The suggestion of any improper conduct is entirely inappropriate. Aetna has failed to allege facts that would convert the relationship among Zealie and the treating entity defendants from a routine business relationship into a criminal enterprise. Aetna would have been required to allege that Zealie and the other members of the would-be enterprise had some separate common purpose. For example, in a case asserting a common purpose between vehicle manufacturers and designers to conceal vehicle defects to increase sales, the court held that the design, manufacturing, distribution, testing, and sale of the vehicles at issue simply described the "primary business activities" of the individual parties and could not show a separate common

purpose to establish a RICO enterprise. *Shaw v. Nissan North America, Inc.*, 220 F. Supp. 3d. 1046, 1056 (C.D. Cal. 2016) (citing *In re Toyota Motor Corp. UA*, 826 F. Supp. 2d 1180, 1202 (C.D. Cal. 2011)). There is no such relationship alleged here. The FAC is clear that Zealie was nothing more than a third-party company that provided billing services to the treating defendants. FAC ¶ 40.

Mr. Beheshti, the founder of Zealie, is even more removed from the purported RICO scheme. The FAC falsely asserts that he was "previously" in charge of a different defendant that "was identified as participating and submitting claims for patients obtained through illegal body brokering" in a completely unrelated matter. *Id.* ¶¶ 41–43. These allegations are untrue, and there are no allegations that connect Mr. Beheshti, directly, to the RICO scheme. Nor is there any connection between Mr. Beheshti personally and the alleged conduct of the other Defendants. It is insufficient to allege in conclusory fashion, that Mr. Beheshti "personally worked . . . to allow the furtherance of the schemes alleged." *Id.* ¶ 41. Nothing in the FAC alleges Mr. Beheshti's involvement in ***any*** predicate acts. As it relates to the Zealie Defendants, the only acts alleged were carried out by Zealie through the rendition of administrative billing services. *Id.* ¶ 176 (alleging the submission of claims constitutes the predicate acts). There is no connection between Mr. Beheshti's alleged actions and the RICO scheme. Thus, the FAC also fails to demonstrate a pattern of racketeering activity as to Mr. Beheshti.

### C.     The FAC Fails to Plead a Pattern of Racketeering Activity

A pattern of racketeering activity is comprised of two elements. First, defendants must have committed at least two predicate acts, and second, those acts must "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) (quotations omitted) (a RICO plaintiff must establish "a pattern of criminal activity" that "requires that the predicate criminal acts be related and continuous"). The Ninth Circuit has "adopted a test for [a] pattern which inquires whether the predicate

acts are sporadic or isolated. If they are isolated and sporadic, then they cannot form a 'pattern.'" *Ikuno v. Yip*, 912 F.2d 306, 309 (9th Cir. 1990) (citing *Sun Sav. & Loan v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987)). In other words, pleading the existence of a pattern of racketeering activity before this Court requires that Aetna establish both continuity of the scheme and that the participants of the scheme, including each of Zealie *and* Beheshti, have committed at least two predicate acts which are not isolated or sporadic in furtherance thereof. The failure to sufficiently allege at least two predicate acts or the element of continuity necessitates the dismissal of a RICO claim. *See, e.g.*, *Sanchez*, 2011 WL 13224623, at *5 ("Plaintiff also cannot prove that Defendant engaged in a pattern of racketeering activity because he has not alleged any facts showing two predicate acts with sufficient continuity and relationship."); *Puana v. Kealoha*, 2022 WL 17811439, at *2 (D. Haw. Dec. 19, 2022) ("Because Plaintiffs neither plausibly allege at least two predicate acts nor the element of continuity, their Civil RICO Claim . . . must be dismissed." (citation omitted)).

"Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 249 (citation omitted). Closed-ended continuity exists where a series of related predicate acts were committed over a substantial period of time. Acts that only extend "over a few weeks or months and threaten[] no future criminal conduct do not satisfy [the closed-ended continuity] requirement." *Id.* at 242. The Ninth Circuit has "recognized that RICO's continuity requirement is not satisfied if plaintiffs have merely alleged a single fraud perpetrated on a single victim." *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 360 (9th Cir. 1988) (quoting *Cal. Architectural Bldg. Prods. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987)); *see also Palantir Techs. Inc. v. Abramowitz*, 2021 WL 2400979, at *10 (N.D. Cal. June 11, 2021) (dismissing the plaintiff's complaint and finding closed-ended continuity was not sufficiently pleaded where plaintiff alleged only "a singular goal . . . against a single

victim"); *Tirgari v. Kazemipour*, 2022 WL 17724151, at *3–4 (S.D. Cal. Dec. 15, 2022) (same). Open-ended continuity exists where either the conduct is ongoing or a plaintiff can demonstrate that the misconduct "projects into the future with a threat of repetition the threat of continuing criminal activity." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citation omitted); *Allwaste*, 65 F.3d at 1528.

