UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **2:23-cv-09654-MCS-JPR** | Date | September 25, 2024 |
|---|---|---|---|
| Title | *Aetna Life Ins. Co. v. Young* | | |

Present: The Honorable    Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER RE: MOTIONS TO DISMISS (ECF NOS. 43, 44, 47)**

Defendants Revive Premier Treatment Center, Inc., and Ani Mirzayan ("Revive Defendants") move to dismiss Plaintiffs Aetna Life Insurance Company and Aetna Health of California, Inc.'s first amended complaint. (Revive Mot., ECF No. 43.) Plaintiffs oppose, (Revive Opp'n, ECF No. 56), and the Revive Defendants filed a reply, (Revive Reply, ECF No. 61).

Separately, Defendants Nathan Young; David Young; Get Real Recovery LLC; Healing Path Detox LLC; Ocean Valley Behavioral Health, LLC; Rodeo Recovery LLC; Sunset Rehab LLC; Natural Rest House, Inc.; 55 Silver LLC; and 9 Silver LLC (together with the Adler Defendants, the "Young Defendants")[1] move to dismiss all of Plaintiffs' claims against the Young Defendants. (Young Mot., ECF

---

[1] Defendants Marc Adler; Jose Ricardo Toscano Maldonado; Helping Hands Rehabilitation Clinic, Inc.; and Joser Forever, LLC ("Adler Defendants"), are represented by separate counsel and join this motion, (Mot. Joinder, ECF No. 46), and reply, (Reply Joinder, ECF No. 60). For purposes of this motion, the Court includes the Adler Defendants in its consideration of the Young Defendants' motion.

No. 44-1.) Plaintiffs oppose, (Young Opp'n, ECF No. 55), and the Young Defendants filed a reply, (Young Reply, ECF No. 58).

Further, Defendants Ali Beheshti and Zealie LLC ("Zealie Defendants") move to dismiss all of Plaintiffs' claims against the Zealie Defendants. (Zealie Mot., ECF No. 47-1.) Plaintiffs oppose, (Zealie Opp'n, ECF No. 57), and the Zealie Defendants filed a reply, (Zealie Reply, ECF No. 59).

The Court deems this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.     BACKGROUND

As alleged in the first amended complaint, Plaintiffs administer healthcare benefit plans and policies "for medical, surgical, behavioral, and mental health services." (FAC ¶ 53, ECF No. 39.) "To obtain payment for services rendered, healthcare providers submit insurance claims by completing standard billing forms . . . ." (*Id.* ¶ 55.) Plaintiffs rely on "providers to submit accurate information and make truthful representations . . . to determine coverage and payment." (*Id.* ¶ 57.)

Plaintiffs allege that the Young Defendants and the Revive Defendants "employed an army of 'body brokers' to find patients with prized health benefit plans and get them to enroll" in Defendants' programs. (*Id.* ¶ 73.) These body brokers would use fraudulent methods to recruit patients. For example, one body broker "texted a potential patient: (i) asking if they were interested in making money to go to treatment, (ii) offering to provide drugs, and (iii) promising to pay the individual thousands of dollars to enroll in one of [the Young Defendants'] program if they 'had good insurance.'" (*Id.* ¶ 78.) Defendant Young attended drug counseling meetings, "where he targeted recently sober individuals and offered them employment and/or housing in his 'sober living homes' that were rife with drugs if they would allow him to use their insurance companies to bill for treatment." (*Id.* ¶ 79.) And "[a]t least a few body brokers provided services without regards to entities or geographic areas." (*Id.* ¶ 80.) Some patients allegedly "then became body brokers, and would be sent out into the community they were involved in prior to treatment to get patients enrolled in [the Young Defendants' and the Revive Defendants'] programs in return for payments." (*Id.* ¶ 81.)

The Young Defendants and the Revive Defendants allegedly offered kickbacks, such as free transportation, food, free or low-cost housing, and side employment to patients. (*Id.* ¶¶ 82–83.) Some patients were even offered drugs, including black tar heroin and methamphetamine. (*Id.* ¶¶ 85–86.)

Plaintiffs allege that the Young Defendants also engaged in enrollment fraud by routinely signing "patients up for plans and/or added members that did not have health coverage as dependents to the health benefit plans of other parties despite there being no dependent relationship." (*Id.* ¶ 90.)

Plaintiffs also allege that the Young Defendants and the Revive Defendants "took affirmative actions to prolong treatment and created an environment to encourage relapse," (*id.* ¶ 94), and "repeatedly moved . . . patients across providers and into different homes . . . to avoid triggering fraud detection software utilized in claims software," (*id.* ¶ 103).

The Zealie Defendants then allegedly would submit claims forms containing misrepresentations to Plaintiffs and take a portion of the illicit proceeds. (*Id.* ¶¶ 106–11.)

Plaintiffs allege that Defendants knowingly made, or caused to be made, material misrepresentations to Plaintiffs in various forms, (*id.* ¶¶ 136, 140, 142), knowing that these representations were false, (*id.* ¶ 143), and that Plaintiffs reasonably relied on these representations, (*id.* ¶ 144).

