JOHN J. SHAEFFER (SBN 138331)
    JShaeffer@FoxRothschild.com
MATTHEW FOLLETT (SBN 325481)
    MFollett@FoxRothschild.com
BENJAMIN MCCOY (*PRO HAC VICE*)
    BMcCoy@FoxRothschild.com
ALBERTO LONGO (*PRO HAC VICE*)
    Alongo@FoxRothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorneys for Plaintiffs/Counterclaim Defendants
AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC., AND DAVID ERICKSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATHAN SAMUEL YOUNG a/k/a PABLO LOPEZ; DAVID YOUNG a/k/a SANCHO LOPEZ; JOSE RICARDO TOSCANO MALDONADO; ALI BEHESHTI; MARC ADLER; ANI MIRZAVAN; ZEALIE LLC; HELPING HANDS REHABILITATION CLINIC, INC; JOSER FOREVER LLC; GET REAL RECOVERY LLC; REVIVE PREMIER TREATMENT CENTER, INC.; HEALING PATH DETOX LLC; OCEAN VALLEY BEHAVIORAL HEALTH, LLC; RODEO RECOVERY LLC; SUNSET REHAB LLC; NATURAL REST HOUSE, INC; AND JOHN DOES 1 THROUGH 50, AND ABC CORPS. 1 THROUGH 50. <br><br> Defendants. | Case No. 23-CV-09654-MCS-MCS <br><br> **AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC., AND DAVID ERICKSON'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** <br><br> Date:    March 3, 2025 <br> Time:    9:00 A.M. <br> Judge:   Hon. Mark C. Scarsi <br> Complaint Filed: November 14, 2023 <br> Trial Date: None set |

1  GET REAL RECOVERY, INC.;
   HEALING PATH DETOX LLC;
2  OCEAN VALLEY BEHAVIORAL
   HEALTH, LLC; SUNSET REHAB
3  LLC; HELPING HANDS
   REHABILITATION CLINIC, INC.
4  AND JOSER FOREVER LLC,

5
                    Counterclaimants,
6
   v.
7

8  AETNA LIFE INSURANCE
   COMPANY; AETNA HEALTH OF
9  CALIFORNIA, INC.; DAVID
   ERICKSON; ROES 1-10,
10

11                Counterclaim Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

    I.    Relevant Industry Background ................................................................ 3

    II.    Factual and Procedural Overview ........................................................... 3

LEGAL STANDARD ........................................................................................ 4

LEGAL ARGUMENT......................................................................................... 5

    I.    Counts III, VII, and VIII for Breach of Health Benefit Plans Fail Because the Youngs Do Not Have Standing, Fail to Identify the Plans and Terms Allegedly Breached, and Fail to Plead Exhaustion........................................................................................... 5

        A.    The Youngs Do Not Adequately Allege Standing ...................... 5

               1.    The Alleged Assignments Did Not Assign the Right to Receive Injunctive Relief (Count VIII) ........................ 6

               2.    The Alleged Assignments are Not Valid ........................... 6

        B.    The Youngs Fail to Identify the Terms of the Plans that Were Breached........................................................................ 7

        C.    The Youngs Fail to Plead Exhaustion ......................................... 8

        D.    Count III for Breach of Non-ERISA Plans Fails for the Same Reasons as the ERISA Counts........................................... 9

    II.    The Remaining State Law Claims (Counts 1-2, 4-9) Are Preempted by ERISA ...................................................................... 9

    III.    Preemption Aside, the State Law Claims Fail as a Matter of Law....... 10

        A.    The Fraud (Count I) and Negligent Misrepresentation (Count II) Causes of Action Are Barred by the Economic Loss Rule, Fail to Meet the Requirements of Rule 9(b), and Fail to Allege Justifiable Reliance ...................................... 10

               1.    The Economic Loss Rule Bars Claims for Fraud and

Negligent Misrepresentation ............................................. 10

2.    The Youngs Cannot Plead a Misrepresentation or

Justifiable Reliance............................................................. 11

3.    The Youngs Fail to Meet the Rule 9(b) Standard ............ 13

4.    The Negligent Misrepresentation Claim Fails for the

Additional Reason that Such Claims Do Not Apply

to Future Conduct............................................................. 14

B.    Count IV for Breach of Implied Contract Fails for Lack of

an Enforceable Promise and Lack of Consideration .................. 14

C.    Count V for Breach of Implied Covenant of Good Faith

and Fair Dealing Fails Because There is Not a Contract

and it is Duplicative of Counts III and IV .................................. 15

D.    Count VI for Promissory Estoppel Fails to Allege a Clear

and Unambiguous Promise or Reasonable Reliance .................. 16

E.    In Addition to Lack of Standing, Count VIII for an

Injunction Fails Because it is Not a Cause of Action and it

Improperly Seeks Remedies Available under Section

502(a)(1) ...................................................................................... 18

F.    Count IX for Unfair Competition Fails for Lack of

Standing and Failure to Allege an Underlying Violation........... 19

CONCLUSION.................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*,
No. 20-55821, 2022 WL 187849 (9th Cir. Jan. 20, 2022) ............................... 7, 9

*ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*,
No. 22-55631, 2023 WL 6532648 (9th Cir. Oct. 6, 2023)................................. 8

*ABC Servs. Grp. v. Health Net of California, Inc.*,
No. 19-00243, 2020 WL 2121372 (C.D. Cal. May 4, 2020) ............................ 17

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
99 F. Supp. 3d 1110 (C.D. Cal 2015)................................................................. 7

*Alta Bates Summit Medical Center v. United of Omaha Life Ins. Co.*,
No. 07-04224, 2009 WL 1139584 (N.D. Cal. Apr. 28, 2009) .......................... 18

*Alvarez v. Chevron Corp.*,
No. 09-3343, 2009 WL 5552497 (C.D. Cal. Sept. 30, 2009), *aff'd*,
656 F.3d 925 (9th Cir. 2011) ........................................................................... 16

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Ct.*,
46 Cal. 4th 993 (2009)...................................................................................... 19

*Apollo Grp., Inc. v. Avnet, Inc.*,
58 F.3d 477 (9th Cir. 1995) .............................................................................. 10

*Aquilina v. Certain Underwriters at Lloyd's*,
407 F. Supp. 3d 978 (D. Haw. 2019) ........................................................... 12, 13

*Armijo v. ILWU-PMA Welfare Plan*,
No. 15-01403, 2015 WL 13629562, C.D. Cal. Aug. 21, 2015 ........................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 4

*Audigier Brand Management v. Perez*,
No. 12-5687, 2012 WL 5470888 (C.D. Cal. Nov. 5, 2012)............................... 11

