1 | Marc S. Williams (Bar No. 198913)
Email: mwilliams@cohen-williams.com
2 | Reuven L. Cohen (Bar. No 231915)
Email: rcohen@cohen-williams.com
3 | Kathleen M. Erskine (Bar No. 223218)
Email: kerskine@cohen-williams.com
4 | Yusuf Saei (Bar No. 321421)
Email: ysaei@cohen-williams.com
5 | COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
6 | Los Angeles, CA 90014
Telephone: (213) 232-5160
7 | Facsimile: (213) 232-5167

8 | Attorneys for Defendants and Counterclaimants
Nathan Young, David Young, Get Real
9 | Recovery, Inc., Healing Path Detox LLC,
Ocean Valley Behavioral Health, LLC, Rodeo
10 | Recovery LLC, Sunset Rehab LLC, Natural
Rest House, Inc., 55 Silver LLC, 9 Silver LLC,
11 | Helping Hands Rehabilitation Clinic Inc., and
Joser Forever LLC

12

13

14 **UNITED STATES DISTRICT COURT**

14 **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16

17 | AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC., | Case No. 2:23-cv-09654-MCS-JPR

18 | | **COUNTERCLAIMANTS GET REAL RECOVERY INC., HEALING PATH DETOX LLC, OCEAN VALLEY BEHAVIORAL HEALTH LLC, SUNSET REHAB LLC, HELPING HANDS REHABILITATION CLINIC INC., AND JOSER FOREVER LLC'S OPPOSITION TO AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA INC., AND DAVID ERICKSON'S MOTION TO DISMISS THE COUNTERCLAIMS**

18 | Plaintiffs,

19 | v.

20 | NATHAN SAMUEL YOUNG a/k/a PABLO LOPEZ; DAVID YOUNG a/k/a SANCHO LOPEZ; JOSE RICARDO TOSCANO MALDONADO; ALI BEHESHTI; MARC ADLER; ANI MIRZAVAN; ZEALIE LLC; HELPING HANDS REHABILITATION CLINIC INC; JOSER FOREVER LLC; GET REAL RECOVERY LLC; REVIVE PREMIER TREATMENT CENTER, INC.; HEALING PATH DETOX LLC; OCEAN VALLEY BEHAVIORAL HEALTH, LLC; RODEO RECOVERY LLC; SUNSET REHAB LLC; NATURAL REST HOUSE, INC; 55 SILVER LLC, 9 SILVER LLC; JOHN

25 | | Judge:    Honorable Mark C. Scarsi
Date:    March 3, 2025
Time:    9:00 a.m.
Crtrm.:    7C

26 | | *Filed concurrently with Declaration of Marc S. Williams*

28

---

1

OPPOSITION TO AETNA'S MOTION TO DISMISS THE COUNTERCLAIMS

DOES 1 THROUGH 50; AND ABC
CORPS. 1-50,

         Defendants.

GET REAL RECOVERY, INC.;
HEALING PATH DETOX LLC; OCEAN
VALLEY BEHAVIORAL HEALTH,
LLC; SUNSET REHAB LLC; HELPING
HANDS REHABILITATION CLINIC,
INC.; AND JOSER FOREVER LLC,

         Counterclaimants,

    v.

AETNA LIFE INSURANCE
COMPANY; AETNA HEALTH OF
CALIFORNIA, INC.; DAVID
ERICKSON; ROES 1-10,

         Counterdefendants.

OPPOSITION TO AETNA'S MOTION TO DISMISS COUNTERCLAIMS

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................10

II.   ARGUMENT...........................................................................................10

    A.    Providers Sufficiently Plead Fraud and Negligent Misrepresentation
        (Claims One, Two)........................................................................10

        1.    Providers State the Fraud in Abundant Detail. ...................11

        2.    Providers State Distinct Fraudulent Misrepresentations and
              Misconduct...................................................................12

        3.    Fraud Covers Promised Future Conduct, and Negligent
              Misrepresentation Covers the Present...................................13

        4.    Providers Reasonably Relied on the Notices Because They Were
              Formal Letters. .................................................................14

        5.    Providers Assert Various Non-Economic Losses, and Exceptions
              to the Economic Loss Rule Apply. .....................................14

        6.    ERISA Does Not Preempt the Fraud and Negligent
              Misrepresentation (or Other) Claims. ................................16

    B.    Counterclaimants State Contract-Based Claims as to Non-ERISA Plans
        (Claims Three to Six). .................................................................19

        1.    The Implied Contract Is Enforceable and Supported by
              Consideration. ..................................................................19

        2.    The Promissory Estoppel Claim Is Based on Clear Promises. ...........21

        3.    The Implied Covenant Claim Is Appropriate. ....................22

    C.    Providers Sufficiently Plead ERISA Violations (Claims Seven, Eight). 22

        1.    Providers Have Standing By Virtue of Valid Assignments and
              Aetna's Waiver of Any Plan Non-Assignment Provisions. ...............22

        2.    Providers Need Not Plead Exhaustion and Adequately Allege
              Futility of Remedies.........................................................24

        3.    Providers Specify the Relevant Plan Terms. ......................26

    D.    Providers Assert Independent Harms Conferring UCL Standing
        (Claim Nine) and Allege Several Plausible Theories of Unlawful
        Behavior. .......................................................................28

    E.    To the Extent Any Claim Is Insufficiently Stated, the Court Should
        Grant Leave to Amend. ...............................................................30

III.  CONCLUSION .....................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*,
  2023 WL 6532648 (9th Cir. Oct. 6, 2023) ....................................................28

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) .....................................................................24

*Almendarez-Torres v. United States*,
  523 U.S. 224 (1998) ....................................................................................23

*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*,
  99 F. Supp. 3d 1110 (C.D. Cal. 2015)....................................................26, 27

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  121 F. Supp. 3d 950 (C.D. Cal. 2015)..........................................................17

*Aquilina v. Certain Underwriters at Lloyd's*,
  407 F.Supp.3d 978 (D. Haw. 2019) ..............................................................11

*Armijo v. ILWU-PMA Welfare Plan*,
  2015 WL 13629562 (C.D. Cal. Aug. 21, 2015) .......................................21, 26

*Aton Ctr., Inc. v. Blue Cross & Blue Shield of Illinois*,
  2021 WL 615051 (S.D. Cal. Feb. 16, 2021) .....................................19, 20, 21

*Aton Ctr., Inc. v. Nw. Administrators, Inc.*,
  2022 WL 4229307 (S.D. Cal. Sept. 13, 2022) ..............................................20

*Austin v. Boehringer Ingelheim Pharm. Inc.*,
  2023 WL 3437821 (N.D. Cal. May 12, 2023) ...............................................18

*Avanguard Surgery Ctr., LLC v. Cigna Healthcare of California, Inc.*,
  2020 WL 5095996 (C.D. Cal. Aug. 28, 2020) ..............................................21

*Bates v. Blue Shield of California*,
  2019 WL 2177641 (C.D. Cal. May 17, 2019)..........................................27, 28

*Beckwith v. Dahl*,
  205 Cal.App.4th 1039 (2012)........................................................................13

*Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*,
  983 F.3d 435 (9th Cir. 2020)........................................................................23

OPPOSITION TO AETNA'S MOTION TO DISMISS THE COUNTERCLAIMS

COHEN WILLIAMS LLP

*Blue Cross of California v. Anesthesia Care Assoc. Med. Grp., Inc.*,
   187 F.3d 1045 (9th Cir. 1999) ...................................................................17

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
   103 F.4th 597 (9th Cir. 2024) ...................................................................18

*California Med. Assn. v. Aetna Health of California Inc.*,
   14 Cal. 5th 1075 (2023) ..........................................................................28

*California Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*,
   2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) ...........................................20

