DAVID D. PIPER (CASB No. 179889)
DPiper@Stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
1 World Trade Center, Suite 2575
Long Beach, CA 90831
Telephone: (562) 366-1653
Facsimile: (562) 366-1646

BENJAMIN H. MCCOY (*Pro Hac Vice*)
BMcCoy@Stradley.com
JORDANN R. CONABOY (*Pro Hac Vice*)
JConaboy@Stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8108
Facsimile: (215) 564-8120

Attorneys for Plaintiffs
AETNA LIFE INSURANCE COMPANY and
AETNA HEALTH OF CALIFORNIA, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC.,

Plaintiffs,

v.

NATHAN SAMUEL YOUNG, et al.

Defendants.

Case No. 2:23-cv-09654-MCS-JPR

**DECLARATION OF BENJAMIN H. MCCOY IN SUPPORT OF AETNA'S MOTION FOR SANCTIONS**

Hearing Date: November 24, 2025
Time: 9:00 AM
Courtroom: 7C
Judge: Hon. Mark C. Scarsi

Complaint Filed: November 14, 2023
Trial Date: May 5, 2026

I, Benjamin H. McCoy, declare as follows:

1. I am an attorney admitted pro hac vice for the above-captioned matter. I am a partner with the law firm Stradley, Ronon, Stevens & Young, LLP, counsel of record for Plaintiffs Aetna Life Insurance Company and Aetna Health of California Inc. (collectively, "Aetna"). I submit this declaration in support of Aetna's Motion for Sanctions.

2. Aetna's counsel has reviewed materials produced by Defendants, which show that Defendant Nathan Young a/k/a "Pablo" approved payments to various people who worked for or with Defendants. Aetna has not attached those materials to its Motion because Defendants designated them as "Confidential" and Aetna does not believe its Motion should be under seal.

3. Aetna's counsel has reviewed materials produced by Defendants showing that Defendants paid N.S. roughly $215,000 or more. Aetna has not attached those materials to its Motion because Defendants designated them as "Confidential" and Aetna does not believe its Motion should be under seal.[1] The relevant bates numbers include YOUNG00233185-233265, as well as YOUNG000201282. Defendants' records also indicate that N.S. had financial struggles because he spent his money on drugs. And Defendants' records show that they paid for things like N.S.'s gym memberships and his rent after he moved out of their facilities, and they appear to have waived his co-insurance obligations.

4. Aetna's counsel has reviewed materials produced by Defendants showing that Defendants paid S.S. hundreds of thousands of dollars.[2] Aetna has not

[1] Aetna will provide any materials referenced in its Motion upon request by Defendants or the Court and will be prepared to provide hard copies at the hearing or, if too big for printing, in electronic format.

[2] The total amount across Defendants' records is over $500,000.00. However, some records show multiple payments on the same day for the same amount. It is unclear if these records relate to the same payments. Thus, to be cautious, Aetna has

attached those materials to its Motion because Defendants designated them as "Confidential" and Aetna does not believe its Motion should be under seal. The relevant bates numbers include YOUNG001993360-19937, as well as YOUNG00233384-233421. By contrast, Defendants' records indicate that they paid their nurses and others who allegedly provided care about $30 per hour or less. Public records indicate that S.S. has multiple felony convictions, including a 2026 conviction for criminal mischief based on a robbery and a March 2023 conviction for assault with a deadline weapon. Aetna understands that, at least as of July 2025, S.S. was incarcerated related to an alleged robbery.

5. Aetna's counsel has reviewed materials produced by Defendants showing that Defendants paid N.M. over $1,500,000, including payments through the payment app Zelle in March 2021. Aetna has not attached those materials to its Motion because Defendants designated them as "Confidential" and Aetna does not believe its Motion should be under seal. The relevant bates numbers include YOUNG00199375-199466, as well as YOUNG00201282. Defendants' records also indicate that they billed another insurer for allegedly providing services to N.S. or someone who has the same name as him.

6. Defendants' records show that Defendants paid a doctor on a per-visit basis. The relevant bates numbers include YOUNG00255799-255803.

7. During meet and confers, defense counsel agreed to produce bank records relating to bank accounts to which they acknowledge Defendants' still have access. Defense counsel also recently agreed to contact banks where Defendants had accounts that have been closed, and to request information relating to those accounts. As far as Aetna's counsel is aware, Defendants have not yet produced their banking records. Defendants' counsel informed Aetna's counsel during a meet and confer on or around September 24, 2025 that Defendants no longer have access to some of their

---

conservatively discussed Defendants' payments to S.S. in approximate terms.

bank accounts.

8. Defendants produced records for N.S. relating to about 18 relevant claims that resulted in Aetna paying Defendants roughly $27,000 in May and June of 2021. As far as Aetna can tell, Defendants have not produced similar records relating to more than 300 other claims for which Aetna paid Defendants about $750,000.

9. Aetna's counsel has reviewed spreadsheets produced by Defendants that show that Defendants maintained marketer rosters, and many of those marketers were not identified in Defendants' supplemental interrogatory responses. The Provider Defendants' supplemental interrogatory responses stated that, as of May 2024, Defendants had only about nine people other than Nathan Young whose duties may have included marketing or something relating to marketing. Other groups of Defendants served similar supplemental interrogatory responses. Aetna has not attached Defendants' supplemental interrogatory responses because Defendants designated them as "Confidential" and Aetna does not believe its Motion should be under seal.

10. After Defendants served their supplemental interrogatory responses, Aetna checked its own systems and Defendants' ledgers. Based on that review, Aetna believes it identified at least a dozen accounts that were not identified in Defendants' supplemental interrogatory responses but that should have been. Aetna's counsel promptly notified Defendants' counsel of the missing account information. Defendants accused Aetna in follow-up correspondence of unfairly "chastising" them before stating that they are working to supplement their interrogatory responses again to included updated banking information.

