

JOHN K. LY (SBN 247477)
Email: jly@lianglyllp.com
JENNIFER L. CHOR (SBN 352577)
jchor@lianglyllp.com
LIANG LY LLP
601 South Figueroa Street
Suite 1950
Los Angeles, California 90017
Telephone: (213) 262-8000
Facsimile: (213) 335-7776

*Attorneys for Defendants Jose Ricardo Toscano Maldonado and Marc Adler*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NATHAN SAMUEL YOUNG a/k/a PABLO LOPEZ; DAVID YOUNG a/k/a SANCHO LOPEZ; JOSE RICARDO TOSCANO MALDONADO; ALI BEHESHTI; MARC ADLER; ANI MIRZAVAN; ZEALIE LLC; HELPING HANDS REHABILITATION CLINIC, INC; JOSER FOREVER LLC; GET REAL RECOVERY LLC; REVIVE PREMIER TREATMENT CENTER, INC.; HEALING PATH DETOX LLC; OCEAN VALLEY BEHAVIORAL HEALTH, LLC; RODEO RECOVERY LLC; SUNSET REHAB LLC; NATURAL REST HOUSE, INC; AND JOHN DOES 1 THROUGH 50, AND ABC CORPS. 1-50 <br><br> Defendants. | CASE NO. 2:23-cv-09654-MCS-JPR <br><br> *(Hon. Mark C. Scarsi, Dept 7C)* <br><br> **DEFENDANT JOSE RICARDO TOSCANO MALDONALDO'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date: March 16, 2026 <br> Time: 9:00 a.m. <br> Ctr.: 7C <br><br> [Declaration of Jose Ricardo Toscano Maldonado, Declaration of John K. Ly, Statement of Uncontroverted Facts, (Proposed) Order Filed Concurrently Herewith] |

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, on March 16, 2026., or as soon thereafter as the matter may be heard, at First Street Courthouse, 350 West First Street, Courtroom 7C, 7th Floor, Los Angeles, California, 90012, Defendant Jose Ricardo Toscano Maldonado ("Toscano") will, and hereby does, move separately pursuant to Federal Rules of Civil Procedure 56, for entry of summary judgment, or, in the alternative, partial summary judgment favor on all claims brought against them in the First Amended Complaint ("FAC") by Plaintiffs Aetna Life Insurance Company and Aetna Health of California, Inc. (collectively, "Plaintiff" or "Aetna").

Defendants Toscano also joins in the arguments made by the Young Defendants in their separately filed Motion for Summary Judgment. Specifically, Aetna has failed to provide sufficient evidence that Toscano and Adler made any actionable representations that could result in liability. Further, Aetna has failed to produce evidence that they have authorization to bring this action. To avoid duplication, Toscano hereby incorporates the arguments of the Young Defendants as if they were made in this Motion. Adler will also file a separate Joinder to the Young Defendants' Motion.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, the separately filed Declarations of Toscano and John Ly, and attached exhibits, the pleadings and other papers filed in this action, and any other evidence and argument as may be presented at or before the hearing on this Motion. This Motion is also based on the Young Defendants' Motion for Summary Judgment and all supporting documents filed therewith.

As required under Local Rule 7.3, this Motion is made after counsel for the parties had their conference of counsel. (Declaration of John K. Ly ("Ly Decl."), ¶5.) Counsel discussed the substance of the proposed Motion in a telephone call

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

-1-

and in emails.  However, counsel for the parties were unable to resolve all of the issues, and this Motion was filed.

DATED:  February 9, 2026          Respectfully Submitted,
                                  LIANG LY LLP


                                  By:  /s/ John K. Ly
                                       John K. Ly
                                       Jennifer L. Chor
                                       *Attorneys for Defendants Jose Ricardo Maldonado and Marc Adler*

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 2

    A.    Toscano Meets The Youngs In Los Angeles In 2019 .......................... 2

    B.    Toscano Is Asked To Become The Nominal Owner Of Joser Forever And Does Maintenance Work For The Company And The Youngs. .. 2

    C.    Toscano Is Compensated For His Maintenance Work. ........................ 3

    D.    Toscano Is Not Involved In The Operation, Management, Or Direction Of Joser Forever And Has No Dealings With Aetna. .......... 4

    E.    Aetna Files This Fraud Lawsuit In November 2023. .......................... 4

    F.    Aetna Confirms That The Only Evidence Of Toscano's Liability Is His Ownership Of Joser Forever ......................................................... 5

III.    LEGAL STANDARD .................................................................................... 6

IV.     ARGUMENT ................................................................................................. 7

    A.    Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's Claims For Fraud And Negligent Misrepresentation. ............ 7

    B.    Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's Claim For Intentional Interference With Contract. ................. 9

    C.    Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's RICO And RICO Conspiracy Claims. ................................... 10

    D.    Aetna's Claim For Violation Of The Unfair Competition Law (17200) Should Be Summary Adjudicated In Favor Of Toscano. ................... 14

    E.    Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's Claims For Monies Had And Received, Unjust Enrichment, Restitution, and Injunctive Relief.. ...................................................... 15

    F.    Toscano Is Not Liable Based On Theories Of Conspiracy, Aiding And Abetting, Or Alter Ego. ................................................................. 16

