Marc S. Williams (Bar No. 198913)
Email: mwilliams@cohen-williams.com
Reuven L. Cohen (Bar. No 231915)
Email: rcohen@cohen-williams.com
Kathleen M. Erskine (Bar No. 223218)
Email: kerskine@cohen-williams.com
Roya S. Ladan (Bar No. 287161)
Email: rladan@cohen-williams.com
Joseph (Yusuf) Saei (Bar No. 321341)
Email: ysaei@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Defendants Nathan Young, David Young, Get Real Recovery Inc., Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., Helping Hands Rehabilitation Clinic Inc., Joser Forever LLC, 9 Silver LLC, and 55 Silver LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, AETNA HEALTH OF CALIFORNIA, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NATHAN SAMUEL YOUNG a/k/a PABLO LOPEZ; et al.,<br><br>    Defendants. | Case No. 2:23-cv-09654-MCS (SKx)<br><br>**YOUNG DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*Filed concurrently with Notice of Motion; Declaration of Joseph E. Saei; Statement of Uncontroverted Facts; and [Proposed] Order*<br><br>Judge:   Hon. Mark C. Scarsi<br>Date:   March 16, 2026<br>Time:   9:00 a.m.<br>Place:   Courtroom 7C<br><br>Trial Date:   May 5, 2026 |

1

## TABLE OF CONTENTS

I.  INTRODUCTION .............................................................................................8

II. RELEVANT BACKGROUND................................................................10

III. SUMMARY JUDGMENT STANDARDS........................................................12

IV. ARGUMENT .......................................................................................13

A.  Young Defendants Are Entitled to Partial Summary Judgment on Aetna's Fraud and Negligent Misrepresentation Claims (Claims One and Three) to the Extent They Are Based on Alleged Misrepresentations in Claim Forms or Requests for Reimbursement. ................................................................13

1.  Young Defendants Did Not Make the Alleged Misrepresentations...14

2.  The Alleged Misrepresentations Are Inactionable Opinion. .............18

B.  Young Defendants Are Entitled to Partial Summary Judgment on Aetna's RICO Claims (Claims Five and Six) to the Extent the Mail and Wire Fraud RICO Predicates Are Based on Alleged Misrepresentations in Claim Forms or Requests for Reimbursement. .................................................................21

1.  Aetna's RICO Claims Are Also Premised on Misrepresentations That Do Not Exist....................................................................................21

2.  Aetna's RICO Claims Are Likewise Premised on Misrepresentations That—Even If Proven—Are Inactionable. ........................................22

3.  Any Alleged Omissions or Nondisclosures Are Inactionable Predicate Acts Under RICO..................................................................................23

4.  Aetna Cannot Establish Reliance and Proximate Causation to Sustain the RICO Claims...................................................................................24

5.  The RICO Conspiracy Claim Fails with the Underlying RICO Claim. .................................................................................................................25

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

C.   Young Defendants Are Entitled to Partial Summary Judgment on Aetna's Eighth, Ninth, Tenth, and Eleventh Claims to the Extent They Are Based on Alleged Misrepresentations in Claim Forms or Requests for Reimbursement. ...................................................................................................25

D.   Young Defendants Are Entitled to Partial Summary Judgment on All Claims For Relief to the Extent Aetna Is Seeking Relief on Behalf of an Employer-Sponsored Health Plan. ...............................................................26

V.    CONCLUSION.................................................................................................27

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agnew v. Foell*,
113 Cal.App.2d 575 (1952) ...................................................................................19

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006).............................................................................................24

*Boulton v. Am. Transfer Servs., Inc.*,
2015 WL 2097807 (S.D. Cal. May 5, 2015) ......................................................25

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987) ............................................................................23

*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
669 F. Supp. 2d 1152 (C.D. Cal. 2009) ..............................................................22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................12, 13

*Ciminelli v. United States*,
598 U.S. 306 (2023).............................................................................................24

*City of Mt. Pleasant v. Associated Elec. Co-op, Inc.*,
838 F.2d 268 (8th Cir. 1988) ..............................................................................13

*Coronado v. County of Madera*,
2006 WL 908625 (E.D. Cal. Apr. 7, 2006) ........................................................13

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) ............................................................................13

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ............................................................................21

*Finch Aerospace Corp. v. City of San Diego*,
8 Cal.App.5th 1248 (2017) .................................................................................18

*Golden W. Baseball Co. v. Talley*,
232 Cal.App.3d 1294 (1991) ..............................................................................18

*Great Am. Ins. Co. v. Mowforth*,
2020 WL 12216543 (N.D. Cal. Dec. 1, 2020)................................................25, 26

COHEN WILLIAMS LLP

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

*Howard v. America Online Inc.*,
208 F.3d 741 (9th Cir. 2000) .................................................................25

*Humana Inc. v. Biogen, Inc.*,
126 F.4th 94 (1st Cir. 2025)...................................................................15

*Humana, Inc. v. Biogen, Inc.*,
666 F.Supp.3d 135 (D. Mass. 2023)........................................................15

*In re Bextra & Celebrex Mktg. Sales Pracs. Litig.*,
2012 WL 3154957 (N.D. Cal. Aug. 2, 2012) .............................................25

*In re Sizzler Restaurants Int'l, Inc.*,
225 B.R. 466 (Bankr. C.D. Cal. 1998) .....................................................13

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
2025 WL 2684021 (C.D. Cal. Aug. 15, 2025) ...........................................23

*Maksoud v. Guelton*,
2017 WL 2505887 (S.D. Cal. June 9, 2017) .............................................26

*Miller v. Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004) .................................................................22

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,
86 Cal.App.4th 303 (2000) ..............................................................19, 20

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
210 F.3d 1099 (9th Cir. 2000) ...............................................................12