The FAC does not allege a pattern of racketeering activity because it does not contain allegations that would support any finding regarding the continuity of the purported scheme. First, closed-ended continuity did not exist here. Taking the allegations in the FAC as true, the only victim of the purported RICO scheme is Aetna. Though Aetna attempts to widen the scope of victims by alleging that it "was not the only victim," because "other insurers and health plans that provide similar health benefits" also received "false invoices/medical claims," Aetna does not plead additional facts to support this contention. FAC ¶¶ 74–75. Aetna's further attempt to claim, by way of a parenthetical, that "its members" were also defrauded, likewise fails given the lack of factual allegations. *Id.* ¶ 75. And, even assuming *arguendo* that other insurers and/or Aetna's members, were in fact harmed by the purported scheme, Aetna would not have standing to assert those claims on their behalf. *See Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1271 (9th Cir. 2023) ("A civil RICO 'plaintiff only has standing if, and can only recover to the extent that, ***he has been injured in his business or property*** by the conduct constituting the violation.'" (emphasis added) (quoting *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008))). This case as alleged is one where—at most—a single fraud was purportedly perpetrated on a single victim.  Continuity fails on those grounds. *See Metaxas v. Lee*, 503 F. Supp. 3d 923, 944 (N.D. Cal. 2020) (finding complaint "[did] not establish closed-ended continuity because Defendants' scheme targeted only one victim . . . with the regulatory agencies at most the merely incidental victims of the scheme").

Open-ended continuity likewise fails. There are no allegations to suggest the alleged scheme at issue is ongoing. The FAC states the exact opposite—the scheme was

discovered by Aetna (as well as several legal authorities and regulatory bodies) and has therefore concluded. *See, e.g.*, FAC ¶¶ 1, 18–19, 23, 42, 86, 96, 110. Though Aetna again attempts to misleadingly claim that the scheme is ongoing because the entities still submit claims at present, the mere submission of claims does not mean that there is "a threat of continued racketeering activity." *Id.* ¶ 173. Given the discovery of the purportedly fraudulent scheme, the fraudulent conduct and any alleged injury has necessarily ceased. Aetna therefore cannot satisfy open-ended continuity because the scheme has concluded and the illegal conduct is not open-ended. *See, e.g.*, *Zimmie v. Warner*, 2022 WL 2155970, at *3 (C.D. Cal. Feb. 15, 2022) (dismissing RICO claim that failed to satisfy the continuity requirement where the alleged conduct had ended). In any event, Zealie immediately terminated its relationship with the Young Group as a result of the allegations in this litigation.

### D. Because the RICO Claim Fails, the Conspiracy Claim Also Fails

Finally, because the substantive RICO claim fails, the conspiracy claim under section 1962(d) likewise fails. *See, e.g.*, *Smith v. U.S. Bank, N.A.*, 2011 WL 7628515, at *9 (D. Or. Oct. 26, 2011) ("[W]here the plaintiff has failed to allege the requisite substantive elements of RICO, a RICO conspiracy claim cannot stand." (citing *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 8 (9th Cir. 1992))); *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1103 (C.D. Cal. 2011) ("As plaintiffs have failed to allege an underlying RICO violation, their conspiracy claim under 18 U.S.C. § 1962(d) fails. Because plaintiffs have not adequately pled a substantive violation under § 1962(c), they cannot allege a conspiracy to violate RICO."). Aetna's failure to plead civil RICO as against the Zealie Defendants is fatal to their allegations that the Zealie Defendants participated in any conspiracy to violated RICO.

## CONCLUSION

For the foregoing reasons, Defendants Ali Beheshti and Zealie LLC respectfully request that the Court grant this Motion and dismiss the FAC against them with prejudice.[4] The Zealie Defendants further respectfully request that the Court deny Aetna leave to further amend the FAC as against the Zealie Defendants.

Dated: March 26, 2024

Respectfully submitted,

**BAKER & McKENZIE LLP**

By:   */s/ Aaron T. Goodman*
Aaron T. Goodman
BAKER & McKENZIE LLP
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Telephone: 310.201.4728
aaron.goodman@bakermckenzie.com

Nicholas O. Kennedy
BAKER & McKENZIE LLP
1900 N. Pearl Street, Suite 1500
Dallas, Texas 75201
Telephone:  214.978.3081
nicholas.kennedy@bakermckenzie.com

Attorneys for Defendants
ALI BEHESHTI and ZEALIE LLC

---

[4] "'A plaintiff seeking a preliminary injunction must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest.'" *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Aetna has failed to show that it is likely to succeed on the merits, and additionally, Aetna has not sufficiently alleged that it will suffer irreparable harm if the Court does not grant injunctive relief. "Typically, monetary harm does not constitute irreparable harm." *Williams v. Lobel Fin. Corp.*, 2023 WL 3483227, at *5 (C.D. Cal. May 15, 2023) (quotation omitted). "Economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award." *Id.* (quotation omitted). A plaintiff typically suffers irreparable harm only when it "suffers a substantial injury that is not accurately measurable or adequately compensable by money damages. . . ." *Id.* (quotation omitted). Aetna has alleged *nothing* in the FAC that would constitute irreparable harm. It has *only* alleged economic damages that can be remedied by a damage award should it prevail in this litigation. The Court should disregard Aetna's half-baked injunctive claim.