On these allegations and more, Plaintiffs bring (1) a fraud cause of action against all Defendants, (2) an aiding and abetting fraud cause of action against the Zealie Defendants, (3) a negligent misrepresentation cause of action against all Defendants, (4) an intentional interference with economic/contractual relationship cause of action against all Defendants, (5) a Racketeer Influenced and Corrupt Organizations Act ("RICO") cause of action against all Defendants, (6) a conspiracy to violate RICO cause of action against all Defendants, (7) a California Unfair Competition Law cause of action against all Defendants, (8) a money had and received cause of action against all Defendants, (9) an unjust enrichment/quantum meruit/restitution cause of action against all Defendants, (10) a restitution cause of action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), against all Defendants, and (11) a cause of action for injunctive relief pursuant to ERISA against all Defendants. (*Id.* ¶¶ 135–212.)

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the Plaintiffs plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Averments of fraudulent conduct are subject to the heightened pleading standard of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Likewise, Rule 9(b) also applies to claims where fraud is not a necessary element of the claim but where the plaintiff "allege[s] a unified course of fraudulent conduct" for the claim. *Id.* at 1103. To meet Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). And while "Rule 9(b) does not allow a complaint to merely lump multiple defendants together," it is sufficient for a plaintiff to "identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 764–65 (cleaned up). "Further, in cases such as this one, involving hundreds or thousands of alleged

---

fraudulent transactions, specifying each and every transaction with the particularity ordinarily demanded by Rule 9(b) 'is neither practical nor required.'" *Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*, No. CV-19-05395-PHX-DLR, 2022 WL 889058, at *3 (D. Ariz. Mar. 25, 2022) (quoting *Nutrishare, Inc. v. Conn. Gen. Life. Ins. Co.*, No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014)). "When dealing with thousands of instances, it is often the case that a complaint or counterclaim laying out each and every misrepresentation in detail would provide less effective notice and be less useful in framing the issues than would a shorter, more generalized version." *Id.* (quoting *Nutrishare*, 2014 WL 1028351, at *4).

## III.   REVIVE DEFENDANTS' MOTION (ECF No. 43)

### A.   Discussion

#### 1.   Shotgun Pleading

The Revive Defendants move to dismiss the complaint as an impermissible shotgun pleading. (Mot. 10–11.) "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). Such pleadings essentially "violate Rule 8(a)." *Hill v. Bd. of Dirs., Officers & Agents of Peoples Coll. of Law*, No. 2:23-cv-01298-JLS-PD, 2023 WL 9420819, at *3 (C.D. Cal. June 7, 2023). But "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see, e.g., Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV 14-03053 MWF (VBKx), 2015 WL 12777092, at *4 (C.D. Cal. Oct. 23, 2015).

The Revive Defendants are right that the allegations of the amended complaint lump the named defendants into groups. (*See generally* FAC.) But the Court perceives no pleading error where, as in *United Healthcare*, the "Revive Defendants engaged in much of the same conduct as the other defendants." (Revive Opp'n 8.) This is especially true when the amended complaint attaches a multitude of exhibits showing allegedly fraudulent claims delineated by defendant, (*see* FAC Exs. A–BB, ECF Nos. 39-1 to -28), including Defendant Revive Premier Treatment Center, (*id.* Ex. D).

---

Together, the complaint and exhibits sufficiently inform the Revive Defendants of Plaintiffs' allegations. As such, the Court declines to find the amended complaint a shotgun pleading and rejects this basis of the Revive Defendants' motion to dismiss.

2.  RICO

The Revive Defendants argue that Plaintiffs fail to state a RICO claim. (Revive Mot. 11–12.) To state a RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks omitted). "For purposes of RICO, 'racketeering activity' means: (1) 'any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year'; and (2) any act which is indictable under a number of specified federal criminal statutes." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1079 (C.D. Cal. 2009) (ellipsis in original) (quoting 18 U.S.C. § 1961(1)). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering activity." *Id.* (quoting 18 U.S.C. § 1961(5)).

Cases in which RICO claims are predicated on fraud must conform to the heightened pleading requirements of Rule 9(b). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66. When a plaintiff alleges "a unified course of fraudulent conduct," "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103–04 (citing, inter alia, *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1404–05 (9th Cir. 1996)); *see also Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003) (holding that heightened pleading standards of Rule 9(b) apply to fraud predicate acts of RICO claim); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) requirement to the "pleading . . . as a *whole*" when unfair competition law claim was "grounded in fraud"). "To avoid dismissal for inadequacy under Rule 9(b), [Plaintiffs'] complaint would need to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Edwards*, 356 F.3d

at 1066 (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1989)).

The Revive Defendants challenge all elements of the RICO claim. The Court considers each element in turn.