*Avanguard Surgery Center, LLC v. Cigna Healthcare of California, Inc.*,
   No. 20-03405, 2020 WL 5095996 (C.D. Cal. Aug. 28, 2020) ......................... 17

*Bates v. Blue Shield of California*,
   No. 18-02225, 2019 WL 2177641 (C.D. Cal. May 17, 2019) ........................... 8

*Baymiller v. Guarantee Mutual Life Co.*,
   No. 99-1566, 2000 WL 1026565 (C.D. Cal. May 3, 2000) .............................. 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 4

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
   103 F.4th 597 (9th Cir. 2024) .................................................................... 10

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................................... 5, 13

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*,
   No. 17-01801, 2017 WL 6030260 (C.D. Cal. Nov. 27, 2017) .................... 15, 17

*Choppel v. Lab. Corp. of Am.*,
   232 F.3d 719 (9th Cir. 2000) ....................................................................... 8

*Community Hospital of the Monterey Peninsula v. Aetna Life Insurance Company*,
   119 F. Supp. 3d 1042 (N.D. Cal. 2015) ..................................................... 14

*Creative Care, Inc. v. Connecticut General Life Insurance Company*,
   No. 16-9056, 2017 WL 5635015 (C.D. Cal. 2017) ......................................... 6

*Dariush v. 55 Silver*,
   Case No.: 24STCV23062 (filed September 9, 2024 Los Angeles County) ...................................................................................................... 2

*DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*,
   852 F.3d 868 (9th Cir. 2017) ....................................................................... 6

*Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust*,
   50 F.3d 1478 (9th Cir.1995) ....................................................................... 9

*Farkas v. Blue Cross and Blue Shield of Michigan*,
   803 F. Supp. 87 (E.D. Mich. 1992) ........................................................... 13

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
    21 Cal. App. 4th 1586 (Cal. Ct. App. 1994)........................................................16

*Fumatex Inc. v. Tafford Uniforms LLC*,
    No. 02508, 2013 WL 12205632 (C.D. Cal. 2013) ..............................................11

*Grenell v. UPS Health & Welfare Package*,
    390 F. Supp. 2d 932 935 (C.D. Cal. 2005).............................................................9

*Guessous v. Chrome Hearts, LLC*,
    179 Cal. App. 4th 1177 (Cal. Ct. App. 2009)........................................................18

*Keith Feder, M.D., Inc. v. Aetna Life Ins. Co.*,
    No. 23-07026, 2024 WL 1641987 (C.D. Cal. Mar. 4, 2024).............................20

*Kirsten W. v. California Physicians' Service*,
    No. 19-00710, 2021 WL 83264 (D. Utah Jan. 11, 2021)...................................19

*Korman v. ILWU-PMA Claims Office*,
    No. 18-07516, 2019 WL 1324021 (C.D. Cal. Mar. 19, 2019)..............................7

*Laks v. Coast Fed. Sav. & Loan Assn.*,
    60 Cal. App. 3d 885 (Cal. Ct. App. 1976)......................................................16, 18

*Langan v. United Servs. Auto. Ass'n*,
    69 F. Supp. 3d 965 (N.D. Cal. 2014).....................................................................9

*Marchioli v. Pre-employ.com, Inc.*,
    No. 17-1566, 2017 WL 8186761 (C.D. Cal. June 30, 2017) ..............................12

*McCall v. Burlington Northern/Santa Fe Co.*,
    237 F.3d 506 (5th Cir. 2000) ...............................................................................19

*Miron v. Herbalife Int'l, Inc.*,
    11 F. App'x 927 (9th Cir. 2001).............................................................................9

*Neurological Surgery, P.C. v. Aetna Health Inc.*,
    511 F. Supp. 3d 267 (E.D.N.Y. 2021).....................................................................3

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ............................................................................................10

*Oneto v. Watson*,
    No. 22-05206, 2024 WL 2925310 (N.D. Cal. June 10, 2024)............................20

*Oracle USA, Inc. v. XL Global Services, Inc.*,
  No. 09-00537, 2009 WL 2084154 (N.D. Cal. July 13, 2009).......................... 11

*Orthopedic Specialists of S. Cal. v. Public Employees' Retirement
System*,
  228 Cal. App. 4th 644 (Cal. Ct. App. 2014)........................................ 15

*Pacific Bay Recovery Inc. v. California Physicians' Servs. Inc.*,
  12 Cal. App. 5th 200 (Cal. Ct. App. 2017)..................................... 15, 17

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (Ca. 2004) ...................................................... 11

*Ryan S. v. United Health Group*,
  No. 19-1363, 2022 WL 281310 (C.D. Cal. July 14, 2022) .......................... 19

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) .................................................... 12

*Soil Retention Products, Inc. v. Brentwood Indus., Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021) ........................................... 11

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona,
Inc.*,
  770 F.3d 1282 (9th Cir. 2014) ................................................. 5, 6

*Stolte v. Securian Life Ins. Co.*,
  621 F. Supp. 3d 1034 (N.D. Cal. 2022)............................................ 9

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015)........................................... 11

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir.2010) ..................................................... 5

*US Ecology, Inc. v. State*,
  129 Cal.App.4th 887 (Cal. Ct. App. 2005) ...................................... 16

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ............................................................ 18

*Villalobos v. Blue Shield of California Life and Health Ins. Co.*,
  No. 21-6375, 2022 WL 341134 (C.D. Cal. Jan. 4, 2022) ............................ 8

*Walters v. Nathan Young,*
  Case No.: 23SMCV05730 (filed December 7, 2023, Los Angeles
  County) ..................................................................................... 2

*Wound Care Consultants of America, Inc. v. Health Care Service
  Corp.,*
  No. 2164, 2022 WL 209562 (N.D. Tex. Jan. 24, 2022) ......................... 12

**Statutes**

29 U.S.C. § 502(a)(1)(B) .................................................................. 5, 19

29 U.S.C. § 502(a)(3) .................................................................. 18, 19

29 U.S.C. § 1132(a)(1)(B) ..................................................................... 5

29 U.S.C. § 1133 ..................................................................................... 9

29 U.S.C. § 1144(a) ............................................................................... 10

42 U.S.C. § 1395(e) ............................................................................... 13

Cal. Bus. & Prof. Code § 17204 ........................................................... 19

Health & Saf. Code § 1345(f) ............................................................... 20

Health & Saf. Code § 1367.01 .............................................................. 20

Health & Saf. Code § 1371 .................................................................... 20

Health & Saf. Code § 1371(b) ............................................................... 20

Health & Saf. Code § 1371.35(d) .......................................................... 21

Health & Saf. Code § 1371.35(g) .......................................................... 20

Health & Saf. Code § 1374.22 ............................................................... 21

Knox-Keene Act, Health & Saf. Code §§ 1340 *et seq.* ........................ 20

Parity Act, Pub. L. 110-343 .................................................................. 19

**Court Rules**

Fed. R. Civ. P. 9(b) .................................................................. 5, 10, 13, 14

Fed. R. Civ. P. 12(b)(6) ........................................................................... 4

## **INTRODUCTION**

As set forth in Aetna's Complaint, the Youngs have perpetrated an egregious fraudulent scheme targeting vulnerable substance use disorder ("SUD") patients.[1] They paid numerous body brokers to hunt down individuals needing SUD treatment and then induced those individuals to enroll in their programs through kickbacks in the form of, *inter alia*, cash and free living in homes that were little more than drug dens. Once in the programs, the Youngs then billed Aetna for "treatment" that was either non-existent or substandard. If the members did not have a health benefits plan, the Youngs figured out a way to enroll them in one. All the while, the Youngs took actions to prolong treatment, avoid detection, and maximize the payments they received.