*Cansino v. Bank of America*,
   224 Cal.App.4th 1462 (2014) ...................................................................13

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*,
   2017 WL 6030260 (C.D. Cal. Nov. 27, 2017) ............................................20

*Cath. Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*,
   321 Fed.Appx. 563 (9th Cir. 2008) ...........................................................17

*Christine S. v. Blue Cross Blue Shield of New Mexico*,
   428 F. Supp. 3d 1209 (D. Utah 2019) ........................................................24

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal.App.4th 445 (1998) .......................................................................11

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
   591 F.3d 1337 (11th Cir. 2009) ................................................................24

*County Hospital of the Monterey Peninsula v. Aetna Life Insurance Company*,
   119 F. Supp. 3d 1042 (N.D. Cal. 2015) .....................................................13

*David M. Lewis, D.M.D. v. William Michael Stemler, Inc.*, 2013 WL 5373527 (E.D. Cal.
   Sept. 25, 2013) .......................................................................................16

*DeMatte v. Brotherhood of Industrial Workers' Health and Welfare Fund*,
   1996 WL 764540 (M.D. Fla. 1996) ...........................................................25

*F.A.A. v. Cooper*,
   566 U.S. 284 (2012) ................................................................................14

*Finney v. Ford Motor Co.*,
   2018 WL 2552266 (N.D. Cal. June 4, 2018) ..............................................15

OPPOSITION TO AETNA'S MOTION TO DISMISS COUNTERCLAIMS

COHEN WILLIAMS LLP

*Fletcher v. Western Nat'l Life Ins. Co.*,
  10 Cal. App.3d 376 (1970) ...................................................................... 15

*Fujikawa v. Gushiken*,
  823 F.2d 1341 (9th Cir. 1987) .............................................................. 25

*Galutza v. Hartford Life & Acc. Ins. Co.*,
  2008 WL 2433837 (N.D. Okla. June 12, 2008) ................................. 24

*Gobeille v. Liberty Mut. Ins. Co.*,
  136 S. Ct. 936 (2016) ............................................................................ 19

*Gruenberg v. Aetna Ins. Co.*,
  9 Cal. 3d 566 (1973) .............................................................................. 15

*Harlick v. Blue Shield of Cal.*,
  686 F.3d 699 (9th Cir. 2012) .............................................................. 23

*Hoffman v. 162 North Wolfe LLC*,
  228 Cal. App. 4th 1178 (2014) .......................................................... 14

*In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*,
  2021 WL 8532067 (C.D. Cal. Apr. 14, 2021) ................................... 25

*Keith Feder, M.D., Inc. v. Aetna Life Ins. Co.*,
  2024 WL 1641987 (C.D. Cal. Mar. 4, 2024) ..................................... 29

*Kwikset Corp. v. Superior Court*,
  246 P.3d 877 (Cal. 2011) ..................................................................... 29

*Laborers' Pension Fund v. Etolen & Buchanan, Inc.*,
  2012 WL 3581178 (N.D. Ill. Aug. 17, 2012) ..................................... 25

*Laks v. Coast Fed. Sav. & Loan Assn.*,
  60 Cal. App. 3d 885 (1976) ................................................................. 21

*Licudine v. Cedars-Sinai Med. Ctr.*,
  3 Cal. App. 5th 881 (2016) .................................................................. 14

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ............................................................ 30

*Marchioli v. Pre-employ.com, Inc.*,
  2017 WL 8186761 (C.D. Cal. June 30, 2017) ................................... 12

OPPOSITION TO AETNA'S MOTION TO DISMISS COUNTERCLAIMS

*Misic v. Bldg. Serv. Emps. Health & Welfare Trust*,
    789 F.2d 1374 (9th Cir. 1986) ................................................................23

*N. Am. Chem. Co. v. Superior Court*,
    59 Cal. App. 4th 764 (1997) ...............................................................15

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) .....................................................................17, 19

*Norris v. Mazzola*,
    2016 WL 1588345 (N.D. Cal. Apr. 20, 2016) ............................................24

*Oneto v. Watson*,
    2024 WL 2925310 (N.D. Cal. June 10, 2024) ...........................................29

*Orthopedic Specialists of S. California v. Pub. Employees' Ret. Sys.*,
    228 Cal. App. 4th 644 (2014) ............................................................21

*Out of Network Substance Use Disorder Claims*,
    2020 WL 2114934 (C.D. Cal. Feb. 21, 2020) ...............................16, 17, 29

*Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*,
    12 Cal. App. 5th 200 (2017) .........................................................20, 22

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
    967 F.3d 218 (3d Cir. 2020) ...........................................................17, 19

*Property California SCJLW One Corp. v. Leamy*,
    25 Cal. App. 5th 1155 (2018) .............................................................21

*Roach v. Mail Handlers Benefit Plan*,
    298 F.3d 847 (9th Cir. 2002) ..............................................................17

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ....................................................................14

*Ryan S. v. UnitedHealth Grp., Inc.*,
    98 F. 4th 965 (9th Cir. 2024) .............................................................30

*Sacramento Cnty. Retired Emps. Ass'n v. Cnty. of Sacramento*,
    975 F. Supp. 2d 1150 (E.D. Cal. 2013) ..................................................12

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) .............................................................11

COHEN WILLIAMS LLP

OPPOSITION TO AETNA'S MOTION TO DISMISS COUNTERCLAIMS

*Shaw v. Delta Air Lines, Inc.*,
    463 US 85 (1983) ................................................................................................ 16, 17

*Sheen v. Wells Fargo Bank, N.A.*,
    12 Cal. 5th 905 (2022) ................................................................................................ 15

*Small Bus. Fin. Ass'n v. Hewlett*,
    2023 WL 3551061 (C.D. Cal. Mar. 30, 2023) ................................................................ 19

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
    770 F.3d 1282 (9th Cir. 2014) ................................................................ 23, 25, 26

*Summit Est., Inc. v. Cigna Healthcare of California, Inc.*,
    2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) ................................................ 17, 20

*Tenet Healthsys. Desert, Inc. v. Blue Cross of Cal.*,
    245 Cal.App.4th 821 (2016) ................................................................................ 11, 12

*TML Recovery, LLC v. Humana Inc.*,
    2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) ................................................................ 22

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ................................................................................................ 24

*Villalobos v. Blue Shield of California Life & Health Ins. Co.*,
    2022 WL 341134 (C.D. Cal. Jan. 4, 2022) ................................................................ 27, 28

*Weddington Prods., Inc. v. Flick*,
    60 Cal. App. 4th 793 (1998) ................................................................................ 19

*Wound Care Consultants of America, Inc. v. Health Care Service Corp.*,
    2022 WL 209562 (N.D. Tex. Jan. 24, 2022) ................................................................ 13

*Yari v. Producers Guild of Am., Inc.*,
    161 Cal. App. 4th 172 (2008) ................................................................................ 21

**Statutes**

Cal. Civ. Code § 1621 ................................................................................................ 19

Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 502(a).............*passim*

Knox-Keene Health Care Service Plan Act of 1975 (KKA), Cal. Health & Safety Code
    §§ 1340-1399.818 ................................................................................................ 29, 30

COHEN **WILLIAMS** LLP

Mental Health Parity and Addiction Equity Act (Parity Act), 42 U.S.C. § 300gg-26
(2024)................................................................................................................29, 30

**Regulations**

29 C.F.R § (f)(1) ..............................................................................................26

29 C.F.R § (f)(2)(iii) .........................................................................................26

29 C.F.R § 2560.503(g) ...................................................................................26

29 C.F.R § 2560.503-1(l)23 .............................................................................26

**Federal Statutes**

Fed. R. Civ. P. 9(b) ..........................................................................................11

**Treatises**

1 Witkin, Summary 11th Contracts §822 (2024)..............................................22

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1298
(4th ed. 2023)...................................................................................................12

COHEN WILLIAMS LLP

## I.    <u>INTRODUCTION</u>

The Court should deny Aetna Life Insurance Company, Aetna Health of California Inc. and David Erickson's (collectively "Aetna") Motion to Dismiss Counterclaims, ECF 86 ("Motion"), for a simple reason. Counterclaimants ("Providers") and the addicted individuals whose interests they represent by assignment have well-established rights under common law contract and tort principles as well as under ERISA. Aetna disregarded those rights in pursuing its sham audit. Aetna cites no legal authority allowing the course of conduct alleged: lying to Providers and miring them in pretextual and indefinite prepayment review, while inducing Providers to continue offering mental health and substance use disorder ("MH/SUD") treatment to Aetna's enrollees.