11. Judge Rosenbluth directed Defendants to "provide to [Aetna] a declaration laying out in detail how and when, and by whom, they have searched for information and documents responsive to [Aetna's] first sets of interrogatories and requests for production." Dkt. No. 121. Defendants complied with that portion of the Court's Order on October 2, 2025. A copy of the Declaration is attached as **Exhibit**

**A.**

12. On October 20, 2025, Defendants' counsel provided Aetna's counsel with new information about Defendant Nathan Young's email accounts. With respect to Nathan Young's Gmail account, defense counsel sent an email after a telephonic meet and confer stating "Our understanding from early internal discovery work is the pablo account [p**********z@gmail.com ("the Nathan Young Gmail Account")] was not accessible at the time litigation commenced and it remains inaccessible despite several attempts at recovery. We have asked our vendor to send instructions for a 'double check' attempt with Google's account recovery procedure. We searched our Relativity database--including material not produced--and David Young's email, and this confirmed our understanding; the last-sent emails sent from the pablo gmail date to before the Aetna lawsuit." With respect to one of Nathan Young's Yahoo accounts, defense counsel's email stated as follows: "Regarding [n*********2@yahoo.com ("the Second Nathan Young Yahoo Account")], which you may have seen is sometimes copied in produced emails, it is accessible and our understanding was it contains almost entirely spam mail, is occasionally cc'd in other emails, and has little if any material relevant to the lawsuit. If you have particular searches you would like us to conduct to confirm, we would be happy to discuss. We also explained we are searching and producing Nathan/David Young Microsoft tenant accounts/data." Aetna asked defense counsel for additional information about Nathan Young's email accounts, and defense counsel informed Aetna that they are looking into these questions and will respond soon. On October 24, 2023, defense counsel stated as follows: Defendants' vendor "is in the process of collecting data and running searches on the [the Second Nathan Young Yahoo Account] to confirm the nature of those emails"; "responsive emails from [n********g@yahoo.com (the "First Nathan Young Yahoo Account")] have already been produced, and we expect an additional production by early next week"; the Nathan Young Gmail Account remains inaccessible and "it requires a two-step authentication process linked to a cell phone

that Nate has not had access to for several years," and Defendants' vendor "walked [them] through the account recovery process, but it was unsuccessful because Nate was unable to complete the two-step authentication"; and "[r]egarding David's Gmail account ([d***********7@gmail.com ("the David Young Gmail Account")]), [Defendants'] Vendor is in the process of preserving it and running searches." In addition to the email accounts already mentioned for Nathan Young, Aetna has also identified at least four other accounts belonging to him during the relevant period: n****g@5silver.biz, n********g@getrealrecovery.biz, n****g@firethetraitor.com, and n****g@55silver.biz. Aetna has identified more than 2,000 documents and emails involving the Nathan Young Gmail Account.

13. Aetna has asked defense counsel several times about the contours of any litigation hold or preservation notice that Defendants issued and whether they took other steps to preserve evidence, but Defendants' have largely declined to provide that information.

14. Aetna's counsel has reviewed records showing that Defendants maintained contact lists with employees' Yahoo and Gmail accounts. One example is the document with bates number YOUNG00342522.

15. On September 29, 2025, Judge Rosenbluth raised the prospect of a sanctions motion based on Defendants' violations of the Court's Order on Aetna's Motion to Compel. Dkt. No. 124 at 7:23-25; 9:12-10:8; 22:16-22; and 45:12-17. In fact, Judge Rosenbluth raised the prospect of sanctions *sua sponte*, *id.* at 7:23-25, and stated that it was "pretty clear that they're [plaintiffs] going to filing for some sort of sanctions[,]" *id.* at 24:6-10.

16. On that same date, Judge Rosenbluth issued an Order stating that Defendants' "previously ordered and now overdue document production must continue as quickly as possible, and the speed with which they comply with that order will likely factor into how the Court receives any subsequent request for sanctions of any kind that Plaintiff may file." Dkt. 121.

17. On October 2, 2025, Plaintiffs provided a Declaration as to their discovery efforts to date.

18. The parties then exchanged several meet-and-confer communications, including letters on October 13, 2025, and October 16, 2025. On October 20, 2025, the parties held a teleconference regarding ongoing issues with Defendants' production. On October 22, 23, and 2024, the parties exchanged additional e-mails regarding Aetna's upcoming Motion.

19. Defendants oppose Aetna's Motion in its entirety.

I declare under penalty of perjury that the foregoing is true and correct based upon my current information, knowledge, and belief.

Signed this 27th Day of October, 2025.

*<u>/s/ Benjamin H. McCoy</u>*
BENJAMIN H. MCCOY

# EXHIBIT A

Marc S. Williams (Bar No. 198913)
Email: mwilliams@cohen-williams.com
Reuven L. Cohen (Bar. No 231915)
Email: rcohen@cohen-williams.com
Kathleen M. Erskine (Bar No. 223218)
Email: kerskine@cohen-williams.com
Roya S. Ladan (Bar No. 287161)
Email: rladan@cohen-williams.com
Joseph (Yusuf) Saei (Bar No. 321341)
Email: ysaei@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Defendants Nathan Young, David Young, Get Real Recovery LLC, Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., 55 Silver LLC, 9 Silver LLC, Helping Hands Rehabilitation Clinic Inc., and Joser Forever LLC

COHEN WILLIAMS LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NATHAN SAMUEL YOUNG, a/k/a PABLO LOPEZ, et al.,<br><br>Defendants. | Case No. 2:23-cv-09654-MCS-JPR<br><br>**DECLARATION OF MARC S. WILLIAMS REGARDING YOUNG DEFENDANTS' EFFORTS TO COMPLY WITH DISCOVERY OBLIGATIONS** |

COHEN WILLIAMS LLP

# DECLARATION OF MARC S. WILLIAMS

I, Marc S. Williams, declare as follows:

1. I am over the age of eighteen and am an attorney duly licensed to practice law in the State of California. I am a partner with Cohen Williams LLP ("CW") and one of the attorneys of record in this action for Defendants Helping Hands Rehabilitation Clinic, Inc., Get Real Recovery LLC, Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., and Joser Forever LLC (the "Provider Defendants"); Nathan Young and David Young (the "Individual Defendants"); and 55 Silver LLC and 9 Silver LLC ("Silver Defendants"). I refer to the Provider Defendants, Individual Defendants, and Silver Defendants collectively in this declaration as the "Young Defendants."

2. I make this declaration in response to the Court's order of September 25, 2025, which the Court issued following an informal discovery conference conducted via Zoom before Magistrate Judge Rosenbluth on the same date. (ECF 121.) In the order, the Court directed the Young Defendants to "provide to Plaintiff a declaration laying out in detail how and when, and by whom, they have searched for information and documents responsive to Plaintiff's first sets of interrogatories and requests for production." (*Id.*) This declaration is based upon my personal knowledge and upon the files and records in this action. It is also based upon information that I have gathered from my colleagues at CW who are working with me on this case and from the electronic discovery vendor that CW retained for this case, Complete Discovery Source ("CDS"). If called upon to testify regarding the matters set forth in this declaration, I could and would do so.

## A. Events Leading Up to the Court's Discovery Order of August 14, 2025

3. Plaintiffs Aetna Life Insurance Company and Aetna Health of California Inc. (collectively, "Aetna" or "Plaintiffs") filed this action on November 14, 2023. (ECF 1.)