V.      CONCLUSION ............................................................................................ 19

**LIANG LY LLP**
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

-i-
DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 247-48 (1986)..............................................................................6

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503, 510–11 (1994) .........................................................................17

*Astiana v. Hain Celestial Grp. Inc.*,
783 F.3d 753, 762 (9th Cir. 2015)....................................................................16

*AT & T Co. v. Compagnie Bruxelles Lambert*,
94 F.3d 586, 591 (9th Cir. 1996)......................................................................18

*Baggett v. Hewlett-Packard Co.*,
582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007) .................................................15

*Carr v. Walmart, Inc.*,
764 F. Supp. 3d 879, 888 (C.D. Cal. 2025) ......................................................6

*Celotex Corp. v. Catrett*,
477 U.S. 317, 323 (1986) ...................................................................................7

*Choate v. County of Orange*,
86 Cal. App. 4th 312, 333 (2000).....................................................................17

*City of Industry v. City of Fillmore*,
198 Cal. App. 4th 191, 212 (2011) ...................................................................17

*Clear Connection Corp. v. ComCast Cable Comm's Mgmt. LLC,*
501 F. Supp, 886, 891 (E.D. Cal. 2020)..............................................................7

*De Sole v. Knoedler Gallery*, LLC,
139 F. Supp. 3d 618 (S.D.N.Y. 2015)..............................................................13

*Della Penna v. Toyota Motor Sales, U.S.A. Inc.*,
11 Cal. 4th 376, 391 (1995) ...............................................................................9

*Falk v. Gen. Motors Corp.*,
496, F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) ..................................................7

*Gonzales v. Lloyds TSB Bank, PLC*,
532 F. Supp. 2d 1200, 1206 (C.D. Cal. 2006) .................................................18

*Gussin v. Shockey*,
725 F. Supp. 271, 277 (D. Md. 1989) ..............................................................11

*Hill v. Opus Corp.*,
841 F. Supp. 2d 1070, 1103 (C.D. Cal. 2011) .................................................11

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

*Howard v. Am. Online Inc.*,
208 F.3d 741, 751 (9th Cir. 2000)..........................................................................11

*In re Oracle Corp. Sec. Litig.*,
627 F. 3d 376, 387 (9th Cir. 2010)..........................................................................7

*Kidron v. Movie Acquisition Corp.*,
40 Cal. App. 4th 1571, 1582 (1995) .......................................................................17

*Lauter v. Anoufrieva*,
642 F. Supp. 2d 1060, 1079 (C.D. Cal. 2009) ........................................................10

*Lincoln Nat. Life Ins. Co. v. McClendon*,
230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017) ........................................................15

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
431 F.3d 353, 361 (9th Cir. 2005)...........................................................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 587 (1986) .........................................................................................6

*Multimedia Patent Trust v. Microsoft Corp.*,
525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007).........................................................14

*Petersen v. Allstate Indemn. Co.*,
281 F.R.D. 413, 417 (C.D. Cal. 2012) .....................................................................8

*Ramos v. Chase Home Finance*,
810 F.Supp.2d 1125, 1132 (D. Haw. 2011) ............................................................16

*Regents of Univ. of Cal. V. LTI Flexible Prods., Inc.*,
2021 WL 4133869 at *10 (N.D. Cal. 2021).............................................................16

*Reves v. Ernst & Young*,
507 U.S. 170, 183 (1993) .........................................................................................10

*Richards v. Nielsen Freight Lines*,
602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985) .........................................................7

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) ........................................................15

*Shams v. Fisher*,
107 F. Supp. 2d 266, 277 (S.D.N.Y. 2000)..............................................................12

*Tatung Co. Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138, 1152 (C.D. Cal. 2016) ...................................................11, 12

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
117 F. Supp. 3d 1092, 1112 (C.D. Cal. 2015) .........................................................8

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

*United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*,
766 F.3d 1002, 1006 (9th Cir. 2014)..................................................................9

*United States v. Fernandez*,
388 F.3d 1199, 1228 (9th Cir. 2004)................................................................10

*Walter v. Drayson*,
538 F.3d 1244, 1249 (9th Cir. 2008)................................................................11

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 20 (2008) ......................................................................................16

## STATUTES

18 U.S.C. § 1961........................................................................................10

Business and Professions Code § 17200 ..................................................14

Fed. R. Civ. Proc. § 56(c) ..........................................................................6