*OMNI Healthcare, Inc. v. MD Spine Sols. LLC*,
2024 WL 5700196 (D. Mass. Jan. 22, 2024)...............................................9

*Pacific Recovery Sols. v. Cigna Behav. Health, Inc.*,
2021 WL 1176677 (N.D. Cal. Mar. 29, 2021) ...........................................24

*Perlick v. Pacific Discount Corp.*,
53 Cal.App.2d 136 (1942) .....................................................................19

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010).................................................................25

*Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*,
806 F.2d 1393 (9th Cir.1986) ............................................................21, 22

5

COHEN WILLIAMS LLP

*Southern Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ......................................................................... 12

*Tatung Co., Ltd. v. Shu Tze Hsu*,
    217 F.Supp.3d 1138 (C.D. Cal. 2016) ........................................................... 21

*U.S. v. Dowling*,
    739 F.2d 1445 (9th Cir. 1984) ................................................................. 23, 24

*United States v. Brugnara*,
    856 F.3d 1198 (9th Cir. 2017) ....................................................................... 22

*United States v. Louderman*,
    576 F.2d 1383 (9th Cir.) ................................................................................ 22

*United States v. Milheiser*,
    98 F.4th 935 (9th Cir. 2024) ......................................................................... 24

*Yurgevich v. Hyundai Translead*,
    2012 WL 13175922 (S.D. Cal. Sept. 28, 2012) ............................................. 19

**Statutes**

17 U.S.C. § 115 ..................................................................................... 23, 24

18 U.S.C. § 220 ............................................................................................. 8

18 U.S.C. § 1341 ......................................................................................... 22

18 U.S.C. § 1343 ......................................................................................... 22

18 U.S.C. § 1962 ............................................................................. 10, 21, 25

29 U.S.C. § 1132 ................................................................................... 10, 26

Cal. Bus. & Prof. Code § 17200 .................................................................. 10

Cal. Civ. Code § 1710 .................................................................................. 19

Fed. R. Civ. P. 9 .......................................................................................... 26

Fed. R. Civ. P. 56 .................................................................................. 12, 13

Fed. R. Evid. 701 ........................................................................................ 19

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

**Other Authorities**

5 Witkin, Summary 11th Torts § 892 (2025)......................................................................20

Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(c)(1)(B) ..........................13

https://www.cms.gov/medicare/coding-billing/healthcare-common-procedure-system/quarterly-update ........................................................................................................17

Restatement (Second) of Torts § 538A (1977) ..................................................................19

COHEN WILLIAMS LLP

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Young Defendants are in the business of providing substance use disorder ("SUD") treatment. They provide real SUD treatment to real people who really need it. Aetna is an insurance giant seeking to claw back approximately 40 million dollars in insurance claims paid to Young Defendants for SUD services. Young Defendants are entitled to partial summary judgment for two simple reasons.

*First*, absent concrete, specific, and demonstrably false representations made to Aetna in connection with each claim for reimbursement, Young Defendants are entitled to partial summary judgment on Aetna's fraud, negligent misrepresentation, and RICO claims, as well as Aetna's other claims sounding in fraud. Aetna's fraud and negligent misrepresentation claims (One and Three) and RICO claims (predicated on mail/wire fraud) (Five and Six), as well as Aetna's Eighth, Ninth, Tenth, and Eleventh claims for relief, are all grounded mainly in three concrete alleged misrepresentations that Young Defendants supposedly made in claim forms transmitted to Aetna. (ECF 39 ¶ 137(i)-(iii).) Yet two years into the case, these statements Aetna alleged were fraudulent are not in the record.

Stripped of labels, Aetna's grievance is not with the alleged (and non-existent) misrepresentations. Aetna simply disagrees with Young Defendants' underlying business practices. The "fraudulent scheme" Aetna alleges in its First Amended Complaint ("FAC") consists of (a) compensating patient marketers for referring patients to SUD treatment (ECF 39 ¶¶ 73-81) while also (b) paying or incentivizing those patients to enroll in treatment (*id.* ¶¶ 82-89). At its core, Aetna claims that Young Defendants have violated the Eliminating Kickbacks in Recovery Act ("EKRA"), 18 U.S.C. § 220, or similar federal and state laws.[1] (*See* ECF 39 ¶ 185.) But the crucial point for purposes of this motion is

---

[1] This Motion does not address whether the alleged conduct violates EKRA or other anti-kickback laws, which include various safe harbors and exceptions. Young Defendants maintain they did *not* violate these laws, which Aetna is aggressively overreading in an attempt to prevent SUD providers from engaging in socially constructive practices like:

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

that there is no private right of action for a violation of EKRA. *See, e.g.*, *OMNI Healthcare, Inc. v. MD Spine Sols. LLC*, 2024 WL 5700196, at *3 (D. Mass. Jan. 22, 2024) ("Both the AKS and EKRA are criminal statutes setting forth criminal penalties. They do not contain provisions for private civil enforcement."). Nor is there an independent cause of action for violation of the other laws Aetna relies upon in characterizing Young Defendants' alleged business practices as illegal.

Aetna thus repackages *the existence* of alleged illegal business practices as "fraudulent misrepresentations," merely because Young Defendants submitted claims for payment to Aetna. (ECF 39 ¶ 137(i) [alleging Young Defendants represented in each claim form that they complied with applicable law regulation and procedure].) Young Defendants made no such representation. And even if they did, Aetna's sleight of hand has no foundation in law. It collapses the legal distinction between actionable fraud (which requires Young Defendants to make a material misrepresentation of past or existing material *fact*) and Aetna's opinions that Young Defendants failed to comply with external legal requirements that Aetna cannot directly enforce. Aetna's fraud theory is plain overreach. It treats the act of submitting claims as a blanket representation of compliance with every potentially applicable statute, regulation, procedure, and licensing nuance—no matter how debatable. If this theory is accepted, every coverage or compliance dispute between provider and payor could provide the foundation for a treble-damages RICO claim, destroying the boundary between claims administration disagreements and fraud.