### a.      *Participation*

To state a RICO claim, Plaintiffs must allege that the Revive Defendants "conduct[ed] or participate[d], directly or indirectly," in a RICO enterprise. 18 U.S.C. § 1962(c). "[T]o conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (internal quotation marks and citation omitted). "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. "An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it . . . ." *Id.*

As relevant to the motion, Plaintiffs allege that the Revive Defendants employed "'body brokers' to find patients with prized health benefit plans and get them to enroll in their programs." (FAC ¶ 73.) All Defendants allegedly "freely passed patients back and forth between them seemingly at random to maximize payments." (*Id.* ¶ 46.) One of the Revive Defendants' primary partners was K.A., who "incorporated a 'marketing' company that was used as a cover for K.A.'s brokering services," "has deep connections in the industry," and "was able to obtain the identities of individuals in need of treatment who had 'good' health benefit plans that would pay top dollars for treatment at Revive." (*Id.* ¶ 76.) "This information was then used to target the patients with the best policies to enroll at Revive." (*Id.*)

One of the kickbacks the Revive Defendants offered was "free (or low cost) housing at highly desirable locations." (*Id.* ¶ 83.) One patient of the Revive

---

Defendants, B.M.,[2] allegedly received treatment with the Revive Defendants while living at housing run by the Young Defendants. (*Id.* ¶ 84.)[3]

Another kickback was employment of patients. (*Id.* ¶ 87.) Plaintiffs allege that the Revive Defendants and Young Defendants treated A.R. while the Revive Defendants contemporaneously employed A.R. (*Id.*) Several patients, including D.K. and R.H., received treatment from the Revive Defendants and Young Defendants in quick succession. (*Id.* ¶ 105.) Plaintiffs allege that the Revive Defendants were paid $549,121 from wrongful acts and include a spreadsheet detailing the alleged fraudulent claims. (*Id.* ¶ 127 & Ex. D.)

These allegations, while dispersed throughout the pleading, are enough to establish a reasonable inference that the Revive Defendants participated in the alleged RICO scheme. Plaintiffs' exhibit identifies specific alleged frauds, and the first amended complaint's specific allegations regarding patients B.M., A.R., D.K., and R.H. are examples of how the Revive Defendants participated in the alleged scheme. And the chart identifies the alleged fraudulent claims. As such, the Court is satisfied that the Revive Defendants have "been made aware of the particular circumstances for which [they] will have to prepare a defense as trial," *Advanced Reimbursement Sols.*, 2022 WL 889058, at *3, and have information "sufficient to allow Defendants to file a meaningful answer" to the first amended complaint, *State Compensation Ins. Fund v. Khan*, No. SACV 12-01072-CJC(RNBx), 2013 WL 12132027, at *4 (C.D. Cal. July 30, 2013). Thus, the Court denies this basis of the Revive Defendants' motion.

///

---

[2] Plaintiffs refer to a patient "B.H." in its opposition. (*See* Revive Opp'n 7.) Because B.H. does not appear in the first amended complaint, the Court assumes Plaintiffs refer to B.M. The Court reminds all parties of the importance of consistency, especially in this case, which features lengthy pleadings and substantial motion practice.

[3] Plaintiffs also alleged on information and belief that the Revive Defendants operated kickback housing. The Court disregards this allegation because Plaintiffs have not "adduce[d] the factual basis for that belief." *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018). While Plaintiffs argue they have, (Revive Opp'n 7–8), their citations refer back to the information-and-belief allegation in question.

b. *Enterprise*

Revive Defendants also argue that Plaintiffs "fail[] to sufficiently plead the existence of a RICO 'enterprise.'" (Revive Mot. 13.) The RICO statute defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-in-fact enterprise is . . . a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). "To establish the existence of such an enterprise, a plaintiff must provide both evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (internal quotation marks omitted). An enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue an enterprise's purpose." *Boyle*, 556 U.S. at 946.

Plaintiffs allege that the Revive Defendants employed K.A. as a body broker and worked with the other defendants to offer kickbacks. (FAC ¶¶ 76, 83–84, 87.) Plaintiffs' spreadsheet details the alleged fraudulent claims related to these kickbacks. (*Id.* Ex. D.) Plaintiffs also allege that the Defendants worked together to move patients between providers to maximize alleged fraudulent billings. (*Id.* ¶¶ 102–05.) This is sufficient to allege that the Revive Defendants were part of a "continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948. As such, the Court denies this basis of the Revive Defendants' motion.

c. *Pattern of Racketeering Activity*

The Revive Defendants argue Plaintiffs "fail[] to sufficiently allege facts that establish the Revive Defendants engaged in 'a pattern' of 'racketeering activity.'" (Revive Mot. 15–16 (quoting *Synopsys, Inc. v. Ubiquitti Networks, Inc.*, 313 F. Supp. 3d 1056, 1076 (N.D. Cal. 2018)).)