Things have seemingly only gotten worse since Aetna filed this lawsuit. California (finally) suspended the licenses of some of the Youngs' facilities.[2] Lawsuits against the Youngs have proliferated across California from injured

---

[1] "Aetna" refers to Plaintiffs-Counterclaim Defendants Aetna Life Insurance Company, Aetna Health of California, Inc. and Counterclaim Defendant David Erickson. "The Youngs" refers to all Defendants/Counterclaim Plaintiffs, which are identified in the Counterclaims as: Get Real Recovery, Inc. ("Get Real Recovery"), Healing Path Detox LLC ("Healing Path"), Ocean Valley Behavioral Health, LLC ("Ocean Valley"), Sunset Rehab LLC ("Sunset Rehab"), Helping Hands Rehabilitation Clinic, Inc. ("Helping Hands"), and Joser Forever LLC ("Joser Forever"). All of these entities are ultimately owned and controlled by Defendant Nathan Young.

[2] https://www.dhcs.ca.gov/provgovpart/SUD-LCR/Pages/SUS-REV-NOV.aspx (listing Rodeo Recovery LLC's license as revoked on 1/3/2025).

landlords,[3] patients,[4] and ex-employees.[5] And a veritable avalanche of public warnings about the Youngs have been raised from coast to coast. Delaware issued a "Scam Alert" to warn potential SUD patients away from the Youngs' preying eyes[6] while multiple media outlets have reported on the chaos Youngs' scheme has wrought on California neighborhoods.[7] Most concerning of all are reports of numerous patients dying on the Youngs' watch.[8]

Against this backdrop – and after making tens of millions from their scheme already – the Youngs now file counterclaims against Aetna seeking even more money; characterizing themselves as white knights that were subject to a "sham" investigation by an insurance company. Stripped of their rhetoric and redundancies – the adjective "sham" is used _**75**_ times – the Youngs' counterclaims are based on the illogical notion that Aetna promised to pay the Youngs by notifying them they were being audited and demanding medical records. Suffice to say, it is fanciful to suggest that a promise to pay arises from being given notice of an investigation arising out of concerns about claims. The Court should dismiss the Youngs' counterclaims with prejudice.

---

[3] https://www.mercurynews.com/2024/12/30/are-real-estate-markets-warped-by-sober-homes-paying-top-dollar/. *See also, e.g.*, *Walters v. Nathan Young*, Case No.: 23SMCV05730 (filed December 7, 2023, Los Angeles County)

[4] https://insurancenewsnet.com/oarticle/especially-disgusting-former-workers-patients-level-accusations-at-addiction-treatment-empire

[5] *See, e.g.*, *Dariush v. 55 Silver*, Case No.: 24STCV23062 (filed September 9, 2024 Los Angeles County)

[6] https://www.ocregister.com/2024/06/12/scam-alert-issued-by-delaware-targeting-california-addiction-treatment/

[7] https://www.latimes.com/california/story/2024-05-21/los-angeles-residents-say-illegal-hostels-are-disrupting-their-quality-of-life.

[8] https://www.ocregister.com/2024/11/10/addicts-came-to-southern-california-from-afar-to-get-sober-they-wound-up-dead/

# BACKGROUND

## I.    RELEVANT INDUSTRY BACKGROUND

Aetna acts as both a health insurer and a health plan administrator. As an insurer, Aetna offers fully insured health plans under which it agrees to pay for covered healthcare claims in return for the payment of premiums by plan members and their employers. Aetna also acts as an administrator for self-funded, employer-established health plans, through which employers pay for covered claims out of their own funds, while Aetna performs certain "administrative" tasks such as claims processing. In both capacities, individuals and employers hire Aetna to help control healthcare costs, improve member health outcomes, and thwart fraudulent, wasteful, and abusive billing practices.

Individuals covered by health plans insured or administered by Aetna are referred to as Aetna "members." The Youngs are "out-of-network" with respect to Aetna. Ctrclm. (Dkt. 74) ¶ 50. In contrast to an "in-network" provider, the Youngs have no contract with Aetna relating to any matter, including reimbursement for services the Youngs render to Aetna members. *See* FAC (Dkt. No. 39) ¶¶ 59-63 (describing in-network vs. out-of-network coverage); *see also Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 275 (E.D.N.Y. 2021) (discussing the pre-determined, contractual rates between Aetna and its in-network providers).

## II.    FACTUAL AND PROCEDURAL OVERVIEW

Aetna initiated this action with the filing of a Complaint against the Youngs and two other sets of defendants.[9] As mentioned above, Aetna's claims are based upon a years-long fraudulent scheme. The Youngs fraudulently enrolled individuals in Aetna health plans, paid kickbacks to body brokers to find patients and traffic them

---

[9] The "Revive Defendants" are Ani Mirzayan and Revive Premier Treatment Center. They have filed an Answer in this case. Aetna voluntarily dismissed the Zealie Defendants from this matter.

to the Youngs' programs, and then paid kickbacks to the patients to induce them to stay in their programs. Once enrolled, the Youngs then took action to keep them in treatment. Based upon this, Aetna brought claims under RICO, ERISA, and state law. All Defendants filed Motions to Dismiss, which the Court denied for the defendants remaining in this case.

The Youngs then filed an Answer with Counterclaims. Ctrclm. (Dkt. 74). They assert direct claims against Aetna in their own capacity and claims as assignees of their patients. As to the direct claims, the Youngs assert that Aetna committed fraud when Aetna conducted a "sham audit," which the Youngs contend amounted to a guarantee of payment if they provided the information Aetna requested. They also contend that Aetna has a "no authorization required" policy that enables the Youngs to provide treatment without prior authorization from Aetna. According to the Youngs, this policy also created a binding payment obligation. As to the assignee claims, the Youngs assert their patient's executed assignment of benefit forms that give them standing to seek benefits under the terms of the patient's health benefit plans.