Instead, Aetna resorts to rule breaking. The Motion opens with improper references to matters outside the pleadings, to suggest Providers did something illegal or wrong. Mot. 1. If Providers did, Aetna could have promptly denied Providers' reimbursement requests using legitimate procedures and citing supporting plan documents. That is not what happened. Aetna resorted to illegal tactics, in the form of a sham prepayment audit that continues unresolved to this day.

Now Aetna argues that "two wrongs make a right." But that is not the law. Aetna cited no wrong in its sham audit notification letters ("Notices"). And Aetna had no right to direct Providers to sink time and money into a fake medical records review prior to payment, while continuing to benefit from Providers' ongoing treatment of Aetna enrollees. The common law requires that insurers not misrepresent facts, and that promises be kept. The Court should reject Aetna's latest attempt to dodge paying for addiction treatment and deny the Motion in full.

## II.    <u>ARGUMENT</u>

### A.    <u>Providers Sufficiently Plead Fraud and Negligent Misrepresentation (Claims One, Two).</u>

Providers' first claims are fraud and negligent misrepresentation. ECF 74, at 40-44 ("Counterclaims"). The elements of fraud are "(a) a misrepresentation (false

representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter");
(c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting
damage." *Tenet Healthsys. Desert, Inc. v. Blue Cross of Cal.*, 245 Cal.App.4th 821, 837
(2016) (cleaned up). The elements of negligent misrepresentation differ in the scienter
requirement. *See City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68
Cal.App.4th 445, 481 (1998). Under Federal Rule 9(b), fraud must be pleaded with
sufficient particularity. Aetna's focus on this last requirement is misplaced, and its salvo
regarding the economic loss rule, justifiable reliance, and future conduct misses the mark.

### 1.    Providers State the Fraud in Abundant Detail.

Providers clear the particularity bar set by Rule 9(b). *Contra* Mot. 13-14.
Attaching each Notice, as Aetna demands, would result in a cumbersome pleading and
waste time. As this Court noted, in cases such as this one "involving hundreds or
thousands of alleged fraudulent transactions, specifying each and every transaction with
the particularity ordinarily demanded by Rule 9(b) is neither practical nor required."
ECF 63, at 4-5 (citation omitted).

Providers identify the author of the Notices, and allege when, where, why and how
the fraudulent statements and conduct occurred. In short, Aetna began sending identical
prepayment review notices via representative David Erickson in or about November or
December 2022. Ctrclm. ¶59. Providers detail identifying information for relevant
reimbursement claims. *Id.* Exhs. 1-2 (listing enrollee, facility, and dates of service). It's
all there in black and white. Providers quote the Notices' relevant content, *id.* ¶¶99(a)-
(c), and explain *how* these statements—and Aetna's subsequent conduct—misled them,
*id.* ¶80, ¶¶103-109, ¶¶73-86.

The fraud dismissals Aetna cites, Mot. 12, are no match for the Counterclaims.
*Aquilina v. Certain Underwriters at Lloyd's*, 407 F.Supp.3d 978, 995 (D. Haw. 2019)
(complaint contained "almost no particulars"); *Semegen v. Weidner*, 780 F.2d 727, 731
(9th Cir. 1985) (claims lacked "specification of any times, dates, places or other details").
Aetna ignores Providers' detailed pleading, while bulldozing over the rule that fraud may

COHEN **WILLIAMS** LLP

1    also rest upon misleading conduct, "not only from verbal or written statements." *Tenet*,

2    245 Cal.App.4th at 839.

3                    **2.    Providers State Distinct Fraudulent Misrepresentations and**

4                           **Misconduct.**

5           Three statements in the Notices defrauded Providers into engaging with Aetna's

6    endless prepayment review.  The statements (a) misrepresented the nature of the audit,

7    (b) falsely promised that "all claims that you submit for reimbursement will be reviewed

8    prior to payment," and (c) misrepresented the audit procedures that would be used.

9    Ctrclm. ¶¶99(a)-(c).  According to Aetna's mischaracterization, Providers are only

10   concerned with Aetna's written "promise" to pay all claims.  Mot. 12.  But fraud may be

11   pleaded in the alternative.  5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.), n.4 ("One is not

12   always required to elect a single theory where fraud is claimed . . .") (citation omitted).

13   The three misrepresentations are sufficient to state a claim individually, and as a whole in

14   the context of Aetna's course of conduct.  Ctrclm. ¶80, ¶¶103-109.

15          Apart from glossing over the specific statements and conduct alleged, Aetna's

16   arguments regarding "promises" to pay, Mot. 12-13, are mistaken for two reasons.  First,

17   Aetna assumes a promise is required for a fraud claim.  It is not.  A "misrepresentation"

18   is required.  *Tenet*, 245 Cal.App.4th at 837.  Second, the Notices and Aetna's conduct did

19   amount to at least two promises: to actually review claims in good faith and to pay all

20   *properly documented* claims.  *Sacramento Cnty. Retired Emps. Ass'n v. Cnty. of*

21   *Sacramento*, 975 F. Supp. 2d 1150, 1166 (E.D. Cal. 2013) (course of conduct may show

22   an implied promise, conduct alleged must give rise to understanding sought to be

23   enforced).

24          Aetna's cases tend to prove Providers' point.  In *Marchioli v. Pre-employ.com,*

25   *Inc.*, an offer contained "express language" "disclaim[ing]" an intention to make a

26   promise.  2017 WL 8186761, at *9 (C.D. Cal. June 30, 2017) (also noting "extrinsic

27   evidence" may be introduced if a document is "ambiguous").  Aetna's Notices have no

28   such disclaimer.  The end result supports Provider's allegation of fraud: real prepayment

COHEN WILLIAMS LLP

1  review would have resulted "either in a denial or a payment of the claim." *Wound Care*

2  *Consultants of America, Inc. v. Health Care Serv. Corp.*, 2022 WL 209562, at *4 (N.D.

3  Tex. Jan. 24, 2022).  Aetna's sham audit resulted in neither.  Ctrclm. ¶83, ¶109.

### 3.    Fraud Covers Promised Future Conduct, and Negligent Misrepresentation Covers the Present.

6      "[I]n a promissory fraud action, to sufficiently allege[] defendant made a

7  misrepresentation, the complaint must allege (1) the defendant made a representation of

8  intent to perform some future action, i.e., the defendant made a promise, and (2) the

9  defendant did not really have that intent at the time that the promise was made, i.e., the

10  promise was false." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012).  Actionable

11  negligent misrepresentation, however, need only "pertain to [a] past or existing material

12  fact." *Cansino v. Bank of America*, 224 Cal. App. 4th 1462, 1469 (2014).