4. Aetna filed its First Amended Complaint ("FAC") on February 2, 2024. (ECF 39.) In the FAC, Aetna seeks to claw back insurance claims that it paid Provider Defendants for substance use disorder ("SUD") treatment provided to individual clients

insured by Aetna. The specific insurance claims are listed, one by one, on exhibits to the FAC. (ECF 39-1 to 39-3 and 39-5 to 39-9 [FAC, Exhibits A-C, E-I].) In total, there are over 18,000 insurance claims, spanning 249 clients served by Provider Defendants, listed on the exhibits to the FAC. The earliest date of service for the 18,000 insurance claims is January 1, 2021. The last date of service is July 6, 2023.

5. All the defendants named in this action filed motions to dismiss on March 26, 2024. (ECF 43, 44, 46, 47.)

6. On September 25, 2024, the Court issued its order on the motions to dismiss, denying the Young Defendants' motion. (ECF 63.)

7. In early October 2024, before initial disclosures and before any party served any discovery request in this action, CDS (our electronic discovery vendor) collected Nathan Young's and David Young's e-mails and phone data in anticipation of discovery proceedings in this action. Further collection efforts ensued in the months that followed, as we collected documents from our clients that we anticipated may be relevant to this matter, such as human resources documents, employee training materials, contractor 1099s, billing and claims documents, verifications of benefits, correspondence received from Aetna, and other materials maintained in the Dropbox account used by the Young Defendants.

8. On December 2, 2024, the Court issued an Order Setting Scheduling Conference, ordering a Scheduling Conference for February 3, 2025. (ECF 78.)

9. On January 14, 2025, the parties held the Rule 26(f) conference of counsel. At the Rule 26(f) conference, the parties agreed to exchange initial disclosures by January 28, 2025, before the Scheduling Conference.

10. On January 17, 2025, the parties filed a Joint Rule 26(f) Report. (ECF 87.)

11. The Young Defendants served their initial disclosures on January 28, 2025. Aetna served its initial disclosures the same day. Many of the potential witnesses identified in Aetna's initial disclosures were identified with only partial information, such as initials (*e.g.*, "N.S." and "R.H.") or fragments of phone numbers (*e.g.*, (619) 695 XXXX). In



COHEN WILLIAMS LLP

response to the Young Defendants' request, Aetna provided complete names and phone numbers two weeks later, on February 14, 2025.

12. On February 3, 2025, the Court held the Scheduling Conference and ordered a trial date of May 5, 2026 and a non-expert discovery cutoff of December 22, 2025, along with other deadlines. (ECF 90, 91.)

13. The Young Defendants were the first parties to serve written discovery requests in this action. On February 3, 2025, the same day as the Scheduling Conference, the Young Defendants served a first set of requests for production, asking Aetna to produce health insurance plan documents relating to the 249 SUD clients identified in the exhibits attached to the FAC.

14. On March 5, 2025, Aetna served written responses and objections to the Young Defendants' first set of requests for production, agreeing to produce some plan documents.[1]

15. Aetna did not serve any written discovery requests in this action until March 28, 2025, one year and four months into the case, and two months and two weeks after the parties' Rule 26(f) conference.

16. Aetna's first sets of discovery requests consisted of requests for production and interrogatories. (ECF 109-2, Exhibits 1-10.) Specifically, Aetna served 17 requests for production (per set) and 10 interrogatories (per set) on each of the twelve Young Defendants.[2]

---

[1] Aetna did not produce any of the plan documents until September 12, 2025—*i.e.*, more than six months after Aetna served its written responses and objections to the Young Defendants' first set of requests, and Aetna did so only after receiving a lengthy meet and confer letter from my office.

[2] The number of requests for production and interrogatories differ slightly for the Provider Defendants. Aetna served eighteen requests for production and eleven interrogatories on the Provider Defendants. As set forth in the parties' Joint Stipulation of Disputes Regarding Defendants' Discovery Responses, Aetna's first sets of discovery requests were very similar across the twelve Young Defendants, and the twelve Young Defendants served



COHEN WILLIAMS LLP

17. Aetna's first sets of discovery requests were very broad and have proven to be highly burdensome and very expensive to manage. Through its first set of requests for production, Aetna sought "all documents" relating to numerous aspects of the Young Defendants' SUD treatment business.

18. For example, one of Aetna's requests sought: "Any and all DOCUMENTS RELATING TO COMMUNICATIONS between YOU and any BROKER, BODYBROKER, or MARKETER CONCERNING any CLIENT or potential CLIENT." (ECF 109-3 at 18:22 – 19:6.) "BROKER," "BODYBROKER," or "MARKETER" are defined as "any person engaged in the process of referring individuals with substance use disorders to substance use disorder treatment." (*Id.*) "CLIENT" or "CLIENTS" are defined as "the individuals to whom Provider Defendants allegedly provided care." (*Id.*) On its face, this request sought all documents relating to communications between any of the Young Defendants and any person who has ever referred a client or potential client to one of the Provider Defendants for treatment.

19. Another very broad request sought: "ALL DOCUMENTS CONCERNING PROVIDER DEFENDANTS' employees or contractors, including but not limited to documents sufficient to show the dates of their employment/contracting, duties, methods and/or amounts of payment." (ECF 109-3 at 54:11-20.) All documents concerning employees or contractors is exceedingly broad.

20. Multiple requests called for production of documents relating to all the Young Defendants' clients, regardless of whether the clients were among the 249 clients listed on the exhibits to the FAC or even Aetna members, including the request referenced above in paragraph 18, as well as the following requests:

---

similar written responses and objections to these discovery requests. (ECF 109-3 at 6.) For efficiency and clarity, I may refer in this declaration to all of Aetna's first sets of requests for production and all of Aetna's first sets of interrogatories as one set of requests for production and one set of interrogatories.



COHEN WILLIAMS LLP

a. "Any and all DOCUMENTS, including bank records or accounting records (including mobile payment services) RELATING TO the following: 1. Current or former clients; 2. Marketers; 3. Vendors; 4. Employees; 5. Independent Contractors; 6. Collection of client COST SHARE; or 7. Payment of rent, hotel rooms, or housing for CLIENTS." (ECF 109-3 at 26:1-8.)

b. "Any and all COMMUNICATIONS RELATED TO complaints or grievances by CLIENTS or their family members RELATED TO YOU." (ECF 109-3 at 42:22-25.)

c. "Any and all DOCUMENTS RELATED TO CLAIMS SUBMISSIONS for SUD TREATMENT performed on behalf of any CLIENT." (ECF 109-3 at 44:5-8.)

21. Aetna further demanded "Any and all DOCUMENTS RELATED TO COMMUNICATIONS with electronic medical record vendors since January 1, 2021." (ECF 109-3 at 38:3-6.) This request could encompass every electronic medical record document for every person at every clinic in the Young Defendants' control.