**LIANG LY LLP**
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

In 2023, Plaintiffs Aetna Life Insurance Company and Aetna Health of California, Inc. (collectively, "Aetna") filed a sprawling lawsuit against more than a dozen individuals and companies, including a maintenance worker, defendant Jose Ricardo Toscano Maldonado ("Toscano"). In the lawsuit, Aetna alleges that Toscano and other defendants conspired to pay addicts to receive treatment in their rehab facilities, secured health insurance for them, then kept these patients addicted in a scheme to continue submitting fraudulent claims to Aetna's healthcare plan. After more than two years of discovery, the uncontroverted facts show that the claims against Toscano should be dismissed. While Toscano was the nominal owner of defendant Joser Forever, LLC, one of the companies that submitted claims to Aetna, Toscano's role at the company and otherwise was limited exclusively to doing maintenance work. Toscano was not involved, did not participate in, and had no knowledge regarding the submission of claims, enrollment of patients, alleged payment of so-called "body brokers," company finances, and/or the operation, management, and direction of Joser Foreever. Aetna's own corporate representative conceded that the *only* basis for which Toscano was being sued in this case is because he was the owner of Joser Foreever, and that he *should have* known about the fraud. However, that fact is not create a triable issue as a matter of law, and Aetna has failed to meet its burden in presenting any evidence of Toscano's involvement in the alleged scheme. As such, summary judgment should be granted in favor of Toscano on all claims against him in Aetna's First Amended Complaint ("FAC"). Finally, both Toscano and co-defendant, Marc Adler, will also join in the arguments made by the Young Defendants in their separately filed motion for summary judgment, the arguments of which are incorporated by reference in this Motion. For the reasons set forth

DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

below, summary judgment, or, in the alternative, partial summary judgment should be granted in favor of Toscano on Aetna's FAC.

## II.    FACTUAL BACKGROUND

### A.    Toscano Meets The Youngs In Los Angeles In 2019.

Toscano[1] is a 42-year-old military veteran who immigrated to the United States in 1994. (Declaration of Jose Ricardo Toscano Maldonado ("Toscano Decl.") ¶2.) Maldonado grew up in Connecticut, where he attended and graduated from high school. (*Id.*, ¶3.) After high school, Toscano attended community college before joining the United States Air Force. (*Id.*, ¶4.) He served for four years before being honorably discharged and then attending school on the GI bill. (*Id.*)

In 2019, Toscano moved to Los Angeles where he met defendant Nathan Young and his father, David Young. (Statement of Undisputed Facts ("SUF") 1.) While living with Nathan Young, Toscano started performing cleaning work for him and David Young. (SUF 2.) In return, Nathan Young paid his rent on his apartment. (SUF 3.)

### B.    Toscano Is Asked To Become The Nominal Owner Of Joser Forever And Does Maintenance Work For The Company And The Youngs.

In 2020, Nathan Young asked Toscano whether he would like to own a business. (SUF 4.) Nathan Young was in the rehab business and was helping people with drug addiction and alcohol addiction. (SUF 5.) As part of the rehab business, Joser Forever LLC ("Joser Forever") was formed and was named by Nathan Young. (SUF 6.) Joser Forever was part of Nathan Young's rehab business. (SUF 7.)

When Joser Forever was created, Toscano was listed as the owner of the company. (SUF 8.) But Toscano did not invest in the company and was not

---

[1] While his full name is Jose Ricardo Toscano Maldonado, he has gone by Jose Toscano for ease of reference.

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

involved in setting up the company or getting any licenses for it. (SUF 9.) Nathan Young was the owner of Joser Forever. (SUF 10.)

Since 2020, Toscano only did maintenance work for Nathan Young and David Young and reported to them. (SUF 11.) At Joser Forever, Toscano was in charge of maintenance. (SUF 12.) This maintenance work included fixing leaks and holes in walls, replacing doors, installing and replacing appliances and utilities, unclogging main sewage lines and toilets, and overseeing other general handyman work in the various detox and sober living facilities. (SUF 13.) Toscano has done maintenance work for the entire time that he was working for Nathan Young and David Young. (SUF 14.)

## C.    Toscano Is Compensated For His Maintenance Work.

Toscano received compensation for his maintenance work for Nathan and David Young. (SUF 15.) Toscano opened a bank account for Joser Forever with Nathan Young. (SUF 16.) From about 2021 to 2023, Toscano was allowed to withdraw money from Joser Forever's bank account to pay for living expenses and food. (SUF 17.) Toscano was told by Nathan Young that he could use the money for personal expenses. (SUF 18.) Before 2023, the most Toscano recalls ever withdrawing during a one-month period was about $6,000. (SUF 19.)

In 2023, Toscano started getting paid via direct deposit for the maintenance work. (SUF 20.) In 2023, Toscano earned and was paid $8,000 per month. (SUF 21.) In 2024, Toscano earned and was paid $12,000 per month. (SUF 21.) In 2025, Toscano earned and was paid $12,000 per month from January to May, and then $8,000 per month for the remainder of the year. (SUF 21.) This is all of the money that Toscano has been paid for any work performed for Nathan Young and David Young. (SUF 22.) Toscano was not paid for being listed as an owner of Joser Forever, and he was not paid any separate compensation as the owner of Joser Forever, other than having access to the bank account to pay expenses before 2023. (SUF 23.)

**D.**    **Toscano Is Not Involved In The Operation, Management, Or Direction Of Joser Forever And Has No Dealings With Aetna.**

Toscano was not involved in the operation, management, or direction of Joser Forever.  (SUF 24.)  Toscano also was not involved in preparing or review Joser Forever's financial documents or the approval of payments from the company.  (SUF 25.)  The only thing that Toscano did for Joser Forever was maintenance.  (SUF 26.)  Toscano has never reviewed Joser Forever's tax returns, and he did not review any licensure documents.  (SUF 27.)  Toscano did not know whether Joser Forever had a board of directors, did not know of or review any board resolutions, and does not recall going to any board meetings.  (SUF 28.) Toscano was not able to hire and fire people, or set wages for employees.  (SUF 29.)