*Second*, Aetna has failed to verify that it has authorization to bring this action, with respect to claims that relate to employer-sponsored plans. Aetna alleged in the FAC that it has administrative services agreements ("ASAs") with the plan's sponsors "that authorize Aetna to bring this action to recover the wrongful payments set forth herein." (*Id.* ¶ 53.). But many of the ASAs are missing. And of the ASAs Aetna produced, none provides

offering food or housing to needy clients on a sliding scale *after* a person commits to treatment, or helping homeless people find jobs, after they express interest in SUD treatment.

9

Aetna with a blanket authorization. They require express written permission for Aetna to act on behalf of the plan sponsors. Young Defendants requested *all* communications between Aetna and plan sponsors relating to Young Defendants. Yet Aetna has not produced sufficient evidence that it has obtained the requisite written authorizations. As to the portion of all claims for relief relating to employer-sponsored plans, therefore, Young Defendants are entitled to partial summary judgment.

## II.    RELEVANT BACKGROUND

Aetna commenced this action on November 14, 2023 (ECF 1), and filed the operative FAC on February 2, 2024 (ECF 39). The FAC includes eleven claims for relief. Ten are asserted against all Young Defendants. Aetna's claims for relief against Young Defendants are: Fraud (first); Negligent Misrepresentation (third); Intentional Interference with Economic/Contractual Relationship (fourth); RICO, 18 U.S.C. § 1962(c) (fifth); Conspiracy to Violate RICO, 18 U.S.C. § 1962(d) (sixth); Violations of Business and Professional Code Section 17200, *et seq.* (seventh); Money Had and Received (eighth); Unjust Enrichment/Quantum Meruit/Restitution (ninth); Restitution, 29 U.S.C. § 1132(a)(3) (tenth); and Injunctive Relief, 29 U.S.C. § 1132(a)(3) (eleventh).

The common thread across all claims for relief is that Young Defendants fraudulently induced Aetna to pay insurance claims by falsely representing in "claim forms" and "requests for reimbursement" "(i) [that Young Defendnats] provided the services in compliance with applicable laws, regulations, and procedures, (ii) [that] the services billed were medically necessary and reimbursable, and (iii) that the information on the claim forms was true, accurate, and that material facts were not concealed." (ECF 39 ¶¶ 136-138.)

During discovery, Young Defendants propounded an interrogatory asking Aetna to identify these alleged misrepresentation in its document production:

IDENTIFY by Bates number all DOCUMENTS supporting AETNA's allegation in ¶137 of the First Amended Complaint that [each Young Defendants] represented that it "(i) provided the services in compliance with applicable laws,

10

regulations, and procedures, (ii) the services billed were medically necessary and reimbursable, and (iii) that the information on the claim forms was true, accurate, and that material facts were not concealed."

(Saei Decl., Ex. 1.)  After asserting a litany of boilerplate objections, Aetna responded as follows:

Propounding Party and other Young Defendants made these misrepresentations in their electronic claims to Aetna, which should have been produced by Young Defendants but were not.  Aetna does not receive paper copies of these electronic claim forms in the ordinary course.  Rather, Propounding Party and the other Young Defendants' inputs relating to their fraudulent, electronic claims to Aetna are populated in data.  Aetna has produced spreadsheets with the data from the Young Defendants' claims that it intends to rely upon at trial.  *See* AETNA0000001 – 0000009.  If Propounding Party and other Young Defendants produce their electronic claims, Aetna may rely on those as well.  In addition, Aetna has produced sample explanations of benefits and electronic workflow inquiry screen shots relating to the data that Aetna intends to rely upon.  The claims were submitted by the Young Defendants and are in their possession, custody and control.  Aetna produced the data reports and/or summaries that it intends to rely upon.  Original copies of materials relating to and underlying those reports and/or summaries that are in Aetna's possession, custody, or control remain available for inspection through summary judgment upon Young Defendants' request.  In addition to the foregoing, Aetna refers to the PNT certifications it requires for electronic claims, applicable industry standards set forth in testimony and elsewhere, applicable laws requiring certifications of compliance with laws for claim submissions, and applicable publicly available materials relating to electronic claims submissions, including claim manuals and paper claim equivalent templates.

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

(*Id.*)   As discussed below, Aetna's response makes clear that Aetna cannot provide sufficient admissible evidence that Young Defendants actually made the alleged misrepresentations at the heart of its case.

## III.   SUMMARY JUDGMENT STANDARDS

A party may move for partial summary judgment on a part of a claim.  Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — *or the part of each claim or defense* — on which summary judgment is sought.") (emphasis added); *id.* 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.").  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* 56(a).

With the burden of proof at trial, to survive summary judgment, Aetna must establish "beyond controversy every essential element of its" claims.  *Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (cleaned up).  Young Defendants may carry their initial burden on summary judgment by showing Aetna lacks sufficient evidence to carry the ultimate burden of persuasion at trial; *i.e.*, that Aetna does not have evidence from which a jury could find an essential element of Aetna's claim.  Fed. R. Civ. P. 56(c)(1)(B) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (defendant can meet summary judgment standard by showing plaintiff "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial").