The RICO statute defines "racketeering activity" through a lengthy list of state and federal crimes, which includes mail and wire fraud. 18 U.S.C. § 1961(1). To allege mail fraud as a RICO predicate act, Plaintiffs must allege "that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399–1400

(9th Cir. 1986). "Similarly, a wire fraud violation[] consists of (1) the formation of a scheme or artifice to defraud[;] (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id.* at 1400.

"At a minimum, a 'pattern' requires that the predicate criminal acts be 'related' and 'continuous.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Continuity can be closed- or open-ended. *Id.* "'Closed-ended' continuity is established by showing that related predicate acts occurred over a 'substantial period of time.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 239). "Open-ended continuity is the threat that criminal conduct will continue into the future. It is established by showing either that the predicate acts 'include a specific threat of repetition extending indefinitely into the future' or that the predicate acts were 'part of an ongoing entity's regular way of doing business.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 239).

The Revive Defendants complain that Plaintiffs "fail[] to allege how any of the Revive Defendants' claims are supposedly fraudulent or connected in any way to a 'scheme to defraud'" and fail to allege which claims were submitted by mail and which were submitted by wire. (Revive Mot. 16.) This argument ignores Plaintiffs' allegation that all the claims in the Revive Defendants spreadsheet are fraudulent and thus grow out of to the kickback scheme, (FAC ¶ 127), and that all the claims amount to mail and wire fraud, (*id.* ¶ 172). The argument also ignores the allegations included in Plaintiffs' spreadsheet, which details hundreds of allegedly fraudulent insurance claims submitted by the Revive Defendants over a year. (*Id.* Ex. D.) This is sufficient to satisfy the Court that the pattern is at least closed-ended, if not also open-ended. (*See id.* ¶ 173.) As such, the Court denies this basis of the Revive Defendants' motion.

### d.  *Causing Injury*

Finally, the Revive Defendants argue that Plaintiffs fail to allege RICO damages attributable to the Revive Defendants because Plaintiffs do not specify which claims were fraudulently submitted. (Revive Mot. 16–17.) But Plaintiffs allege that all the claims in the spreadsheet were fraudulently submitted. (FAC ¶ 127.) As such, the Court denies this basis of the Revive Defendants' motion.

///

3.  RICO Conspiracy

The Revive Defendants' argument that the conspiracy claim must be dismissed is based solely on the argument that the underlying RICO claim must be dismissed. (*See* Revive Mot. 17.) Because the Court does not dismiss the RICO claim as noted above, the Court also does not dismiss the conspiracy claim.

4.  ERISA

The Revive Defendants argue that the Court should dismiss the ERISA claims because (1) Plaintiffs seek legal remedies, which are incompatible with an ERISA claim, (Revive Mot. 17–18); and Plaintiffs fail to state ERISA claims for (2) restitution, (*id.* at 18–19); (3) an equitable lien, (*id.* at 19–20); (4) a constructive trust, (*id.* at 20); and (5) injunctive relief, (*id.* at 20–21).

a.  *Legal Remedies*

The Revive Defendants argue that the ERISA claims should be dismissed because Plaintiffs seek legal, not equitable, remedies in the form of compensatory and punitive damages. (Revive Mot. 17–18.)

"ERISA provides for a federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan." *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000). "[T]o state a cause of action under § 1132(a)(3), an ERISA plan must 'demonstrate (1) that it is an ERISA fiduciary, and (2) that it is seeking equitable, rather than legal, relief.'" *Carpenters Health & Welfare Tr. for S. Cal. v. Vonderharr*, 384 F.3d 667, 672 (9th Cir. 2004) (quoting *Reynolds Metals Co.*, 202 F.3d at 1247).

While it is true that a plaintiff can recover only equitable remedies under ERISA, the Court is not convinced that dismissal is warranted in a case like this, where Plaintiffs join claims for legal remedies with their ERISA claim. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019), the primary case on which the Revive Defendants rely, confirms as much. In that case, the Ninth Circuit considered challenges to ERISA claims and state law fraud claims independently of each other. *Depot, Inc.*, 915 F.3d at 653, 665. In rejecting the ERISA claim, the court noted that the disgorgement remedies the plaintiff sought "were in effect legal remedies granted by an equity court" and thus improper under ERISA. *Id.* at 664 (internal quotation marks omitted). But the court did not discuss the remedies the

plaintiff sought under its state law fraud claims, which the court allowed to move forward. *Id.* at 669.

"[S]tate law claims for fraud" can "survive alongside plaintiffs' ERISA claim seeking equitable restitution," *Nutrishare*, 2014 WL 1028351, at *7, so the Court denies this basis of the Revive Defendants' motion and considers the other arguments in turn.

> b.     *Restitution*

The Revive Defendants challenge the ERISA restitution claim on two grounds not yet discussed: (1) Plaintiffs fail to adequately identify a specific fund of traceable property and (2) Plaintiffs fail to allege the underlying fraud giving rise to the restitution claim. (Revive Mot. 18–19.) For the same reasons the Court found that Plaintiffs adequately alleged the RICO claim predicated on wire and mail fraud above, the Court finds that the fraud undergirding the ERISA claim has been adequately pleaded. And Plaintiffs allege on information and belief that the fraudulent overpayments "are separately identifiable." (FAC ¶ 207.) This is sufficient at this stage, where the specific information is "within the defendant[s'] exclusive possession and control." *United States ex rel. Vatan v. QTC Med. Servs, Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018). As such, the Court denies this basis of the Revive Defendants' motion.