## **LEGAL STANDARD**

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations that "raise a right to relief above the speculative level." *Id.* The complaint must include "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim must be "plausible on its face" meaning "the Plaintiffs plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The analysis of whether a complaint satisfies the plausibility standard is a "context-specific tasks that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When a complaint contains allegations relating to fraud, this standard is even higher, requiring a plaintiff to plead its allegations with the requisite particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In order to satisfy this exacting standard, a plaintiff "must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about the purportedly fraudulent statement, and why is it false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010)).

## LEGAL ARGUMENT

I. COUNTS III, VII, AND VIII FOR BREACH OF HEALTH BENEFIT PLANS FAIL BECAUSE THE YOUNGS DO NOT HAVE STANDING, FAIL TO IDENTIFY THE PLANS AND TERMS ALLEGEDLY BREACHED, AND FAIL TO PLEAD EXHAUSTION

### A.    The Youngs Do Not Adequately Allege Standing

By its terms, ERISA only provides standing to plan members. 29 U.S.C. §§ 1132(a)(1)(B), 502(a)(1)(B). Nevertheless, courts have made a limited exception to this standing requirement for providers that have been validly assigned a members' benefits. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014). A valid assignment does not exist if a plan has an anti-assignment clause. *Id.* at 1296 ("an anti-assignment provision in the [plan] prevented [the provider's] patients from assigning claims under that [p]lan").

Here, the Youngs contend that their patients "assigned direct payment of their insurance benefits to Providers and executed a standard assignment of benefits contract." Ctrclm. (Dkt. 74) ¶ 158. In support, they rely upon two exemplar assignments that purport to assign the right to receive payment under insurance

1  contracts. *See* Alleged AOB Forms (Ex. A, B).[10] As explained below, these
2  assignments are insufficient to confer standing.

3      *1.    The Alleged Assignments Did Not Assign the Right to Receive*
4          *Injunctive Relief (Count VIII)*

5      As an initial matter, these assignments do not assign the right to seek the
6  injunctive relief set forth in Count VIII or any other relief aside from claims payments.
7  Indeed, "[w]hether an assignee has standing to sue under ERSIA depends on whether
8  the claims at issue are within the scope of the assignments." *See Creative Care, Inc.*
9  *v. Connecticut General Life Insurance* Company, No. 16-9056, 2017 WL 5635015,
10 at *2 (C.D. Cal. 2017) (granting motion to dismiss because the plaintiff "neither
11 quotes from the purported assignment's langue nor does it attach a copy of any
12 agreement containing the alleged assignment"). To make such a determination, a
13 Court "must look to the language of an ERISA assignment itself." *Id.* at *2. As the
14 Ninth Circuit previously made clear, an assignment of the right to receive direct
15 payments does ***not*** include the right to sue for injunctive relief or fiduciary breaches.
16 *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 877
17 (9th Cir. 2017) ("there is no doubt that this authorization does not encompass the
18 Center's claims for declaratory and injunctive relief with regard to offsetting of
19 overpayments against largely unrelated claims, or for breach of fiduciary duty").
20 Thus, Count VIII and any other relief under ERISA aside from that seeking benefit
21 payments must be dismissed as outside the scope of the assignment.

22      *2.    The Alleged Assignments are Not Valid*

23     It is axiomatic that an assignment is not valid where the member's plan has an
24 anti-assignment clause. *Spinedex*, 770 F.3d at 1296. Thus, even assuming, *arguendo*,

25
_____

26 [10] The two exemplars were not exhibits to the Counterclaims. However, during the
   meet and confer process, the parties agreed that the exemplars were integral to the
27 Counterclaims and could be addressed in a motion to dismiss. McCoy Decl. ¶ 5. The
28 assignments are attached hereto as Exhibits A and B.

that the assignment of the right to receive payment is sufficient to assign the right to sue under ERISA, the Youngs still do not have standing because the assignments are not **_valid_**. Both exemplar patients were enrolled in the same plan, which is attached hereto as Exhibit C. That Plan contains an unambiguous anti-assignment clause:

> Coverage and your rights under this plan may not be assigned. Notwithstanding the foregoing, the Plan may choose direction to remit payments directly to health care providers with respect to covered services rendered to you, but only as a convenience to Plan participants. Health care providers are not, and shall not be construed as, either "participants" or "beneficiaries" under this plan and have no rights to receive benefits from the plan under any circumstances.

Plan (Ex. C) at p. 66. Accordingly, because the Youngs have not identified **_any valid_** assignments, their ERISA claims fail.

## B.    The Youngs Fail to Identify the Terms of the Plans that Were Breached

"As a general principle, a plaintiff bringing a lawsuit seeking benefits under an ERISA plan must identify **_a specific plan term_** that confers the benefit in question." *Korman v. ILWU-PMA Claims Office*, No. 18-07516, 2019 WL 1324021, at *12 (C.D. Cal. Mar. 19, 2019) (emphasis added). This means that the plaintiff must identify the specific terms in each members' plan "providing coverage for each of the procedures at issue in this case; and . . . that these covered services would be paid according to a specific reimbursement rate."[11] *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.,* 99 F. Supp. 3d 1110, 1159 (C.D. Cal 2015).

---

[11] This same requirement applies to claims based upon non-ERISA plans. *See ABC ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*, No. 20-55821, 2022 WL 187849, at *1 (9th Cir. Jan. 20, 2022) (affirming dismissal of non-ERISA claims because the plaintiff "failed to plead 'any specific provisions of the contracts,' and attached "example plans" of the service agreements, which were impermissible as

At bar, the Youngs do not even know which plans apply to Counts III, VII and VIII. *See* Ctrclm. (Dkt. 74) ¶¶ 120, 155 ("Counterclaimants are ignorant as to which [plans] arise under an employer-sponsored Aetna health plan covered by ERISA). Unsurprisingly, they can do no better than to summarily state "[t]he terms of Aetna ERISA Plan Enrollees' plans clearly covered the MH/SUD and mental health treatment provided to each enrollee." *id.* ¶ 164. Time and again, courts have dismissed virtually identical allegations. *See, e.g.*, *ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*, No. 22-55631, 2023 WL 6532648, at *1 (9th Cir. Oct. 6, 2023) (affirming dismissal for failure to identify terms of ERISA plans that were breached); *Villalobos v. Blue Shield of California Life and Health Ins. Co.*, No. 21-6375, 2022 WL 341134, *3 (C.D. Cal. Jan. 4, 2022) ("Because Plaintiff fails to allege the specific terms of the Policy that entitle him to benefits, the Court grants Defendant's Motion."); *Bates v. Blue Shield of California*, No. 18-02225, 2019 WL 2177641, at *3 (C.D. Cal. May 17, 2019) ("[t]hese vague and conclusory allegations are insufficient to state a claim for 'denial of benefits' under ERISA as Plaintiff fails to allege the provisions of the policy that entitle him to his claimed benefits"). This Court should do the same here.