13      Providers adequately describe both Aetna's promises and statements of past or

14  existing fact.  Aetna's dual promises to review claims and to pay properly documented

15  claims in the future are actionable fraud.  *Contra* Mot. 14.  Aetna's assertions about the

16  past/current review of "data" and the nature of the audit are actionable fraud *and*

17  negligent misrepresentation.  Providers reasonably believed from the Notices (sent

18  repeatedly over months) and from Aetna's conduct that Aetna was *presently* placing

19  requests in prepayment review and *presently* reviewing the medical records being

20  submitted.  *See Id.* ¶65.

21      The plaintiff in Aetna's sole cited case, *Cty. Hospital of the Monterey Peninsula v.*

22  *Aetna Life Insurance Company*, hoped that ***pre***-treatment verification of benefits

23  ("VOB") and ***pre***-authorization, without more, amounted to misrepresentations Aetna

24  would pay.  119 F. Supp. 3d 1042, 1048 (N.D. Cal. 2015).  But Providers' fraud theory

25  here hinges on the Notices, which were obtained ***post***-treatment and ***post***-billing.

26

27

28

COHEN WILLIAMS LLP

### 4.    Providers Reasonably Relied on the Notices Because They Were Formal Letters.

The Counterclaims state detrimental and reasonable reliance on the Notices. Aetna's argument the reliance was "unjustifiable" is unsupported by any citation and is incorrect.  Mot. 11, 13.  Reliance is justified if (1) the matter represented was material in the sense that a reasonable person would find it important in determining how to act, and (2) it was reasonable for the person to have relied on the misrepresentation.  *Hoffman v. 162 North Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014).  Drawing reasonable inferences in Providers' favor, the Notices—a formal letter from Aetna's Special Investigative Unit—easily satisfied these criteria.  Ctrclm. ¶¶101-102.  Aetna's prior history of paying further justifies Providers' reliance.  *Id.* ¶¶61-64.

### 5.    Providers Assert Various Non-Economic Losses, and Exceptions to the Economic Loss Rule Apply.

"Simply stated, the economic loss rule provides: Where a purchaser's expectations in a sale are frustrated because the product … is not working properly, his remedy is … in contract alone, for he has suffered only 'economic' losses."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); Mot. 11 (citing *Robinson*).  In *Robinson*, the economic loss rule ("ELR") famously did *not* prevent fraud and intentional misrepresentation claims, because the torts exposed the plaintiff to "damages independent of the . . . economic loss."  *Id.* at 993-94.  In this case regarding Aetna's relationship to out-of-network, uncontracted Providers, the ELR is likewise inapplicable; Providers assert various independent non-contractual losses.[1]

---

[1] Providers suffered loss of goodwill, negative public perception, customer distrust, employee morale issues due to layoffs, and disruption to business operations.  *See* Counterclaims ¶88-94.  Providers seek "general damages," among other relief. Counterclaims at 60; *see Licudine v. Cedars-Sinai Med. Ctr.*, 3 Cal. App. 5th 881, 891 (2016) (general damages cover forms of detriment that are sometimes characterized as subjective or not directly quantifiable); *F.A.A. v. Cooper*, 566 U.S. 284, 296 (2012) (general damages "need not be alleged in detail and require no proof").

COHEN WILLIAMS LLP

COHEN WILLIAMS LLP

1    Second, application of the ELR depends on contracting parties' ability to allocate

2    the risk of economic loss in the context of the sale or distribution of commercial goods.

3    It has no logical application to out-of-network providers, *contra* Mot. 10-11, and several

4    exceptions to the economic loss rule apply here.

5    For instance, the ELR does not apply if a defendant insurer refuses to pay and the

6    parties have previously-established contractual relations. *See, e.g.*, *Fletcher v. Western*

7    *Nat'l Life Ins. Co.*, 10 Cal. App.3d 376, 380(1970) ("threatened and actual bad faith

8    refusals to make payments under the policy . . . in concert with false and threatening

9    communications . . . [are] essentially tortious"); *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d

10   566, 575 (1973) (allowing tort liability "when the insurer unreasonably . . . withholds

11   payment"). A second pertinent exception carves out certain contracts for services. *N.*

12   *Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 784 (1997) (even if parties are in

13   privity of contract, "special relationship" exception to economic loss rule can apply if the

14   contracts are for services and if injury is reasonably foreseeable, the "critical issue"); *see*

15   Ctrclm. ¶¶103, 170, 213 (foreseeable and actual intent to harm MH/SUD providers). A

16   third exception allows tort claims if the defendant fraudulently induced the contract with

17   misrepresentations. *Finney v. Ford Motor Co.*, 2018 WL 2552266, at \*9 (N.D. Cal. June

18   4, 2018) ("[I]t has long been the rule . . . the injured party may elect to affirm the contract

19   and sue for fraud") (citation omitted). Any one of these exceptions is sufficient to bar the

20   ELR.

21   Aetna's ELR argument fails for another reason. Providers do not claim to be in

22   privity with Aetna vis-à-vis the ERISA plan reimbursement requests and subsequent

23   Notices.[2] Whether to hold Aetna liable to a third party "not in privity" is a "matter of

24   policy and involves the balancing of various factors." *Sheen v. Wells Fargo Bank, N.A.*,

25   12 Cal. 5th 905, 937 (2022) (citation omitted). Those factors are satisfied here: the sham

26

27   _____

     [2] Providers assert contract theories (claims three to five) only with respect to the "Non-
28   ERISA" Notices and reimbursement requests. Ctrclm. 44-48.

1    audit was intended to affect Providers, Ctrclm. ¶103; the harm was foreseeable, *id.* ¶¶103,

2    170, 213; injury is reasonably certain, *id.* ¶¶ 87-94, 117, 142, 217; the misconduct and

3    injury are linked; Aetna's conduct is a morally blameworthy, *id.* ¶¶87-94 (shameful

4    results included burdening Aetna's most sick and vulnerable enrollees); and allowing the

5    claims would prevent future harm.

### 6.    ERISA Does Not Preempt the Fraud and Negligent Misrepresentation (or Other) Claims.

8    Deception.  False Promises.  Misrepresentation.  Such misconduct has no

9    connection to ERISA plan terms or administration.  Because Providers' claims rest on

10    this misconduct, ERISA does not preempt them.[3]  Section 514(a) of ERISA only

11    preempts state law claims that "relate to" employee benefit plans. 29 U.S.C. § 1144(a).

12    The term "relat[e] to" means "a connection with" or "reference to" an ERISA plan.  *Shaw*

13    *v. Delta Air Lines, Inc.*, 463 US 85, 96-97 (1983).

14    The Motion contends the alleged *sham* audit "connects with" an ERISA plan.[4]  But

15    Supreme Court cases elucidating these concepts have emphasized that "relation to" and

16    "connection with" are not limitless: "If 'relate to' were taken to extend to the furthest

17    stretch of its indeterminacy, then for all practical purposes pre-emption would never run

---

19    [3] Aetna nonsensically argues preemption of Claims 4-9, Mot. 9.  Claims 4-6 (contract

20    theories) arise from *non-ERISA* reimbursement requests and subsequent notices, so

21    cannot be preempted.  Nor can Claims 7-8 be preempted.  They arise under ERISA

22    Section 502(a)(1)(B) and (a)(3), and ERISA does not preempt itself.  Claim 9 is not

23    preempted either, as a UCL claim asserted irrespective of whether the underlying plans

24    are governed by ERISA.  *See also Out of Network Substance Use Disorder Claims*, 2020

25    WL 2114934, at *5 (C.D. Cal. Feb. 21, 2020) (UCL claim not preempted where premised

26    on independent obligations, including obligation to pay, obligation not to violate "state

27    insurance law"); *David M. Lewis, D.M.D. v. William Michael Stemler, Inc.*, 2013 WL

28    5373527, at *6 (E.D. Cal. Sept. 25, 2013) (UCL claim based on "impacts on competition"

29    not preempted).