22. Other broad requests included the following:

a. "Any and all COMMUNICATIONS between YOU and the YOUNG DEFENDANTS RELATED TO CLIENTS with AETNA policies." (ECF 109-3 at 41:4-10.)

b. "All COMMUNICATIONS between PROVIDER DEFENDANTS and any individual identified in Exhibit A RELATING TO SUD TREATMENT or MARKETING." (ECF 109-3 at 52:1-9.)

c. "Any and all COMMUNICATIONS with AETNA members to whom YOU provided SUD TREATMENT." (ECF 109-3 at 24:3-6.)

23. On April 28, 2025, without seeking an extension of time to respond (except a one-day extension for the verification of one defendant), the Young Defendants served written responses and objections to Aetna's first sets of discovery requests. (ECF 109-2,



COHEN WILLIAMS LLP

Exhibits 11-20.) Resolution of the Young Defendants' objections was fundamental to the Young Defendants' ability to meaningfully continue further document collection, searches, review, and production. In particular, and among other objections, the Young Defendants objected on the following grounds:

a. Aetna's first sets of discovery requests were overbroad in temporal scope and not proportional to the needs of the case, in seeking records and information exceeding the time frame related to 18,000 insurance claims and 249 clients listed on the exhibits to the FAC (*see, e.g.,* ECF 109-3 at 7:3 – 10:22);

b. Aetna's first sets of discovery requests were overbroad, unduly burdensome, and not proportional to the needs of the case, in seeking discovery related to clients beyond the 249 clients listed on the exhibits to the FAC (*see, e.g.,* ECF 109-3 at 12:15 – 15:21); and

c. The Young Defendants' search would be facilitated if Aetna provided the names and any other claims information for the 249 clients listed on the exhibits to the FAC, as the exhibits only included Member ID and Claim ID for the SUD clients listed (*see, e.g.,* ECF 109-3 at 10:23 – 12:14).[3]

24. Aetna, thus, has been aware since receiving the Young Defendants' April 28, 2025 written responses and objections that the Young Defendants had fundamental objections that needed to be resolved in order to create a workable approach to searching for and producing documents and information, including objections relating to the temporal

[3] In their written responses and objections served on April 28, 2025, the Young Defendants stated: "To facilitate a complete response and/or search, Responding Parties request that Aetna provide the FAC Exhibits in a useable Excel format that includes each client's complete name and any other identifying information reasonably available to Aetna." (*See, e.g.,* ECF 109-2 at 230:21-24.) In each set of written responses and objections to the requests for production, the Young Defendants repeatedly stated: "Responding Parties request that Aetna provide the names of individuals in the FAC exhibits to facilitate this search." (*See, e.g., id.* at 235:9-10.)





COHEN WILLIAMS LLP

scope of discovery and whether discovery would be limited to the 249 clients listed on the exhibits to the FAC. Aetna has also long been conscious of the fact that the Young Defendants sought not only the names of the 249 clients, but also any other helpful claims information relating to them.

25. Counsel for Aetna, Jordann Conaboy, misinformed Magistrate Judge Rosenbluth at the September 25, 2025 informal discovery conference, when he asserted that the Young Defendants, "didn't raise this notion of not having been able to identify their own patients . . . until July [2025]." (Sept. 25, 2025 Hearing Tr. at 14:2-4.) To the contrary, the Young Defendants clearly asked Aetna on April 28, 2025, in multiple responses and objections to discovery requests, to provide the names of the 249 clients and "other identifying information reasonably available to Aetna" to "facilitate a complete response and/or search." (*See, e.g.,* ECF 109-2 at 230:21-24, 235:9-10.)

26. On May 15, 2025, the Young Defendants supplemented their initial disclosures to provide additional information on liability insurance.

27. Without any prompting from Aetna, around June 17, 2025, my firm initiated a teleconference with CDS (our electronic discovery vendor), to move forward with data processing and search term reports for the data that had been collected to date, as referenced in paragraph 7 above. CDS began processing this data and generated draft search term reports.

28. On June 26, 2025, approximately two months after the Young Defendants served their written responses and objections to Aetna's first sets of discovery requests, Aetna sent my firm a meet and confer letter concerning the substance of the Young Defendants' responses to Aetna's first set of discovery requests. (ECF 109-2 at 498.) This was the first response to the Young Defendants' written responses and objections. Aetna's letter made clear that the parties were not in agreement on fundamental issues regarding the scope of what the Young Defendants would have to collect, search, review, and produce, including disagreement on the discovery time period and whether Aetna would be entitled to discovery beyond the 249 clients referenced in the exhibits attached to the





COHEN WILLIAMS LLP

FAC. (*Id.* at 498-499.) In the letter, Aetna also refused to provide the names of the 249 clients. (ECF 109-2 at 499.) Instead, Aetna offered in the letter to produce "unredacted versions of the spreadsheets" that had been attached as exhibits to the FAC, but the spreadsheets—redacted or unredacted—do not include client names, and Aetna had already provided unredacted versions of the spreadsheets earlier in the case ***without client names***.[4]

29. In its meet and confer letter, Aetna also advanced new demands for materials—particularly financial materials—that were *not within the scope* of Aetna's already broad requests. (ECF 109-2 at 500-502.) The letter, thus, confirmed the Young Defendants' concern that proceeding with a full collection, search, and review of documents could be futile or wasteful until the Young Defendants' objections were resolved.

30. The Young Defendants responded the day after they received Aetna's meet and confer letter and proposed to meet and confer with Aetna's counsel on July 3, 2025—three days sooner than required by local rules.

31. On July 3, 2025, counsel for Aetna and the Young Defendants engaged in a substantive meet and confer by videoconference. At the meet and confer, Aetna was represented by Mr. Conaboy and Benjamin McCoy. I was on the videoconference, along with my colleagues, Kathleen Erskine and Joseph (Yusuf) Saei.

32. During the meet and confer, Ms. Erskine, Mr. Saei, and I stated our view that the issues should be presented to the Magistrate Judge as quickly as possible, because it did not make sense for the Young Defendants to go back and forth and conduct piecemeal collections, searches, and reviews with changing date ranges and a changing scope of responsive materials. During the meet and confer, Ms. Erskine, Mr. Saei, and I offered to accept a discovery period of three months before the first date of service among the 18,000

[4] It is clear from the exhibits to the FAC that client names are ***not*** included on the spreadsheets, whether redacted or not. (ECF 39-1 to 39-3 and 39-5 to 39-9 [FAC, Exhibits A-C, E-I].) The exhibits to the FAC include a "Member ID" and "Claim ID" for each of the 18,000 insurance claims, but they do not include the names of the clients.





COHEN WILLIAMS LLP

claims (*i.e.*, October 1, 2020) through three months after the last date of service among those claims (*i.e.*, October 6, 2023). Aetna's "Instructions" to its requests for production define the relevant time period as "one year before the earliest date of service and one year after the latest date of service" unless otherwise indicated. During the meet and confer process, Aetna specified a date range of January 1, 2020 to July 6, 2024.