Toscano was not involved with dealing with Aetna or other any insurance companies.  (SUF 30.)  Toscano was not involved in the preparation, submission, and/or processing of any claims, requests for reimbursement, and/or billing relating to Aetna or any other insurance company.  (SUF 31.)  Toscano was not involved in the preparation, submission, and/or processing of enrollment forms and medical records relating to Aetna or any other insurance company.  (SUF 32.)  Toscano had no knowledge of any representations made in any submissions by Joser Forever to Aetna.  (SUF 33.)  Toscano has never paid for and was not aware of any so-called "body brokers," "kickbacks" paid to patients, waivers cost-shares, and/or actions taken to prolong treatment to submit additional claims to Aetna.  (SUF 34.) Toscano also was not aware of ever having communicated with Aetna while performing my maintenance duties for Nathan Young and David Young.  (SUF 35.)

**E.**    **Aetna Files This Fraud Lawsuit In November 2023.**

In November 2023, Aetna filed its Complaint against Nathan Young and various other corporate and individual defendants, including Toscano.  Aetna filed

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

-4-

DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

the operative FAC in February 2024 alleging eleven causes of action:  fraud, aiding and abetting fraud, negligent misrepresentation, intentional interference with contract, RICO, conspiracy to violate RICO, money had and received, unjust enrichment/quantum meruit, restitution, and injunctive relief.   Toscano was named in all causes of action, except for the second cause of action for aiding and abetting.

In the FAC, Aetna alleges that Defendants engaged in an illegal scheme targeting Aetna members who suffer from alcohol and substance abuse issues. (FAC, ¶¶1-9.)  Specifically, Defendants allegedly "lured" Aetna patients into their programs by offering them kickbacks, hiring "body brokers" to find other addicts, and ran "drug dens" to keep patients in their programs to profit off of Aetna's insurance payments.  (FAC, ¶¶5-9.)  As to Toscano, Aetna alleges that he is a member and/or manager of Joser Forever, and "all misconduct carried out at Joser and the fraudulent claims submitted by Joser were caused directly by him in concert with Defendant Young."  (FAC, ¶18.)  Aetna further alleges that he participates in "other entities."  (FAC, ¶18.)  While Aetna alleges that Toscano was the sole member of Joser Forever, Aetna alleges that "Young is the true owner and final decision maker for Joser Forever."  (FAC, ¶22.)  These are some of the only allegations specifically naming Toscano in the pleadings; otherwise, Aetna groups Toscano with the other co-defendants in this case.

**F.     Aetna Confirms That The Only Evidence Of Toscano's Liability Is His Ownership Of Joser Forever.**

On December 22, 2025, Kathy Richer, Aetna's corporate representative and designated person most qualified under Rule 30(b)(6) of the Federal Rules of Civil Procedure, was deposed and testified about the claims against Toscano was deposed.  (SUF 36.)  Based on Richer's testimony, Aetna has not seen a document or communication from Toscano.  (SUF 37.)  Richer further testified that Aetna does not have any direct knowledge that Toscano was involved in the preparation

of any claims from Joser Forever to Aetna.  (SUF 38.)  In fact, Richer conceded that Aetna has no knowledge whether Toscano was actually involved in the submission of the claims by Joser Forever.  (SUF 39.)

Richer would not testify (refusing to answer based on attorney-client privilege) as to the basis for Aetna's allegation that Toscano paid so-called "body brokers" to obtain patients, and that Aetna had no direct or indirect evidence that Toscano ever sent anyone to obtain patients.  (SUF 40.)  Richer also would not testify (refusing to answer based on attorney-client privilege) to the basis for whether Toscano ever provided any kickbacks to any patients, and had no knowledge or information that Toscano was involved in the payment or the waiver of any sort of cost share for members under the Aetna plans.  (SUF 41.)  Based on Richer's testimony, Aetna's only basis for claiming that Toscano prolonged treatment was that he was the owner of Joser Forever and should have been aware of the claims.  (SUF 42)

## III.   LEGAL STANDARD

A motion for summary judgment must be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. § 56(c); *Carr v. Walmart, Inc.*, 764 F. Supp. 3d 879, 888 (C.D. Cal. 2025).  An issue of fact is "genuine" if there is sufficient evidence for a reasonable finder of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is considered "material" if it can affect the outcome of a case.  *Id*. at 248.  If the record taken as a whole cannot lead a trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While reasonable inferences are viewed in favor of the nonmoving party, "inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

inference may be drawn." *Carr*, 754 F. Supp. 3d at 888 (citing to *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

The initial burden is on the moving party to find an absence of elements of a claim that demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not required to produce evidence negating or disproving each essential element of the non-moving party's case and need only prove an absence of evidence to support the non-moving party's case. *In re Oracle Corp. Sec. Litig.*, 627 F. 3d 376, 387 (9th Cir. 2010). If the moving party has met its burden, then it is up to the non-moving party to show there is a genuine issue of material act that must be resolved at trial. *Celotex*, 477 U.S. at 324. The burden on the non-moving party "is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Id*. at 387. In short, summary judgment should be granted when the non-moving party does not make a showing sufficient to establish an element essential to their case and on which that party will bear the burden of proving at trial. *Clear Connection Corp. v. ComCast Cable Comm's Mgmt. LLC,* 501 F. Supp, 886, 891 (E.D. Cal. 2020).