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

Rule 56 commentary and decisions clarify how a moving party is to "show" an absence of essential evidence. "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(c)(1)(B). Some courts have held it is sufficient for the moving party to "identify the specific issue or issues" on which the plaintiff has no supporting evidence, *Coronado v. County of Madera*, 2006 WL 908625, at *2 (E.D. Cal. Apr. 7, 2006), and "for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion" *id.* (quoting *City of Mt. Pleasant v. Associated Elec. Co-op, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)); *In re Sizzler Restaurants Int'l, Inc.*, 225 B.R. 466, 472 (Bankr. C.D. Cal. 1998) ("In meeting its burden regarding this motion for summary judgment, Sizzler is not required to negate or disprove matters that Triple S will have the burden of proving at trial. Sizzler need not produce any evidence on these matters. Sizzler's burden is met by pointing out to the Court that there is an absence of evidence to support Triple S' claim."). The *Celotex* showing can be "made by *pointing out through argument*—the absence of evidence to support plaintiff's claim." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) (emphasis added) (cleaned up).

## IV.  ARGUMENT

**A.  Young Defendants Are Entitled to Partial Summary Judgment on Aetna's Fraud and Negligent Misrepresentation Claims (Claims One and Three) to the Extent They Are Based on Alleged Misrepresentations in Claim Forms or Requests for Reimbursement.**

Aetna's first and third claims for relief, for fraud and negligent misrepresentation, are based mainly on Young Defendants' alleged misrepresentations to Aetna in "claim forms" and "requests for reimbursement." (ECF 39 ¶¶ 136, 152, 153.) According to the FAC, the alleged misrepresentations consist of three statements that Aetna alleges were untrue when Young Defendants submitted insurance claims to Aetna—specifically, Young

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

COHEN WILLIAMS LLP

Defendants represented "(i) [that they] provided the services in compliance with applicable laws, regulations, and procedures, (ii) [that] the services billed were medically necessary and reimbursable, and (iii) that the information on the claim forms was true, accurate, and that material facts were not concealed." (*Id.* ¶¶ 137-138, 153.)  Aetna's fraud and negligent misrepresentation claims are fatally flawed for two reasons.[2]  First, Aetna cannot provide sufficient admissible evidence that Young Defendants actually made those representations. (SUF 1-40.)  Second, even if Young Defendants somehow made those representations, the representations are inactionable opinion.

> 1.      Young Defendants Did Not Make the Alleged Misrepresentations.

More than two years into this case, and it still is entirely unclear where Young Defendants supposedly made the alleged misrepresentations at the heart of the FAC.  (SUF 1-40.)  There is no evidence that the alleged falsehoods exist in any written document or certification provided to Aetna.  (*Id.*)  There is no evidence of *how* the (absent) falsehoods were transmitted (*e.g.*, which submission platform was used) or *who* exactly transmitted them (among the Young Defendants' various billers).  (*Id.*)  There is simply an utter failure of proof regarding the actual language of the misrepresentations as well as where, when, how, and by whom the representations were made.[3]

> a.      Aetna Failed to Produce the Relevant Claim Forms.

Fact discovery closed in December 2025, and Aetna failed to produce or otherwise specify "claim form[s]" or "requests for reimbursement" in which Young Defendants made the purported misrepresentations.  At trial, Aetna will not be able to show the jury documents where Young Defendants—or any biller acting on Young Defendants' behalf—

---

[2] The elements of negligent misrepresentation are the same as the elements of intentional misrepresentation, except there is no need to prove intent to defraud.  *See Small v. Fritz Cos., Inc.*, 30 Cal.4th 167, 173 (2003).

[3] In the FAC, Aetna alleges that the "spreadsheets attached hereto as Exhibits A through I contain the specifics of each misrepresentation made, and Exhibits J-AA contain examples of claim forms" (ECF 39 ¶ 139), but those spreadsheets and claim forms are entirely devoid of the alleged representations.  (*See* ECF 39-1 to 39-3, 39-5 to 39-22, 39-25 to 38-27.)

---

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

submitted a claim form to Aetna that resulted in a payment and that contains the three representations alleged in Paragraph 137 of the FAC.  Without the actual language of the misrepresentations, Aetna's fraud theory implodes.  *See, e.g.*, *Humana, Inc. v. Biogen, Inc.*, 666 F.Supp.3d 135, 158-59 (D. Mass. 2023) (granting motion to dismiss where alleged misrepresentations were supposedly "certifications" made to insurance company that defendants "were in compliance with federal law," and although certifications were "at the very heart of the [fraud] claim," the complaint did not "state when they were made and how they were made," and did not "provide the actual language of the misrepresentations at issue").  The dismissal in *Humana* was affirmed by the First Circuit, which reiterated the District Court's finding: Humana failed to plead with specificity what the alleged "false certifications" contained, and the First Circuit roundly rejected Humana's "implied certification" theory.  *Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 97, 105-107 (1st Cir. 2025).

Aetna's interrogatory response reveals that it is relying not on classic paper "claim forms" but on electronically transmitted claims *data*, such as dates of treatment, which is limited to data points like diagnosis and treatment codes.  (SUF 1-6.)  Aetna produced spreadsheets with this "data," yet each line of Aetna's data—corresponding to a claim for reimbursement—is devoid of any of the three alleged misrepresentations (ECF 39 ¶ 137(i)-(iii)) upon which its fraud and negligent misrepresentation claims are based.  (SUF 1-6.)

     b. *The Record Contains Insufficient Evidence of Representations of Universal Compliance with All Laws Regulations and Procedures.*

Aetna alleges that "every claim" submitted to Aetna "represented that Defendants . . . provided the services in compliance with applicable laws, regulations, and procedures." (ECF 39 ¶ 137(i).)  Yet the record is entirely devoid of any such representation.  (SUF 1-40.)  The claims data spreadsheets include no such representation or certification.  (SUF 4.) Likewise, Aetna's document production includes no evidence regarding which standard

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

claim forms—if any—Young Defendants' billers actually used, for which facilities, and for which claims.  (SUF 1-40.)[4]

     *c.*  *The Record Contains Insufficient Evidence of Representations of Medically Necessity or Reimbursability.*

Aetna alleges Young Defendants affirmatively represented "the services billed were medically necessary and reimbursable."  (ECF 39 ¶ 137(ii)).  But these representations are nowhere to be found in Aetna's claims data—whether attached to the FAC or subsequently produced to Young Defendants.  (*See* ECF 39-1 to 39-3, 39-5 to 39-22, 39-25 to 38-27; SUF 5, 31, 36.)