> c.     *Equitable Lien*

The Revive Defendants argue that the ERISA equitable lien claim should be dismissed because (1) Plaintiffs "do[] not allege Revive Defendants received recovery from a third party," (2) "recoupment of an overpayment is insufficient for the purposes of identifying a particular fund for an equitable lien," and (3) Plaintiffs "ha[ve] failed to plead that the funds remain in Revive Defendants' possession." (Revive Mot. 19 (internal quotation marks omitted).)

There are "at least three criteria for securing an equitable lien by agreement in an ERISA action." *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092 (9th Cir. 2012). "*First*, there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party." *Id.* "*Second*, the reimbursement agreement must specifically identify a particular fund, distinct from the beneficiary's general assets, from which the fiduciary will be reimbursed." *Id.* at 1092–93 (cleaned up). "*Third*, the funds

---

specifically identified by the fiduciary must be within the possession and control of the beneficiary." *Id.* at 1093 (cleaned up).

*First*, Plaintiffs argue that "recovery from a third-party . . . is not a requirement for" all equitable liens. (Revive Opp'n 12.) Rather, it was only a requirement in *Bilyeu* because *Bilyeu* dealt with a third-party recovery. (*Id.*) And equitable liens have traditionally not been restricted to recovery of third-party payments. *See* Restatement (Third) of Restitution and Unjust Enrichment § 56. The parties do not direct the Court to any controlling cases that have considered whether recovery from a third party is a requirement for all equitable liens, and the Court is aware of none. Plaintiffs direct the Court only to a district court case in which the court appeared to take as granted that the first *Bilyeu* criterion did not apply. *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 986 (C.D. Cal. 2015). Given the traditional use of equitable liens, the Court distinguishes *Bilyeu* because it dealt specifically with recovery of third-party payments, and accordingly denies this basis of the Revive Defendants' motion.

*Second*, Plaintiffs argue that the overpayment criterion is irrelevant here because, while Plaintiffs seek recoupment of an "overpayment," the "overpayment" sought is the *entire* payment, which thus was not mixed with a larger fund. (Revive Opp'n 13.) In *Bilyeu*, the Ninth Circuit found that the overpayments at issue were "not a particular *fund*, but a specific amount of money encompassed *within* a particular fund—the long-term disability benefits [plaintiff] Unum paid to Bilyeu." *Bilyeu*, 683 F.3d at 1093. "As an amount of money, the overpayment is specific." *Id.* "As property or as a fund, however, the overpayment is lacking in specificity because it is an undifferentiated component of a larger fund." *Id.* "The overpayment has never existed as a distinct object or fund." *Id.* That analysis does not apply here because Plaintiffs do not seek recovery of a "component of a larger fund." *Id.* Rather, Plaintiffs allege that the Revive Defendants made wholly fraudulent claims and seek to recoup the entirety of each payment, that is, the entire "distinct object or fund." *Id.*; *see Almony Ambulatory Surgery Ctr.*, 121 F. Supp. 3d at 987 ("United also seeks, in many instances, the entire payment made to Providers . . . . In such a situation, the problem faced with an overpayment component of a benefit distribution is seemingly no longer present."). As such, the Court denies this basis of the Revive Defendants' motion.

*Third*, Plaintiffs allege that they have "no basis or reason to believe that Defendants have dissipated the overpayments and, upon information and belief, the overpayments are separately identifiable." (FAC ¶ 207.) "At this early stage,"

Plaintiffs' "allegations are sufficient," *Almont Ambulatory*, 121 F. Supp. 3d at 988, especially given that this specific information is "within the defendants' exclusive possession and control," *Vatan*, 721 F. App'x at 663. As such, the Court denies this basis of the Revive Defendants' motion.

### d. *Constructive Trust*

The Revive Defendants argue that Plaintiffs failed to state an ERISA constructive trust claim. (Revive Mot. 20.) "[T]he requirements for establishing an equitable lien by agreement and a constructive trust are essentially the same . . . ." *In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*, No. SACV 19-2075 JVS (DFMx), 2023 WL 2808747, at *26 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–14 (2002)). The Revive Defendants do not challenge this assertion. (*See* Revive Reply 8–9.) As such, the Court denies this basis of the Revive Defendants' motion for the reasons stated above.

### e. *Injunctive Relief*

The Revive Defendants argue that Plaintiffs fail to state a claim for an injunction under ERISA because (1) Plaintiffs have failed to allege irreparable harm, (Revive Mot. 21); (2) Plaintiffs have failed to allege that a balancing of the equities would favor them, (*id.* at 21–22); and (3) Plaintiffs have failed to allege that the public interest favors an injunction, (*id.* at 22).