## C.    **The Youngs Fail to Plead Exhaustion**

Every ERISA plaintiff must "first exhaust the administrative dispute-resolution mechanisms of the benefit plan's claims procedure." *Choppel v. Lab. Corp. of Am.*, 232 F.3d 719, 724 (9th Cir. 2000). If an ERISA Claimant has not exhausted, then they must plead ***facts*** showing that the plan's administrative remedies would have been futile.

The Youngs do not allege any attempts to exhaust administrative remedies. Instead, they seek to evade this requirement by averring in conclusory fashion that

---

'conclusory allegations.'").

exhausting Aetna's internal claim processes would be futile.  *See* Ctrclm. (Dkt. 74) ¶ 175. This is plainly insufficient.[12]  *See Grenell v. UPS Health & Welfare Package*, 390 F. Supp. 2d 932 935 (C.D. Cal. 2005) (finding insufficient allegations that attempt "to file further appeals, or to perfect additional or new claims, would have met with the same result: denial"); *Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1485 (9th Cir.1995) ("bare assertions of futility are insufficient to bring a claim within the futility exception").

### D.    Count III for Breach of Non-ERISA Plans Fails for the Same Reasons as the ERISA Counts

In Count III, the Youngs assert a virtually identical claim based upon a failure to pay benefits under non-ERISA claims. Here again, the Youngs readily admit they are "ignorant" of what underlying claims and plans are actually subject to this Count, which is grounds alone to dismiss. Ctrclm. (Dkt. 74) ¶ 120. In addition, all the bases for dismissal of the ERISA claims apply equally to the non-ERISA plans. *See, e.g.*, *ABC Servs. Grp., Inc.*, 2022 WL 187849, at *1 (affirming dismissal of non-ERISA claims for failure to identify plan terms);  *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) (a breach of contract claim is properly dismissed with prejudice if it "fail[s] to allege any provision of the contract which supports [plaintiff's] claim"); *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) ("A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint.")

## II.    THE REMAINING STATE LAW CLAIMS (COUNTS 1-2, 4-9) ARE PREEMPTED BY

---

[12] The Youngs cite 29 U.S.C. § 1133 to allege that Aetna "failed to afford claimants a 'full and fair review.'" Putting aside the conclusory nature of this allegation, 29 U.S.C. § 1133 does not provide for a private cause of action. *See, e.g., Stolte v. Securian Life Ins. Co.*, 621 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022) (dismissing claim that insurer violated right to full and fair review of denial of claim).

1

**ERISA**

2      ERISA preempts "any and all State laws insofar as they may now or hereafter

3 relate to any employee benefit plan" that ERISA covers. 29 U.S.C. § 1144(a). This

4 provision is "clearly expansive" and covers any claims that "relate to" an ERISA plan.

5 *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,

6 514 U.S. 645, 655 (1995). Claims "relate to" an ERISA plan if it references an ERISA

7 plan or has an impermissible connection to an ERISA plan. *Bristol SL Holdings, Inc.*

8 *v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 605 (9th Cir. 2024)

9      At bar, all of the Youngs' counterclaims "relate to" an ERISA plan. Every claim

10 is grounded in the same conduct: Aetna's alleged "sham audit," unidentified

11 verification of plan benefit calls, and Aetna's prior authorization policy. Ctrclm. (Dkt.

12 74) ¶ 98. **_Each of these issues is part of plan administration_**. Indeed, as the Ninth

13 Circuit recently held, claims based upon verification of benefits or an insurer's

14 investigation of potential fraud are preempted because they seek to "unduly intrude

15 on a central matter of plan administration . . . ." *Bristol*, 103 F.4th at 604.

16 **III.**   **PREEMPTION ASIDE, THE STATE LAW CLAIMS FAIL AS A MATTER OF LAW**

17     **A.**     **The Fraud (Count I) and Negligent Misrepresentation (Count II)**

18            **Causes of Action Are Barred by the Economic Loss Rule, Fail to**

19            **Meet the Requirements of Rule 9(b), and Fail to Allege Justifiable**

20            **Reliance**

21       *1.*     *The Economic Loss Rule Bars Claims for Fraud and Negligent*

22           *Misrepresentation*

23      The economic loss rule provides that "a plaintiff who suffers only pecuniary

24 injury as a result of the conduct of another cannot recover those losses in tort. Instead,

25 the claimant is limited to recovery under the law of the contract." *Apollo Grp., Inc. v.*

26 *Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995). Thus, "purely economic losses are not

27 recoverable in tort" under the economic loss doctrine. *UMG Recordings, Inc. v.*

28 *Global Eagle Entertainment, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015)

(quotations omitted). The doctrine "is designed to maintain a distinction between damage remedies for breach of contract and for tort" and "provides that certain economic losses are properly remediable only in contract." *Id.* This distinction "is necessary to 'prevent[ ] the law of contract and the law of tort from dissolving into one another." *Id.* (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Ca. 2004)).

Here, the Youngs' fraud and negligent misrepresentation claims are based upon alleged promises Aetna made to pay claims through verification of benefit calls, a course of dealing, and an audit notification. Courts have long recognized that fraud claims based on allegedly false promises are "subject to the economic loss rule." *UMG Recordings*, 117 F. Supp. 3d at 1103. The "only harm to [the Youngs] was [their] failure to receive payment," which is purely "economic in nature." *Oracle USA, Inc. v. XL Global Services, Inc.*, No. 09-00537, 2009 WL 2084154, at *2, 7 (N.D. Cal. July 13, 2009); *see also, e.g.*, *Audigier Brand Management v. Perez*, No. 12-5687, 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (holding false promise fraud claim barred by economic loss rule); *Fumatex Inc. v. Tafford Uniforms LLC*, No. 13-02508, 2013 WL 12205632, at *3 (C.D. Cal. 2013) (dismissing fraud claim based on economic loss rule where claim was based on alleged misrepresentations that payments would be forthcoming); *Soil Retention Products, Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929 (S.D. Cal. 2021) (barring negligent misrepresentation claim based on economic loss rule).

## 2. *The Youngs Cannot Plead a Misrepresentation or Justifiable Reliance*

Counterclaimants rely upon three 'statements' for the fraud count:

a. Aetna's statement that it had "concerns with claims you submit for reimbursement" after a "review of data,"

b. Aetna's statement that "all claims that you submit for reimbursement will be reviewed prior to payment," and

c.  Aetna's statement that medical records were needed to "properly review" claims, the claims received with the records would be "sent for review as necessary," and "the claim will be sent for review upon receipt of the required records."