[4] Aetna attempts no argument under the "reference" prong.  Likewise, Aetna foregoes a

"complete preemption" argument under ERISA §502(a).

COHEN WILLIAMS LLP

its course, for 'really, universally, relations stop nowhere.'" *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (alteration omitted); *accord Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 849 (9th Cir. 2002) ( "the words 'relate to' . . . cannot be taken too literally."); *Shaw* 463 U.S. 85 at 100, n.21 ("Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan.").

Providers' claims do not implicate any factors typically creating an improper "connection" with an ERISA plan.  Providers bring the state law claims as themselves (not assignees).  They are not participants, beneficiaries, or fiduciaries under ERISA, so their claims classically fall outside ERISA's sphere.  *Cath. Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 Fed.Appx. 563, 564 (9th Cir. 2008) ("where a … provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (*or for misrepresentations* of coverage …), no ERISA-governed relationship is implicated, and the claim is not preempted.") (emphasis added); *Blue Cross of Cal. v. Anesthesia Care Assoc. Med. Grp., Inc.*, 187 F.3d 1045, 1053–54 (9th Cir. 1999) (misconduct between plan and provider did not implicate state law claim that would subject plans to "conflicting directives" and hence to preemption); *see also Out of Network Substance Use Disorder Claims*, 2020 WL 2114934, at *5 (C.D. Cal. Feb. 21, 2020) (claim based on an independent obligation to pay provider for services rendered not preempted); *Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL 4517111, at *15 (N.D. Cal. Oct. 10, 2017) (provider claims for breach of express/implied contract, negligent nondisclosure, not preempted); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 965-66 (C.D. Cal. 2015) (provider's claims against plan were, at their root, based on fraudulent misrepresentations, not plan's operation); *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 233 (3d Cir. 2020) (no preemption where plans were not the "critical factor" in establishing liability and claims hinged on oral offers "rather than the terms of the plan").

1    Here, Providers' claims depend on the Notices' false statements and the allegation

2    that no real pre-payment medical records review was occurring at all.  Ctrclm. ¶¶95-118.

3    Because a non-audit cannot possibly "connect" with a plan, Providers' claims are far

4    beyond the holding in Aetna's sole preemption case, *Bristol SL Holdings, Inc. v. Cigna*

5    *Health & Life Ins. Co.*, 103 F.4th 597, 605 (9th Cir. 2024); Mot. 10.

6    The key to preemption in *Bristol* is predictable: the conduct plaintiffs challenged as

7    fraudulent was grounded in specific plan documents.  In *Bristol*, Cigna "became

8    suspicious" that an out-of-network provider, Sure Haven, was engaging in improper fee-

9    forgiving.  *Id.* at 600.  "After gathering . . . evidence that supported its suspicions," Cigna

10   issued letters specifically "detailing its concerns" and "[*q*]*uoting . . . language* from the

11   plans" regarding the plan's prohibition on forgiving enrollees' fees.  *Id.*  (emphasis

12   added).  Cigna stated it wouldn't pay prior claims without receipts (addressing fee-

13   forgiving) and would systematically deny subsequent claims submitted without receipts.

14   *Id.*  In sum, the alleged audit was above-board.  The plaintiffs' "overarching state law

15   theory" thus hinged only on vague representations "during the verification and

16   authorization calls."  *Id.* at 601.

17   Providers' "overarching" theories and the actions they challenge here are strikingly

18   different.  Aetna issued Notices that failed to "detail" any particular concern, let alone a

19   concern grounded in a plan document.  The Notice did not "quote" from or even allude to

20   plan terms.  (Signaling a plan term now would miss the point).  Providers sent the records

21   Aetna demanded, but Aetna pretended it didn't receive them, stalled, re-requested them,

22   and fed Providers false hope.  Ctrclm. ¶80, ¶109.  A *sham* audit simply cannot "connect"

23   with ERISA plan administration.

24   To conclude otherwise at the pleading stage would require impermissibly drawing

25   inferences against Providers and pre-judging disputed factual issues.  Those issues are

26   better suited for resolution on a fully developed record.  *See, e.g.*, *Austin v. Boehringer*

27   *Ingelheim Pharm. Inc.*, 2023 WL 3437821, at *4 (N.D. Cal. May 12, 2023) (resolution of

28   "factual issues" important to preemption was "inappropriate" on a motion to dismiss);

COHEN WILLIAMS LLP

1 *Small Bus. Fin. Ass'n v. Hewlett*, 2023 WL 3551061, at *6 (C.D. Cal. Mar. 30, 2023)

2 (same).

3      Preempting these claims would also hand Aetna *carte blanche* to make false

4 promises with impunity, merely because an ERISA plan exists.  That would balloon

5 ERISA preemption far beyond the limits set by the Supreme Court.  *Travelers Ins. Co.*,

6 514 U.S. at 655 ("relate to" must stop somewhere); *Gobeille v. Liberty Mut. Ins. Co.*, 136

7 S. Ct. 936, 943 (2016) ("read[ing] the presumption against pre-emption out of the law"

8 would be "a result [that] no sensible person could have intended.").  Preemption under

9 these facts would also undercut the purposes of ERISA, "leav[ing] the provider with only

10 one option: Sue the patient, hoping that the patient either is willing or able to pay

11 significant, unexpected costs or has the interest and wherewithal to file suit against the

12 insurer under section 502(a)."  *Plastic Surgery Ctr.*, 967 F.3d at 233 ("the prospect . . . is

13 unpalatable" and "would cause [damage] to the doctor-patient relationship.").

     **B.**    <u>**Counterclaimants State Contract-Based Claims as to Non-ERISA Plans (Claims Three to Six).**</u>

16      With respect to non-ERISA plans only, Providers assert claims for breach of

17 express contract (Claim Three), implied contract (Claim Four), breach of the implied

18 covenant (Claim Five), and promissory estoppel (Claim Five).  The Motion ignores

19 Claim Three.  The Court should reject the arguments on the remaining Claims.

     **1.**    **The Implied Contract Is Enforceable and Supported by Consideration.**

22      An implied contract's existence and terms "are manifested by conduct."  Cal. Civ.

23 Code § 1621.  "The existence of mutual consent is determined by objective rather than

24 subjective criteria, the test being what the outward manifestations of consent would lead a

25 reasonable person to believe."  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793,

26 811 (1998).

27      In provider-insurer disputes, courts repeatedly find that manifestations of consent

28 in addition to VOB calls or authorizations state an implied contract to pay.  *See Aton Ctr.*,

COHEN WILLIAMS LLP

*Inc. v. Blue Cross & Blue Shield of Ill.*, 2021 WL 615051, at *4 (S.D. Cal. Feb. 16, 2021)
(collecting authority, finding sufficient facts alleged on reimbursement rate to infer
mutual assent); *Aton Ctr., Inc. v. Nw. Administrators, Inc.*, 2022 WL 4229307, at *4
(S.D. Cal. Sept. 13, 2022) (refusing to dismiss breach of contract (express and implied)
and promissory estoppel); *Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL
4517111, at *4 (N.D. Cal. Oct. 10, 2017) (permitting oral contract and parallel implied
contract claim where providers alleged more than a VOB call); *Cal. Spine &
Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2019 WL 4450842, at *4 (N.D. Cal.
Sept. 17, 2019) (denying motion to dismiss express and implied contract claim, where
Plaintiff asserted that "Defendant gave 'express and/or implied resultant assurances' that
Plaintiff 'would be paid at least 70% of the usual and customary value of its medical
services anticipated to be rendered.'").

In this case, Aetna "went far beyond . . . VOB calls" in objectively manifesting
consent and intention to be bound to pay properly documented claims.  Ctrclm. ¶123.
Aetna had paid hundreds of claims for the same services on the same plans.  *Id.* ¶¶57-59,
61-64.  Aetna even had a "no authorization required" policy, and sent Notices expressly
promising (1) a good faith claims procedure and review of claims, and (2) to pay the
properly documented claims.  *Id.* ¶¶122(a)-(d).