33. Ms. Erskine, Mr. Saei, and I noted that our firm and electronic discovery vendor had already collected documents from the two core custodians, Nathan Young and David Young, as well as various centrally stored corporate files (referencing material the Young Defendants maintained on Dropbox). We further explained that they were still evaluating whether to add more custodians and records, and which ones, depending on the outcome of the dispute. We were clear with Aetna's counsel that the overall approach would depend in large part on whether the Magistrate Judge would permit a narrowed search for material relating to the 249 clients.

34. In other words, the Young Defendants have been transparent with Aetna, starting with their April 28, 2025 written responses and objections and through the July 3, 2025 meet and confer and in subsequent meetings. Aetna has been keenly aware that the Young Defendants' collection, search, review, and production were contingent upon resolution of the Young Defendants' objections to Aetna's highly broad approach to discovery. As of July 3, 2025, Aetna was also aware that the Young Defendants had already collected documents core to the case, including email and phone material from the two most important custodians—Nathan Young and David Young—and from the Young Defendants' Dropbox account.

35. This awareness did not prevent counsel for Aetna, Mr. Conaboy, from misinforming Magistrate Judge Rosenbluth on September 25, 2025: "[Aetna] understand[s], your Honor, that the Defendants have just started conducting discovery since – *or gathering these materials* since your Honor ordered this production [on August 14, 2025]." (Sept. 25, 2025 Hearing Tr. at 6:12-17.) Mr. Conaboy and Mr. McCoy have



COHEN WILLIAMS LLP

been aware of the Young Defendants' position and progress on discovery since their April 28, 2025 written responses and objections and the parties' meet and confer in July 2025.

36. During the July 3, 2025 meet and confer, the parties also discussed the issue of the names of the 249 clients listed on the exhibits to Aetna's FAC. The Young Defendants' position was, and has been, that it would facilitate the Young Defendants' search for documents if Aetna could provide the 249 names and any other readily available information for these clients. At the meet and confer, the Young Defendants stated their belief that Aetna was in the best position to provide that information. Mr. McCoy did not deny this was true, and finally stated that Aetna *would provide the names promptly*.

37. After this meeting and pursuant to Local Rule 37-2, the parties cooperated to formulate a joint stipulation concerning the discovery disputes and filed their Joint Stipulation on July 17, 2025. (ECF 107.) Aetna filed a motion to compel discovery responses on that same day, requesting a hearing on August 7, 2025. (ECF 106.)

38. Due to Aetna's filing errors, however, Aetna had to refile its motion and the Joint Stipulation on July 22, 2025. (ECF 109.) By the time Aetna refiled its motion, the hearing on the motion was set for August 14, 2025 (not August 7, 2025, as Aetna originally noticed). (ECF 109.)

39. In the parties' Joint Stipulation, the parties focused the Court on the two key issues that needed to be resolved: (a) the discovery time period, and (b) whether discovery should proceed beyond the 249 clients referenced in the FAC. (ECF 109-3 at 7:1 – 10:22, 12:15 – 15:21.) In the Joint Stipulation, Aetna argued for a more expansive date range than what its discovery requests even stated, calling for documents from "January 1, 2018 to the present." (109-3 at 7:10-11.) The Young Defendants maintained that a discovery period of three months before the first date of service among the 18,000 claims (*i.e.*, October 1, 2020) through three months after the last date of service among those claims (*i.e.*, October 6, 2023) was reasonable. (*Id.* at 9:18-25.)

40. In the Joint Stipulation, Aetna also rehashed the issue over the 249 client names, even though Mr. McCoy had already agreed to provide the names in the July 3,





COHEN WILLIAMS LLP

2025 meet and confer. (ECF 109-3 at 10:23 – 11:11.) In response, the Young Defendants noted the client names question was a "non-issue" that had been resolved in the meet and confer process, and then set forth a few of the reasons compiling the names would be more burdensome for the Young Defendants than for Aetna. (ECF 109-3 at 11:12 – 12:14.)

41. Even though Aetna had conceded the point and promised to provide the 249 client names, Aetna delayed for nearly a month before providing the names. Aetna eventually produced the client names on Excel spreadsheets on July 31, 2025. Then, on August 4, 2025, Aetna reproduced the same spreadsheets and styled them as Aetna's first "production" in the case, AETNA0000001 to AETNA0000009, because there were nine separate spreadsheets.

42. In sum, it took Aetna *three months* to provide basic information that would have facilitated the Young Defendants' proposed narrowed search for and review of responsive material.

43. At the September 25, 2025 informal discovery conference, Aetna sought to rewrite this history and lay the groundwork for an extension of the discovery deadlines. Aetna began claiming for the first time that the Young Defendants had been obstructionist or insincere, for instance because the Young Defendants' Counterclaims attached a list of claims that included client names.

44. The list of clients and claims relevant to the Counterclaims are *different claims submissions*, which Aetna never paid and which counsel is informed that the Young Defendants had separately tracked.[5] More fundamentally, Aetna had conceded at the meet and confer on July 3, 2025, that Aetna could provide the names quickly and intended to do

[5] As set forth in the Counterclaims, Young Defendants provided millions of dollars of SUD treatment to Aetna members, which Aetna began refusing to pay in about November 2023. Young Defendants attached to the Counterclaims two client lists with names. One list (consisting of 65 pages) did not have any Aetna member ID information to correlate names with IDs (Counterclaim Exhibit 2). (ECF 74-2.) The other, shorter exhibit, did include client names and included Aetna Member IDs. (ECF 74-1.) But the names and IDs were not co-extensive with the IDs in Aetna's FAC exhibits.



COHEN WILLIAMS LLP

so. Aetna proceeded to delay for a month and provided the names to the Young Defendants on the eve of the motion to compel hearing.

45. Even with the 249 names, the main problem confronting the Young Defendants since April 2025 persisted: what universe of documents would be searched, and how would they draft document review protocols for document review attorneys before the parties' core dispute was resolved. The Young Defendants proposed an approach focused on the 249 clients identified in the FAC and with a time period relating to those clients' 18,000 insurance claims. Aetna insisted on a maximalist approach in its requests for production, which it expanded in its subsequent meet and confer letter (*i.e.*, the two-page request for financial records that were not actually included in its first set of requests [ECF 109-2 at 500-502]) and in the Joint Stipulation (*i.e.*, expanding the discovery period to "January 1, 2018 to the present" [109-3 at 7:10-11]). Aetna insisted through July and August 2025 that there could be *no* limitation or narrowing to the 249 clients and 18,000 claims: "Defendants cannot limit their discovery responses to a chosen set of Aetna members . . . . [T]hey must produce responsive matters . . . with respect to Aetna and *all* its members, *as well as others* . . . ." (ECF 109-3 [emphasis added].)