## IV.    ARGUMENT[2]

### A.    Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's Claims For Fraud And Negligent Misrepresentation.

Summary judgment should be granted in favor of Toscano on the first cause of action for fraud and the third cause of action for negligent misrepresentation. To prove fraud, Aetna must show: 1) a misrepresentation; 2) knowledge of falsity; 3) intent to defraud; 4) justifiable reliance; and 5) resulting damages. *Falk v. Gen. Motors Corp*., 496, F. Supp. 2d 1088, 1099 (N.D. Cal. 2007). Negligent misrepresentation shares four of the same elements with fraud, but differs when it

[2] Toscano joins in the arguments made in the Young Defendants' motion for summary judgment.

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

comes to the fifth element of mental state. *Petersen v. Allstate Indemn. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012). The difference is that negligent misrepresentation does not require knowledge of falsity. *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F. Supp. 3d 1092, 1112 (C.D. Cal. 2015). Also, unlike fraud, negligent misrepresentation requires a positive assertion to show misrepresentation of a material fact. *Id*. "An omission or an implied assertion will not suffice" to prove negligent misrepresentation. *Id*.

In the FAC, Aetna alleges that all Defendants made representations to Aetna that they: (i) provided the services in compliance with applicable laws, regulations, and procedures, (ii) the services billed were medically necessary and reimbursable, and (iii) that the information on the claim forms was true, accurate, and that material facts were not concealed. (FAC, ¶137.) According to Aetna, these representations were false because Defendants paid "body brokers," provided "kickbacks" and cost waivers," and otherwise caused these patients to be kept in treatment to enrich themselves in violation of law. (FAC, ¶¶138-142.) Toscano's liability stems from his ownership interest in Joser Forever, the company that received payments from Aetna through submission of claims. (FAC, ¶18; SUF 42.)

Despite being a nominal owner of Joser Forever, Toscano was not involved in the alleged scheme to defraud Aetna. The uncontroverted facts show Toscano's role and responsibility for Nate Young, David Young, and Joser Forever was limited to performing maintenance work. (SUF 14, 26, 24-35.) Toscano did not review, prepare, or submit any claims and/or requests for reimbursements to Aetna. (SUF 31.) No representations were made by Toscano to Aetna. (SUF 30, 33.) In addition, Toscano did not pay "body brokers" or anyone to obtain patients. (SUF 34.) He did not provide and was not aware of any kickbacks, did not waive the cost share members, did not take actions to eviscerate the effect of any services

that were provided to prolong treatments, and was not involved in preparing enrollment forms for patients.  (SUF 34.)

As for compensation, Toscano was paid for his work in amounts ranging from $6,000 to $12,000 per month over a five-year period.  (SUF 19-21.)  He did not earn a share of the profits or the millions alleged in the FAC that were purportedly paid by Aetna for the supposed fraudulent claims submitted.  (SUF 23.)  There is no evidence that Toscano violated any laws or knew of any such violations.  Aetna has no evidence showing otherwise, and there is no evidence that Toscano was aware of or participated in any alleged scheme to defraud to Aetna.  (SUF 35-41.)  Absent any such evidence, the fraud claim should be dismissed.

**B.** **Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's Claim For Intentional Interference With Contract.**

Aetna's fourth cause of action for intentional interference with contract should be adjudicated in favor of Toscano.  Under California law, the elements for intentional interference with contractual relationships are: 1) a valid contract between plaintiff and a third party; 2) defendant's knowledge of this contract; 3) defendant's intentional acts designed to induce a breach or disruption of that relationship; 4) breach; and 5) damages.  *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014).  California courts have also recognized a distinct difference between the torts of intentional interference with prospective economic advantage and intentional interference with contractual relations.  *Della Penna v. Toyota Motor Sales, U.S.A. Inc.*, 11 Cal. 4th 376, 391 (1995).  In the FAC, Aetna alleges that Defendants knew about Aetna's health benefit contracts with its members and intentionally interfered with those contracts by providing financial and other consideration to treat with Defendants.  (FAC, ¶¶ 159-163.)

Aetna can proffer no evidence that Toscano knew of, assisted, and/or provided any financial and other consideration to Aetna's members to induce them

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

-9-

to treat with Aetna.  Toscano did not interact with Aetna.  (SUF 30, 33.)  He did maintenance issues for Nathan Young, David Young, and Joser Forever.  There is no evidence that Toscano knew of the health benefit plans, or that he tried to interfere or disrupt Aetna's relationship with its members.

## C.     <u>Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's RICO And RICO Conspiracy Claims.</u>

Summary judgment also should be granted in favor of Toscano on Aetna's fifth cause of action for RICO and sixth cause of action for RICO Conspiracy.  To state a RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  "For purposes of RICO, 'racketeering activity' means: (1) 'any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year'; and (2) any act which is indictable under a number of specified federal criminal statutes." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1079 (C.D. Cal. 2009) (quoting 18 U.S.C. § 1961(1)). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering activity." *Id.* (quoting 18 U.S.C. § 1961(5)).