Aetna alleges at most reliance on "recognized CPT" codes in the claim forms, which were material to Aetna's coverage determinations.  (*See id.* ¶¶ 55, 177.)  But Current Procedural Terminology ("CPT") codes without more do not contain or imply any certification of medical necessity and reimbursability.  CPT codes are simply standardized billing shorthand used to describe *a general category of service rendered*.  They do not convey the details of clinical judgment, let alone medical necessity or reimbursability (or for that matter compliance with every conceivable statutory, regulatory, or "procedural" condition of payment).  Insurers know this and that is why insurers expressly reserve audit rights.

To take one example, the CPT code H0015, which appears frequently in the claims data spreadsheets, is defined with a short descriptor and an official meaning, published and updated by the Centers for Medicare & Medicaid Services (CMS) quarterly: "Alcohol

---

[4] Aetna produced correspondence and packets for approximately eight claims, which include a standard form UB-04 notice. (SUF 33-39.)  The record is not clear what standard claim form(s), if any, Young Defendants' billers utilized for each of the claims for reimbursement that Aetna seeks to claw back.  And even if an inference were drawn in Aetna's favor that the UB-04 form was used for all claims, the form does not contain any certification of compliance with all applicable laws, regulations, and procedures; nor does it contain a certification of medical necessity or reimbursability.  (*Id.*)  Aetna's document production does not include any claim submitted by or on behalf of Young Defendants using the CMS 1500 form.  (SUF 40.)

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

and/or drug services: intensive outpatient (treatment program that operates at least 3 hours/day and at least 3 days/week and is based on an individualized treatment plan), including assessment, counseling; crisis intervention, and activity therapies or education."[5] In sum, a CPT code and accompanying diagnosis merely trigger the insurer's review and adjudication process—they are not warranties to the insurer of reimbursable or medical necessity.

The relationship between out-of-network providers like Young Defendants and Aetna is commercial. Aetna neither pleaded nor has it adduced evidence to prove the existence of anything other than an arm's length relationship. Young Defendants—complete strangers to Aetna with no contracted duties—presented Aetna with simple data points: dates of service for Aetna members, diagnosis codes, and CPT codes. It was for *Aetna* to adjudicate if the claims were medically necessary and reimbursable under Aetna's relevant plans, of which there were dozens, each with varying criteria and standards of which Young Defendants were ignorant.[6]

                d.      *The Record Contains Insufficient Evidence of Representations as to Truth, Accuracy, or the Absence of Additional Material Facts.*

There is insufficient evidence of specific representations by Young Defendants in "[e]very claim submitted to Aetna" that "the information on the claim forms was true, accurate" and "that material facts were not concealed." (ECF 39 ¶ 137(iii).) The claims data spreadsheets Aetna produced and alleged contained these misrepresentations include no reference to verification or certification. (SUF 1-3, 6.) Nor is there evidence in the record that Aetna required or even requested that Young Defendants provide affirmative

---

[5] As of October 2022, per CMS website, *see* https://www.cms.gov/medicare/coding-billing/healthcare-common-procedure-system/quarterly-update.

[6] Aetna argued as much in obtaining a dismissal of Young Defendants' counterclaims, taking the position that Young Defendants were never validly assigned any rights under employer sponsored plans, which Aetna represented to the Court contain anti-assignment clauses. (ECF 86-1.)

disclosures of all "material facts" potentially influencing Aetna's reimbursability determinations. (SUF 1-40.) Indeed, material facts—such as the patients' entire medical files, which can exceed 700 pages—are routinely and necessarily withheld during electronic claims submissions. The insurance company must request additional information as it deems necessary in pre- or post-payment review.[7]

### e.     Aetna Has Not Pleaded Fraudulent Concealment.

The idea that the "claim forms" "concealed" "material facts" is similarly unsubstantiated. The record is devoid of evidence establishing that the claim forms—paper or electronic—include open-ended questions requiring disclosure of all material facts potentially relevant to claims adjudication. (SUF 1-40.) No fields in Aetna's claim spreadsheet invite disclosure of marketing practices or referral relationships, let alone disclosure or evaluation of plan-specific medical necessity or reimbursement criteria. (SUF 7-18.) It is not even clear from the record if there is *a mechanism* for transmitting additional material information or attaching relevant documents as part of routine electronic claims submission.

### 2.     The Alleged Misrepresentations Are Inactionable Opinion.

Even if Young Defendants somehow made the representations alleged in FAC ¶137 (they did not), such representations are not actionable as a matter of law. California generally recognizes four kinds of deceit, of which intentional and negligent misrepresentation are two. *Finch Aerospace Corp. v. City of San Diego*, 8 Cal.App.5th 1248, 1252 (2017). Both forms require an assertion by the defendant of a past or existing

---

[7] In Aetna's interrogatory response, the only Bates numbers Aetna identified were AETNA0000001–0000009, which are spreadsheets with claims data. (SUF 1-6.) Aetna also referred to "PNT certifications it requires for electronic claims," but Aetna did not identify any Bates number for such PNT certifications. (SUF 19-32.) Aetna's document production includes a "PNT DATA SOFTWARE AND SERVICES AGREEMENT," but that document is not signed by anyone, let alone by any of the Young Defendants or any of their billers. (SUF 25.) Moreover, the agreement does not include any of the alleged representations specified in FAC ¶ 137, upon which Aetna bases its misrepresentation claims. (SUF 30-32.)