The Revive Defendants argue that Plaintiffs effectively concede that they cannot plead irreparable harm by seeking monetary damages for past alleged fraudulent claims. (*Id.* at 21.) But "monetary damages for past harm are an inadequate remedy for the future harm an injunction is designed to prevent," *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1206 (D. Nev. 2022), and ERISA explicitly allows plaintiffs to seek injunctions of future violations. As such, the Court denies this basis of the Revive Defendants' motion.

As for the second and third arguments, the Court declines to dismiss the claim for an injunction now when "[w]hether Plaintiffs can demonstrate that the factors governing injunctive relief weigh in their favor may be determined at a later stage." *Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1038 (E.D. Mo. 2015). As such, the Court denies these bases of the Revive Defendants' motion.

5.   State Law Claims

The Revive Defendants allege that the state law claims should be dismissed because (1) they are preempted by ERISA, (Revive Mot. 22–23); and because Plaintiffs failed to sufficiently allege claims for (2) fraud, (*id.* at 23–24); (3) negligent misrepresentation, (*id.* at 24–25); (4) intentional interference with contractual relations, (*id.* at 25); (5) unfair business practices, (*id.* at 25–26); (6) unjust enrichment, quantum meruit, and restitution, (*id.* at 26–27); and (7) money had and received, (*id.* at 27).

a.   *Preemption*

"ERISA's express preemption clause provides that ERISA preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' governed by ERISA, with exceptions not relevant here." *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) (quoting 29 U.S.C. § 1144(a)). "A law relates to a covered employee benefit plan for the purposes of [ERISA] if it (1) has a connection with or (2) reference to such a plan." *Id.* (cleaned up).

As to the second part of the test, "[i]t is plain that California fraud law does not make reference to ERISA plans, as it is a law of general applicability that neither acts immediately and exclusively upon ERISA plans, nor relies upon the existence of ERISA plans to operate." *Almont Ambulatory*, 121 F. Supp. 3d at 965 (internal quotation marks omitted).

And as to the first part, "courts must look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans." *Nutrishare*, 2014 WL 1028351, at *5 (cleaned up).

"Congress' aims in passing ERISA's preemption provision were 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.'" *Id.* at *6 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). "Otherwise, Congress feared that 'the inefficiencies created could work to the detriment of plan beneficiaries' and create a potential for conflict in substantive law." *Id.* (quoting *Ingersoll-Rand Co.*, 489 U.S. at 142)).

While the complaint contains state law claims and involves ERISA plans, the state law invoked "does not create an alternative enforcement mechanism for securing benefits under the terms of ERISA-covered plans." *Anesthesia Care Assocs.*, 187 F.3d at 1054. Rather, the state law claims have only a "tenuous, remote, or peripheral connection with covered plans." *Id.* (internal quotation marks omitted). "Where the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." *Id.* at 1051. As such, the Court denies this basis of the Revive Defendants' motion.

      b.     *Sufficiency*

At the outset, the Revive Defendants' arguments as to fraud, negligent misrepresentation, interference, unfair business practices, and money had and received are substantially duplicative of the Rule 9(b) arguments addressed above. For the same reasons, the Court denies these bases of the Revive Defendants' motion.

As for Plaintiffs' ninth claim, the Court has consistently interpreted California law to describe unjust enrichment and restitution as remedies, not standalone claims. *See Stevens v. Britax Child Safety, Inc.*, No. 2:20-cv-07373-MCS-AS, 2021 U.S. Dist. LEXIS 252732, at \*16–17 (C.D. Cal. July 13, 2021) (Scarsi, J.) (citing *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015)). That said, the Court construes the ninth claim "as a quasi-contract claim seeking restitution." *Astiana*, 783 F.3d at 762 (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Notwithstanding the Revive Defendants' argument for dismissal, Plaintiffs state a quasi-contract claim by identifying the Revive Defendants' receipt of a benefit—payment from wrongful healthcare claims—and unjust retention of the benefit at the expense of Plaintiffs. (FAC ¶¶ 196–200); *see Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).[4]

---

[4] The Revive Defendants assert that Plaintiffs do not plead their performance of services for the Revive Defendants, which is an element of a quantum meruit theory. (Revive Mot. 27 (citing *Cedars Sinai Med. Ctr. v. Mid-W. Nat'l Life Ins. Co. of Tenn.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000)).) Even if true, the theory of quasi-contract asserted in Plaintiffs' opposition brief and understood by the Court from the amended complaint does not require that element. The Court declines to parse the distinctions among these equitable theories, which would be unproductive given that

---

## B.     Conclusion

For the reasons stated above, the Court denies the Revive Defendants' motion.