Ctrclm. (Dkt. 74) ¶ 99(a)-(c). According to the Youngs, these statements amounted to a representation that Aetna would pay their claims if they submitted medical records. This theory is as fantastical as it is illogical.

As an initial matter, none of these statements promise payment. They identify concerns with the Youngs' claims and demand the submission of medical records so that Aetna could further vet them before processing. The Youngs do not contend that Aetna was forbidden to conduct prepayment review (nor could they). And it is entirely implausible to suggest that a promise to pay arises from giving notification that one is the target of an investigation. Indeed, promises cannot be enforced when they are vague or insufficiently definite without resorting to extrinsic evidence. *See, e.g.*, *Marchioli v. Pre-employ.com, Inc.*, No. 17-1566, 2017 WL 8186761, at *9 (C.D. Cal. June 30, 2017) ("if extrinsic evidence is needed to interpret a promise, then obviously, the promise is not clear an unambiguous"). Even neutral facts that ***might*** suggest a promise are insufficient. *Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 995 (D. Haw. 2019) (citation omitted) ("Plaintiffs may not simply plead neutral facts to identify the transaction, but rather must also set forth what is false or misleading about a statement, and why it is false."); *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (holding that it was insufficient to "set forth conclusory allegations of fraud ... punctuated by a handful of neutral facts."). Particularly relevant here, courts across the country have recognized that pre-payment review – and the statutes they fall under – are not promises to pay. *See, e.g.*, *Wound Care Consultants of America, Inc. v. Health Care Service Corp.*, No. 2164, 2022 WL 209562, at *4 (N.D. Tex. Jan. 24, 2022) ("[p]repayment review means just that . . . review[ ] [of] a claim and its associated medical records prior to processing it, resulting ***either*** in a

_**denial**_ or payment of the claim") (emphasis added); _cf. Farkas v. Blue Cross and Blue Shield of Michigan_, 803 F. Supp. 87, 91 (E.D. Mich. 1992) (noting that prepayment review is consistent with federal reporting requirements and 42 U.S.C. § 1395(e)).

Any doubts in this regard are easily eliminated by a review of the full notices, which the Youngs conveniently omitted from their filing. One of them is attached hereto as Exhibit D. The Notices specifically note that claims will be denied if records are not submitted. _Id._ And if records are submitted, "they will be sent for review before the claim is processed, _**at which point a decision will be made.**_" _Id._ (emphasis added). The Notices further alert the Youngs that if they do not like the claim determination, they can appeal. _Id._

Far from guaranteeing payment, these notices make clear that no decision had been made on any claims and expressly notify the Youngs there is a possibility the claims would be denied. They even highlight how to challenge such denials, which would be unnecessary if payment were guaranteed as the Youngs allege. Simply put, there was _**no misrepresentation**_, and it is entirely _**unjustifiable**_ to rely upon such statements as a promise to pay.

### 3.    The Youngs Fail to Meet the Rule 9(b) Standard

Rule 9(b) requires a party to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this rule, a pleading "must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" _Aquilina_, 407 F. Supp. 3d at 991 (quoting _Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc._, 637 F.3d 1047, 1055 (9th Cir. 2011). The Youngs do not come close to meeting this requirement.

As noted above, the Youngs contend that Aetna sent notices of an "audit" that represented that Aetna would pay the Youngs if they complied with the audit procedures. They further allege that Aetna employee David Erickson sent these notices and, upon information and belief, oversaw the "sham audit." Cntrclm (Dkt.

74) ¶ 97. ***That's it***. The Youngs do not identify any other details, such as the when exactly the notices were sent or how they were fraudulent. *Oestreicher*, *supra* (a party alleging fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud…."); *Gould*, *supra* ("Rule 9(b) requires a party alleging fraud to state the "time [and] place" of the false representations).

### 4.    *The Negligent Misrepresentation Claim Fails for the Additional Reason that Such Claims Do Not Apply to Future Conduct*

As noted above, the Youngs' negligent misrepresentation claim is based upon Aetna's alleged statements promising to pay for services at some unidentified time in the future. *See* Cntrclm, (Dkt. 74) ¶ 116-117. Even if this were true (it is not), the negligent misrepresentation claim would still fail because under California law these claims are limited to statements concerning "past or existing material fact[s]." *Tarmann, supra*; *see also Community Hospital of the Monterey Peninsula v. Aetna Life Insurance Company,* 119 F. Supp. 3d 1042, 1048 (N.D. Cal. 2015). They do not apply to statements of future conduct like those at-issue here. *See id.* ("even construing the authorization as a promise to pay, that promise is manifestly about what [Aetna would be required to] do in the future.").

### B.    Count IV for Breach of Implied Contract Fails for Lack of an Enforceable Promise and Lack of Consideration

In Count IV, the Youngs allege an implied contract was created through two separate promises: (1) a promise to "provide a fair claims process," and (2) a promise to "provide reimbursement of documented claims." Ctrclm. (Dkt. 74) ¶ 137. These alleged promises were allegedly "implied from and manifested by" Aetna's prior course of conduct where "if Providers verified a patient's benefits, provided the above services, and submitted documents claims, then Aetna would use a fair claims process to consider those claims and ultimately pay for the services provided[.]" *Id.* ¶ 138.

This claim fails for the simple reason that the Youngs provide no details of these prior courses of conduct. To the contrary, the facts alleged by the Youngs detail multiple years in which Aetna denied claims. Thus, the only course of dealing pled with any modicum of factual support is one in which the Youngs' claims were denied.

Furthermore, courts have made clear that pre-service communications from insurers either verifying benefits or preauthorizing services are *not* sufficient to give rise to an implied contract. *See Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, No. 17-01801, 2017 WL 6030260, at *4 (C.D. Cal. Nov. 27, 2017) (implied contract does not arise based on allegations a defendant "represented to Plaintiff that the services provided to defendants insureds would be reimbursed at [a certain level]"); *see also Pacific Bay Recovery Inc. v. California Physicians' Servs. Inc.*, 12 Cal. App. 5th 200, 216 (Cal. Ct. App. 2017) (granting motion to dismiss implied contract claim based on pre-authorization and representation that plaintiff "would be paid for performance of the procedures, care, and/or treatment"); *Orthopedic Specialists of S. Cal. v. Public Employees' Retirement System*, 228 Cal. App. 4th 644, 649 (Cal. Ct. App. 2014) (no promise existed where health plan authorized services and represented it would pay provider for such services).

Finally, the Youngs cannot plead that Aetna received any consideration in exchange for the alleged promises. Indeed, the only thing of value the Youngs allegedly provided were SUD treatment services. It is settled law that "services provided by medical providers to patients do not inure to the benefit of insurers." *Armijo v. ILWU-PMA Welfare Plan*, No. 15-01403, 2015 WL 13629562, at *24 C.D. Cal. Aug. 21, 2015).