Aetna misapplies cases finding pre-service VOBs and authorizations insufficient to
form an implied contract.  Mot. 15.  None of these cases involved post-treatment Notices
and conduct directing Providers to submit additional records for review prior to payment.
Aetna's cited dismissals also lacked allegations that the Counterclaims specifically
include.  *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260, at *4 (C.D.
Cal. Nov. 27, 2017) (complaint lacked number of patients and types of treatment, and
"what the agreement might have been," while seeking recovery above the plan amount);
*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017)
(complaint lacked type of treatment provided and the rate owed under applicable EOC);

1    *Orthopedic Specialists of S. Cal. v. Pub. Employees' Ret. Sys.*, 228 Cal. App. 4th 644

2    (2014) (irrelevant case specific to government agencies).

3         Aetna's afterthought about "consideration," likewise misfires. Mot.15. *Armijo v.*

4    *ILWU-PMA Welfare Plan* is about "receipt of a benefit" as an essential element for a

5    claim of quantum meruit, not contract, 2015 WL 13629562, at *24 (C.D. Cal. Aug. 21,

6    2015). Consideration also exists if the promisee suffers a prejudice. "[E]ither alone is

7    sufficient." *Property Cal. SCJLW One Corp. v. Leamy*, 25 Cal. App. 5th 1155, 1165

8    (2018); Ctrclm. ¶60, ¶140 (alleging benefits conferred and detriments suffered).

9         **2.    The Promissory Estoppel Claim Is Based on Clear Promises.**

10         Promissory estoppel is "basically the same" as a contract action without

11    consideration. *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008)

12    (stating elements). Aetna contests only the "clear and unambiguous" promise and

13    "reasonable" reliance elements. Mot. 17.

14         Providers' estoppel claim focuses on two distinct promises in the Notices:

15    (1) Aetna would engage in a bona fide review of medical records submitted; and

16    (2) Aetna would pay properly documented claims. VOB calls informed Providers of the

17    requisite reimbursement rate in enrollees' evidence of coverage, and the Notice promised

18    review prior to payment. Ctrclm. ¶149-50, 52. Both promises are clear enough to state

19    an estoppel claim. *See Aton Ctr.*, 2021 WL 615051, at *6 (allowing promissory estoppel

20    claim based on misrepresentation of rate).

21         Again, Aetna summons cases in which plaintiffs included only threadbare

22    allegations of VOB calls or prior authorizations. Mot. 17-18; *Avanguard Surgery Ctr.,*

23    *LLC v. Cigna Healthcare of Cal., Inc.*, 2020 WL 5095996, at *3 (C.D. Cal. Aug. 28,

24    2020) (provider referenced only unspecified communications "including telephone calls

25    requesting VOB"). And again, none of Aetna's authorities involved post-treatment and

26    post-billing notices. Mot. 16; *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885

27    (1976) (dealings with lending institutions)).

28

COHEN **WILLIAMS** LLP

Aetna's contention that the Notices did not specify a particular rate of
reimbursement ignores the unique circumstances of the industry: the required
reimbursement rate is pre-determined.  The Notices didn't *need* to specify a particular
rate, because Aetna committed to paying at least the rate in each enrollees' Evidence of
Coverage ("EOC").  *See Pac. Bay Recovery, Inc.*, 12 Cal. App. 5th at 212.  And here,
Providers have alleged both billed rates and EOC rates with sufficient particularity.
Ctrclm. ¶52; Exhibits 1, 2.

With respect to reasonable reliance, Aetna cites no case involving promissory
estoppel.  Mot. 18.  Aetna never explains how the Notices "contradicted" themselves.
Mot. 18.  Providers incorporate their earlier reasonable reliance points, *supra* Part II.A.4.

### 3.    The Implied Covenant Claim Is Appropriate.

Providers assert an implied covenant claim due to the essence of the breach:
Aetna's bad faith in receiving and reviewing records towards decision and payment.  The
covenant requires each party to do "everything that the contract presupposes that he will
do to accomplish its purpose," 1 Witkin, Summary 11th Contracts §822 (2024), and may
remain with the underlying contract claim.  *TML Recovery, LLC v. Humana Inc.*, 2019
WL 3208807, at *3 (C.D. Cal. Mar. 4, 2019) (declining to dismiss implied covenant
claim where underlying contract claim survived).

### C.    <u>Providers Sufficiently Plead ERISA Violations (Claims Seven, Eight).</u>

Providers assert violations of ERISA Sections 502(a)(1)(B) (Claim Seven), and
Section 502(a)(3) (Claim Eight), in their capacities as assignees.  Ctrclm. 49-55.
Section 502(a)(1)(B) permits recovery of benefits due under the terms of the plan.
Section 502(a)(3) is a "catchall" permitting injunctive relief for violations of ERISA's
standards of conduct.

### 1.    Providers Have Standing By Virtue of Valid Assignments and
### Aetna's Waiver of Any Plan Non-Assignment Provisions.

Aetna enrollees validly assigned their ERISA claims to Providers by executing
standard assignment contracts upon admission to the facilities.  *Id.* ¶158.  Each Provider

COHEN **WILLIAMS** LLP

Case 2:23-cv-09654-MCS-JPR   Document 93   Filed 02/04/25   Page 23 of 32   Page ID
#:2327

as assignee "stands in the shoes of the assignor, and, if the assignment is valid, has standing to assert whatever rights the assignor possessed." *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1378, n.4 (9th Cir. 1986).

The Counterclaims allege valid assignments and waiver of any anti-assignment clauses. Ctrclm. ¶¶158-162. During meet and confers, Providers cooperated sharing their standard assignments, even before the opening of discovery. Mot. 5-6, Ex. A, B. Aetna concedes that the assignments do give Providers the right to "claims payments," *id.* at 6-7, but now quarrels about plan anti-assignment provisions and injunctive relief. Aetna is wrong on both points.

First, if a plan administrator fails to raise anti-assignment provisions during claims processing as a basis to deny benefits, the suing assignee can plead waiver. *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435 (9th Cir. 2020). "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012); *accord Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014) (administrator may not "hold in reserve a … reasonably knowable reason for denying a claim" then give that reason for the first time in court). Here, Providers conspicuously allege waiver. Ctrclm. ¶159. At all times, Aetna was aware Providers were acting as assignees. *Id.* ¶160-162. Aetna's own Amended Complaint admits that in "claims forms submitted to Aetna" Providers "represented that they had obtained assignments of benefits from Aetna members" and are therefore "subject to the terms of the ERISA plans." ECF 39 ¶203. Any anti-assignment provision is thus waived.

Second, the scope of the assignments is sufficient for Providers to assert a 502(a)(3) claim for injunctive relief in connection with the recoupment of benefits. The document heading is clearly "Assignment of Benefits" (plural) and states Providers may act in "any proceeding that may be necessary to seek payment." ECF 86-3; *Almendarez-*

23
OPPOSITION TO AETNA'S MOTION TO DISMISS COUNTERCLAIMS

1    *Torres v. United States*, 523 U.S. 224, 234 (1998) ("We also note that 'the title of a

2    statute and the heading of a section' are 'tools available for the resolution of a doubt'

3    about the meaning of a statute." (citation omitted)); *Conn. State Dental Ass'n v. Anthem*

4    *Health Plans, Inc.*, 591 F.3d 1337, 1352 (11th Cir. 2009) ("[A]n assignment

5    furthers ERISA's purposes only if the provider can enforce the right to payment.").