46. Young Defendants' early proportionality objections and requests to meet with Aetna to narrow the search before undertaking a costly review were not obstructionist—they were entirely reasonable. Aetna could have been heard on these issues in May 2025. It could have met and conferred with the Young Defendants to resolve its concerns at the same time. Had it done so, and had Aetna agreed to assist with providing client names, we would not be here. Instead, Aetna waited and took what ended up being losing positions on the scope of permissible discovery.

47. At the September 25, 2025 conference before Magistrate Judge Rosenbluth, Aetna attacked and blamed the Young Defendants for not being further along in their collection, search, and production process. But the current bottleneck is a result of Aetna's objectionable and poorly drafted discovery requests and Aetna's own delay in resolving the Young Defendants' legitimate and good faith objections. Indeed, Magistrate Judge



COHEN WILLIAMS LLP

Rosenbluth recognized the problems with Aetna's discovery requests in limiting their scope and denying several of the motion's demands at the August 14, 2025 hearing on Aetna's motion to compel.

48. In the Court's order, Magistrate Judge Rosenbluth's wrote that "the Court limits the time period for which Defendants must produce documents and information to January 1, 2020, to July 31, 2024, except as to those requests for production and interrogatories that expressly ask for documents or information beginning only on January 1, 2021, or as noted below." (ECF 114 at 1.)

49. The order also states: "The Court limits the discovery and information Defendants must produce to the 249 Aetna clients referenced in Exhibit A to the complaint except as stated below for certain RFPs and interrogatories, without prejudice to Plaintiff's requesting more should it later be able to show that the documents and information it receives from Defendants are insufficient." (*Id.*) This limitation is consistent with the Young Defendants' April 28, 2025 objections to Aetna's discovery requests.

50. Had the Young Defendants attempted to "comply" with Aetna's requests as drafted and as Aetna demanded in its "meet and confer" letter, the result would have been an undisciplined and unfocused collection and review. It would have resulted in the production of a massive volume of documents related to SUD treatment or marketing, and every personal financial document for the individual defendants from January 2020 to the present.

51. At the August 14, 2025 hearing, the Young Defendants stated that they would serve supplemental interrogatory responses within four weeks, but expressed great reservations about completing the document production by that time:

> MR. WILLIAMS: Well, I don't know if the documents
> will be completed by then. There's -- you know, we have to
> go search for every single complaint, for example, of any
> client who ever came into the --
> THE COURT: Well, if you can't do it within four





COHEN WILLIAMS LLP

> weeks, then meet and confer with Mr. McCoy, but I want to see a good faith effort and rolling production, and get them what you can within that -- by that four-week time and --
>
> MR. WILLIAMS: You know, when I said four weeks, I thought we were talking about written responses. I think we need more time to -- and we will start and do a good-faith effort and make a rolling production, but that makes me very uneasy.

(Aug. 14, 2025 Hearing Tr. at 77:13-25.) The Court then asked: "What would you ask for to be able to do it completely?" The following colloquy ensued:

> MR. WILLIAMS: I don't know exactly, but I would --
>
> THE COURT: (Scoffs.)
>
> MR. WILLIAMS: I don't know to be complete. I mean, this is a lot that has -- is being asked of us.
>
> THE COURT: All right. I'm going to give you five weeks from today, and that's it, and then, if you can't do that -- I expect a good faith effort, you meet and confer with Mr. McCoy, and if he wants to bring some sort of motion because you haven't complied, he can.
>
> MR. WILLIAMS: Understood.
>
> THE COURT: So five weeks seems like a long time to me. We're not talking about a ton of stuff, and so I'm going to do five weeks.

(Aug. 14, 2025 Hearing Tr. at 78:8-22.)

**B. <u>The Young Defendants' Efforts Since August 14, 2025 to Respond to Aetna's First Sets of Requests for Production</u>**

52. Both prior to the August 14, 2025 hearing and after, the Young Defendants have been actively engaged with their e-discovery vendor, CDS, to manage the collection





COHEN WILLIAMS LLP

of documents with potentially responsive material. Prior to the August 14, 2025 hearing, the Young Defendants had obtained pre-conversion reports for initial search and review of phone data prior to conversion. And as early as June 10, 2025 (two weeks *before* Aetna's first meet and confer letter), the Young Defendants obtained budget estimates and collection statements of work. As soon as Aetna provided spreadsheets with patient names in late July 2025, the Young Defendants began to identify phone numbers and email addresses where available for each of the 249 patients, and CW ensured they were exporting and organizing KIPU "case files" for each of the 249.

53. Before data can be searched and reviewed in Relativity, the discovery vendor must export and process data at its source. When a new custodian is identified on the Microsoft tenant, the custodian's email (and if applicable Teams and OneDrive information) must be exported, staged and processed for winnowing by search terms and by date. The material with search term hits is then processed (at great expense), and it is added to the Relativity platform and review workflow for privilege review and responsiveness tagging.

54. Crucially, the winnowing stage cannot be accomplished efficiently until and unless there are accurate and complete search terms. In this case, the search terms needed to include complete patient names, and it was also crucial to resolve the appropriate timeframe for the searches. Likewise, at the next stage—tagging and review in Relativity—the rules for tagging documents as responsive hinged on the outcome of the motion to compel proceedings.[6]

55. Following the August 14, 2025 hearing, the Young Defendants immediately took steps to comply with the Order. By August 18, 2025, CDS began integrating the updated search term reports for the data that had already been collected from Nathan Young

[6] As Aetna is likely aware, dealing with emails, Teams, and similar communication data takes a lot of time. To date—and based on metadata Aetna provided—our discovery vendor informs us that Aetna has produced only nine emails or email attachments. The rest of Aetna's produced material appears to consist of loose files and e-documents.

and David Young, utilizing the expanded search terms from patient names Aetna provided on July 31, 2025, which the Young Defendants supplemented and expanded with patient contact information.

56. On August 18, 2025, Aetna propounded second sets of requests for production and interrogatories on each of the twelve Young Defendants.

57. These new discovery requests included additional categories of documents that were not in the first sets, such as all communications with counselor certification organizations, agreements with electronic claims services, documents to identify "all individuals who provided treatment" with their licenses, documents relating to real estate purchased, and more.

58. Written responses and objections to these second sets of requests were due on September 18, 2025—the same date that the Young Defendants were due to comply with Magistrate Judge Rosenbluth's August 14, 2025 Order.

59. Also on August 18, 2025, CDS held a further scoping call with CW.

60. On August 19, 2025, CW collected WhatsApp chats from the Young Defendants' clinical staff, which were potentially responsive to Aetna's discovery requests.

61. The same day, CW, the client, and CDS worked together to ensure CDS had the correct permissions to access the enterprise-wide Microsoft tenant account.

62. On August 20, 2025, CW collected BloomText chat threads that were potentially responsive to Aetna's discovery requests.