To satisfy the conduct element, the defendant "must have some part in directing the affairs" of the enterprise. *United States v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004).  In other words, the defendant must satisfy the "operation or management" test and have participated in the operation or management of the enterprise itself.  *Reves v. Ernst &* Young, 507 U.S. 170, 183 (1993).  A defendant does not need to be in charge of or have significant control over or within the

-10-
DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

enterprise, but the plaintiff must show something more than simply being involved. *Tatung Co. Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1152 (C.D. Cal. 2016). "Simply performing services for the enterprise does not rise to the level of [giving] direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). A defendant does not "direct" an enterprise's affairs by "simply being involved" or "performing services for the enterprise." *Id.* at 1249.

When evaluating whether a defendant had some part in directing an enterprise's affairs, the Ninth Circuit looks at whether the defendant: 1) gave or took directions; 2) occupied a position in the chain of command through which the enterprise's affairs are conducted; 3) knowingly implemented decisions of upper management; or 4) was indispensable to the achievement of the enterprise's goal." *Walter*, 538 F.3d at 1249. It is also not enough to prove conduct that a defendant failed to stop illegal activity. *Id.* at 1248; *Gussin v. Shockey*, 725 F. Supp. 271, 277 (D. Md. 1989) ("The mere fact [that a defendant] could be described as an agent for the … [enterprise] does not rise to that relationship with an enterprise which is encompassed by RICO.).

A claim for RICO conspiracy must fail if the substantive RICO claim fails. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[W]here the plaintiff has failed to allege the requisite substantive elements of RICO, a RICO conspiracy claim cannot stand."); *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1103 (C.D. Cal. 2011) ("As plaintiffs have failed to allege an underlying RICO violation, their conspiracy claim under 18 U.S.C. § 1962(d) fails."). A defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard*, 208 F.3d at 751. There must either be an agreement that is a substantive RICO violation or defendants agreed to commit or participate in violating two predicate offenses. *Id*. Stated another way, the question of whether a RICO conspiracy exists is "whether an alleged conspirator knew what the other conspirators were up to or whether the situation would

-11-
DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

logically lead an alleged conspiratory to suspect he was part of a larger enterprise." *Shams v. Fisher*, 107 F. Supp. 2d 266, 277 (S.D.N.Y. 2000).

Here, even if Aetna can prove that RICO enterprise existed (and it cannot), there is no evidence that Toscano knew of or participated in such an enterprise. As discussed above, the uncontroverted facts show that Toscano handled maintenance, and Aetna has no evidence to suggest that Toscano was "directing the affairs" of an enterprise or participating in its management or operation. Further, there is no evidence that Toscano participated in or was aware of supposed contracts with so-called "body brokers" or rented out sober living homes to defraud Aetna. He simply performed maintenance services and reported to Nate Young and David Young. That is not sufficient to meet the participation and conduct element of a RICO claim. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("Simply performing services for the enterprise does not rise to the level of [giving] direction.").

Nor can Aetna show that there is a triable issue of fact as to Toscano's involvement in any alleged RICO conspiracy. There is no evidence that Toscano was aware of the enterprise, let alone of its supposed nature and scope. *Howard*, 208 F.3d at 751. Toscano was not involved in the billing, enrollment, finances, and/or marketing of Joser Forever or any other detox and sober living facilities—the very conduct that underlies Aetna's fraud and RICO claims. (SUF 30-35.)

The fact that Toscano was the owner of Joser Forever, a company that Aetna was alleged to have fraudulently billed the insurance company, is not enough to create a triable issue of fact. On this point, *Tatung Co. Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (C.D. Cal. 2016) is instructive. In *Tatung*, the plaintiff (Tatung) bought LCD flat panels from WDE Solutions (WSI), which Tatung used to manufacture LCD televisions. 2014 WL 11514476 at *1. Tatung sold the TVs to Westinghouse Digital Electronics (WDE) on credit, but unknown to Tatung, WSI and WDE were both established by Richard Houng and his family to defraud

DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

Tatung. *Id*. Eventually, the Houng family and others siphoned funds and assets out of WDE for their personal benefit, making WDE judgment-proof. *Id*. Tatung sued for fraud, RICO, and other claims. *Id*. The enterprise consisted of multiple entities, including WDE, WSI, Nexis, Nexis Holdings, WDT, and Bollington. Multiple parties moved for summary judgment.