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

fact.  Cal. Civ. Code § 1710 (deceit is suggestion "as a fact" of that which is not true, by one who does not believe it to be true); Restatement (Second) of Torts § 538A (1977) ("A representation of fact is a positive assertion that the fact is true" whereas a representation is one of opinion if it expresses only "the belief of the maker, without certainty, as to the existence of a fact" or "his judgment as to quality . . . or other matters of judgment.").  "The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action." *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal.App.4th 303, 308 (2000).  Young Defendants are entitled to summary judgment, because the alleged misrepresentations are vague opinions, which cannot form a basis for an action in fraud.

> a.    *A Representation Regarding Compliance with Applicable Law Would Be Inactionable.*

A statement of universal compliance with unspecified "applicable" law, regulation, or procedure by a lay entity (SUD provider or their biller)—apart from being vague—constitutes an opinion concerning law.  It is not a "fact" that can be true or upon which a multibillion-dollar insurance company like Aetna may reasonably rely.  *See Perlick v. Pacific Discount Corp.*, 53 Cal.App.2d 136, 141 (1942) (statement of opinion concerning legal question, absent a confidential relation, cannot induce justifiable reliance); *Agnew v. Foell*, 113 Cal.App.2d 575, 577 (1952) ("a legal opinion by a layman cannot constitute the basis of recovery for fraud"); *Golden W. Baseball Co. v. Talley*, 232 Cal.App.3d 1294, 1307 (1991) (holding "confidently" that a major league baseball club with "some degree of business sophistication" "could not, as a matter of law, reasonably rely on the legal opinion of a layman," regarding the meaning of an amended lease agreement); *Yurgevich v. Hyundai Translead*, 2012 WL 13175922, at *3 (S.D. Cal. Sept. 28, 2012) (holding statements by Defendant's senior management "regarding his patent ownership rights" were legal opinions and not statements of fact); *see generally* Fed. R. Evid. 701 (articulating the common-sense notion that a lay witness may not testify as to a legal conclusion).

### b. A Representation of "Reimbursability" Would Be Inactionable.

Statements as to future fact or as to value—*e.g.*, whether a claim is reimbursable or at what amount—are quintessential opinions that do not form the basis for fraud. "It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions." *Neu-Visions Sports, Inc.*, 86 Cal.App.4th at 309-10 (cleaned up) (affirming summary judgment against plaintiff, on two alleged misrepresentations: one regarding the value of a building, the other regarding whether title to the property was an obstacle to securing financing). Whether or not a service is "reimbursable" under a given health plan is speculative (and is intertwined with opinions of law, which are not actionable for reasons noted in the preceding section). Likewise, "statements about future action by some third party"—such as whether Aetna will deem a service reimbursable—"are deemed opinions, and not actionable fraud." 5 Witkin, Summary 11th Torts § 892 (2025).

Reimbursement is a complex determination requiring access to summary plan descriptions, internal Aetna guidelines, and claims-administration rules, all of which are inscrutable to providers and exist outside the CPT code set and claim forms. Reimbursement is also a determination that *Aetna*, not SUD providers, makes, and it is circular for Aetna to claim it can rely on a non-contracted provider's assertion that something is "reimbursable."

In sum, Aetna's alleged misrepresentations do not exist. They are not actionable if they do exist. And for these reasons, Young Defendants are entitled to partial summary judgment on Aetna's first and third claims for relief, in so far as those claims are premised on those misrepresentations.

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

**B.      Young Defendants Are Entitled to Partial Summary Judgment on Aetna's RICO Claims (Claims Five and Six) to the Extent the Mail and Wire Fraud RICO Predicates Are Based on Alleged Misrepresentations in Claim Forms or Requests for Reimbursement.**

Aetna's Fifth Claim for Relief is for Violation of RICO, 18 U.S.C. § 1962(c), and its Sixth Claim for Relief is for Conspiracy to Violate RICO, 18 U.S.C. § 1962(d).  To prove a RICO claim, a plaintiff must establish that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d 1138, 1152 (C.D. Cal. 2016) (cleaned up). "Racketeering activity" includes mail fraud and wire fraud, the predicates on which Aetna relies in the FAC (ECF 39 ¶ 172); *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir.1986).  Young Defendants are entitled to partial summary judgment on the RICO claims because there is no genuine dispute that Aetna cannot provide sufficient admissible evidence that Young Defendants actually made the representations underlying its RICO theory, and, in the alternative, even if Young Defendants made the representations, they are inactionable and/or Aetna cannot provide sufficient admissible evidence establishing reliance and proximate causation.

### 1.      Aetna's RICO Claims Are Also Premised on Misrepresentations That Do Not Exist.

Aetna's RICO claims are premised on the same misguided fraud theory analyzed above.  A RICO claim premised on false representations, but which lacks the time, place and "specific content of the false representations as well as the identities of the parties to the misrepresentation" does not state a claim and must be dismissed.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (affirming dismissal of RICO claim for failure to state a claim, because the complaint included a time and place of notices but contained "not a word of the notices' specific contents.").

Here, Aetna's RICO claims are a mirror image of its misrepresentation claims. Aetna pleads mail fraud and wire fraud[8] as the relevant predicate acts under RICO. (ECF 39 ¶ 172.)  Aetna asserts "each *fraudulently submitted claim* constitutes a predicate act of mail or wire fraud," and, as with its misrepresentation claims, Aetna points to the "Exhibits attached hereto" for the specifics of the predicate fraud.  (*Id.* ¶ 176 [emphasis added].)  Aetna goes further and asserts, "*[e]ach claim specifically certified* the procedures billed were actually conducted, medically necessary, and lawful" (*id.* ¶ 177 [emphasis added]), *i.e.*, Aetna realleges the same categories of attestations and misrepresentations in FAC ¶ 137(i)-(iii), which do not exist.  (*See, supra*, Part IV.A.1.)