## IV.     YOUNG DEFENDANTS' MOTION (ECF NO. 44)

### A.     Background

As relevant to these movants, Plaintiffs allege that the Young Defendants employed "'body brokers' to find patients with prized health benefit plans and get them to enroll in their programs." (FAC ¶ 73.) All Defendants allegedly "freely passed patients back and forth between them seemingly at random to maximize payments." (*Id.* ¶ 46.) One of the Young Defendants' body brokers was K.A., who "incorporated a 'marketing' company that was used as a cover for K.A.'s brokering services," "has deep connections in the industry," and "was able to obtain the identities of individuals in need of treatment who had 'good' health benefit plans that would pay top dollars for treatment at Revive." (*Id.* ¶ 76.)

One of the kickbacks the Young Defendants offered was "free (or low cost) housing at highly desirable locations." (*Id.* ¶ 83.)

Another kickback was employment of patients. (*Id.* ¶ 87.) Plaintiffs allege that the Young Defendants treated A.R. and C.P. while the Young Defendants contemporaneously employed A.R and C.P. (*Id.*) Several patients, including D.K. and R.H., received treatment from the Revive Defendants and Young Defendants in quick succession. (*Id.* ¶ 105.)

Plaintiffs also allege that the Young Defendants engaged in enrollment fraud by signing patients up as dependents despite there being no dependent relationship. (*Id.* ¶ 90.) Alleged examples of enrollment fraud include J.M. and R.W., who wrongfully claimed they had a dependent relationship despite having no prior relationship. (*Id.* ¶ 91.) Exhibit BB contains a list of patients associated with the enrollment fraud. (*Id.* ¶ 92.)

---

Plaintiffs have pleaded enough to sustain a prayer for restitution under a theory of money had and received or quasi-contract.

Plaintiffs allege that the Young Defendants were paid approximately $39 million from wrongful acts and include spreadsheets detailing the alleged fraudulent claims. (*Id.* ¶¶ 124–26, 128–32 & Exs. A–C, E–I.)[5]

## B.   Discussion

Most of the Young Defendants' arguments mirror the Revive Defendants'. (*See* Young Mot. 10–27.) The Court notes that the allegations pertaining to the Young Defendants are more fulsome than those pertaining to the Revive Defendants. Thus, for the same reasons that the Court denies the Revive Defendants' motion, the Court denies the mirror arguments in the Young Defendants' motion.[6]

What remains are the Young Defendants' distinct arguments why the fraud-based claims fail: (1) that Plaintiffs fail to allege materiality and reasonable reliance, (*id.* at 12–13); (2) that Plaintiffs fail to allege which misrepresentations fraudulently induced which payments, (*id.* at 13); and (3) that Plaintiffs fail to allege enrollment fraud, (*id.* at 20).

Each argument is based on Plaintiffs' purported failure to meet the Rule 9(b) standard as to each topic. Given the details alleged and recounted above, the Court finds that in a case "such as this one, involving hundreds or thousands of alleged fraudulent transactions, specifying each and every transaction with the particularity ordinarily demanded by Rule 9(b) 'is neither practical nor required.'" *Advanced Reimbursement Sols.*, 2022 WL 889058, at *3 (quoting *Nutrishare*, 2014 WL 1028351, at *4). As such, the Court denies these bases of the Young Defendants' motions.

///

---

[5] The Young Defendants filed a request for judicial notice of certain documents. (RJN, ECF No. 44-2.) Because the Court need not rely on the documents to decide the motion, the Court declines to take judicial notice. *See Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016).

[6] The Young Defendants also challenge Plaintiffs' pleading of theories of fraud based on the cost shares, actions to prolong treatment, and violations of laws and regulations. (Young Mot. 18–19.) Because the Court finds that the body brokering and kickback theories are sufficient to sustain the claim, the Court does not address these arguments.

### C.      Conclusion

For the reasons stated above, the Court denies the Young Defendants' motion.

## V.      ZEALIE DEFENDANTS' MOTION (ECF No. 47)

### A.      Background

As relevant to these movants, Plaintiffs allege that the Zealie Defendants worked with the Young Defendants to submit most of the fraudulent claims to Plaintiffs. (FAC ¶¶ 40–41.) Defendant Beheshti, who owns Defendant Zealie, allegedly owned Defendant Get Real Recovery and sold it to Defendant Young. (*Id.* ¶ 43.) After the sale, the Zealie Defendants allegedly continued to provide billing services to the Young Defendants. (*E.g., id.* ¶¶ 43, 108, 113, 117.) The Zealie Defendants would submit the claim forms containing actual misrepresentations to Plaintiffs. (*Id.* ¶ 108.) The Zealie Defendants would also consult with the Young Defendants and prioritize their business. (*Id.* ¶ 114.) Plaintiffs allege on information and belief that the Zealie Defendants directed the Young Defendants on how to doctor medical records to increase payment amounts. (*Id.* ¶ 118.) Plaintiffs allege on information and belief that the Zealie Defendants were aware of or aided in the fraudulent conduct. (*Id.* ¶¶ 142–43.)

### B.      Discussion

The Zealie Defendants move to dismiss (1) the fraud, aiding and abetting fraud, interference, quasi-contract, money had and received, and unfair competition claims, (Zealie Mot. 6–13); and (2) the RICO and RICO conspiracy claims, (*id.* at 13–24). The Court considers each argument in turn.