### C.    Count V for Breach of Implied Covenant of Good Faith and Fair Dealing Fails Because There is No Contract and it is Duplicative of Counts III and IV

The Youngs also allege that Aetna breached the implied covenant of good faith and fair dealing when "Aetna unfairly interfered with Providers' rights to a good faith

claims procedure and to receive compensation for the services provided by imposing a systematic sham audit as described above." Ctrclm (Dkt. 74) ¶ 146.

This claim fails because there is no contract between Aetna and the Youngs for the reasons set forth above. "Without a contractual underpinning, there is no independent claim for breach of the implied covenant." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal. App. 4th 1586, 1599 (Cal. Ct. App. 1994)

In addition, a "claim for breach of the duty of good faith and fair dealing may not be maintained on the same factual allegations as a breach of contract claim brought in the same action." *Alvarez v. Chevron Corp.*, No. 09-3343, 2009 WL 5552497, at *4 (C.D. Cal. Sept. 30, 2009), *aff'd*, 656 F.3d 925 (9th Cir. 2011). Such is the case here. The basis of this claim – the alleged failure to provide a "good faith claims procedure" and the "systematic sham audit" (Ctrclm. (Dkt. 74) ¶ 146) – are the same allegations underlying the implied contract claim. Ctrclm. (Dkt. 74) ¶ 138.  In fact, the Youngs even admit as much, specifically stating that the basis of this claim was "as alleged in the Third [Breach of Express Contract] and Fourth [Breach of Implied Contract] Claims for Relief" and "as described above". *Id.* ¶¶ 144, 146.

### D.    Count VI for Promissory Estoppel Fails to Allege a Clear and Unambiguous Promise or Reasonable Reliance

To state a claim for promissory estoppel, a party must allege facts establishing: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *See US Ecology*, 129 Cal. App. 4th at 901 (citing *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 890 (Cal. Ct. App. 1976)). The Youngs cannot meet the first prong (clear promise) or the third prong (reasonable reliance).

As to the first prong (clear and unambiguous promise), the Youngs allege Aetna made clear and unequivocal promises to pay because the "audit Notices represented that [1] all claims submitted would be 'reviewed prior to payment' and [2] 'claims

received with the required medical records attached will be sent for review as necessary.'" Cntrclm. (Dkt. 74) ¶ 149. As noted with respect to the contract claim, these are simply not promises to pay. Indeed, as courts have found in similar contexts, such innocuous statements do not come close to providing "clear and unambiguous terms." *See, e.g.*, *Pacific Bay*, 12 Cal. App. 5th at 215, n.6 (dismissing a promissory estoppel claim where the plaintiff non-contracted provider relied on allegations of pre-authorizations); *Casa Bella*, 2017 WL 6030260, at *4 (a plaintiff must do more than allege that the defendant "represented to Plaintiff that the services provided to defendants' insureds would be reimbursed at the fully billed charges").

Moreover, even when there are actual promises to pay something – which completely absent here – that still does not mean they are "clear and unambiguous." To meet this requirement, there must be a promise to "reimburse Plaintiff for the amount Plaintiff seeks."[13] *See, e.g.*, *Avanguard Surgery Center, LLC v. Cigna Healthcare of California, Inc.*, No. 20-03405, 2020 WL 5095996, at *3 (C.D. Cal. Aug. 28, 2020). Generalized promises to pay an undefined amount are, by definition, not "clear and unambiguous." *See, e.g.*, *id.* (dismissing claim based upon "promise to pay for the services per the EOC or insurance policy"); *ABC Servs. Grp. v. Health Net of California, Inc.*, No. 19-00243, 2020 WL 2121372, at *6 (C.D. Cal. May 4, 2020) (promise to pay plaintiff "usual and customary rates" not sufficient for promissory estoppel claim); *Casa Bella*, 2017 WL 6030260, at *4 (dismissing promissory estoppel claim where plaintiff did not allege, *inter alia*, "how much Defendants agreed to pay when authorizing treatments").

As to the third prong (reasonable reliance), it is neither reasonable nor foreseeable for one to rely upon statements that are missing key details such as the

---

[13] It is impossible to meet this requirement here because neither Plaintiffs nor Aetna knew what services or payments Plaintiffs would seek when Aetna gave notice of the audits.

1  payment price. *See Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 893

2  (Cal. Ct. App. 1976) (promise cannot reasonably rely upon a statement where

3  essential terms are missing). Nor can there be reasonable reliance upon statements

4  contradicted by the very documents in which they are contained. *Baymiller v.*

5  *Guarantee Mutual Life Co.*, No. 99-1566, 2000 WL 1026565, at *4 (C.D. Cal. May

6  3, 2000); *see also Alta Bates Summit Medical Center v. United of Omaha Life Ins.*

7  *Co.*, No. 07-04224, 2009 WL 1139584, at *4 (N.D. Cal. Apr. 28, 2009) (collecting

8  cases for same proposition and granting motion to dismiss on that basis). The actual

9  Notices made clear that that the claims would be reviewed and potentially denied. *See*

10  Audit Notices (Ex. D). As such, it was unreasonable to rely on those notices as

11  promises of payment.

12       **E.**    **In Addition to Lack of Standing, Count VIII For an Injunction Fails**

13            **Because it is Not a Cause of Action and it Improperly Seeks**

14            <u>**Remedies Available under Section 502(a)(1)**</u>

15       In Count VIII, the Youngs seek injunctive relief under ERISA § 502(a)(3). As

16  noted above, *supra* § I.A., the Youngs do not have standing to assert an ERISA claim.

17  Even if they did, the assignment on which their standing rests does not extend to

18  seeking injunctive relief. *See supra* § I. A.1.That aside, this claim fails for additional

19  reasons.

20       <u>***First***</u>, black letter California law holds that "[i]njunctive relief is a remedy, not

21  a cause of action." *Guessous v. Chrome Hearts, LLC*, 179 Cal. App. 4th 1177, 1187

22  (Cal. Ct. App. 2009) (quotations omitted).

23       <u>***Second***</u>, the Youngs' assertions under Section 502(a)(3) are duplicative of the

24  claim for benefits and thereby foreclosed. *See Varity Corp. v. Howe*, 516 U.S. 489

25  (1996) (barring relief under 502(a)(3) that is available under 502(a)(1). Indeed, the

26  Youngs seek relief under ERISA § 502(a)(3) for the purported "fail[ure] to cause

27

28

1   those plans to pay benefits for covered services"[14]. Ctrclm. (Dkt. 74) ¶ 182. Where,

2   as here, a party seeks "what was supposed to have been distributed under a plan, the

3   appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA"

4   and not a "claim brought pursuant to § 502(a)(3)."[15] *McCall v. Burlington*

5   *Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000) (citation omitted).