6         The 502(a)(3) claim is an alternative ground for and is necessary to obtaining the

7    payment of benefits.  ERISA Section 502(a)(3) is merely the statutory vehicle for

8    Providers' Mental Health Parity and Addiction Equity Act ("MHPAEA" or "Parity Act")

9    claim.  Ctrclm. ¶¶182-88; *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d

10    1209, 1217, 1229 (D. Utah 2019) (distinguishing case Aetna relies on, *Varity Corp. v.*

11    *Howe*, 516 U.S. 489 (1996), and holding plaintiffs could "only bring their Parity Act

12    cause of action" under 502(a)(3), and declining to dismiss 502(a)(3) "claim seeking to

13    enforce the Parity Act" where the claim is "alternative to, rather than duplicative of' the

14    502(a)(1)(B) denial of benefits claim."); *Galutza v. Hartford Life & Acc. Ins. Co.*, 2008

15    WL 2433837, at *2 (N.D. Okla. June 12, 2008) (adopting a "middle ground" in which the

16    plaintiff "ought to be permitted to join the two claims until such time as it may be

17    determined whether [Section 502(a)](1)(B) affords him adequate relief").  Contrary to

18    Aetna's Motion, it is not a claim for "fiduciary breach."  Mot. 6.  The 502(a)(3) claim is

19    merely an alternate theory permitting recovery for the same harm.

          **2.**     **Providers Need Not Plead Exhaustion and Adequately Allege**

20

21                        **Futility of Remedies.**

22         Exhaustion of plan remedies, Mot. 8, is a judicially created affirmative defense

23    unavailable to Aetna at this point.  *Norris v. Mazzola*, 2016 WL 1588345, at *5-6 (N.D.

24    Cal. Apr. 20, 2016) (collecting cases).  Plans only move to dismiss on this ground in "the

25    rare event" that non-exhaustion is "clear" on the pleading's face.  *Albino v. Baca*, 747

26    F.3d 1162, 1166 (9th Cir. 2014).  Otherwise, it is a summary judgment issue.  *Id.* at 1166.

27

28

COHEN WILLIAMS LLP

Second, exhaustion is inapplicable to alleged statutory violations.  The doctrine cannot bar Providers' Section 502(a)(3) claim.  *Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987) (exhaustion "not required" for statutory violation).

Third, courts require exhaustion only if the plan unambiguously demands it. *Spinedex v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014). Here, the Counterclaims do not concede there is an unambiguous exhaustion requirement in any plan.  Aetna does not provide any EOBs or denials sent to Providers informing them of such a requirement.  And Aetna's Notice merely stated Providers "may" pursue an appeal.  ECF 86-7; *In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*, 2021 WL 8532067, at *4 (C.D. Cal. Apr. 14, 2021) (exhaustion not required because, as here, providers lacked access to plan documents and notice merely alluded to "right" of appeal).

Finally, even if Aetna's communications to Providers included an unambiguous exhaustion requirement (they did not), Providers adequately plead one or more exceptions.  Providers needn't pursue administrative remedies at the same company presently suing them and their owner (personally), for fraud and conspiracy.  Aetna's initiating lawsuit, without more, is enough "factual support" to excuse exhaustion. *Laborers' Pension Fund v. Etolen & Buchanan, Inc.*, 2012 WL 3581178, at *3-4 (N.D. Ill. Aug. 17, 2012) (scolding plan that it "proceeded to federal court in the first instance" and is "here because it chose to sue" and can "hardly expect the defendant [it has] sued to forego a vigorous defense that includes the assertion of any claims"); *DeMatte v. Brotherhood of Industrial Workers' Health and Welfare Fund*, 1996 WL 764540 (M.D. Fla. 1996) (excusing exhaustion as futile, where plan alleged wife engaged in fraudulent behavior and a conspiracy to alter records and plan would be biased).

Exhaustion may also be excused if a plan administrator fails to comply with ERISA claims procedures, and that failure goes "beyond mere de minimis violations." *Spindex*, 770 F.3d at 1299.  Providers list examples of Aetna's lawlessness in this regard. Ctrclm. ¶70, ¶¶81-82, ¶118.  Processing claims without decision for years violates

OPPOSITION TO AETNA'S MOTION TO DISMISS COUNTERCLAIMS

COHEN WILLIAMS LLP

ERISA.  29 C.F.R § 2560.503(g), (f)(1), (f)(2)(iii); *Armijo v. ILWU-PMA Welfare Plan*, 2015 WL 13629562, at *6 (C.D. Cal. Aug. 21, 2015) (allegations regarding exhaustion do not require particularity); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1179, 1181-82 (C.D. Cal. 2015) (no exhaustion required where plaintiff alleged unreasonable claims procedures that violated "full and fair" review requirement, 29 U.S.C. § 1133(2)).  Any administrative remedies are thus "deemed" exhausted.  *Id.* ¶¶173-177 (citing 29 C.F.R § 2560.503-1(l)); *Spinedex*, 770 F.3d at 1299.

### 3.    Providers Specify the Relevant Plan Terms.

To state a claim under ERISA Section 502(a)(1)(B) for recovery of plan benefits, "a plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits."  *Almont Ambulatory Surgery Ctr., LLC*, 99 F. Supp. 3d at 1155.  In *Almont*, the court carefully reviewed four prior decisions addressing the degree of specificity required when pleading plan violations.  *Id.* at 1155-57.  Ultimately, *Almont* dismissed the ERISA claims with leave to amend because the plaintiffs merely alleged "no plan terms justified the failure to pay" and did "not actually allege that the specific services they provided to the patients at issue were covered. . . or describe the terms that would support such coverage."  *Id.* at 1158.  The Court found the case was "a close call," especially given United's failure to provide plan documents, and provided leave to amend as follows:

> Plaintiffs will have to plead that for each plan, the terms of the plan: (1) **provide coverage** for each of the procedures at issue in this case; and (2) dictate that these covered services **would be paid according to a specific reimbursement rate** (such as the reasonable and customary fees for services charged by outpatient surgical centers), which must be specified.  Plaintiffs should then allege that Defendants **failed to reimburse** for the covered services provided by Plaintiffs according to this reimbursement rate provided in the plans.

26

1    *Id.* at 1158-59. (emphasis added).  Crucially, the Court allowed plaintiffs to allege terms

2    "on information and belief" because they lacked "access to plan documents."  *Id.*

3          Providers include each of the allegations the *Almont* court required, and more.  The

4    Aetna enrollees treated were on employer-sponsored ERISA plans.  Ctrclm. ¶34.

5    Providers are out-of-network and offered covered mental health and substance use

6    disorder treatment that would be reimbursed at specific rates, for instance 125% of

7    Medicare.  *Id.* ¶¶49-53.  Providers offered three levels/types of treatment, all of which

8    were covered by the plans.  *Id.* ¶54.[5]  Providers were certain the MH/SUD treatment was

9    covered, because Aetna initially paid claims for these treatments under the same plans

10   without incident, at consistent rates.  *Id.* ¶¶61-63.  "Upon information and belief," the

11   amounts paid were consistent with the rates reflected in the enrollees' evidence of

12   coverage.  *Id.*  The Counterclaims go further by listing enrollee identifying information,

13   facilities attended, and dates of service.  *Id.* Exs. 1, 2.  It is hard to fathom what else

14   Aetna expects.

15         Grasping for any pretext for dismissal, Aetna quotes *Almont* without context,

16   Mot. 7-8, and ignores its disposition: leave to allege on information and belief (*i.e.*,

17   without precise quotation) the relevant plan terms.  99 F. Supp. 3d at 1158-59.  Does

18   Aetna really want repetitive citation to each of the one-hundred-plus enrollees' two-

19   hundred-page plan documents, which only Aetna possesses?  If so, none of its citations

20   support that unreasonable demand.  Mot. 8; *Villalobos v. Blue Shield of Cal. Life &*

21   *Health Ins. Co.*, 2022 WL 341134, at *1 (C.D. Cal. Jan. 4, 2022) (single plaintiff failed to

22   "identify any specific term" demonstrating the plan's treatment); *Bates v. Blue Shield of*

23   *Cal.*, 2019 WL 2177641, at *1 (C.D. Cal. May 17, 2019) (single plaintiff vaguely alleged

24   entitlement to benefits due under "lawful plan terms and provisions").  Unlike the

25

26   _____

27   [5] The Motion attaches a plan document that supports this allegation.  ECF 86-6 at 19-18, 70-72 (ECF pagination) (describing coverage of inpatient and outpatient treatment of

28   mental disorders and substance abuse).