63. On August 20, 2025, CDS had begun scoping the Young Defendants' Microsoft "tenant" environment and working with CW attorneys to identify the total number of custodians within the Microsoft tenant environment.

64. On August 25, 2025, CW and CDS concluded that exporting *the entire* Microsoft tenant for searching would not be feasible, because it contained approximately 5.6 terabytes of data. And by September 4, 2025, CDS had substantially completed research into custodians of interest. CDS's next step was targeting, exporting, and validating specific custodians' data.





COHEN WILLIAMS LLP

65. On Friday, September 5, 2025, I reached out to Aetna's counsel by email asking for a call to discuss the Young Defendants' progress on the collection and review of documents. The parties agreed to meet on Wednesday, September 10, 2025.

66. A meet and confer videoconference was held on September 10, 2025. Mr. Saei and I participated for the Young Defendants, and Mr. Conaboy and Mr. McCoy participated for Aetna. During the meet and confer, we advised Aetna's counsel that the Young Defendants anticipated making the first of several rolling productions on September 18, 2025, as ordered by the Court, but that the Young Defendants would likely need additional time to serve their supplemental interrogatory responses and significant additional time to continue to make additional document productions. We proposed contacting the Magistrate Judge for an informal discovery conference in advance of the September 18, 2025 deadline, to update the Court on the Young Defendants' progress. We also requested an extension of time to respond to Aetna's second set of requests for production and interrogatories.

67. At the September 10, 2025 meet and confer, we were transparent with Aetna's counsel about the Young Defendants' progress. We explained that the Young Defendants had a list of proposed custodians to import into Relativity for review, and that the amount of material from the clinical custodians identified was extremely voluminous. We proposed eliminating clinical custodians to speed along the review. We also noted that we had compiled a list of search terms.

68. Counsel for Aetna appeared to be conferring in good faith, and they appeared to be appreciative of the updates that the Young Defendants had offered without any prompting or demand from Aetna. At the conclusion of the meet and confer on September 10, 2025, we agreed to provide Aetna's counsel with our proposed list of custodians and our proposed search terms. Aetna said they would need to get back to us with their position on the issues discussed.

69. By September 11, 2025, a significant number of documents were teed up for review in the Relativity platform—roughly 80,000—and CDS and CW discussed the





COHEN WILLIAMS LLP

appropriate number of review attorneys to tackle the review job.

70. On September 12, 2025, Mr. Saei emailed counsel for Aetna a list of 3,200 search terms.[7] On the same day, he also sent a proposed list of Microsoft tenant custodians (which includes the custodian's email, Teams, and OneDrive databases, if the custodians used Teams and OneDrive) for about 21 non-clinical custodians who worked with the Young Defendants in marketing related positions and about 18 clinical custodians that were likely to have interacted with the 249 clients.

71. To date, Aetna has never responded to the Young Defendants' invitation to discuss or narrow the list of custodians. Nor has Aetna indicated which, if any, custodians Aetna would like the Young Defendants to prioritize.

72. To date, Aetna has not responded to the Young Defendants' invitation to discuss search terms, which the Young Defendants drafted to include the 249 clients' names, emails, and phone numbers, as well as many of the search terms Aetna requested in their first set of requests for production (on RFP Exhibit A).

73. Also on September 12, 2025, CW provided CDS with additional non-email documents that the Young Defendants had been collecting from EMR databases and file management systems. That data was processed and tagged in preparation for production.

74. On September 16, 2025, the parties again met and conferred. At that time, Aetna's counsel stated that Aetna objects to any extensions beyond September 18, 2025, both with respect to the supplemental interrogatory responses and document production due under the Magistrate Judge's August 14 Order and as to the deadline for the Young Defendants to provide written response to the second sets of discovery requests. Aetna

[7] The list is long because the Young Defendants have included the 249 client names, and added patient phone numbers in various formats as well as the patient email addresses where available. The search terms also include the names and contact information of potential witnesses identified by the parties. The Young Defendants have made genuine, good faith efforts in compiling and sharing comprehensive and accurate search terms that would identify any material relating to the 249 clients, and to the additional topics Aetna has requested in its discovery requests.



COHEN WILLIAMS LLP

agreed, however, to send a joint email to the Magistrate Judge requesting an informal discovery conference.

75. Following the meet and confer, the Young Defendants provided Aetna with a draft email to the Magistrate Judge requesting an informal discovery conference. The Young Defendants sent the draft email on September 16, 2025, and sought Aetna's redlines and additions to the draft email.

76. When Aetna responded several hours later, the Young Defendants immediately emailed Magistrate Judge Rosenbluth's courtroom deputy, Deputy Clerk Martinez, seeking to "Extend the Deadline to Comply with the Court's Order" with respect to the interrogatory supplement and with respect to additional productions.

77. Ms. Martinez responded the same day, writing: "Unfortunately Judge Rosenbluth is out of town and unavailable this week. She will respond to this inquiry on Monday, September 22. In the meantime, the parties should continue to try to resolve their differences."

78. As ordered by the Court, on September 18, 2025, the Young Defendants began their rolling production with over 200,000 pages of material, with bates range YOUNG00000001-YOUNG00201280.[8] The production included documents that are central to this case including extensive electronic medical records for the 249 clients listed on the exhibits to the FAC, housing contracts, payroll information for the twelve "principal" marketers that the Young Defendants had previously identified, and leasing information related to sober living homes.

79. In the email transmitting the September 18, 2025 production, the Young Defendants indicated that this was the first of several rolling productions that the Young

---

[8] Young Defendants' first substantial production took four months and three weeks to produce, counting from their responses and objections. Aetna, in comparison, required six months and a week to send its first production of elementary plan documents, EOBs, and nine emails. Young Defendants do not count as a substantial production Aetna's nine claims data spreadsheets.



COHEN WILLIAMS LLP

Defendants would be making to comply with the August 14, 2025 Order.

80. In the same transmittal email CW noted: "We are continuing to work diligently on the supplemental interrogatory responses and hope to get them to you by next week."

81. On September 19, 2025, having heard nothing from Aetna regarding the proposed custodians, the Young Defendants provided CDS with a finalized list for exporting and processing.

82. Given the very large volume of data encompassed by Aetna's broad requests, CW has added lawyers to the case. In addition to adding partner, Roya Lada, to the case on September 11, 2025, CW has five review attorneys that have been working full time on this document review since September 23, 2025, plus a CDS project lead and CDS project management staff at CDS.

83. Aetna's non-response to the custodian list or to search terms has placed the Young Defendants in a difficult position. If five reviewers worked full time for five months, our vendor estimates they might come close to reviewing all the potentially responsive emails, excluding Teams and mobile data. Across the proposed custodians, we estimate there are more than 350,000 potentially responsive emails and attachments.