Notably, the Court granted summary judgment for Gregory Hu. *Id*. at 1172. Hu served as the record owner of Bollington, another entity involved in the alleged enterprise. *Id*. Hu argued he only served in this role at a co-defendant's request, but plaintiff argued there exists a triable issue of fact about Hu's purported lack of knowledge about Bollington's connection with the rest of the enterprise. *Id*. The court disagreed, reasoning that "[t]he mere fact that Hu was a nominee director, while perhaps indicative of the general Houng Family predilection for nominating titular directors in a (now failed) effort to appear corporately separate, does not, without more, lead to the inference that Hu knew of the alleged scheme or that he agreed to participate in it." *Id*. The Court noted that, while "Hu's nonchalance and apparent disregard for his legal obligations as director" were "troubling," they did were "not sufficient to raise an inference that Hu is liable under § 1962(d)."[3] *Id*. *Tatung* is consistent with other rulings in which courts have granted summary judgment to owners of businesses that were not aware of the alleged fraudulent scheme alleged. *De Sole v. Knoedler Gallery*, LLC, 139 F. Supp. 3d 618 (S.D.N.Y. 2015) (granting summary judgment to gallery owner and CEO sued with other gallery employees for selling forged art pieces on the ground that he had limited contacts to gallery director who sold art and did not coordinate with anyone to commit fraud). Here, as in *Tatung* and *De Dole,* Toscano's nominal ownership

---

[3] Similar to Gregory Hu, the court in *Tatung* also granted summary judgment for Rui-Lin Hsu, even though Hsu provided funding to multiple entities, was aware of the enterprise beyond herself, received monthly payments as a consultant, and attended regular meetings with Richard Houng (the alleged main culprit). *Id*. at 1165-66, 1172.

DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

of Joser Forever—the sole basis for their claims against Toscano (SUF 42)—is not enough to create a triable issue of fact for purposes of RICO or RICO conspiracy. Thus, Aetna's RICO and RICO conspiracy claims should be summarily adjudicated in favor of Toscano.

**D.    Aetna's Claim For Violation Of The Unfair Competition Law (17200) Should Be Summary Adjudicated In Favor Of Toscano.**

Aetna's seventh cause of action for violation of the Business and Professions Code § 17200, otherwise known as the Unfair Competition Law ("UCL" or "17200") should be adjudicated in favor of Toscano.  There exist three prongs to a UCL claim:  1) unlawful business act or practice prohibited by law, 2) unfair business act or practice is one that "threatens an incipient violation of antitrust law, or violates the spirit of one of those laws …, or otherwise significantly threatens or harms competition", of 3) a fraudulent practice requires a showing that "members of the public are likely to be deceived." *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007).  As set forth in the FAC, Aetna alleges that Defendants' business acts and practices violated various statutes, including the Anti-Kickback Statute (18 U.S.C. § 1320), and were unfair and fraudulent through alleged enrollment fraud, among other acts.  (FAC, ¶¶185-188.)

Aetna's claims against Toscano are based exclusively on his ownership of Joser Forever.  (SUF 42.)  But Aetna concedes that Nathan Young was the "true owner" of the "true owner" of Joser Forever, and the "final decisionmaker" for the company.  (SUF 10, FAC ¶22.)  There is no evidence that Toscano knew of, agreed to, or participate in any unlawful business practice, violation of the law, or fraudulent practice.  Moreover, there is no evidence that Toscano ever provided "kickbacks," interfered with Aetna's business, or engaged in supposed "body brokering" or other illegal conduct.  As such, Aetna's UCL claim should be dismissed.

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

-14-
DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

**E.**    **<u>Summary Judgment Should Be Granted In Favor Of Toscano On Aetna's Claims For Monies Had And Received, Unjust Enrichment, Restitution, and Injunctive Relief.</u>**

Aetna's eighth cause of action for money had and received, ninth cause of action for unjust enrichment, and tenth cause of action for restitution should be dismissed.  Under California law, to prove a claim of monies had and received, the plaintiff must prove: 1) defendant received money; 2) the money defendant received was for plaintiff's use; and 3) defendant is indebted to plaintiff.  *Lincoln Nat. Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. 2017).

However, as discussed above, there is no evidence that Toscano ever received any money from Aetna, and that the money was for Aetna's use.  Toscano was paid for maintenance services by Nathan Young and David Young.  There is no evidence that the monies that Toscano received each month for living expenses and food before 2023 and then as compensation for the services thereafter was for Aetna's "use."  There is also no evidence that Toscano was somehow "indebted" to Aetna.  To the contrary, Aetna alleges that it paid compensation for fraudulent claims submitted by Defendants, and that these proceeds were then passed to Toscano.  But this claim, even if viable, cannot overcome the uncontroverted fact that Toscano was not involved in the billing, enrollment, marketing, financials, employment, or the operation and management of Joser Forever.  (SUF 24-35.)

As to unjust enrichment, the elements of unjust enrichment are: 1) receipt of a benefit; and 2) unjust retention of the benefit at the expense of another.  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007).  "Restitution is not mandated merely because one person has realized a gain at another's expense," but rather, "the obligation arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'"  *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023).  Therefore, restitution generally requires "that a defendant has been unjustly conferred a

-15-
DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp. Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Absent qualifying mistake, fraud, coercion, or request by [defendant], there is no injustice." *Regents of Univ. of Cal. V. LTI Flexible Prods., Inc.*, 2021 WL 4133869 at *10 (N.D. Cal. 2021).