2.     Aetna's RICO Claims Are Likewise Premised on Misrepresentations That—Even If Proven—Are Inactionable.

In the RICO context, "misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions." *California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1161 (C.D. Cal. 2009).  Representations concerning "domestic law are normally regarded as expressions of opinion which are generally not actionable in fraud even if they are false."  *Miller*, 358 F.3d at 618, 621 (employee's claim that employer violated RICO by falsely representing to him and other employees that they were not entitled to overtime pay was a non-actionable legal opinion).

---

[8] The elements of mail fraud and wire fraud are essentially identical.  *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017).  To establish mail fraud under 18 U.S.C. § 1341, Aetna must show that: "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud."  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (quoting *Schreiber v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir.1986)).  In addition, to establish wire fraud under 18 U.S.C. § 1343, Aetna must show "(1) the formation of a scheme or artifice to defraud[;] (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud."  *Schreiber*, 806 F.2d at 1400 (citing *United States v. Louderman*, 576 F.2d 1383, 1387-88 & n. 3 (9th Cir.), *cert. denied*, 439 U.S. 896 (1978)).

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

3.    Any Alleged Omissions or Nondisclosures Are Inactionable Predicate Acts Under RICO.

Young Defendants are also entitled to summary judgment on the RICO claims to the extent Aetna may attempt to ground them on alleged omissions.  As a threshold matter, it is extremely unclear what omissions Aetna may be referring to throughout its FAC and RICO claim.  Aetna must identify the particular affirmative disclosures that it believes *should* have been made and how and where they should have been made.  And for each such disclosure, Aetna must point to an independent and affirmative duty to disclose: "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme."  *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) (citing *U.S. v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207).

In *Dowling*, a RICO non-disclosure case in which the defendant allegedly failed to affirmatively inform copyright holders about his illegal activities, the government argued "the presence of illegal conduct alone may constitute the 'fraud' element of a mail fraud prosecution," and the Ninth Circuit strongly disagreed: it could not "accept the sweeping construction proposed by the government."  739 F.2d at 1449.  The defendant did have a duty to disclose, which was grounded in an "independent *explicit* statutory duty *created by legislative enactment*," a provision of the Copyright Act that required reporting intent to manufacture and distribute recordings.  *Id.* (emphasis added) (citing 17 U.S.C. § 115).  More recently, a court in this district found the plaintiffs' expansive non-disclosure wire fraud theory to be "expressly foreclosed" by *Dowling*.  *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2025 WL 2684021, at *35 (C.D. Cal. Aug. 15, 2025) (noting prior order also rejected plaintiffs' theory that a duty to disclose alleged airbag defect was created by the National Traffic and Motor Vehicle Safety Act).

Here, Young Defendants owed no fiduciary obligations to Aetna, and Aetna lacks a statutory equivalent of the Copyright Act, which ensnared Dowling by creating an express

23

COHEN WILLIAMS LLP

duty for vendors to make certain disclosures to copyright owners.[9]  EKRA and the related federal and state patient marketing and kickback laws cited in Aetna's complaint create no independent "explicit statutory duty," *Dowling*, 739 F.2d at 1449, to report to Aetna on provider marketing activities.  *See also Pacific Recovery Sols. v. Cigna Behav. Health, Inc.*, 2021 WL 1176677, at *9 (N.D. Cal. Mar. 29, 2021) (an alleged commission of "Federal Health offenses" does not provide a predicate act for racketeering).

Aetna's RICO theory is simply far too sprawling.  The U.S. Supreme Court and district courts are cracking down on such overbroad theories.  For instance, *Ciminelli v. United States* struck down a theory of mail/wire fraud under which a defendant could be guilty merely for depriving the victim of "potentially valuable economic information necessary to make discretionary economic decisions," which closely parallels they type of indefinite and passive "concealment" harm Aetna has tries to accuse Young Defendants of committing in this case.  598 U.S. 306, 314 (2023).  The Ninth Circuit recently held that if an affirmative misrepresentation does not go to the "nature of the bargain" between a defendant and victim, it does not amount to mail or wire fraud.  *United States v. Milheiser*, 98 F.4th 935, 938 (9th Cir. 2024).  Here, there was no "bargain" and indeed *no contractual relationship at all* between Young Defendants (non-contracted out of network providers) and Aetna.

### 4. Aetna Cannot Establish Reliance and Proximate Causation to Sustain the RICO Claims.

Because the misrepresentations do not exist (or were not actually made or transmitted to Aetna), Aeta lacks sufficient proof of reliance and proximate causation.  "When a Court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also In re Bextra & Celebrex Mktg.*

---

[9] The portion of the Copyright Act that created the duty to disclose requires any person who wishes to obtain an applicable compulsory license to "serve notice of intention to do so on the copyright owner."  17 U.S.C. § 115(b)(1).

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

*Sales Pracs. Litig.*, 2012 WL 3154957, at *5-6 (N.D. Cal. Aug. 2, 2012) (holding that "[i]n cases where the RICO violation involves misrepresentations, such as in mail and wire fraud cases, courts often determine whether proximate cause exists by asking whether there was cases actual reliance on those misrepresentations"). Aetna's corporate representative could not point to reliance on any particular certification or misrepresentation, and instead referred again and again to a vague "veil of trust" that just "exists" in insurance claim processing. (SUF 41-44.)

### 5. The RICO Conspiracy Claim Fails with the Underlying RICO Claim.

A defendant cannot be liable for a RICO conspiracy under Section 1962(d) if the defendant is not liable under the substantive RICO provisions. *See Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be saved."). To the same extent that Aetna's RICO claims premised on mail and wire fraud fail, Aetna's RICO conspiracy claim fails as well.