> 1.      <u>Fraud, Aiding and Abetting, Interference, Quasi-Contract, Money Had and Received, Unfair Competition</u>

The Court dismisses the fraud, aiding and abetting, interference, quasi-contract, money had and received, and unfair competition claims asserted against the Zealie Defendants for failing to meet the requirements of Rule 9(b). While, as noted above, Plaintiffs' amended complaint specifies that their spreadsheet exhibits contain the fraudulent claims as to the Young Defendants and Revive Defendants, the complaint alleges only that the Zealie Defendants submitted "a majority of the bills to" Plaintiffs. (FAC ¶ 41.) This, combined with the numerous spreadsheets

---

containing thousands of claims, fails to give the Zealie Defendants notice of the specific alleged fraudulent statements it made or facilitated. As such, it is unclear which statements constitutes the Zealie Defendants' alleged frauds, which third parties the Zealie Defendants tortiously interfered with, and which payments the Zealie Defendants unjustly retained. While the Court would not require Plaintiffs to allege "each and every misrepresentation in detail," *Nutrishare*, 2014 WL 1028351, at *4, they must still give the Zealie Defendants fair notice of which of these myriad fraudulent statements are among the "majority" attributable to them.

In their opposition, Plaintiffs argue that the amended complaint's exhibits A, C, E, F, and H, are all claims the Zealie Defendants submitted. (Zealie Opp'n 7–9.) That identification might suffice to give the Zealie Defendants notice, but the Court cannot consider this limitation, which was raised in the motion briefing. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). As such, the Court dismisses Plaintiffs' fraud, aiding and abetting, interference, quasi-contract, money had and received, and unfair competition claims against the Zealie Defendants. Because this deficiency could be cured by additional factual material, dismissal is with leave to amend.

### 2. RICO and RICO Conspiracy

As for the RICO claims, the Zealie Defendants argue that Plaintiffs fail to (1) allege the existence of a RICO enterprise, (Zealie Mot. 15–17); (2) the Zealie Defendants' participation in the RICO conduct, (*id.* at 17–21); and (3) a pattern of racketeering activity as to the Zealie Defendants, (*id.* at 21–24).

*First*, Plaintiffs allege that all Defendants were an association-in-fact enterprise with an ascertainable structure and purpose beyond just the fraud. (FAC ¶ 168.) Plaintiffs also allege that the Zealie Defendants worked with the Young Defendants in part to put the alleged frauds into effect. (*See, e.g.*, *id.* ¶¶ 116–18.) The Zealie Defendants take issue that the allegations "do not allege an enterprise existed separately from the participating entities and individuals." (Zealie Mot. 16.) The Zealie Defendants ask too much; what the amended complaint alleges is sufficient. *See Odom*, 486 F.3d at 551 ("To require that an associated-in-fact-enterprise have a structure beyond that necessary to carry out its racketeering activities would be to require precisely what the [Supreme] Court in *Turkette* held that RICO does *not* require."). As such, the Court denies this basis of the Zealie Defendants' motion.

*Second*, the Zealie Defendants argue that they are only a service provider acting pursuant to "a routine commercial agreement." (Zealie Mot. 17–18.) Plaintiffs allege more. For example, Plaintiffs allege that the Zealie Defendants consulted with the Young Defendants on how to doctor medical records to increase payment amounts. (*Id.* ¶¶ 114, 118.) As such, the Zealie Defendants, as alleged, are not just innocent service providers, and the cases the Zealie Defendants cite are distinguishable. *See Advanced Reimbursement Sols.*, 2022 WL 889058, at \*2, 8 (denying billing entity's motion to dismiss on similar ground).

But *third*, the Court cannot ascertain on the current pleadings whether the Zealie Defendants' alleged fraudulent submissions qualify as a pattern for the same reason that it dismisses the non-RICO claims above. Plaintiffs allege that the Zealie Defendants submitted "a majority of" the Young Defendants' bills to Plaintiffs but do not identify which specific submissions the Zealie Defendants made. (FAC ¶ 41.) As such, the Court dismisses the RICO claim on this ground with leave to amend.[7]

## C.   Conclusion

For the reasons stated above, the Court dismisses all claims against the Zealie Defendants. Given the "extreme liberality" with which leave must be granted, *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (internal quotation marks omitted), the Court grants Plaintiffs leave to amend.

## VI.   CONCLUSION

The Court denies the Revive Defendants' and the Young Defendants' motions and grants the Zealie Defendants' motion. All claims against the Zealie Defendants are dismissed with leave to amend.

///

---

[7] Because the Court dismisses the RICO claim, it also dismisses the RICO conspiracy claim with leave to amend.

Plaintiffs may file an amended complaint within 14 days if they can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order. Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion. The Revive Defendants and the Young Defendants shall answer the second amended complaint within 14 days after it is filed. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**