6       **F.    Count IX for Unfair Competition Fails for Lack of Standing and**

7       **Failure to Allege an Underlying Violation**

8       In Count IX, the Youngs assert a claim for unfair competition.[16] This claim

9   fails for at least two threshold reasons. ***First***, the UCL requires "the plaintiff to be the

10  one 'who has suffered injury in fact and has lost money or property as a result of the

11  unfair competition." *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior*

12  *Ct.*, 46 Cal. 4th 993, 1002 (2009) (quoting Cal. Bus. & Prof. Code § 17204).  Thus,

13

14

---

15  [14] The prayer for relief provides that Counterclaimants are seeking a "recovery of
16  benefits, declaratory relief, and injunctive relief pursuant to ERISA". Cntrclm. (Dkt.
17  74) at p. 60.

18  [15] The Youngs appear to allege that Aetna violated the Parity Act based upon its audit.
    Ctrclm. (Dkt. 74) ¶ 183. Here again, this claim is improperly duplicative of the
19  benefits claim and not within the scope of the assignment. Nor have the Youngs come
    close to meeting the standard for a Parity Act claim, which requires a plaintiff to
20  actually allege the analogous medical or surgical treatment and explain how
    behavioral health treatments were handled differently. *Ryan S. v. United Health*
21  *Group*, No. 19-1363, 2022 WL 281310 (C.D. Cal. July 14, 2022) (a Parity Act claim
22  "must allege facts showing that less restrictive limitations were applied to analogous
    claims for medical or surgical benefits.").*See Kirsten W. v. California Physicians'*
23  *Service*, No. 19-00710, 2021 WL 83264, at *2 (D. Utah Jan. 11, 2021) (a plaintiff
24  "must do more than state conceptually that the mental health services were treated
    worse than other services. A plaintiff must allege facts showing that disparate
25  treatment occurred.").
26

27  [16] The Youngs concede this claim is preempted with respect to ERISA plans. *See*
28  Ctrclm. (Dkt. 74) ¶ 194 ("As to non-ERISA claims . . . .).

1   "'an injured party's assignment of rights cannot confer standing on an uninjured
2   assignee.'" *Id.*

3          Here, the Youngs seek to redress harm born by Aetna's members. Indeed, the
4   Youngs assert state parity predicates and claim they were harmed by investing
5   resources "in unfruitful claim collection efforts and have been denied payments they
6   are owed." Ctrclm. (Dkt. 74) ¶ 217. The purported relief they seek is the
7   "restitutionary [sic] relief for the value of the services they provided to Aetna
8   enrollees." *Id.* That is just another way of seeking benefit payments under the plans,
9   which can only be sought through valid assignments. A UCL claim cannot be brought
10  by assignees.

11         ***Second***, the Youngs have not plausibly alleged Aetna is subject to the Knox-
12  Keene Act on which the UCL claim is based. The Knox-Keene Act only applies to
13  certain "health care service plans" that contract for the provision of medical services.
14  Health & Saf. Code § 1345(f)(1)-(2). As another court recently reasoned in finding
15  that Aetna is not subject to the Knox-Keene Act, an out-of-network relationship
16  "foreclose[s] the possibility that ALIC contracted with or owned the health facility or
17  medical provider." *Keith Feder, M.D., Inc. v. Aetna Life Ins. Co.*, No. 23-07026, 2024
18  WL 1641987, at *3 (C.D. Cal. Mar. 4, 2024); *see also Oneto v. Watson*, No. 22-05206,
19  2024 WL 2925310, at *4-5 (N.D. Cal. June 10, 2024) (dismissing claims for breach
20  of the Health and Safety Codes, finding that Cigna is "not subject to" the cited
21  provisions of the Knox-Keene Act).

22         ***Third***, even if the Knox-Keene Act applies, the Youngs do not plausibly allege
23  any underlying violation. They first contend that Aetna's audit violated Section
24  1367.01 because it requested the same information for all types of patients. Ctrclm.
25  (Dkt. 74) ¶ 195. But the fact Aetna was consistent in the categories of records sought
26  is not a violation of Section 1367.01. Nor do the Youngs identify which types of
27  records were unreasonably sought. Next, they cite Section 1371 to argue that Aetna
28  failed to provide a clear description of the suspected fraud and their analysis for

determining such fraud. *Id.* ¶ 197. But this statute only applies to "vision care services," not SUD providers like the Youngs. Health & Safety Code §1371(b). Next, they cite Section 1371.35(g) to contend that Aetna unlawfully delayed payment on a claim. *Id.* ¶ 202. This section is inapplicable "to claims about which there is evidence of fraud and misrepresentation.' Health & Safety Code §1371.35(d). And there are no details as to which claims violated this section or how. Lastly, the Youngs cite Section 1374.22 to allege that Aetna violated state parity laws. The Youngs do not have standing to assert parity violations. And conducting an audit on a limited set of providers does not plausibly allege a parity violation. Were it otherwise, a parity violation would arise every time a plan conducts an audit. That cannot be.

## <u>CONCLUSION</u>

Accordingly, for the reasons set forth above, Plaintiffs/Counterclaim-Defendants Aetna Life Insurance Company, Aetna Health of California, Inc., and Counterclaim Defendant David Erickson, pray that the Counterclaims against them be dismissed *with prejudice*.

Dated: January 13, 2025    FOX ROTHSCHILD LLP

         By: */s/ Benjamin H. McCoy*
         Benjamin H. McCoy
         John J. Shaeffer
         Matthew Follett
         Alberto M. Longo
         10250 Constellation Avenue, Suite 900
         Los Angeles, CA 90067
         Tel: 310-228-4481
         Fax: 310-556-9828

         *Attorneys for Aetna Life Insurance Co.,*
         *Aetna Health of California, Inc., and*
         *David Erickson*

1

**CERTIFICATE OF COMPLIANCE**

2        The undersigned counsel of record hereby certifies that the foregoing contains

3  6,676 words, which complies with the word-limits of the Local Rules.

4   Dated: January 13, 2025         FOX ROTHSCHILD LLP

5                           By: */s/ Benjamin H. McCoy*

6                           Benjamin H. McCoy

7                           John J. Shaeffer

8                           Matthew Follett

Alberto M. Longo

9                           10250 Constellation Avenue, Suite 900

Los Angeles, CA 90067

10                         Tel: 310-228-4481

Fax: 310-556-9828

11

12                         *Attorneys for Aetna Life Insurance Co.,*

*Aetna Health of California, Inc., and*

13                         *David Erickson*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28