COHEN WILLIAMS LLP

plaintiffs in *Villalobos* and *Bates*, Providers did specify relevant plan terms.  And even
Aetna's own authority recognizes that a plaintiff "need not recite every relevant term of
every relevant plan." *ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*, 2023 WL
6532648, at *1 (9th Cir. Oct. 6, 2023) (faulting plaintiffs for lack of specificity in their
pleading only after "years of litigation and multiple amended complaints" in a case
involving "dozens of insurers" with "distinct plans").

Aetna's "plan documents" argument is also inequitable.  At meet and confers prior
to the Motion and at Aetna's request, Providers voluntarily provided sample assignments,
before the opening of discovery.  In return, Providers requested relevant plan documents
from Aetna.  Williams Declaration ¶¶3-6.  Aetna never responded.  The Motion revealed
to Providers for the first time an exemplar summary plan description.  *Id.* ¶7.  Aetna
selectively revealed this document to try and exploit an anti-assignment clause, while
glaringly omitting the plan Evidence of Coverage (EOC), which would specify the
reimbursement rates to which Providers are entitled as a matter of contract.  Since then,
Providers handed Aetna 160 more assignments, concurrently with Providers' initial
disclosures, and again requested complete plan documents.  *Id.* ¶¶8-10.  Six days later
and only after Providers' follow-up, Aetna told Providers it would provide no plan
documents without an RFP.  *Id.* ¶¶11-12.  Under these circumstances, Providers have
alleged more than enough.  The Court should not reward Aetna for hiding the ball.

**D.    Providers Assert Independent Harms Conferring UCL Standing (Claim
Nine) and Allege Several Plausible Theories of Unlawful Behavior.**

Providers allege that they were independently harmed by Aetna's violation of the
Unfair Competition Law (UCL).[6]  The California Supreme Court has held—against
Aetna—that diverted staff resources and diverted time, without more, confer UCL
standing.  *Cal. Med. Assn. v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1089 (2023)

_____

[6] The UCL claim contains no statement that "for this claim, Providers are suing Aetna as
the assignees of Aetna enrollees' ERISA-covered benefits."  *Compare* Ctrclm. ¶180.

COHEN **WILLIAMS** LLP

(standing also conferred by "out-of-pocket expenditures for which no value has been received").  Providers suffered the "direct" harm of lost resources irrespective of their status as assignees.  Ctrclm. ¶217; *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011) (standing also conferred by being "required to enter" otherwise unnecessary transaction, costing money); *Out of Network Substance Use Disorder Claims*, 2020 WL 2114934, at *9 (permitting out-of-network providers to proceed on UCL "unlawful prong" theory premised on Parity Act violations).

Aetna's arguments regarding the Knox-Keene Act ("KKA") and Parity Act cannot be decided at this time.  Mot. 20.  With respect to the KKA, Aetna demands that the Court assume—without any application for judicial notice—that Aetna is an insurer subject to the exception created by Health & Safety Code §1343(e)(1).  But the Court cannot make that assumption,[7] and Aetna (including David Erickson), is not.  *Keith Feder, M.D., Inc. v. Aetna Life Ins. Co.*, 2024 WL 1641987, at *2 (C.D. Cal. Mar. 4, 2024) (finding a single entity—Aetna Life Insurance Co.—excepted from the KKA, only after considering supporting request for judicial notice).  Similarly, it is too early to ascertain whether all the relevant Aetna plans are "fully self-funded," *Oneto v. Watson*, 2024 WL 2925310, at *5 (N.D. Cal. June 10, 2024); Ctrclm. ¶120 (Providers believe some plans are *not* self-funded).  And the facts alleged are sufficient to infer Aetna is managed by the DMHCS as a health care service plan subject to the KKA.  *Id.* ¶31 n.1 (referencing 191 DMHCS enforcement actions against Aetna Health California).

Aetna's arguments regarding substantive violations alleged under the UCL claim also fail.  Mot. 20-21.  Providers allege facts sufficient to conclude there was no real purpose for requesting medical records repeatedly, and the requests were not "reasonably necessary" to the audit.  Ctrclm. ¶195-96 (citing Health & Safety Code § 1367.01).  Likewise, the UCL claim functions even without the single erroneous KKA citation

---

[7] *See* CDI Website Business License Search, https://cdicloud.insurance.ca.gov/cal (returning no results for Aetna Life and for Aetna Health).

COHEN WILLIAMS LLP

Aetna raises, Section 1371(b). Section 1371.35(g)'s timeliness requirements, meanwhile, do apply: the face of the Counterclaims (and of the Notices) contain *no* evidence of Providers having engaged in fraud or misrepresentation.

The Parity Act authorities Aetna cites, Mot. 19 n.15, are outdated and do not dispose of the UCL claim either. In 2024 the Ninth Circuit reversed in relevant part the decision upon which Aetna relies and held that Parity Act claims of "improper internal process" need only allege "something more" than a denial, and may rely on government reports and investigations. *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F. 4th 965, 973 (9th Cir. 2024). In addition to citing multiple government reports, Ctrclm. ¶44, Providers allege more: a systematic sham audit. *See id.* ¶¶184-191.

**E.    To the Extent Any Claim Is Insufficiently Stated, the Court Should Grant Leave to Amend.**

In the event the Court finds a claim deficient in any regard, Providers respectfully request leave to amend, with adequate time to address any identified deficiency. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend appropriate unless complaint "could not possibly" be cured).

**III.    CONCLUSION**

For the foregoing reasons, the Motion should be denied.

Dated:  February 4, 2025          **COHEN WILLIAMS LLP**


By:     /s/ Marc S. Williams
        _____
        Marc S. Williams
        Reuven L. Cohen
        Kathleen M. Erskine
        Joseph E. Saei

        Attorneys for Nathan Young, David Young,
        Get Real Recovery, Inc., Healing Path Detox
        LLC, Ocean Valley Behavioral Health, LLC,
        Rodeo Recovery LLC, Sunset Rehab LLC,
        Natural Rest House, Inc., 55 Silver LLC, 9
        Silver LLC, Helping Hands Rehabilitation
        Clinic Inc., and Joser Forever LLC

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Defendants Nathan Young, David Young, Get Real Recovery, Inc., Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., 55 Silver LLC, 9 Silver LLC, Helping Hands Rehabilitation Clinic Inc., and Joser Forever LLC, certifies that this brief contains 6,888 words, which complies with the word limit of L.R. 11-6.1 and the Initial Standing Order issued in this action (ECF 18 ¶8(4)-(5)).

Dated:  February 4, 2025 **COHEN WILLIAMS LLP**

By:  _/s/ Marc S. Williams_

Marc S. Williams
Reuven L. Cohen
Kathleen M. Erskine
Joseph E. Saei

Attorneys for Nathan Young, David Young, Get Real Recovery, Inc., Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., 55 Silver LLC, 9 Silver LLC, Helping Hands Rehabilitation Clinic Inc., and Joser Forever LLC

OPPOSITION TO AETNA'S MOTION TO DISMISS COUNTERCLAIMS