84. The Young Defendants believe the best course is to limit the custodian list to the top 6-8 custodians who, based on the current review, are most likely to have responsive information. At this point, unless the scope of discovery changes, the Young Defendants will have to add fifteen more reviewers to speed along the process and complete review as soon as possible, hopefully by the end of October or early November, and in advance of the close of fact discovery in late December, but doing so will cost hundreds and hundreds of thousands of dollars.

85. I understand that Aetna has recently served subpoenas on several banks identified by the Young Defendants in their supplemental interrogatory responses. Given the conversations with Aetna and with the Magistrate Judge, the Young Defendants do not plan to object to or move to quash these bank subpoenas.



COHEN WILLIAMS LLP

## C. <u>The Young Defendants' Efforts to Respond to Aetna's First Sets of Interrogatories</u>

86. All counsel for the Young Defendants, including Mr. Saei and I (who have been most involved), personally apologize to the Court and to Aetna for missing the Court-ordered deadline of September 18, 2025 to serve supplemental responses to the first set of interrogatories. The following additional information is provided to comply with the Magistrate Judge's order for additional context and details, and is not intended as an "excuse."

87. The Young Defendants' efforts to search for information responsive to the interrogatories remain inextricably intertwined with their efforts outlined above to comply with the Court's directives regarding document productions. Compiling search terms, potential custodians, and hit reports has been part and parcel of the search for material that could be used to answer the relevant interrogatories.

88. After the August 14, 2025 hearing, I met with my clients to discuss the Court's order, and in particular the portion ordering supplemental interrogatory responses to be served on September 18, 2025. In the following weeks, we discussed responses to the many requests for which the Court had ordered supplemental responses.

89. On September 4, 2025, I emailed my clients to ask them to focus especially on identifying bank names, addresses, and account numbers.

90. On September 5, 2025, as mentioned above, I emailed counsel for Aetna to set a meeting to discuss progress to date, and we met and conferred on September 10, 2025. As noted above, the Young Defendants flagged that the interrogatory supplements and document productions were taking longer than expected, and the Young Defendants stated their wish to approach the Court jointly to request additional time, in advance of the September 18, 2025 deadline.

91. On September 15, 2025, CW followed up with our clients to address additional questions concerning the supplemental interrogatory responses we were preparing in response to Aetna's discovery requests. The clients sought support from





COHEN WILLIAMS LLP

administrative staff, including Stephanie Sandoval, in identifying contractor/employee start and termination dates.

92. On September 16 and 17, 2025, CW received further information from our clients concerning bank accounts and marketers, and we updated the draft supplemental interrogatory responses accordingly. We also asked for identification of additional accounts that apparently had been closed long ago.

93. On September 16, 2025, CW sent our clients the draft responses to the interrogatory regarding marketers, and asked that they verify that their respective responses were accurate.

94. On September 17, 2025, CW sent our clients updated draft responses to Aetna's second set of document requests and interrogatories and had a video conference with the clients to review the same. Although we had made significant progress on the supplemental responses to the first sets of interrogatories, we realized further research and verification was needed in several areas.

95. On September 18, 2025, my firm finalized and served responses to Aetna's second set of requests for production and interrogatories, along with the first rolling production in response to Aetna's first set of requests for production.

96. Although we believed we were quite close to completing and serving the supplemental interrogatory responses, the clients noticed several errors. In addition, I felt that some of our then-drafted responses appeared to lack sufficient detail or were otherwise incomplete.

97. At that juncture, I judged that we had already flagged a likely delay to the Court two days in advance and that we should continue to research and update the responses with the clients. I realize now that was an error, and it would have been more in keeping with the letter and spirit of the Court's August 14, 2025 Order to serve our supplemental responses on the deadline, perhaps with a note that the Young Defendants would soon be amending or making further supplements. At a minimum, we should have shared the information we did feel was ready with counsel for Aetna.



COHEN WILLIAMS LLP

COHEN WILLIAMS LLP

98. Apart from this error of counsel, additional delay was occasioned by deadlines and preparations of an impending arbitration proceeding, which took place from September 26 to September 30, 2025, and which required the attention of three CW attorneys also staffed on the Young matter: Reuven Cohen, Mr. Saei, and me. The pendency of other cases is never an excuse, but for purposes of this declaration, I cannot ignore the reality of obligations that ended up overlapping in a very challenging manner for our firm.

99. When Deputy Clerk Martinez reached out to the parties on September 22, 2025 to ask if the parties were "still in need of the Court's assistance," the Young Defendants were the first to respond and to request a Zoom hearing on the earliest date offered, September 25, 2024, which was the day before the arbitration commenced. (ECF 118.)

100. On September 23 and 24, 2025 response times and forward progress on the revised interrogatory supplements were slowed somewhat because the clients were observing Jewish holidays.

101. On September 23, 2025, the parties conducted another meet and confer with Aetna's counsel concerning the scope of Aetna's second set of discovery requests, including their request that sought the Young Defendants' entire accounting system database. There was no indication or mention from Aetna's counsel at this meet and confer, or any meet and confer, of a forthcoming demand for sanctions.

102. On September 25, 2025, at the request of the Young Defendants, the Magistrate Judge held an informal discovery conference, and ordered the Young Defendants to serve the supplemental interrogatory responses to Aetna's first set by September 29, 2025. (ECF 121.)

103. At the conference, I apologized for missing the Court's September 18, 2025 deadline, and I would like to reiterate that apology here.

104. In compliance with the Court's September 25, 2025 Order, the Young Defendants, on September 29, 2025, served the supplemental interrogatory responses. Among other information, the Young Defendants:

a. Provided bank account numbers and bank addresses for each Defendant;

b. Identified about 24 clinical staff members who may have knowledge of facts relating to Aetna's claims;

c. Identified about 28 additional persons in positions that may have involved marketing activity; and

d. Identified about 55 additional persons with knowledge of claims submissions.

105. These supplemental interrogatory responses also note that the Young Defendants' review of documents is ongoing, and that the Young Defendants may seek to supplement or amend their latest interrogatory responses based on their ongoing push to complete rolling productions of documents.

106. At the September 25, 2025 conference, the Magistrate Judge ordered that counsel for the Young Defendants provide a declaration by October 2, 2025 to the Plaintiffs "detail[ing] how and when, and by whom, they have searched for information and documents responsive to Plaintiff's first sets of interrogatories and requests for production." (ECF 121.) This declaration is provided in response to that directive.

107. Young Defendants respectfully request that Aetna, the Magistrate Judge, and the Court accept this apology of counsel and accept the September 29, 2025 service of the supplemental interrogatory responses as belatedly but substantially in compliance with the August 14, 2025 Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 2nd day of October, 2025, at Los Angeles, California.

*/s/ Marc S. Williams*
Marc S. Williams