Aetna's unjust enrichment and restitution claims fail for three separate reasons. <u>First</u>, there is no separate cause of action for unjust enrichment or restitution in California. *See Astiana*, 783 F.3d 753, 762 ("there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution.""); *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1314 (1989). They are remedies. So too is injunctive relief. *Ramos v. Chase Home Finance*, 810 F.Supp.2d 1125, 1132 (D. Haw. 2011) ("Injunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action." Further, as discussed above, the uncontroverted facts show that Aetna will not succeed on the merits against Toscano. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). <u>Second</u>, there is no evidence that it would be unjust for Toscano to retain the payments for the work he performed on the facilities. Toscano did the work and was paid for it. He did not receive profits or distributions from his affiliation with Nathan Young or David Young, or receive some outsize distribution for any ownership role. Toscano was not paid for being a nominal owner of the company. <u>Third</u>, if Aetna's theory is that there was some sort of quasi-contract based on fraud or mistake, that claim has not been pled. *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 198-99 (9th Cir. 1995) (legal theories not asserted in complaint are waived). And, as discussed below, there is no evidence that Toscano can be liable in quasi contract based on conspiracy, aiding and abetting, or alter ego.

**F.      <u>Toscano Is Not Liable Based On Theories Of Conspiracy, Aiding And Abetting, Or Alter Ego.</u>**

Aetna alleges that Toscano is liable for the actions of his co-defendants

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

under the theories of civil conspiracy, aiding and abetting, and alter ego. (FAC, ¶¶46-50.) As to civil conspiracy, Aetna alleges that Defendants agreed to submit the "fraudulent misrepresentations and omissions" and evade detection by Aetna. (FAC, ¶49.) Under California law, civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 510–11 (1994). The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages. *City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 212 (2011). *"[A]ctual knowledge* of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim." *Kidron v. Movie Acquisition Corp*., 40 Cal. App. 4th 1571, 1582 (1995) (emphasis added). "Knowledge of the planned tort *must be* combined with *intent to aid in its commission*." *Id*. (emphasis added). Because civil conspiracy is so easy to allege, the law places a weighty burden on a plaintiff to prove it. *Choate v. County of Orange*, 86 Cal. App. 4th 312, 333 (2000). A plaintiff must show "that each member of the conspiracy acted in concert and *came to a mutual understanding to accomplish a common and unlawful plan*, and that one or more of them committed an overt act to further it." *Id*. (emphasis added). It is not enough that the conspiring individuals "knew of an intended wrongful act, they had to agree— expressly or tacitly—to achieve it." *Id.*

As to aiding and abetting liability, Aetna alleges that each defendant "knew of the misconduct alleged herein, actively participated in the scheme(s), and provided substantial assistance or encouragement to the other tortfeasors," and that Defendants "knew the conduct was tortious" when they undertook to provide the substantial assistance." (FAC, ¶50.) "California law requires that a defendant

-17-
DEFENDANT JOSE TOSCANO'S MOTION FOR SUMMARY JUDGMENT

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

have *actual knowledge of tortious activity* before it can be held liable as an aider and abettor, and federal courts have found that the phrase 'knew or should have known' does not plead actual knowledge." *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1206 (C.D. Cal. 2006).

In this case, Aetna cannot meet the "weighty burden" to show a triable issue of fact on its civil conspiracy and aiding and abetting claims. As discussed above in the RICO conspiracy section, there is no evidence Toscano agreed to or participated in an "common plan" or "design" to commit an illegal act. He was not involved in and had no knowledge of the submission of claims, requests for reimbursement, enrollment of patients, marketing of the facilities, the financial dealings and/or the management and operation of Joser Forever. (SUF 24-35.) Toscano did not deal with Aetna and had no knowledge of any alleged scheme to defraud Aetna. Toscano did maintenance for the facilities. (SUF 30, 33.) Although Toscano agreed to be the nominal owner of Joser Forever, the true owner was Nathan Young and there is no evidence that Toscano had *actual* knowledge of any alleged scheme, even if it could be proven (which it cannot). Absent actual knowledge, Toscano is not liable for aiding and abetting. *Gonzales*, 532 F. Supp. 2d at 1206.

Finally, Aetna cannot meet its burden in showing that Toscano and Joser Forever had a "unity of interest and ownership" for purposes of piercing the corporate veil and establishing alter ego liability. Toscano's role at the company was limited to maintenance work. (SUF 15.) All management and financial decisions rested with Nathan Young. (SUF 10.) Nor can Aetna show that disregarding the identities would result in fraud or injustice because Toscano has not and never has had control over Joser Forever. *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). Thus, any claims based on alter ego should be dismissed as to Toscano.

//

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Toscano's Motion.

DATED:  February 9, 2026          Respectfully Submitted,
                                  LIANG LY LLP


By:  /s/ John K. Ly
     John K. Ly
     Jennifer L. Chor
     *Attorneys for Defendants Jose Maldonado
     and Marc Adler*

**LIANG LY LLP**
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

-19-

## <u>LOCAL RULE 11-6.1 CERTIFICATION</u>

The undersigned, counsel of record for Defendant Jose Ricardo Toscano Maldonado, certifies that this brief complies with the word limit set forth in L.R. 11-6.1 and the Initial Standing Order.

DATED:  February 9, 2026         Respectfully Submitted,
                                 LIANG LY LLP


                                 By:  /s/ John K. Ly
                                 _____
                                 John K. Ly
                                 Jennifer L. Chor
                                 *Attorneys for Defendants Jose Maldonado*
                                 *and Marc Adler*

LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
213.262.8000 (Telephone) | 213.335.7776 (Facsimile)

-1-