**C. Young Defendants Are Entitled to Partial Summary Judgment on Aetna's Eighth, Ninth, Tenth, and Eleventh Claims to the Extent They Are Based on Alleged Misrepresentations in Claim Forms or Requests for Reimbursement.**

Aetna's Eighth through Eleventh Claims are premised on the same flawed theory of fraudulent misrepresentation and are ripe for summary judgement. The Eighth Claim is for money had and received. (ECF 39 ¶¶ 189-194.) *See, e.g., Boulton v. Am. Transfer Servs., Inc.*, 2015 WL 2097807, at *3 (S.D. Cal. May 5, 2015) (because plaintiff failed to properly allege fraud claim, same conclusion applied to claim for money had and received "based on the same course of fraudulent conduct"); *Great Am. Ins. Co. v. Mowforth*, 2020 WL 12216543, at *2-3 (N.D. Cal. Dec. 1, 2020) (same). Aetna's ninth claim is for unjust enrichment/quantum meruit/restitution. (ECF 39 ¶¶ 195-200.) *See, e.g., Great Am. Ins.*

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

*Co.*, 2020 WL 12216543, at *2-3 (dismissing unjust enrichment claim that relied "on the same allegedly fraudulent course of conduct" for failure to meet "heightened pleading standard of Rule 9(b)"); *Maksoud v. Guelton*, 2017 WL 2505887, at *6 (S.D. Cal. June 9, 2017) (noting that "elements of a restitution claim are identical to those of an unjust enrichment claim" and dismissing restitution claim "grounded in fraud" for failure "to plead the facts with sufficient particularity"). The tenth and eleventh claims are for restitution and injunction under ERISA, 29 U.S.C. § 1132(a)(3). Aetna does not refer to any basis for either claim other than the Young Defendants having "caused Aetna to wrongfully pay on behalf of the ERISA plans" and having engaged in "the misconduct alleged herein." (ECF 39 ¶¶ 205, 212.) The only wrongful conduct and misconduct alleged in the FAC is the purported fraudulent scheme. Accordingly, the ERISA claims fails for the same reason.

**D.    Young Defendants Are Entitled to Partial Summary Judgment on All Claims For Relief to the Extent Aetna Is Seeking Relief on Behalf of an Employer-Sponsored Health Plan.**

The vast majority of the claims for which Aetna seeks to claw back reimbursement relate to employer-sponsored health plans, where Aetna is merely acting as an "administrator" of the employer plan. (SUF 46-224.) Aetna admits it needs authorization from plan sponsors to institute litigation to recover losses paid by the sponsor, and claims that the needed authorization is contained in agreements between Aetna and the plan sponsors: Aetna asserts it has "administrative services agreements with the plan's sponsors *that authorize Aetna to bring this action to* recover the wrongful payments set forth herein." (FAC ¶ 53 [emphasis added].)

However, for approximately 30 plan sponsors relevant to the case, the record is devoid of any administrative or master services agreement. (SUF 51-52, 96-103, 111-114, 120-121, 130-131, 138-143, 153-168, 183-194, 203-206, 215-222.) There is a complete failure of proof, therefore, that Aetna possesses the requisite authorization to act for the

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

plan sponsors and that Aetna has suffered any harm, as required to litigate these plan sponsors' claims.

Regarding the remaining plan sponsors, Aetna has produced at least some administrative services agreements or master services agreements and amendments. But these agreements provide that Aetna may act on behalf of the plan sponsor *only to the extent expressly stated* in the agreement and as agreed to *in writing*. (SUF 46-50, 53-95, 104-110, 115-119, 122-129, 132-137, 144-152, 169-182, 195-202, 207-214.) In short, the agreements do not give *carte blanche* to "Aetna to bring this action to recover wrongful payments," as Aetna falsely alleged. (FAC ¶ 53.) Aetna is thus suing Young Defendants without authorization, and Young Defendants are entitled to summary judgment regarding all such claims, which Aetna paid on behalf of third-party employer sponsored plans.

## V. CONCLUSION

For the foregoing reasons, Young Defendants respectfully submit that the Court should grant partial summary judgment in favor of Young Defendants.

Dated: February 9, 2026        **COHEN WILLIAMS LLP**

By:      */s/ Marc S. Williams*
       Marc S. Williams
       Reuven L. Cohen
       Kathleen M. Erskine
       Roya S. Ladan
       Joseph (Yusuf) Saei

Attorneys for Defendants Nathan Young, David Young, Get Real Recovery Inc., Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., Helping Hands Rehabilitation Clinic Inc., Joser Forever LLC, 9 Silver LLC, and 55 Silver LLC

27

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Defendants Nathan Young, David Young, Get Real Recovery Inc., Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., 55 Silver LLC, 9 Silver LLC, Helping Hands Rehabilitation Clinic Inc., and Joser Forever LLC, certifies that this brief contains 6,639 words, which complies with the word limit of L.R. 11-6.1 and the Initial Standing Order issued in this action (ECF 18 ¶ 8(4)-(5)).

Dated:  February 9, 2026          **COHEN WILLIAMS LLP**

By:          */s/ Marc S. Williams*

Marc S. Williams
Reuven L. Cohen
Kathleen M. Erskine
Joseph (Yusuf) Saei

Attorneys for Defendants Nathan Young, David Young, Get Real Recovery Inc., Healing Path Detox LLC, Ocean Valley Behavioral Health, LLC, Rodeo Recovery LLC, Sunset Rehab LLC, Natural Rest House, Inc., Helping Hands Rehabilitation Clinic Inc., Joser Forever LLC, 9 Silver LLC, and 55 Silver LLC

YOUNG DEFENDANTS' MEMO. OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT